# 22-1015

## United States Court of Appeals for the Second Circuit



JEROME NORTON,

*Plaintiff-Appellant,*

-against-

TOWN OF BROOKHAVEN, COUNTY OF SUFFOLK,
ROBERT QUINLAN, DAVID J. MORAN, JENNIFER LUTZER,
JUSTIN FOLBER, WILLIAM POWELL, and VALERIE BASCARDI,
all individually and in their official capacity,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## APPENDIX

LEEDS BROWN LAW, P.C.
*Attorneys for Plaintiff-Appellant*
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550
*rostrove@leedsbrownlaw.com*

DEVITT SPELLMAN BARRETT, LLP
*Attorneys for Defendants-Appellees*
50 Route 111, Suite 314
Smithtown, New York 11787
(631) 724-8833
*s.kreppein@devittspellmanlaw.com*

# TABLE OF CONTENTS

*Page(s)*

U.S. District Court Docket Sheet ...................................................................A1-A19

Memorandum of Decision and Order, dated July 30, 2014 ............................A20-A67

Transcript of Hearing, held on October 16, 2017 ..........................................A68-A72

Plaintiff's Third Amended Complaint, dated October 17, 2017 .......................................................................................................................A73-A156

Stipulation of Partial Settlement, dated October 18, 2017 ..........................A157-A188

Order of the Hon. Gary R. Brown, dated October 18, 2017 .......................A189-A192

Town of Brookhaven Chapter 82 Neighborhood Preservation .................................................................................................A193-A200

Letter, dated November 13, 2018 ...............................................................A201-A202

Memorandum of Decision and Order, dated January 21, 2020 .......................................................................................................................A203-A217

Transcript of Hearing, held on March 16, 2020 .........................................A218-A220

Letter, dated August 31, 2020 ....................................................................A221-A229

Plaintiff's Memorandum of Law in Opposition to Defendants' Motion, dated May 19, 2021 ..................................................A230-A249

Report and Recommendation, dated January 27, 2022 ...............................A250-A262

Memorandum and Order, dated March 31, 2022 ........................................A263-A266

Plaintiff's Response to Defendants' Statement, dated May 19, 2021 ...............................................................................................................A267-A271

i

*Table of Contents(cont'd)*                                                    *Page(s)*

Rule 56.1 Statement, dated February 19, 2021 .............................................A272-A273

Letters.........................................................................................................A274-A280

Judgment, dated April 4, 2022 .....................................................................A281-A282

Notice of Appeal, dated May 4, 2022 ...................................................................A283

APPEAL

# U.S. District Court
## Eastern District of New York (Central Islip)
## CIVIL DOCKET FOR CASE #: 2:13-cv-03520-JMA-AYS

Norton v. Town of Brookhaven et al                      Date Filed: 06/20/2013
Assigned to: Judge Joan M. Azrack                       Date Terminated: 04/04/2022
Referred to: Magistrate Judge Anne Y. Shields           Jury Demand: Plaintiff
Demand: $1,000,000                                      Nature of Suit: 440 Civil Rights: Other
Cause: 42:1983 Civil Rights Act                         Jurisdiction: Federal Question

**Plaintiff**

**Jerome Norton**                   represented by   **Bryan L. Arbeit**
                                                     Morgan & Morgan, P.A.
                                                     8151 Peters Road, 4th Floor
                                                     Plantation, FL 33324
                                                     954-694-9610
                                                     Fax: 954-694-9695
                                                     Email: barbeit@forthepeople.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Rick Ostrove**
                                                     Leeds Brown Law, P.C.
                                                     One Old Country Road
                                                     Suite 347
                                                     Carle Place, NY 11514
                                                     (516) 873-9550
                                                     Fax: (516) 747-5024
                                                     Email: rostrove@leedsbrownlaw.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Andrew G. Costello**
                                                     Leeds Brown Law, PC
                                                     1 Old Country Road
                                                     Suite 347
                                                     Carle Place, NY 11514
                                                     516-873-9550
                                                     Email: acostello@leedsbrownlaw.com
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Jonathan Christopher Messina**
                                                     The Dresevic, Iwrey, Kalmowitz and Pendleton Law
                                                     Group
                                                     15 West 38th Street
                                                     Fourth Floor
                                                     Suite 735
                                                     New York, NY 10018
                                                     516-729-3439
                                                     Email: jmessina@thehlp.com
                                                     *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Town of Brookhaven**              represented by   **Scott J. Kreppein**
                                                     Devitt Spellman Barrett, LLP
                                                     50 Route 111
                                                     Suite 314
                                                     Smithtown, NY 11787
                                                     631-724-8833
                                                     Fax: 631-724-8010
                                                     Email: S.Kreppein@devittspellmanlaw.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anne C. Leahey**
Anne Leahey Law, LLC
17 Dumplin Hill Lane
Huntington, NY 11743
631-553-3708
Email: legal@anneleaheylaw.com
*ATTORNEY TO BE NOTICED*

**David H. Arntsen**
Volz & Vigliotta, PLLC
280 Smithtown Blvd
Nesconset, NY 11767
631-366-2700
Fax: 631-366-0062
Email: darntsen@volzvigliotta.com
*ATTORNEY TO BE NOTICED*

**Jeltje DeJong**
Devitt Spellman Barrett, LLP
50 Route 111
Smithtown, NY 11787
631-724-8833
Fax: 631-724-8010
Email: J.dejong@devittspellmanlaw.com
*ATTORNEY TO BE NOTICED*

**Kelly E Wright**
Scahill Law Group, P.C.
1065 Stewart Avenue
Bethpage, NY 11714
516-294-5200
Email: kwright@psnylaw.com
*ATTORNEY TO BE NOTICED*

**Theodore D. Sklar**
Devitt Spellman Barrett, LLP
50 Route 111
Smithtown, NY 11787
631-724-8833
Fax: 631-724-8010
Email: t.sklar@devittspellmanlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**County of Suffolk**
*TERMINATED: 01/21/2020*

represented by **Brian C Mitchell**
Suffolk County Dept. of Law-County Attorney
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY 11788
631-853-4055
Fax: 631-853-5833
Email: brian.mitchell@suffolkcountyny.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robert Quinlan**

represented by **Scott J. Kreppein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anne C. Leahey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David H. Arntsen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeltje DeJong**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kelly E Wright**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theodore D. Sklar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**David J. Moran**                    represented by    **Scott J. Kreppein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anne C. Leahey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David H. Arntsen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeltje DeJong**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kelly E Wright**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theodore D. Sklar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jennifer Lutzer**                    represented by    **Scott J. Kreppein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anne C. Leahey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David H. Arntsen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeltje DeJong**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kelly E Wright**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theodore D. Sklar**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Daniel Belano**
*TERMINATED: 01/16/2014*                              represented by **Jeltje DeJong**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**William Powell**                                    represented by **Scott J. Kreppein**
                                                                      (See above for address)
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Anne C. Leahey**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **David H. Arntsen**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Jeltje DeJong**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Kelly E Wright**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Theodore D. Sklar**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Valerie Biscardi**                                  represented by **Scott J. Kreppein**
*all individually and in their offical capacity*                      (See above for address)
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Anne C. Leahey**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **David H. Arntsen**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Jeltje DeJong**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Kelly E Wright**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Theodore D. Sklar**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Justin Folber**                                     represented by **Scott J. Kreppein**
*formerly known as*                                                   (See above for address)
Jason Folber                                                          *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Anne C. Leahey**

9/13/22, 1:00 PM                    Eastern District of New York - LIVE Database 1.7 (Revision 1.7.1)

(See above for address)
*ATTORNEY TO BE NOTICED*

**David H. Arntsen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeltje DeJong**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kelly E Wright**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theodore D. Sklar**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 06/20/2013 | 1 | COMPLAINT against All Defendants Disclosure Statement on Civil Cover Sheet completed -No,, filed by Jerome Norton. (Attachments: # 1 Civil Cover Sheet) (McMahon, Carol) (Entered: 06/24/2013) |
| 06/24/2013 |   | The case of **Norton v. Town of Brookhaven, et al** has been opened in the Eastern District of New York. The case number is **13cv3520(ADS)(GRB)**. <br> PLEASE NOTE: You must pay the case filing fee **within seven (7) days**. Select the event (Civil Case Filing Fee) and pay online. (McMahon, Carol) (Entered: 06/24/2013) |
| 06/24/2013 | 2 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link:http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent.** (McMahon, Carol) (Entered: 06/24/2013) |
| 06/24/2013 |   | CIVIL CASE FILING FEE: $ 400, receipt number 0207-6276279 (Ostrove, Rick) (Entered: 06/24/2013) |
| 06/25/2013 | 3 | Summons Issued as to All Defendants. (Attachments: # 1 Rider) (Talbott, Thomas) (Entered: 06/25/2013) |
| 10/09/2013 | 4 | AMENDED COMPLAINT against All Defendants, filed by Jerome Norton. (Ostrove, Rick) (Entered: 10/09/2013) |
| 10/21/2013 | 5 | SUMMONS Returned Executed by Jerome Norton. Daniel Belano served on 10/15/2013, answer due 11/5/2013; Valerie Biscardi served on 10/15/2013, answer due 11/5/2013; County of Suffolk served on 10/15/2013, answer due 11/5/2013; Jason Folber served on 10/18/2013, answer due 11/8/2013; Jennifer Lutzer served on 10/18/2013, answer due 11/8/2013; David J. Moran served on 10/18/2013, answer due 11/8/2013; William Powell served on 10/18/2013, answer due 11/8/2013; Town of Brookhaven served on 10/15/2013, answer due 11/5/2013. (Attachments: # 1 Affidavit) (Arbeit, Bryan) (Entered: 10/21/2013) |
| 10/24/2013 | 6 | SUMMONS Returned Executed by Jerome Norton. Robert Quinlan served on 10/18/2013, answer due 11/8/2013. (Arbeit, Bryan) (Entered: 10/24/2013) |
| 11/04/2013 | 7 | Letter MOTION for Extension of Time to File Answer by County of Suffolk. (Mitchell, Brian) (Entered: 11/04/2013) |
| 11/05/2013 | 8 | ORDER Re: 7 Motion for an extension of time until 12/13/13 for the defendant County to respond to the Complaint. Request granted. So Ordered by Judge Arthur D. Spatt on 11/5/13. (Coleman, Laurie) (Entered: 11/06/2013) |
| 11/11/2013 | 9 | Letter MOTION for Extension of Time to File Answer by Daniel Belano, Valerie Biscardi, Jason Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven. (DeJong, Jeltje) (Entered: 11/11/2013) |
| 11/11/2013 | 10 | STIPULATION *to extend time to answer or move to January 4, 2014* by Daniel Belano, Valerie Biscardi, Jason Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (DeJong, Jeltje) (Entered: 11/11/2013) |
| 11/12/2013 | 11 | ORDER granting 9 Motion for an extension of time to and including 1/3/14 for Defendants Daniel Belano; Valerie Biscardi; Jason Folber; Jennifer Lutzer; David J. Moran; William Powell; Robert Quinlan; and Town of Brookhaven to Answer. So Ordered by Judge Arthur D. Spatt on 11/12/13. (Coleman, Laurie) (Entered: 11/13/2013) |
| 12/02/2013 | 12 | Second MOTION for Extension of Time to File Answer by County of Suffolk. (Mitchell, Brian) (Entered: |

| | | 12/02/2013) |
|---|---|---|
| 01/09/2014 | 13 | Second MOTION for Extension of Time to File Answer by Valerie Biscardi, Jason Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven. (DeJong, Jeltje) (Entered: 01/09/2014) |
| 01/09/2014 | 14 | STIPULATION *agreeing to second amended complaint and a thirty day period to respond* by Valerie Biscardi, Jason Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (DeJong, Jeltje) (Entered: 01/09/2014) |
| 01/10/2014 | 15 | ORDER granting 14 Stipulation to extend time for all defendants to appear and to answer or make any motion with relation to the second amended complaint in this action to (30) days from the filing date of the second amended complaint. So Ordered by Judge Arthur D. Spatt on 1/10/14. (Coleman, Laurie) (Entered: 01/13/2014) |
| 01/14/2014 | 16 | AMENDED COMPLAINT against Valerie Biscardi, County of Suffolk, Jason Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven, filed by Jerome Norton. (Ostrove, Rick) (Entered: 01/14/2014) |
| 02/13/2014 | 17 | Third MOTION for Extension of Time to File Answer *and for permission to file a brief in excess of 25 pages* by Daniel Belano, Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven. (DeJong, Jeltje) (Entered: 02/13/2014) |
| 02/13/2014 | 18 | STIPULATION *to extend defendants' time to answer or bring a motion* by Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (DeJong, Jeltje) (Entered: 02/13/2014) |
| 02/14/2014 | 19 | ORDER Re: 18 Stipulation to extend all defendants time to appear and to anwer or make any motion with relation to the second amended complaint to 2/21/14. So Ordered by Judge Arthur D. Spatt on 2/14/14. (Coleman, Laurie) (Entered: 02/18/2014) |
| 02/21/2014 | 20 | Motion to Dismiss for Failure to State a Claim by Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven. (Attachments: # 1 Declaration in support, # 2 Exhibit A part 1, # 3 Exhibit A part 2, # 4 Exhibit A part 3, # 5 Exhibit B, # 6 Memorandum in Support, # 7 Affidavit of service) (DeJong, Jeltje) (Entered: 02/21/2014) |
| 03/05/2014 | 21 | MOTION for Extension of Time to File Response/Reply as to 20 Motion to Dismiss for Failure to State a Claim *and Request for a Conference Regarding Dunton* by Jerome Norton. (Attachments: # 1 Exhibit 1-2) (Arbeit, Bryan) (Entered: 03/05/2014) |
| 03/10/2014 | 22 | RESPONSE to Motion re 21 MOTION for Extension of Time to File Response/Reply as to 20 Motion to Dismiss for Failure to State a Claim *and Request for a Conference Regarding Dunton* filed by Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven. (Attachments: # 1 Exhibit) (DeJong, Jeltje) (Entered: 03/10/2014) |
| 03/11/2014 | 23 | ORDER granting 21 Motion for Extension of Time. The plaintiff's request for a conference to resolve any Dunton issues is denied. Absent a motion to disqualify, the Court declines to intervene in this respect. The plaintiff shall have until Thursday 4/10/14 to respond to the motion to dismiss and, if it chooses, to make a disqualification motion. So Ordered by Judge Arthur D. Spatt on 3/11/14. (Coleman, Laurie) (Entered: 03/11/2014) |
| 03/24/2014 | 24 | First Motion to Dismiss for Failure to State a Claim by County of Suffolk. (Attachments: # 1 Affidavit in Support, # 2 Memorandum in Support, # 3 Affidavit of Service) (Mitchell, Brian) (Entered: 03/24/2014) |
| 04/02/2014 | 25 | MOTION for Extension of Time to File Response/Reply as to 20 Motion to Dismiss for Failure to State a Claim , 24 First Motion to Dismiss for Failure to State a Claim by Jerome Norton. (Arbeit, Bryan) (Entered: 04/02/2014) |
| 04/03/2014 | 26 | ORDER Re: 25 Motion to request 1) permission to submit a 60 page combined memorandum of law in opposition/response to the two motions to dismiss made by the Town of Brookhaven and Individual Defendants and by the County of Suffolk; 2) an adjournment to 4/30/14 for the time to file the combined opposition and to 5/14/14 for any replies. Request granted. So Ordered by Judge Arthur D. Spatt on 4/3/14. (Coleman, Laurie) (Entered: 04/04/2014) |
| 04/24/2014 | 27 | Letter *To Judge Spatt Second Combined Brief Extension 4-24-14* by Jerome Norton (Ostrove, Rick) (Entered: 04/24/2014) |
| 04/25/2014 | 28 | ORDER Re: 27 Letter requesting an adjournment to 5/30/14 for the time to file the combined opposition to both defendants' motion to dismiss and that defendants' replies are due 6/14/14. Request granted. So Ordered by Judge Arthur D. Spatt on 4/25/2014. (Coleman, Laurie) (Entered: 04/25/2014) |
| 05/23/2014 | 29 | Letter *Request Adjournment* by Jerome Norton (Ostrove, Rick) (Entered: 05/23/2014) |
| 05/23/2014 | 30 | Letter *Request for Adjournment-corrected* by Jerome Norton (Ostrove, Rick) (Entered: 05/23/2014) |
| 05/24/2014 | 31 | ORDER Re: 30 Letter requesting the proposed revised briefing schedule: Plaintiff's Combined Opposition due 6/6/14; Town Defendants and County's Reply due 6/22/14. Request granted. So Ordered by Judge Arthur D. Spatt on 5/24/14. (Coleman, Laurie) (Entered: 05/27/2014) |

| 06/06/2014 | 32 | MEMORANDUM in Opposition re 20 Motion to Dismiss for Failure to State a Claim , 24 First Motion to Dismiss for Failure to State a Claim , AFFIDAVIT/DECLARATION in Opposition re 20 Motion to Dismiss for Failure to State a Claim , 24 First Motion to Dismiss for Failure to State a Claim filed by Jerome Norton. (Attachments: # 1 Declaration of Rick Ostrove, # 2 Exhibit 1-7) (Arbeit, Bryan) (Entered: 06/06/2014) |
| 06/12/2014 | 33 | Letter MOTION for Extension of Time to File Response/Reply as to 32 Memorandum in Opposition, Affidavit in Opposition to Motion,, by Daniel Belano, Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven. (DeJong, Jeltje) (Entered: 06/12/2014) |
| 06/12/2014 | 34 | Letter MOTION for Extension of Time to File Response/Reply by County of Suffolk. (Mitchell, Brian) (Entered: 06/12/2014) |
| 06/13/2014 | 35 | ORDER Re: 34 Motion for an extension of time from 6/22/14 to 7/14/14 for the Suffolk County defendants to file their reply papers. Request granted. So Ordered by Judge Arthur D. Spatt on 6/13/14. (Coleman, Laurie) (Entered: 06/16/2014) |
| 06/13/2014 | 36 | ORDER Re: 33 Motion requesting an extension of time from 6/22/14 to 7/14/14 for the Town of Brookhaven to file their reply papers. Request granted. So Ordered by Judge Arthur D. Spatt on 6/13/14. (Coleman, Laurie) (Entered: 06/16/2014) |
| 07/11/2014 | 37 | Letter MOTION for Extension of Time to File Response/Reply to July 18, 2014 by Daniel Belano, Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven. (DeJong, Jeltje) (Entered: 07/11/2014) |
| 07/11/2014 | 38 | Letter MOTION for Extension of Time to File Response/Reply by County of Suffolk. (Mitchell, Brian) (Entered: 07/11/2014) |
| 07/12/2014 | 39 | ORDER Re: The County's 38 Motion requesting an extension of time from 7/12/14 until 7/18/14 to file their reply papers. Request granted. So Ordered by Judge Arthur D. Spatt on 7/12/14. Movant to serve parties by fax. (Coleman, Laurie) (Entered: 07/14/2014) |
| 07/12/2014 | 40 | ORDER Re: 37 Motion for an extension of time from 7/12/14 to 7/18/14 for defendants to file reply papers. Request granted. So Ordered by Judge Arthur D. Spatt on 7/12/14. Movant to serve parties by fax. (Coleman, Laurie) (Entered: 07/14/2014) |
| 07/17/2014 | 41 | REPLY to Response to Motion re 24 First Motion to Dismiss for Failure to State a Claim filed by County of Suffolk. (Mitchell, Brian) (Entered: 07/17/2014) |
| 07/18/2014 | 42 | REPLY in Support of Defendant Town of Brookhaven's motion to dismiss filed by Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven. (Attachments: # 1 Memorandum in Support, # 2 Affidavit of Service) (Shteierman, Joshua) (Entered: 07/18/2014) |
| 07/30/2014 | 43 | MEMORANDUM OF DECISION AND ORDER - In sum, the Court grants in part and denies in part the 20 motion to dismiss by the Brookhaven Defendants and grants the 24 motion to dismiss by the County. As to the motion to dismiss by the Brookhaven Defendants, the Court denies the motion with respect to the (1) Section 1983 First Amendment Intimate Association, Fourth Amendment, and Procedural Due Process claims; (2) the corresponding Monell claims against the Town; (3) the claim under Section 8 of the New York Civil Rights Law; and (4) the requests for declaratory relief as against the Town. The Court otherwise grants the motion to dismiss by the Brookhaven Defendants. As there no claims remaining against Lutzer, the Second Amended Complaint is dismissed in its entirety as to her. So Ordered by Judge Arthur D. Spatt on 7/30/2014. (Coleman, Laurie) (Main Document 43 replaced on 8/8/2014) (Coleman, Laurie). Modified on 8/8/14 to replace the Decision which was updated to include the appearance of attorney Bryan L. Arbeit, Esq. for the Plaintiff. The Decision remains the same in all other respects. (Coleman, Laurie). (Entered: 08/07/2014) |
| 07/30/2014 | | Incorrect Case/Document/Entry Information. The #43 Memorandum of Decision and Order has been deleted from the above-referenced and re-entered due to a docketing error. (Coleman, Laurie) (Entered: 08/07/2014) |
| 08/07/2014 | 44 | Letter recognition of Counsel by Jerome Norton (Ostrove, Rick) (Entered: 08/07/2014) |
| 08/13/2014 | 45 | MOTION for Reconsideration re 43 Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,, by Jerome Norton. (Attachments: # 1 Memorandum in Support, # 2 Declaration, # 3 Exhibit) (Arbeit, Bryan) (Entered: 08/13/2014) |
| 08/15/2014 | 46 | Letter MOTION for Extension of Time to File Answer re 4 Amended Complaint by Valerie Biscardi, Justin Folber, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven. (DeJong, Jeltje) (Entered: 08/15/2014) |
| 08/18/2014 | 47 | ORDER Re: 46 Motion for an extension of time to 9/5/14 for the Town of Brookhaven and its employees to answer plaintiff's second amended complaint. Request granted. Valerie Biscardi, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, and Town of Brookhaven answer due 9/5/2014. So Ordered by Judge Arthur D. Spatt on 8/18/14. Movant to serve parties by fax. (Coleman, Laurie) (Entered: 08/20/2014) |
| 08/27/2014 | 48 | RESPONSE in Opposition re 45 MOTION for Reconsideration re 43 Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,, filed by Valerie Biscardi, Justin Folber, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven. (Attachments: # 1 Affidavit of service) (DeJong, Jeltje) (Entered: 08/27/2014) |

| 08/28/2014 | 49 | Letter MOTION for Extension of Time to File Response/Reply *until 9/5/14* by County of Suffolk. (Mitchell, Brian) (Entered: 08/28/2014) |
| 08/28/2014 | 50 | ORDER Re: County defendants 49 Motion for an extension of time to respond to the plaintiff's motion to reconsider until 9/5/14. Plaintiff's time to reply to the County defendants response will be extended until 9/12/14. Request granted. So Ordered by Judge Arthur D. Spatt on 8/28/14. (Coleman, Laurie) (Entered: 08/29/2014) |
| 09/05/2014 | 51 | MEMORANDUM in Opposition *to plaintiff's motion to reconsider* filed by County of Suffolk. (Mitchell, Brian) (Entered: 09/05/2014) |
| 09/12/2014 | 52 | REPLY in Support re 45 MOTION for Reconsideration re 43 Order on Motion to Dismiss for Failure to State a Claim,,,,,,,, filed by Jerome Norton. (Arbeit, Bryan) (Entered: 09/12/2014) |
| 09/15/2014 | 53 | ANSWER to 16 Amended Complaint *(second)* by Daniel Belano, Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven. (DeJong, Jeltje) (Entered: 09/15/2014) |
| 09/17/2014 | 54 | ORDER: An initial conference is scheduled on 10/21/2014. See order and attachment. Ordered by Magistrate Judge Gary R. Brown on 9/17/2014. (Attachments: # 1 GRB Individual Rules) (Posillico, Lauren) (Entered: 09/17/2014) |
| 09/18/2014 | 55 | DECISION & ORDER granting 45 Motion for Reconsideration - For the foregoing reasons, the Court grants the Plaintiffs motion pursuant to Local Civil Rule 6.3 and/or Fed. R. Civ. P. 54(b) for reconsideration reinstating the Plaintiffs First Amendment retaliation claim, the New York State malicious prosecution claims against the Town of Brookhaven and the Individual Defendants, and the declaratory judgment claim against the County. So Ordered by Judge Arthur D. Spatt on 9/18/14. (Coleman, Laurie) (Entered: 09/22/2014) |
| 09/30/2014 | 56 | NOTICE of Appearance by Kelly E Wright on behalf of Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (aty to be noticed) (Wright, Kelly) (Entered: 09/30/2014) |
| 09/30/2014 | 57 | NOTICE of Appearance by David H. Arntsen on behalf of Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (aty to be noticed) (Arntsen, David) (Entered: 09/30/2014) |
| 10/10/2014 | 58 | Letter MOTION for Extension of Time to File Answer by County of Suffolk. (Mitchell, Brian) (Entered: 10/10/2014) |
| 10/10/2014 | 59 | ORDER Re: 58 Motion for a thirty day extension of time for the County to file their Answer to the Amended Complaint. Request granted. So Ordered by Judge Arthur D. Spatt on 10/10/14. C/F. Movant to serve parties by fax. (Coleman, Laurie) (Entered: 10/15/2014) |
| 10/21/2014 | 60 | Minute Entry for proceedings held before Magistrate Judge Gary R. Brown:Initial Conference Hearing held on 10/21/2014. Scheduling order entered. (Posillico, Lauren) (Entered: 10/21/2014) |
| 10/21/2014 | 61 | SCHEDULING ORDER: Discovery deadlines have been set. See order for details. Status conference scheduled on 3/24/2015. Ordered by Magistrate Judge Gary R. Brown on 10/21/2014. (Posillico, Lauren) (Entered: 10/21/2014) |
| 11/07/2014 | 62 | ANSWER to 16 Amended Complaint *Second Amended Complaint* by County of Suffolk. (Mitchell, Brian) (Entered: 11/07/2014) |
| 12/31/2014 | | NOTICE - Please be advised that Judge Spatt's Individual Rules Effective January 1, 2015 have been uploaded to the Eastern District of New York website. Please note the changes to previous rules, including those regarding courtesy copies under Rule I(A). (Coleman, Laurie) (Entered: 12/31/2014) |
| 03/24/2015 | 63 | Minute Entry for proceedings held before Magistrate Judge Gary R. Brown:Status Conference held on 3/24/2015. Status conference held. The Town and County have 30 days to respond to plaintiffs settlement proposal. A Status Conference is set for 5/14/15 at 11:00 a.m. (McMorrow, Karen) (Entered: 03/24/2015) |
| 04/15/2015 | 64 | NOTICE of Appearance by Anne C. Leahey on behalf of Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (aty to be noticed) (Leahey, Anne) (Entered: 04/15/2015) |
| 05/12/2015 | 65 | MOTION to Adjourn Conference on *May 14, 2015* by Jerome Norton. (Arbeit, Bryan) (Entered: 05/12/2015) |
| 05/13/2015 | | ELECTRONIC ORDER granting 65 Motion to Adjourn Conference. The parties' application to adjourn the status conference in order to continue settlement discussions is granted. The conference scheduled for May 14, 2015 is adjourned to June 9, 2014 at11:30 a.m. Ordered by Magistrate Judge Gary R. Brown on 5/13/2015. c/ecf (Johnston, Linda) (Entered: 05/13/2015) |
| 06/03/2015 | 66 | Letter Motion *regarding conference* by Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (Leahey, Anne) Modified on 6/4/2015 (McMorrow, Karen). (Entered: 06/03/2015) |
| 06/04/2015 | | ORDER granting 66 Motion to Adjourn Conference. The 6/9 status conference is adjourned to 7/17/2015 at 11:30 a.m.. Ordered by Magistrate Judge Gary R. Brown on 6/4/2015. (McMorrow, Karen) (Entered: 06/04/2015) |
| 07/14/2015 | 67 | Letter *regarding conference* by Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (Leahey, Anne) (Entered: 07/14/2015) |

9/13/22, 1:00 PM                          Eastern District of New York - LIVE Database 1.7 (Revision 1.7.1)

| | | |
|---|---|---|
| 07/15/2015 | | ELECTRONIC ORDER re 67 Letter filed by Valerie Biscardi, William Powell, Town of Brookhaven, Jennifer Lutzer, Robert Quinlan, Justin Folber, David J. Moran. The status conference scheduled for July 17, 2015 is adjourned to 8/3/2015 at 11:30 a.m Ordered by Magistrate Judge Gary R. Brown on 7/15/2015. c/ecf (Johnston, Linda) (Entered: 07/15/2015) |
| 08/03/2015 | | Minute Entry for proceedings held before Magistrate Judge Gary R. Brown:Status Conference held on 8/3/2015. Rick Ostrove for plaintiff, Anne Leahey and Brian Mitchell for defendants. Settlement negotiations still in progress. A status report is due the end of September. ( Settlement Conference set for 10/2/2015 02:00 PM in Courtroom 840 before Magistrate Judge Gary R. Brown.) (McMorrow, Karen) (Entered: 08/04/2015) |
| 08/14/2015 | | SCHEDULING ORDER: On consent, settlement conference scheduled for October 2, 2015 is hereby ADJOURNED to October 6, 2015 at 10:00am. Parties are directed to follow the undersigned's individual rules on settlement conferences. Ordered by Magistrate Judge Gary R. Brown on 8/14/2015. (Yim, Kevin) (Entered: 08/14/2015) |
| 09/11/2015 | 68 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 8/3/2015, before Magistrate Judge Gary R. Brown. Transcriber Tracy Gribben Transcription LLC, Telephone number 732-263-0044. Email address: Tracy@tgribbentranscription.com. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/2/2015. Redacted Transcript Deadline set for 10/12/2015. Release of Transcript Restriction set for 12/10/2015. (Cox, Dwayne) (Entered: 09/11/2015) |
| 10/05/2015 | | ELECTRONIC ORDER. On consent, the settlement conference scheduled for October 6, 2015 is hereby ADJOURNED without date. By October 12, 2015, the parties are directed to meet and confer and submit a letter to the Court regarding proposed dates for a settlement conference. Ordered by Magistrate Judge Gary R. Brown on 10/5/2015. (Yim, Kevin) (Entered: 10/05/2015) |
| 10/12/2015 | 69 | Letter re settlement conference adjourned date by Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (Leahey, Anne) (Entered: 10/12/2015) |
| 10/13/2015 | | SCHEDULING ORDER: re 69 Letter filed by Valerie Biscardi, William Powell, Town of Brookhaven, Jennifer Lutzer, Robert Quinlan, Justin Folber, David J. Moran Settlement Conference set for 12/2/2015 02:00 PM in Courtroom 840 before Magistrate Judge Gary R. Brown.. Ordered by Magistrate Judge Gary R. Brown on 10/13/2015. (McMorrow, Karen) (Entered: 10/13/2015) |
| 12/02/2015 | | Minute Entry for proceedings held before Magistrate Judge Gary R. Brown:Settlement Conference held on 12/2/2015. Rick Ostrove, Anne Leahy and Brian Mitchell present with clients. Case not settled at this time. The parties will submit a letter to reschedule the continued settlement conference. (McMorrow, Karen) (Entered: 12/03/2015) |
| 12/03/2015 | | SCHEDULING ORDER: On consent, a Settlement Conference is hereby scheduled for 1/13/2016 at 10:30 AM before Magistrate Judge Gary R. Brown. The parties are directed to follow the undersigned's individual rules on settlement conferences. Ordered by Magistrate Judge Gary R. Brown on 12/3/2015. (Yim, Kevin) (Entered: 12/03/2015) |
| 01/13/2016 | | Minute Entry for proceedings held before Magistrate Judge Gary R. Brown:Settlement Conference held on 1/13/2016. Rick Ostrove and Anne Leahy present with clients. Settlement conference continued to 3/16/16 at 2:00 p.m. (McMorrow, Karen) (Entered: 01/14/2016) |
| 01/19/2016 | 70 | NOTICE of Appearance by Jonathan Christopher Messina on behalf of All Plaintiffs (aty to be noticed) (Messina, Jonathan) (Entered: 01/19/2016) |
| 03/14/2016 | | SCHEDULING ORDER: Because of a conflict on the Court's calendar, the settlement conference scheduled for March 16, 2016 is hereby ADJOURNED to April 26, 2016 at 02:00 PM in Courtroom 840 before Magistrate Judge Gary R. Brown. The parties are directed to follow the undersigned's individual rules on settlement conferences. Ordered by Magistrate Judge Gary R. Brown on 3/14/2016. (Yim, Kevin) (Entered: 03/14/2016) |
| 04/26/2016 | | Minute Entry for proceedings held before Magistrate Judge Gary R. Brown:Settlement Conference held on 4/26/2016. Rick Ostrove and Anne Leahy present with clients. Case not settled at this time. (McMorrow, Karen) (Entered: 05/03/2016) |
| 06/09/2016 | 71 | Letter confirming settlement conference on June 23, 2016 by Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (Leahey, Anne) (Entered: 06/09/2016) |
| 06/10/2016 | | SCHEDULING ORDER: A Settlement Conference set for June 23, 2016 at 10:30 AM in Courtroom 840 before Magistrate Judge Gary R. Brown The parties shall follow the undersigned's individual rules on settlement conferences. Ordered by Magistrate Judge Gary R. Brown on 6/10/2016. (Yim, Kevin) (Entered: 06/10/2016) |
| 06/23/2016 | | Minute Entry for proceedings held before Magistrate Judge Gary R. Brown:Settlement Conference held on 6/23/2016. Rick Ostrove for plaintiff; Anne Leahey for defendants. Clients present. Case not settled. Parties will continue discussions. A joint status report is due within 30 days. (McMorrow, Karen) (Entered: 06/24/2016) |
| 07/20/2016 | 72 | Letter regarding settlement negotiations by Jerome Norton (Ostrove, Rick) (Entered: 07/20/2016) |
| 07/21/2016 | | STATUS REPORT ORDER re 72 Letter filed by Jerome Norton. A joint status report is due by 8/22/2016. Ordered by Magistrate Judge Gary R. Brown on 7/21/2016. c/ecf (Johnston, Linda) (Entered: 07/21/2016) |

| 07/29/2016 | 73 | NOTICE of Appearance by Theodore D. Sklar on behalf of Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (aty to be noticed) (Sklar, Theodore) (Entered: 07/29/2016) |
|---|---|---|
| 08/22/2016 | 74 | STATUS REPORT *Letter to Judge Brown* by Jerome Norton (Ostrove, Rick) (Entered: 08/22/2016) |
| 08/23/2016 | | SCHEDULING ORDER: Based on the parties' representations, a Settlement Conference is hereby scheduled September 23, 2016 at 2:00 PM in Courtroom 840 before Magistrate Judge Gary R. Brown. Clients or other persons with full settlement authority must be present at this conference. Prior to the conference, each party shall fax a brief, 1-2 page ex parte settlement position statement to chambers at (631) 712-5705. These statements must specify the terms on which the party is willing to settle the case, whether those terms are negotiable, and an explanation of that position. As these statements will be treated as confidential and will not be docketed, they should include a realistic statement of the party's settlement position. Ordered by Magistrate Judge Gary R. Brown on 8/23/2016. (Yim, Kevin) (Entered: 08/23/2016) |
| 09/13/2016 | 75 | Letter *to adjourn conference* by Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (Leahey, Anne) (Entered: 09/13/2016) |
| 09/14/2016 | | SCHEDULING ORDER: re 75 Letter filed by Valerie Biscardi, William Powell, Town of Brookhaven, Jennifer Lutzer, Robert Quinlan, Justin Folber, David J. Moran. The Settlement Conference scheduled for September 23, 2016 is adjourned to October 25, 2016at 2:00 PM in Courtroom 840 before Magistrate Judge Gary R. Brown. The parties are reminded that clients or other persons with full settlement authority must be present at this conference. Prior to the conference, each party shall fax a brief, 1-2 page ex parte settlement position statement to chambers at (631) 712-5705. These statements must specify the terms on which the party is willing to settle the case, whether those terms are negotiable, and an explanation of that position. As these statements will be treated as confidential and will not be docketed, they should include a realistic statement of the party's settlement position. Ordered by Magistrate Judge Gary R. Brown on 9/14/2016. c/ecf (Johnston, Linda) (Entered: 09/14/2016) |
| 10/25/2016 | | Minute Entry for proceedings held before Magistrate Judge Gary R. Brown:Settlement Conference held on 10/25/2016. Counsel for all sides present. Status conference set for 1/4/2017 at 10:00 a.m. (McMorrow, Karen) (Entered: 10/26/2016) |
| 12/27/2016 | 76 | Letter MOTION to Adjourn Conference by Jerome Norton. (Ostrove, Rick) (Entered: 12/27/2016) |
| 12/28/2016 | | ELECTRONIC ORDER granting 76 Motion to Adjourn Conference. The status conference scheduled for January 4, 2016 is hereby adjourned until January 23, 2017 at 2:30PM in Courtroom 840. Ordered by Magistrate Judge Gary R. Brown on 12/28/2016. c/ecf (Meehan, James) (Entered: 12/28/2016) |
| 01/16/2017 | 77 | Letter MOTION to Adjourn Conference *of January 23, 2017* by Jerome Norton. (Ostrove, Rick) (Entered: 01/16/2017) |
| 01/17/2017 | | ELECTRONIC ORDER granting 77 Motion to Adjourn Conference. Application granted. The status conference scheduled for January 23, 2017 is hereby adjourned. On or before January 20, 2017, the parties shall provide in writing three alternative dates and times on which the undersigned may conduct the adjourned status conference. In addition, in their request for adjournment the parties indicate they "continue to engage in settlement negotiations." Should the parties wish to convert the status conference into a settlement conference, they may so inform the undersigned in their letter motion providing alternative dates for the conference. Ordered by Magistrate Judge Gary R. Brown on 1/17/2017. c/ecf (Meehan, James) (Entered: 01/17/2017) |
| 01/20/2017 | 78 | Letter MOTION to Adjourn Conference by Jerome Norton. (Messina, Jonathan) (Entered: 01/20/2017) |
| 01/23/2017 | | ELECTRONIC ORDER granting 78 Motion to Adjourn Conference. A settlement conference has been scheduled for March 27, 2017 at 2:00 p.m. to be held in Courtroom 840 of the Long Island Courthouse. Clients or other persons with full settlement authority must be present at the conference. No less than two business days before the settlement conference, each party must submit a one to two page, ex parte statement of its settlement position. The statements may be faxed to (631) 712-5705 or mailed, and must specify the terms on which the party is willing to settle the case, whether those terms are negotiable, and an explanation of that position. As these statements will be treated as confidential and will not be docketed, they should include a realistic statement of the party's settlement position. Ordered by Magistrate Judge Gary R. Brown on 1/23/2017. c/ecf (Johnston, Linda) (Entered: 01/23/2017) |
| 03/21/2017 | 79 | Letter MOTION to Adjourn Conference *Settlement Conference* by Jerome Norton. (Messina, Jonathan) (Entered: 03/21/2017) |
| 03/22/2017 | | ELECTRONIC ORDER granting 79 Motion to Adjourn Conference. Application granted. The parties shall submit three alternate dates from which to reschedule the settlement conference. Ordered by Magistrate Judge Gary R. Brown on 3/22/2017. c/ecf (Johnston, Linda) (Entered: 03/22/2017) |
| 03/28/2017 | 80 | Letter MOTION to Adjourn Conference by Jerome Norton. (Messina, Jonathan) (Entered: 03/28/2017) |
| 03/29/2017 | | ORDER granting 80 Motion to Adjourn Conference; ( Settlement Conference set for 5/24/2017 02:30 PM in Courtroom 840 before Magistrate Judge Gary R. Brown.). Ordered by Magistrate Judge Gary R. Brown on 3/29/2017. (McMorrow, Karen) (Entered: 03/29/2017) |
| 05/18/2017 | 81 | Letter MOTION *request adjourning settlement conference* by Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. |

9/13/22, 1:00 PM                                Eastern District of New York - LIVE Database 1.7 (Revision 1.7.1)

| | | |
|---|---|---|
| | | Moran, William Powell, Robert Quinlan, Town of Brookhaven (Leahey, Anne) Modified on 5/18/2017 (McMorrow, Karen). (Entered: 05/18/2017) |
| 05/19/2017 | | ELECTRONIC ORDER granting 81 Motion to Adjourn Conference. Application granted. The settlement conference scheduled for May 24, 2017 is adjourned to July 24, 2017 at 2:00 p.m.. Ordered by Magistrate Judge Gary R. Brown on 5/19/2017. c/ecf (Johnston, Linda) (Entered: 05/19/2017) |
| 05/24/2017 | 82 | Letter motion *requesting adjournment/continuance of conference* by Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (Leahey, Anne) Modified on 5/25/2017 to correct event type to motion to continue. (Coleman, Laurie). (Entered: 05/24/2017) |
| 05/25/2017 | | ELECTRONIC ORDER granting 82 Motion to Continue. Application granted. The settlement conference scheduled for July 24, 2017 is adjourned to August 3, 2017 at 2:00 p.m. Ordered by Magistrate Judge Gary R. Brown on 5/25/2017. c/ecf (Johnston, Linda) (Entered: 05/25/2017) |
| 07/31/2017 | 83 | Letter MOTION to Adjourn Conference *on consent of both parties* by Jerome Norton. (Messina, Jonathan) (Entered: 07/31/2017) |
| 08/01/2017 | | ELECTRONIC ORDER granting 83 Motion to Adjourn Conference. The settlement conference scheduled for August 3, 2017 is adjourned to September 8, 2017 at 2:00 p.m. Ordered by Magistrate Judge Gary R. Brown on 8/1/2017. c/ecf (Johnston, Linda) (Entered: 08/01/2017) |
| 09/06/2017 | 84 | Letter *requesting adjournment of conference* by Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (Leahey, Anne) (Entered: 09/06/2017) |
| 09/07/2017 | | SCHEDULING ORDER: re 84 Letter filed by Valerie Biscardi, William Powell, Town of Brookhaven, Jennifer Lutzer, Robert Quinlan, Justin Folber, David J. Moran. The settlement conference scheduled for September 8, 2017 is adjourned to October 16, 17 at 2:00 p.m. Ordered by Magistrate Judge Gary R. Brown on 9/7/2017. c/ecf (Johnston, Linda) (Entered: 09/07/2017) |
| 10/12/2017 | 85 | STATUS REPORT *regarding filing of third amended complaint* by County of Suffolk (Mitchell, Brian) (Entered: 10/12/2017) |
| 10/16/2017 | | Minute Entry for proceedings held before Magistrate Judge Gary R. Brown: Settlement Conference held on 10/16/2017. Rick Ostrove for plaintiff; Anne Leahey for Town defendants, Brian Mitchell for County defendants. Amended complaint will be filed on consent of all parties. The County defendants will have 45 days from the date of filing to move to dismiss or otherwise respond to the amended complaint. A status conference is set for 1/11/2018 at 2:00 p.m..(FTR Log #2:11-2:35.) (McMorrow, Karen) (Entered: 10/16/2017) |
| 10/17/2017 | 86 | Letter *to Judge Brown and Judge Spatt* by Jerome Norton (Attachments: # 1 Exhibit Settlement, # 2 Exhibit Third Amended Complaint) (Messina, Jonathan) (Entered: 10/17/2017) |
| 10/17/2017 | 87 | AMENDED COMPLAINT *Third Amended Complaint* against All Defendants, filed by Jerome Norton. (Messina, Jonathan) (Entered: 10/17/2017) |
| 10/18/2017 | 88 | PARTIAL ORDER re 86 -1 Letter filed by Jerome Norton directed to the Department of State. Counsel for the Town Defendants are to serve a copy of this order on the Department of State and file proof of service on ECF. Ordered by Magistrate Judge Gary R. Brown on 10/18/2017. (McMorrow, Karen) (Entered: 10/18/2017) |
| 10/18/2017 | 89 | ORDER re 86 Stipulation of Partial Settlement. SEE ATTACHED ORDER for details. So Ordered by Judge Arthur D. Spatt on 10/18/2017. (Coleman, Laurie) (Entered: 10/23/2017) |
| 11/20/2017 | 90 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 10/16/2017, before Magistrate Judge Gary R. Brown. Transcriber Tracy Gribben Transcription, LLC, Telephone number 732-263-0044. Email address: tracy@tgribbentranscription.com. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/11/2017. Redacted Transcript Deadline set for 12/21/2017. Release of Transcript Restriction set for 2/19/2018. (Cox, Dwayne) (Main Document 90 replaced on 11/20/2017) (Cox, Dwayne). (Entered: 11/20/2017) |
| 11/29/2017 | 91 | Letter MOTION for Extension of Time to File Answer *or move per FRCP 12b6* by County of Suffolk. (Mitchell, Brian) (Entered: 11/29/2017) |
| 11/30/2017 | | Electronic ORDER granting 91 Motion for Extension of Time to Answer re 87 Amended Complaint by County of Suffolk. The County of Suffolk is instructed to move, answer or otherwise respond to the amended complaint by 3/1/2018. Ordered by Judge Arthur D. Spatt on 11/30/2017. (Roberts, Joshua) (Entered: 11/30/2017) |
| 12/18/2017 | 92 | Letter by Jerome Norton (Messina, Jonathan) (Entered: 12/18/2017) |
| 12/29/2017 | 93 | Letter *re compliance with stipulation in response to Plaintiff's 12/18/17 letter* by Town of Brookhaven (Leahey, Anne) (Entered: 12/29/2017) |
| 01/05/2018 | 94 | Letter by Jerome Norton (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit 1st attachment to Exhibit 1, # 3 Exhibit 2nd attachment to Exhibit 1) (Messina, Jonathan) (Entered: 01/05/2018) |

| 01/05/2018 | 95 | MOTION to Adjourn Conference *scheduled for January 11, 2018* by Town of Brookhaven. (Leahey, Anne) (Entered: 01/05/2018) |
| 01/08/2018 | | ELECTRNIC ORDER granting 95 Motion to Adjourn Conference. The status conference scheduled for January 11, 2018 is adjourned to January 25, 2018 at 2:00 p.m. Ordered by Magistrate Judge Gary R. Brown on 1/8/2018. c/ecf (Johnston, Linda) (Entered: 01/08/2018) |
| 01/25/2018 | | Minute Entry for proceedings held before Magistrate Judge Gary R. Brown:Discovery Hearing held on 1/25/2018. Jonathan Messina for plaintiff; Anne Leahey for Town defendants, Brian Mitchell for County defendant. Conference held. A status letter is due within 1 week detailing what was discussed and agreed upon. Status Conference set for 3/30/2018 at 02:00 PM in Courtroom 840 before Magistrate Judge Gary R. Brown. (FTR Log #2:13-2:36; 3:07-3:17.) (McMorrow, Karen) (Entered: 01/26/2018) |
| 01/30/2018 | 96 | Letter *re: adjournment to file the status letter to February 9, 2018* by Jerome Norton (Messina, Jonathan) (Entered: 01/30/2018) |
| 01/31/2018 | | ELECTRONIC ORDER re 96 Letter filed by Jerome Norton. Application granted, on consent. Ordered by Magistrate Judge Gary R. Brown on 1/31/2018. c/ecf (Johnston, Linda) (Entered: 01/31/2018) |
| 02/06/2018 | 97 | Letter *re adjournment to file status letter to February 20, 2018* by Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (Leahey, Anne) (Entered: 02/06/2018) |
| 02/07/2018 | | ELECTRONIC ORDER re 97 Letter filed by Valerie Biscardi, William Powell, Town of Brookhaven, Jennifer Lutzer, Robert Quinlan, Justin Folber, David J. Moran. Application granted, on consent. Ordered by Magistrate Judge Gary R. Brown on 2/7/2018. C/ECF (Johnston, Linda) (Entered: 02/07/2018) |
| 02/20/2018 | 98 | STATUS REPORT *Letter to the Honorable Gary R. Brown* by Jerome Norton (Attachments: # 1 Exhibit Exhibits 1-4 re: letter dated February 20, 2018) (Messina, Jonathan) (Entered: 02/20/2018) |
| 02/23/2018 | | SCHEDULING ORDER: re 98 Status Report filed by Jerome Norton. Inasmuch as the parties intend to request an adjournment of the March 30, 2018 conference, the parties are directed to meet and confer and provide three alternate dates for the next Court Conference by March 2, 2018. Ordered by Magistrate Judge Gary R. Brown on 2/23/2018. c/ecf (Johnston, Linda) (Entered: 02/23/2018) |
| 03/01/2018 | 99 | Letter MOTION for Extension of Time to File Answer *to Third Amended Complaint* by County of Suffolk. (Mitchell, Brian) (Entered: 03/01/2018) |
| 03/02/2018 | | Electronic ORDER granting 99 Motion for Extension of Time to Answer. The County of Suffolk is directed to answer or otherwise respond to the third amended complaint on or before 4/2/2018. Ordered by Judge Arthur D. Spatt on 3/2/2018. (Roberts, Joshua) (Entered: 03/02/2018) |
| 03/02/2018 | 100 | Letter MOTION to Adjourn Conference by Town of Brookhaven. (Leahey, Anne) (Entered: 03/02/2018) |
| 03/05/2018 | | ELECTRONIC ORDER RE 100 Motion to Adjourn Conference. Status Conference set for 5/1/2018 10:00 AM before Magistrate Judge Gary R. Brown. The undersigned will discuss settlement at that time. Ordered by Magistrate Judge Gary R. Brown on 3/5/2018. C/ECF (Johnston, Linda) (Entered: 03/05/2018) |
| 03/08/2018 | 101 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on January 25, 2018, before Magistrate Judge Gary R. Brown. Transcriber TypeWrite Word Processing Service, Telephone number 518-581-8973. Email address: transcripts@typewp.com. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/29/2018. Redacted Transcript Deadline set for 4/9/2018. Release of Transcript Restriction set for 6/6/2018. (Kanellopoulos, John) (Entered: 03/08/2018) |
| 04/02/2018 | 102 | ANSWER to 87 Amended Complaint *Third* by County of Suffolk. (Mitchell, Brian) (Entered: 04/02/2018) |
| 04/05/2018 | 103 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on October 21, 2014, before Magistrate Judge Gary R. Brown. Transcriber TypeWrite Word Processing Service, Telephone number 518-581-8973. Email address: transcripts@typewp.com. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/26/2018. Redacted Transcript Deadline set for 5/7/2018. Release of Transcript Restriction set for 7/4/2018. (Kanellopoulos, John) (Entered: 04/05/2018) |
| 04/05/2018 | 104 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on December 2, 2015, before Magistrate Judge Gary R. Brown. Transcriber TypeWrite Word Processing Service, Telephone number 518-581-8973. Email address: transcripts@typewp.com. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/26/2018. Redacted Transcript Deadline set for 5/7/2018. Release of Transcript Restriction set for 7/4/2018. (Kanellopoulos, John) (Entered: 04/05/2018) |
| 05/01/2018 | | Minute Entry for proceedings held before Magistrate Judge Gary R. Brown: Settlement Conference held on 5/1/2018. APPEARANCES: Jonathan Messina for plaintiff; Anne C. Leahey for defendants. Brian Mitchell for Suffolk defendants. Case stayed for all purposes until 6/19/18. Status conference set for 6/19/2018 at 2:00 p.m. (McMorrow, Karen) (Entered: 05/01/2018) |

| 05/29/2018 | 105 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on May 1, 2018, before Magistrate Judge Gary R. Brown. Transcriber AA Express Transcripts, Telephone number 888-456-9716. Email address: AAExpress@Court-Transcripts.net. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/19/2018. Redacted Transcript Deadline set for 6/29/2018. Release of Transcript Restriction set for 8/27/2018. (Kanellopoulos, John) (Entered: 05/29/2018) |
| 06/19/2018 | | Minute Entry for proceedings held before Magistrate Judge Gary R. Brown:Settlement Conference held on 6/19/2018. APPEARANCES: Jonathan Messina for plaintiff; Anne Leahey present with Town representatives; Brian Mitchell for County defendants. Settlement discussions ongoing. Plaintiff will submit a status report on the amended code by the end of September. (McMorrow, Karen) (Entered: 06/20/2018) |
| 07/23/2018 | 106 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on June 19, 2018, before Magistrate Judge Gary R. Brown. Transcriber Tracy Gribben Transcription, LLC, Telephone number 732-263-0044. Email address: tgribben@comcast.net. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2018. Redacted Transcript Deadline set for 8/23/2018. Release of Transcript Restriction set for 10/22/2018. (Kanellopoulos, John) (Entered: 07/23/2018) |
| 08/13/2018 | 107 | Letter MOTION for Extension of Time to File *Status Report* by County of Suffolk. (Mitchell, Brian) (Entered: 08/13/2018) |
| 08/15/2018 | | ORDER granting 107 Motion for Extension of Time to File. Status Report due by 9/14/2018. Ordered by Magistrate Judge Gary R. Brown on 8/15/2018. (McMorrow, Karen) (Entered: 08/15/2018) |
| 09/17/2018 | 108 | STATUS REPORT *JOINT* by Jerome Norton (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Messina, Jonathan) Modified on 9/24/2018 (McMorrow, Karen). Added MOTION for Discovery on 9/24/2018 (McMorrow, Karen). (Entered: 09/17/2018) |
| 09/24/2018 | | ELECTRONIC ORDER denying 108 Motion for Hearing; granting 108 Motion for Discovery. The parties are directed to meet and confer and submit a proposed discovery plan to the undersigned. Ordered by Magistrate Judge Gary R. Brown on 9/24/2018. c/ecf (Johnston, Linda) (Entered: 09/24/2018) |
| 10/01/2018 | 109 | STATUS REPORT by Jerome Norton (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit) (Messina, Jonathan) (Entered: 10/01/2018) |
| 10/09/2018 | | STATUS REPORT ORDER re 109 Status Report filed by Jerome Norton. The parties are directed to submit a further status report regarding the amended Town of Brookhaven code by November 13, 2018. In addition, the parties' application for a joint status conference is granted. The Court is unable, however, to accommodate the parties' requested dates to schedule the conference due to prior matters scheduled for those dates. Accordingly, the parties are directed to confer and provide in writing three alternative dates in which the Court may conduct the conference as well as submit a proposed discovery plan.Ordered by Magistrate Judge Gary R. Brown on 10/9/2018. c/ecf (Johnston, Linda) (Entered: 10/09/2018) |
| 11/05/2018 | 110 | Letter MOTION to Continue */adjourn submission of discovery schedule and request for a status conference* by Jerome Norton. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18) (Messina, Jonathan) (Entered: 11/05/2018) |
| 11/06/2018 | 111 | Letter *to J. Brown re conference* by Daniel Belano, Valerie Biscardi, County of Suffolk, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (Leahey, Anne) (Entered: 11/06/2018) |
| 11/13/2018 | 112 | Letter MOTION to Vacate *Plaintiff's Portion of the October 9, 2018 Minute Order Requiring Joint Status Report* by Jerome Norton. (Attachments: # 1 Exhibit A, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5) (Messina, Jonathan) (Entered: 11/13/2018) |
| 11/13/2018 | 113 | Letter *to USMCJ Brown re Stipulation* by Daniel Belano, Valerie Biscardi, County of Suffolk, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (Leahey, Anne) (Entered: 11/13/2018) |
| 11/15/2018 | | ELECTRONIC ORDER denying 110 Motion to Continue; denying 112 Motion to Vacate. The plaintiff's applications are denied. It is clear from the applications and responses, that the parties have not made a meaningful effort to meet and confer prior to filing the within applications. Local Rule 37.3 and the undersigned's individual rules require the attorneys for the parties to confer in good faith in person or by telephone in an effort to resolve and/or narrow these issues prior to seeking judicial intervention, including scheduling matters. Such a meet and confer requires actual human contact as well as a clear indication of the movant's intended application to the court should the meet and confer fail to resolve such issues. Moreover, counsel are reminded of their obligation of professional cooperation and courtesy and are directed to review Local Civil Rule 26.4 "Cooperation Among Counsel in Discovery. The parties are directed to meet and confer and submit a further status report regarding the amended Town of Brookhaven Code as well as a joint proposed discovery plan by December 17, 2018. Finally the parties are directed to confer and provide in writing three alternative dates beginning December 18, 2018 in which the Court may conduct the status conference during normal business hours. Ordered by Magistrate Judge Gary R. Brown on 11/15/2018. c/ecf (Johnston, Linda) (Entered: 11/15/2018) |

9/13/22, 1:00 PM                    Eastern District of New York - LIVE Database 1.7 (Revision 1.7.1)

| 11/20/2018 | 114 | Letter *re: set status conference dates* by Jerome Norton (Messina, Jonathan) Modified on 11/21/2018 (McMorrow, Karen). (Entered: 11/20/2018) |
| 11/21/2018 | | ELECTRONIC ORDER granting 114 Motion. Status Conference set for 1/4/2019 10:30 AM before Magistrate Judge Gary R. Brown.Ordered by Magistrate Judge Gary R. Brown on 11/21/2018. c/ecf (Johnston, Linda) (Entered: 11/21/2018) |
| 11/27/2018 | 115 | Letter *to Judge Brown re joint report* by Daniel Belano, Valerie Biscardi, County of Suffolk, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (Leahey, Anne) (Entered: 11/27/2018) |
| 11/28/2018 | | ELECTRONIC ORDER re 115 Letter filed by County of Suffolk, Robert Quinlan, Justin Folber, Town of Brookhaven, William Powell, Valerie Biscardi, Jennifer Lutzer, David J. Moran, Daniel Belano. Application granted. Ordered by Magistrate Judge Gary R. Brown on 11/28/2018. c/ecf (Johnston, Linda) (Entered: 11/28/2018) |
| 12/21/2018 | 116 | Letter *Jointly filed re: meet and confer and discovery* by Jerome Norton (Messina, Jonathan) (Entered: 12/21/2018) |
| 01/02/2019 | 117 | Letter *re: Status Report* by Jerome Norton (Attachments: # 1 Exhibit Ex. 1, # 2 Exhibit Ex. 2, # 3 Exhibit Ex. 3, # 4 Exhibit Ex. 4) (Messina, Jonathan) (Entered: 01/02/2019) |
| 01/04/2019 | 118 | Minute Entry for proceedings held before Magistrate Judge Gary R. Brown:Status Conference held on 1/4/2019. (FTR Log #10:54-11:52.) (McMorrow, Karen) (Entered: 01/07/2019) |
| 02/06/2019 | 119 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on January 4, 2019, before Magistrate Judge Gary R. Brown. Transcriber Fiore Reporting and Transcription Service, Inc., Telephone number (203) 929-9992. Email address: cmfiore@sbcglobal.net. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/27/2019. Redacted Transcript Deadline set for 3/11/2019. Release of Transcript Restriction set for 5/7/2019. (Kanellopoulos, John) (Entered: 02/06/2019) |
| 02/28/2019 | 120 | Letter *Requesting Conference* by Jerome Norton (Ostrove, Rick) Modified on 3/1/2019 (McMorrow, Karen). (Entered: 02/28/2019) |
| 03/01/2019 | 121 | MOTION for Judgment on the Pleadings *for order denying request for declaratory relief* by County of Suffolk. (Attachments: # 1 Declaration, # 2 Memorandum in Support, # 3 Exhibit A, # 4 Exhibit B) (Mitchell, Brian) (Entered: 03/01/2019) |
| 03/05/2019 | 122 | NOTICE of Appearance by Andrew G. Costello on behalf of Jerome Norton (aty to be noticed) (Costello, Andrew) (Entered: 03/05/2019) |
| 03/14/2019 | 123 | MOTION for Judgment on the Pleadings *CORRECTED Memorandum of Law in Support of Motion for Judgment on the pleadings Docket Entry 121* by County of Suffolk. (Mitchell, Brian) (Entered: 03/14/2019) |
| 03/15/2019 | | ELECTRONIC ORDER granting 120 :Plaintiff's application for a discovery conference is granted. The Court is unable, however, to accommodate the requested dates due to prior matters scheduled for those dates. Accordingly, the parties are directed to meet and confer and provide in writing three alternative dates, beginning mid April, in which the Court may schedule a conference. In addition, the parties are directed to meet and confer regarding any outstanding discovery issues prior to the submission of the proposed dates to determine whether they can narrow and/or resolve the disputed issues without judicial intervention. The parties shall provide in their letter application for a conference, if needed, a joint status report regarding what is any discovery issues remain. Ordered by Magistrate Judge Gary R. Brown on 3/15/2019. c/ecf (Johnston, Linda) (Entered: 03/15/2019) |
| 04/23/2019 | 124 | Consent MOTION for Extension of Time to File Response/Reply by Jerome Norton. (Costello, Andrew) (Entered: 04/23/2019) |
| 04/24/2019 | | ELECTRONIC ORDER granting 124 Motion for Extension of Time to File Response/Reply re 123 MOTION for Judgment on the Pleadings *CORRECTED Memorandum of Law in Support of Motion for Judgment on the pleadings Docket Entry 121*. Responses due by 5/14/2019. Replies due by 5/29/2019.Ordered by Judge Arthur D. Spatt on 4/24/2019. (Roberts, Joshua) (Entered: 04/24/2019) |
| 05/14/2019 | 125 | MEMORANDUM in Opposition *to County's 12(c) Motion to Dismiss* filed by Jerome Norton. (Attachments: # 1 Amicus Brief of NY AG, # 2 Albany County DA Complaint, # 3 Transcript of January 4, 2019 Conference) (Costello, Andrew) (Entered: 05/14/2019) |
| 05/29/2019 | 126 | REPLY in Support re 121 MOTION for Judgment on the Pleadings *for order denying request for declaratory relief* filed by County of Suffolk. (Attachments: # 1 Exhibit C email from Jonathan Messina Esq.) (Mitchell, Brian) (Entered: 05/29/2019) |
| 08/02/2019 | 127 | Letter *to Judge Spatt re: Recent Development in Soares matter* by Jerome Norton (Attachments: # 1 Exhibit Motion for Summary Judgment filed by DAASNY) (Costello, Andrew) (Entered: 08/02/2019) |
| 08/02/2019 | 128 | REPLY in Opposition *to letter submitted on August 2, 2019 by plaintiff (DE 127)* filed by County of Suffolk. (Mitchell, Brian) (Entered: 08/02/2019) |
| 11/27/2019 | 129 | STATUS REPORT *re: Remaining Discovery Issues and Request for Conference* by Jerome Norton (Costello, Andrew) |

| | | |
|---|---|---|
| | | (Entered: 11/27/2019) |
| 12/02/2019 | | SCHEDULING ORDER: re 129 Status Report filed by Jerome Norton. A status conference has been scheduled for January 10, 2020 at 10:30 a.m. before the undersigned in Courtroom 840 of the Central Islip Courthouse at which time the Court will address outstanding discovery issues and the status of the case. The parties are directed to meet and confer prior to the conference in an effort to narrow and/or resolve the disputed issues in DE 129 without Court intervention. The parties shall submit a joint status report regarding what, if any, discovery issues remain, and, if needed, a proposed revised joint discovery schedule by January 6, 2020. Ordered by Magistrate Judge Gary R. Brown on 12/2/2019. c/ecf (Johnston, Linda) (Entered: 12/02/2019) |
| 01/06/2020 | 130 | Joint MOTION for Extension of Time to File *Status Report* by Jerome Norton. (Costello, Andrew) (Entered: 01/06/2020) |
| 01/07/2020 | | ELECTRONIC ORDER granting 130 Motion for Extension of Time to File. Application granted. Ordered by Judge Gary R. Brown on 1/7/2020. c/ecf (Johnston, Linda) (Entered: 01/07/2020) |
| 01/07/2020 | | ELECTRONIC ORDER re 130 Joint MOTION for Extension of Time to File *Status Report* filed by Jerome Norton, 129 Status Report filed by Jerome Norton. The conference scheduled for 1/10/20 is adjourned without date. Ordered by Judge Gary R. Brown on 1/7/2020. c/ecf (Johnston, Linda) (Entered: 01/07/2020) |
| 01/09/2020 | 131 | NOTICE of Appearance by Scott J. Kreppein on behalf of Valerie Biscardi, Justin Folber, Jennifer Lutzer, David J. Moran, William Powell, Robert Quinlan, Town of Brookhaven (aty to be noticed) (Kreppein, Scott) (Entered: 01/09/2020) |
| 01/21/2020 | | Case Reassigned to Magistrate Judge Anne Y. Shields. Magistrate Judge Gary R. Brown no longer assigned to the case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Toritto, Jim) (Entered: 01/21/2020) |
| 01/21/2020 | 132 | MEMORANDUM OF DECISION & ORDER: For the foregoing reasons, the Court grants the 121 Rule 12(c) motion for judgment on the pleadings by the Defendant Suffolk County. The Third Amended Complaint is dismissed as to the Defendant Suffolk County. County of Suffolk terminated. SEE ATTACHED DECISION for details. It is SO ORDERED by Judge Arthur D. Spatt on 1/22/2020. (Coleman, Laurie) (Entered: 01/22/2020) |
| 01/23/2020 | | STATUS REPORT ORDER: Counsel for the parties shall file a joint status report on February 6, 2020, as previously directed by Judge Brown. Status Report due by 2/6/2020. So Ordered by Magistrate Judge Anne Y. Shields on 1/23/2020. (Minerva, Deanna) (Entered: 01/23/2020) |
| 02/04/2020 | 133 | Consent MOTION for Extension of Time to File *Status Report* by Jerome Norton. (Costello, Andrew) (Entered: 02/04/2020) |
| 02/05/2020 | | ORDER granting 133 Motion for Extension of Time to File: Counsel for the parties shall file their joint status report on or before February 13, 2020. So Ordered by Magistrate Judge Anne Y. Shields on 2/5/2020. (Minerva, Deanna) (Entered: 02/05/2020) |
| 02/13/2020 | 134 | Consent MOTION for Extension of Time to File *joint status report until 2.27.20, with interim status report,* by Town of Brookhaven. (Kreppein, Scott) (Entered: 02/13/2020) |
| 02/14/2020 | | ORDER granting 134 Motion for Extension of Time to File: Counsel for the parties shall submit a joint status letter, as well as a proposed discovery plan for Tier II Discovery, by February 27, 2020. So Ordered by Magistrate Judge Anne Y. Shields on 2/14/2020. (Minerva, Deanna) (Entered: 02/14/2020) |
| 02/27/2020 | 135 | Letter *re: Proposed Tier II Discovery Plan* by Jerome Norton (Costello, Andrew) (Entered: 02/27/2020) |
| 02/28/2020 | 136 | Letter *with joint status report* by Town of Brookhaven (Kreppein, Scott) (Entered: 02/28/2020) |
| 03/02/2020 | | SCHEDULING ORDER re 136 Letter filed by Town of Brookhaven: An in-person status conference will be held on March 10, 2020 at 10:30 a.m. in Courtroom 830, Alfonse M. D'Amato U.S. Courthouse, Central Islip, New York. All counsel shall appear. So Ordered by Magistrate Judge Anne Y. Shields on 3/2/2020. (Minerva, Deanna) (Entered: 03/02/2020) |
| 03/05/2020 | 137 | Consent MOTION to Adjourn Conference by Jerome Norton. (Costello, Andrew) (Entered: 03/05/2020) |
| 03/05/2020 | | ORDER granting 137 Motion to Adjourn Conference: The status conference scheduled for March 10, 2020 is adjourned to March 16, 2020 at 11:00 a.m. All counsel shall appear in person for the conference. So Ordered by Magistrate Judge Anne Y. Shields on 3/5/2020. (Minerva, Deanna) (Entered: 03/05/2020) |
| 03/14/2020 | | SCHEDULING ORDER: The in-person status conference scheduled for March 16, 2020 at 11:00 a.m. is converted to a telephone conference. Counsel for both parties are directed to call into ATT audio-conferencing. The toll free number is 877-810-9415. Please use the access code 9005911. SoOrdered by Magistrate Judge Anne Y. Shields on 3/14/2020. (Minerva, Deanna) (Entered: 03/14/2020) |
| 03/16/2020 | 138 | Minute Order for proceedings held before Magistrate Judge Anne Y. Shields:Status Conference held on 3/16/2020. See Minute Order for details. So Ordered by Magistrate Judge Anne Y. Shields. (FTR Log #11:08-11:45.) (Torres, Jasmine) (Entered: 03/18/2020) |

| 03/20/2020 | 139 | STATUS REPORT , *jointly by all parties, with proposed briefing schedule* by Town of Brookhaven (Kreppein, Scott) (Entered: 03/20/2020) |
|---|---|---|
| 03/21/2020 |  | SCHEDULING ORDER re 139 Status Report filed by Town of Brookhaven: The briefing schedule for Plaintiff's motion to compel will be as follows: (1) Plaintiff shall serve, but not file, his motion on May 7, 2020; and (2) Defendant shall serve, and each party shall electronically file their own motion papers, on June 8, 2020. No reply will be permitted. No motion papers shall be filed on ECF prior to June 8, 2020. As the moving party, Plaintiff is responsible for providing chambers with a courtesy copy of the entire fully-briefed motion, including Defendant's opposition, once the motion is electronically filed. So Ordered by Magistrate Judge Anne Y. Shields on 3/21/2020. (Minerva, Deanna) (Entered: 03/21/2020) |
| 04/15/2020 | 140 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on March 16, 2020, before Magistrate Judge Anne Y. Shields. Transcriber Tracy Gribben Transcription, LLC, Telephone number 732-263-0044. Email address: Tracy@tgribbentranscription.com. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/6/2020. Redacted Transcript Deadline set for 5/18/2020. Release of Transcript Restriction set for 7/14/2020. (Rodin, Deanna) (Entered: 04/15/2020) |
| 04/28/2020 | 141 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on March 24, 2015, before Magistrate Judge Gary R. Brown. Transcriber AA Express Transcripts, Telephone number 888-456-9716. Email address: aaexpress@court-transcripts.net. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/19/2020. Redacted Transcript Deadline set for 5/29/2020. Release of Transcript Restriction set for 7/27/2020. (Rodin, Deanna) (Entered: 04/28/2020) |
| 05/01/2020 | 142 | Consent MOTION for Extension of Time to File *Motion to Compel* by Jerome Norton. (Costello, Andrew) (Entered: 05/01/2020) |
| 05/04/2020 |  | ORDER granting 142 Motion for Extension of Time to File: Plaintiff shall serve, but not file, his motion on May 21, 2020. Defendant shall serve, and each party shall electronically file their own motion papers, on June 22, 2020. No reply will be permitted. No motion papers shall be filed on ECF prior to June 22, 2020. As the moving party, Plaintiff is responsible for providing chambers with a courtesy copy of the entire fully-briefed motion, including Defendant's opposition, once the motion is electronically filed. So Ordered by Magistrate Judge Anne Y. Shields on 5/4/2020. (Minerva, Deanna) (Entered: 05/04/2020) |
| 05/17/2020 | 143 | Joint MOTION for Extension of Time to File *Discovery Motion* by Jerome Norton. (Costello, Andrew) (Entered: 05/17/2020) |
| 05/18/2020 |  | ORDER granting 143 Motion for Extension of Time to File: Plaintiff shall serve, but not file, his motion on August 21, 2020. Defendant shall serve, and each party shall electronically file their own motion papers, on September 21, 2020. No reply will be permitted. No motion papers shall be filed on ECF prior to September 21, 2020. As the moving party, Plaintiff is responsible for providing chambers with a courtesy copy of the entire fully-briefed motion, including Defendant's opposition, once the motion is electronically filed. So Ordered by Magistrate Judge Anne Y. Shields on 5/18/2020. (Minerva, Deanna) (Entered: 05/18/2020) |
| 06/30/2020 |  | Case Reassigned to Judge Joan M. Azrack. Judge Arthur D. Spatt no longer assigned to the case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (McMahon, Carol) (Entered: 06/30/2020) |
| 08/14/2020 | 144 | Consent MOTION for Extension of Time to File *Motion to Compel Discovery* by Jerome Norton. (Costello, Andrew) (Entered: 08/14/2020) |
| 08/17/2020 |  | ORDER granting 144 Motion for Extension of Time to File: Plaintiff shall serve, but not file, his motion on September 21, 2020. Defendant shall serve its opposition, and each party shall electronically file their own motion papers, on October 21, 2020. No reply will be permitted. No motion papers shall be filed on ECF prior to October 21, 2020. As the moving party, Plaintiff is responsible for providing chambers with a courtesy copy of the entire fully-briefed motion, including Defendant's opposition, once the motion is electronically filed. So Ordered by Magistrate Judge Anne Y. Shields on 8/17/2020. (Minerva, Deanna) (Entered: 08/17/2020) |
| 09/15/2020 | 145 | Joint MOTION for Extension of Time to File *and for Setting of Conference* by Jerome Norton. (Costello, Andrew) (Entered: 09/15/2020) |
| 09/16/2020 |  | ORDER granting 145 Motion for Extension of Time to File: At the parties' request, the briefing schedule previously set with respect to Plaintiff's motion to compel is suspended. A telephone status conference will be held on November 17, 2020 at 10:30 a.m. All counsel shall call the AT&T Teleconference Center at (877) 810-9415 at the time of the conference and enter Access Code 9005911 when prompted. So Ordered by Magistrate Judge Anne Y. Shields on 9/16/2020. (Minerva, Deanna) (Entered: 09/16/2020) |
| 11/17/2020 |  | SCHEDULING ORDER: As stated on the record during the conference held today, Plaintiff shall review the documents previously provided by Defendants and determine whether the production is sufficient and, if not, why it is insufficient. Plaintiff shall serve any new document requests on Defendants by February 19, 2021. Defendants shall |

| | | |
|---|---|---|
| | | respond to those document requests by April 19, 2021. Counsel for the parties shall then confer and create a schedule for depositions.<br><br>With respect to Defendants' motion to dismiss the declaratory judgment action, the following briefing schedule is set: (1) Defendants shall serve, but not file, their motion on February 19, 2021; (2) Plaintiff shall serve, but not file, his opposition on March 19, 2021; and (3) Defendants shall serve their reply, and each party shall electronically file their own motion papers, on April 2, 2021. No motion papers shall be filed on ECF prior to April 2, 2021. While the motion to dismiss shall be made to the assigned District Judge, the parties are advised that they can consent to magistrate jurisdiction solely for purposes of the motion to dismiss. So Ordered by Magistrate Judge Anne Y. Shields on 11/17/2020. (Minerva, Deanna) (Entered: 11/17/2020) |
| 11/17/2020 | 146 | Minute Entry for proceedings held before Magistrate Judge Anne Y. Shields:Status Conference held on 11/17/2020 (FTR Log #10:30-11:17.) (Torres, Jasmine) (Entered: 11/20/2020) |
| 12/21/2020 | 147 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on November 17, 2020, before Magistrate Judge Anne Y. Shields. Transcriber Writer's Cramp, Inc., Telephone number 609-588-8043. Email address: wtrscramp@verizon.net. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/11/2021. Redacted Transcript Deadline set for 1/21/2021. Release of Transcript Restriction set for 3/22/2021. (Rodin, Deanna) (Entered: 12/21/2020) |
| 03/16/2021 | 148 | MOTION for Hearing by Jerome Norton. (Attachments: # 1 Exhibit Transcript of 11-17-20 Conference, # 2 Exhibit Motion Papers) (Costello, Andrew) (Entered: 03/16/2021) |
| 03/17/2021 | 149 | RESPONSE to Motion re 148 MOTION for Hearing *objecting to Plaintiff's request to suspend the briefing schedule but consenting to 30 days or such other reasonable extension as the Court deems appropriate,* filed by Town of Brookhaven. (Attachments: # 1 Rule 56.1 Statement) (Kreppein, Scott) (Entered: 03/17/2021) |
| 03/17/2021 | 150 | REPLY to Response to Motion re 148 MOTION for Hearing filed by Jerome Norton. (Costello, Andrew) (Entered: 03/17/2021) |
| 03/18/2021 | | ORDER denying 148 Motion for Hearing. Plaintiff is directed to respond to the motion as filed and may raise his arguments in the opposition. The Court grants the request for an extension. Plaintiff shall serve, but not file, his opposition on April 19, 2021; and Defendants shall serve their reply, and each party shall electronically file their own motion papers, on May 3, 2021. No motion papers shall be filed on ECF prior to May 3, 2021. Ordered by Judge Joan M. Azrack on 3/18/2021. (Walsh, Catherine) (Entered: 03/18/2021) |
| 03/19/2021 | 151 | Consent MOTION for Extension of Time to File Response/Reply by Jerome Norton. (Costello, Andrew) (Entered: 03/19/2021) |
| 03/23/2021 | | ORDER granting 151 Motion for Extension of Time to File Response/Reply. Plaintiff's opposition shall be served by 5/19/2021 and Defendant's reply shall be served by 6/2/2021. Ordered by Judge Joan M. Azrack on 3/23/2021. (Walsh, Catherine) (Entered: 03/23/2021) |
| 06/02/2021 | 152 | MEMORANDUM in Opposition *to Defendants' Rule 12(c) and Rule 56 Motion* filed by Jerome Norton. (Attachments: # 1 Rule 56.1 Statement Plaintiff's Counterstatement of Material Facts, # 2 Declaration in Support of Plaintiff's Opposition, # 3 Exhibit 1 - Local Law Amendments to Ch. 82, # 4 Exhibit 2 - SEQRA Resolution, Ch. 82, # 5 Exhibit 3 - Town Law 82-13, # 6 Exhibit 4 - Town Law 85-12) (Costello, Andrew) (Entered: 06/02/2021) |
| 06/02/2021 | 153 | MOTION to Dismiss for Lack of Jurisdiction *, failure to state a claim, and based upon undisputed facts* by Town of Brookhaven. (Attachments: # 1 Rule 56.1 Statement, # 2 Declaration, # 3 Memorandum in Support, # 4 Exhibit A - Correspondence from Suffolk County Planning Commission, # 5 Exhibit B - 2017 Stipulation of Settlement, # 6 Exhibit C - Third Amended Complaint, # 7 Exhibit D - Correspondence from Department of State) (Kreppein, Scott) (Entered: 06/02/2021) |
| 06/02/2021 | 154 | REPLY in Support *of motion to dismiss and for summary judgment* filed by Town of Brookhaven. (Kreppein, Scott) (Entered: 06/02/2021) |
| 10/22/2021 | | ORDER REFERRING MOTION: The pending MOTION to Dismiss for Lack of Jurisdiction 153 is respectfully referred to Magistrate Judge Shields for a Report and Recommendation.<br><br>In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that, if all parties consent, a United States magistrate judge of this court is available to: (1) conduct all proceedings in this civil action (including a jury or nonjury trial) and/or order the entry of a final judgment; or (2) conduct all proceedings and enter a final order on a particular motion. The applicable consent forms should be signed and filed electronically only if all parties wish to consent and it is signed by all parties. These applicable consent forms may be accessed at the following links:<br>http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf AND<br>http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085A.pdf.<br>You may withhold your consent without adverse substantive consequences. DO NOT return or file a consent form unless all parties have signed the consent.Ordered by Judge Joan M. Azrack on 10/22/2021. Motions referred to Anne Y. Shields. (Walsh, Catherine) (Entered: 10/22/2021) |

| | | |
|---|---|---|
| 10/25/2021 | | SCHEDULING ORDER re 153 MOTION to Dismiss for Lack of Jurisdiction , *failure to state a claim, and based upon undisputed facts* filed by Town of Brookhaven: In light of the referral of the pending motion to dismiss, counsel are directed to provide courtesy copies of all motion documents to this Court on or before November 8, 2021. In accord with Rule 1(E) of this Court's Individual Rules, counsel are reminded that all copies must be marked "courtesy copy" "original filed ECF" and that courtesy copies of exhibits and appendices must be clearly labeled and tabbed. Voluminous documents should be submitted in clearly tabbed binders and should not be "velobound." So Ordered by Magistrate Judge Anne Y. Shields on 10/25/2021. (Minerva, Deanna) (Entered: 10/25/2021) |
| 12/07/2021 | | SCHEDULING ORDER: By Order dated October 25, 2021, this Court directed all counsel to provide courtesy copies of all motion documents with respect to Defendants' motion to dismiss and for summary judgment to this Court on or before November 8, 2021. To date, the Court has only received a courtesy copy of Plaintiff's opposition papers. Defendants' counsel is directed to provide the Court with a courtesy copy of its moving papers and reply papers by overnight mail. So Ordered by Magistrate Judge Anne Y. Shields on 12/7/2021. (Minerva, Deanna) (Entered: 12/07/2021) |
| 01/21/2022 | 155 | Fully Briefed MOTION to Compel , *with Plaintiff's Letter Motion and Defendant's Opposition*, by Town of Brookhaven. (Attachments: # 1 Exhibit 1 - 2.19.21 demand, # 2 Exhibit 2 - 3.11.21 response, # 3 Exhibit 3 - 8.21.21 letter from P to D, # 4 Exhibit 4 - 10.20.21 letter from P to D, # 5 Exhibit 5 - 5.26.20 letter from P to DOS, # 6 Memorandum in Opposition Defendant's Opposition, # 7 Exhibit A - Response to Demand and related correspondence) (Kreppein, Scott) (Entered: 01/21/2022) |
| 01/27/2022 | 156 | REPORT AND RECOMMENDATIONS re 153 MOTION to Dismiss for Lack of Jurisdiction , *failure to state a claim, and based upon undisputed facts* filed by Town of Brookhaven: For the reasons contained in the attached Report and Recommendation, this Court respectfully recommends that Defendant's motion to dismiss be denied with respect to the argument that the Court lacks subject matter jurisdiction over the action, but granted overall as one of the remaining claims asserted is deemed abandoned and the other is time-barred. Accordingly, the only claims remaining in the Third Amended Complaint should be dismissed, without leave to replead. Objections to R&R due by 2/10/2022. So Ordered by Magistrate Judge Anne Y. Shields on 1/27/2022. (Minerva, Deanna) (Entered: 01/27/2022) |
| 01/27/2022 | | ORDER finding as moot 155 Motion to Compel: In light of this Court's recommendation to the District Court that Defendant's motion to dismiss be granted and that all remaining claims be dismissed, without leave to replead, Plaintiff's motion to compel is moot. So Ordered by Magistrate Judge Anne Y. Shields on 1/27/2022. (Minerva, Deanna) (Entered: 01/27/2022) |
| 02/03/2022 | 157 | Consent MOTION for Extension of Time to File *Objections* by Jerome Norton. (Costello, Andrew) (Entered: 02/03/2022) |
| 02/03/2022 | | ORDER granting 157 Motion for Extension of Time to File. Ordered by Judge Joan M. Azrack on 2/3/2022. (Walsh, Catherine) (Entered: 02/03/2022) |
| 02/24/2022 | 158 | OBJECTION to 156 Report and Recommendations filed by All Plaintiffs. (Costello, Andrew) (Entered: 02/24/2022) |
| 03/10/2022 | 159 | MEMORANDUM in Opposition re 158 Objection to Report and Recommendations, 156 REPORT AND RECOMMENDATIONS re 153 MOTION to Dismiss for Lack of Jurisdiction , *failure to state a claim, and based upon undisputed facts* filed by Town of Brookhaven filed by Town of Brookhaven. (Kreppein, Scott) (Entered: 03/10/2022) |
| 03/31/2022 | 160 | ORDER ADOPTING REPORT AND RECOMMENDATIONS for 153 Motion to Dismiss/Lack of Jurisdiction, filed by Town of Brookhaven, 156 . The Court adopts Judge Shields's R&R in its entirety as the opinion of this Court. Accordingly, the Court grants Defendant's motion for judgment on the pleadings. The Clerk of the Court is directed to close this case. Ordered by Judge Joan M. Azrack on 3/31/2022. (Walsh, Catherine). (Entered: 03/31/2022) |
| 04/04/2022 | 161 | CLERK'S JUDGMENT: ORDERED AND ADJUDGED that Plaintiff Jerome Norton take nothing of Defendants Town of Brookhaven, County of Suffolk, Robert Quinlan, David J. Moran, Jennifer Lutzer, Justin Folber, William Powell, and Valerie Biscardi; that Defendants' motions for judgment on the pleadings are granted; and that this case is closed. Ordered by Clerk of Court on 4/4/2022. (Toritto, Jim) (Entered: 04/04/2022) |
| 05/04/2022 | 162 | NOTICE OF APPEAL as to 160 Order Adopting Report and Recommendations,, Order on Motion to Dismiss/Lack of Jurisdiction,, Order on Report and Recommendations, 161 Clerk's Judgment, by Jerome Norton. Filing fee $ 505, receipt number ANYEDC-15533066. Appeal Record due by 5/4/2022. (Ostrove, Rick) (Entered: 05/04/2022) |
| 05/04/2022 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 162 Notice of Appeal; Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (Landow, Concetta) (Entered: 05/04/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/13/2022 12:58:50 | | |
| **PACER** | andrewgcostello | **Client Code:** |

**A19**

9/13/22, 1:00 PM                                     Eastern District of New York - LIVE Database 1.7 (Revision 1.7.1)

| Login: | | | |
|---|---|---|---|
| **Description:** | Docket Report | **Search Criteria:** | 2:13-cv-03520-JMA-AYS |
| **Billable Pages:** | 25 | **Cost:** | 2.50 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JEROME NORTON,

        Plaintiff,

    -against-

TOWN OF BROOKHAVEN, COUNTY OF
SUFFOLK, ROBERT QUINLAN, DAVID J.
MORAN, JENNIFER LUTZER, JUSTIN
FOLBER, WILLIAM POWELL, and
VALERIE BISCARDI, all individually and in
their official capacity,

        Defendants.
------------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
13-CV-3520 (ADS) (GRB)

<u>APPEARANCES:</u>

**Leeds Brown Law, P.C.**
*Attorneys for the Plaintiff*
One Old Country Road, Ste. 347
Carle Place, New York 11514
        By:    Rick Ostrove, Esq., Of Counsel

**Devitt Spellman Barrett LLP**
*Attorneys for Defendants Town of Brookhaven, Robert Quinlan, David J. Moran,*
*Jennifer Lutzer, Justin Folber, William Powell, and Valerie Biscardi*
50 Route 111
Smithtown, New York 11787
        By:    Jeltje deJong, Esq.
                Joshua S. Shteierman, Esq., Of Counsel

**The Suffolk County Attorney's Office**
*Attorneys for the Defendant County of Suffolk*
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788
        By:    Brian C. Mitchell, Assistant County Attorney, Of Counsel

**SPATT, District Judge.**

On June 20, 2013, the Plaintiff Jerome Norton (the "Plaintiff") commenced this action against the Defendants the Town of Brookhaven (the "Town" or "Brookhaven"), Robert Quinlan ("Quinlan"), David J. Moran ("Moran"), Jennifer Lutzer ("Lutzer"), Daniel Belano ("Belano"), Jason Folber ("Folber"), William Powell ("Powell"), Valerie Biscardi ("Biscardi," and collectively the "Brookhaven Defendants") and the County of Suffolk (the "County") pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, the United States Constitution, the New York State Constitution, New York State statutory law, and the common law.

In the Original Complaint, the Plaintiff brought thirteen causes of action. Thereafter, on October 9, 2013, the Plaintiff filed an Amended Complaint, and on January 14, 2014, the Plaintiff filed a Second Amended Complaint.

In the Second Amended Complaint, the Plaintiff omitted Belano as a defendant and brought the following fourteen causes of action: (1) a First Amendment intimate association claim under § 1983; (2) a retaliation claim for a First Amendment speech/right to petition claim under § 1983; (3) a malicious prosecution claim under New York State Law; (4) a *respondeat superior* liability claim for the malicious prosecution claim under New York State Law; (5) a substantive due process claim under § 1983; (6) an equal protection claim under § 1983; (7) a procedural due process claim under § 1983; (8) a Fourth Amendment claim under § 1983; (9) a Civil Rights claim under the New York Civil Rights Law § 8; (10) a claim against the Town under Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658, 694–95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) for violating the Plaintiff's Fourth Amendment rights under § 1983; (11) a Monell

liability claim for violating the Plaintiff's First Amendment rights, and also based on

substantive due process, equal protection, and procedural due process; (12) a claim for

declaratory judgment and injunctive relief against the Town; (13) a claim for declaratory

judgment and injunctive relief against the County; and (14) a claim for attorney's fees

under 42 U.S.C. § 1988.  The only claim against the County is the claim for declaratory

relief.

Presently before the Court are the respective motions by the Brookhaven

Defendants and the County to dismiss the Second Amended Complaint pursuant to

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) for failure to state a claim

upon which relief can be granted.  For the reasons set forth below, the Court grants in

part and denies in part the motion to dismiss by the Brookhaven Defendants and grants

the motion to dismiss by the County.

## I. BACKGROUND

A. Factual History

Unless otherwise stated, the following facts are drawn from the Second Amended

Complaint and are construed in a light most favorable to the non-moving party, the

Plaintiff.

The Plaintiff is a 50% owner of residential real property located at 66 Norfleet

Lane, Coram, New York (the "Norfleet Property").  The Norfleet Property is located

within the Town.  In 1978, the Brookhaven Town Building Department issued a

certificate of occupancy for a single-family dwelling containing three bedrooms and a

cellar on the Norfleet Property.  The Plaintiff's brothers, Howard Norton ("Howard") and

Richard Norton ("Richard") owned the remaining 50% of the Norfleet Property.

Howard has been involved in both criminal and civil litigation against the Town of Islip ("Islip").  In 2003, he commenced a "successful prosecution of a Federal action to vindicate his constitutional rights under the Fourteenth Amendment" against Islip. (Second. Amend. Compl. ¶ 240.)  On June 9, 2011, a New York State court dismissed two separate criminal actions brought against Howard by Islip, one of which was brought under Islip's rental permit law.   Folber's mother was and is the Executive Director of the Town of Islip Youth Bureau, which is part of the Brookhaven Department of Housing and Human Services ("DHHS"). (Id. at ¶ 76.)

Within two weeks of the dismissal of the criminal actions against Howard, Folber, a housing inspector with DHHS visited the Northfleet Property to inspect it for violations. The inspection was not planned and a FOIL request for Folber's files regarding the inspection did not identify any complaints against the Norfleet Property that could have resulted in an inspection.  (Id. at ¶ 77.)  The Plaintiff alleges that Folber's inspection was initiated by or at the request of Islip officials.  He further alleges that Folber's inspection was approved and condoned by Brookhaven officials, including Quinlan, who was the Town Attorney of Islip during Howard's litigations against Islip.

On June 22, 2011, Folber sent a letter order addressed to Howard, Richard and Jerome Norton (the "Owners") to Jerome's Syosset Address.  The Northfleet Property deed, which is filed in the Suffolk County Clerk's Office, listed Howard's only residence as being in Lynbrook, New York, during all relevant times and Richard's only residence as being in Topanga, California.  The letter order was on Town letterhead and at the bottom stated, "BY DIRECTION OF COMMISSIONER VALERIE BISCARDI."  (Id. at ¶ 79).  In the letter, Folber ordered the Owners to correct the following three alleged

4

violations: "(1) renting with a valid rental permit; (2) overhang on right of dwelling needs

a permit; and (3) certificate of occupancy required for side overhang."  (Id.)  The letter

claimed to be sent in accordance with the Town Code and Property Maintenance Code of

New York State.  The letter stated that the violations "must be addressed no later than

July 6, 2011" and explained,

> "Following your compliance an inspection will be conducted after the time
> listed above.  However, if it is found that the violation(s) still exist, or that
> an inspection has not been requested an <u>appearance ticket(s) will be
> issued</u>.  An extension of time may be requested only by contacting the
> undersigned.  <u>*Please note: Only non health and safety violations will be
> considered for an extension of time for compliance.*</u>" (emphasis in
> original).

The letter further stated,

> "<u>YOU ARE GIVEN NOTICE THAT FAILURE TO COMPLY WITH THIS
> ORDER CONSTITUTES AN OFFENSE PURSUANT TO THE NEW YORK
> STATE UNIFORM FIRE PREVENTION AND BUILDING CODE OR THE
> CODE OF THE TOWN OF BROOKHAVEN AND SHALL BE PUNISHABLE
> BY A FINE OR IMPRISONMENT OR BOTH</u>"  (emphasis in original).

On June 30, 2011, Howard sent a letter to Folber, DHHS Commissioner Biscardi

and then-DHHS Deputy Commissioner Roberta Owens ("Owens") responding to the

June 22, 2011 letter order.  Howard's letter addressed the legality of the alleged

violations, complained that the Town's rental permit law was illegal and unconstitutional,

and threatened suit against the Town and individuals involved in the enforcement of the

law.  He further stated that Folber's first letter order was improperly mailed to him at the

Syosset address and directed future correspondence regarding the letter order be sent to

his attorney.

Subsequently, Folber met with Moran, the Deputy Town Attorney for the Law

Department, and possibly Biscardi, to discuss the investigation of the Norfleet Property.

The Plaintiff alleges that Moran encouraged and advised Biscardi to instruct and/or direct Folber to expand the investigation by searching the Norfleet Property without seeking consent of the Owners or obtaining a warrant.  The Plaintiff further alleges that Biscardi instructed and directed Folber to follow Moran's instructions.  (Id. at ¶¶ 84–85.)

On July 11, 2011, Folber returned and entered the Northfleet Property without a warrant.  To gain access to the property, Folber falsely advised the then occupants of the property that Folber was at the Norfleet Property to do an interior and exterior inspection at the request of "Mr. Norton".  (Id. at ¶ 88.)  Folber took photographs of the inside and outside of the Norfleet Property dwelling.

The following day, Folber met with Moran to discuss the information he obtained from his search of the Norfleet Property.  After this meeting, Folber sent a second letter order dated July 12, 2011 to the Plaintiff's Syosset address.  In that letter, Folber re-ordered the correction of the three original alleged violations in the first letter order and ordered the correction of an additional sixteen alleged violations, for a total of nineteen alleged violations.  The July 12, 2011 letter order was similar in all respects to the first letter order and stated that a compliance inspection would take place after July 26, 2011. On July 13, 2011, Folber notified Moran that he sent the second letter order and said he would update Moran if he heard from Howard or his attorney.

On July 26, 2011, the Plaintiff responded to the second letter order by mailing to Folber a letter and attachments.  In his letter and attachments, the Plaintiff objected to Folber's authority to administer and enforce the Town and Uniform Code.  The Plaintiff also objected to the Town Rental Code as invalid and unconstitutional.  On August 3, 2011, the Plaintiff sent Folber a letter with a copy of an electrical inspection certificate,

which stated the Norfleet Property was in compliance with the Residential Code and
Building Code of New York.

On August 26, 2011, Folber amended and reissued the June 22, 2011 letter order
by advising that this letter was the "final notice before tickets" and requiring the owners
to schedule a compliance inspection by September 6, 2011.  (Id. at ¶ 99.)

On September 6, 2011, the Plaintiff informed Folber and Biscardi via letter that
the Plaintiff would permit an inspection by the Town Chief Building Inspector or an
authorized subordinate if the Town Chief Building Inspector found the inspection
necessary.  The following day, Folber met with Moran to discuss the Norfleet Property
investigation.  Folber discussed this meeting with Biscardi and later had a second meeting
with both Moran and Biscardi.

On an unspecified date, Folber issued fourteen appearance tickets solely to the
Plaintiff, all with a violation date and time on July 11, 2011 at 11:51 a.m. and an
appearance date of December 22, 2011 at 9:00 a.m.  The Plaintiff alleges that at the time
the tickets were issued, the Town did not authorize Folber to issue and serve appearance
tickets.  (Id. at ¶¶ 35–36.)  After issuing the appearance tickets, the Town hired a process
server, who served the appearance tickets upon the gatehouse guard of the gated
community where the Plaintiff resides.  Copies of the appearance tickets were also mailed
to the Plaintiff.  The Plaintiff alleges that the process server was not authorized by state
law or local law to serve the appearance tickets.  (Id. at ¶ 114.)

On September 19, 2011, the Plaintiff met with Deputy Commissioner Owens
regarding the Norfleet Property.  The Plaintiff offered Owens an opportunity to inspect
the property but she declined.  Owens allegedly declined because Biscardi instructed her

to "stand down" from any further involvement regarding the Plaintiff and the Norfleet Property.  Owens allegedly told the Plaintiff that Biscardi wanted the Plaintiff criminally prosecuted.  Owens further told the Plaintiff that certain Town property owners sometimes took and sent photographs of their property to Town personnel to document the conditions of their property.

The next day, the Plaintiff mailed Folber a letter with a compact-disc containing fifty-six photographs of the Norfleet Property taken on September 19 and 20, 2011. These photographs concerned the alleged violations in Folber's previous letter orders. The Plaintiff also attached a fire underwriter's certificate of compliance.  In his letter, the Plaintiff reiterated his willingness to allow the Town Building Inspector, or an authorized subordinate, to inspect the Norfleet property, if the Town Building Inspector found the inspection necessary.  Copies of the September 20, 2011 letter, attachments, and photographs were sent to Biscardi and Owens.  After receiving the letter, Folber asked Moran to meet with him and Biscardi to discuss the situation.

On December 8, 2011, the Plaintiff received a DHHS envelope containing an unsigned notice adjourning his Town Ordinance Court appearance.  Four days later, the Plaintiff sent nine notices of claim to both the Town Clerk and to Town Attorney Quinlan.  In the notices, the Plaintiff alleged wrongdoing by the Town and the Town officers in regards to nine of the fourteen Appearance Tickets that Folber issued to the Plaintiff.

On December 18, 2011, the Plaintiff's criminal counsel, Bryan Van Cott ("Van Cott"), a partner at the law firm of Twomey, Latham, Shea, Kelly, Dubin & Quartararo LLP ("Twomey Latham"), wrote Quinlan regarding the legal deficiencies concerning the

Norfleet Property and the Appearance Tickets.  Neither the Town nor Quinlan took any

corrective actions in response to Van Cott's letter.  Prior to December 22, 2011, the

Plaintiff visited the court to determine whether the Accusatory Instruments were filed for

the December 22, 2011 appearance date.  He was advised that they had not yet been filed.

On January 3 and 4, 2012, Folber signed and issued a total of fourteen accusatory

instruments (the "Accusatory Instruments") regarding the Norfleet Property solely to the

Plaintiff.  The Accusatory Instruments dated January 3, 2012 accused the Plaintiff of the

three violations appearing in the initial June 22, 2011 letter order.  The Accusatory

Instruments dated January 4, 2012 accused the Plaintiff of the violations appearing in the

July 12, 2011 letter order.

Powell, who at all relevant times was a Senior Housing Inspector for the DHHS,

was Folber's immediate supervisor.  The Plaintiff alleges that Powell supervised and

assisted Folber in the drafting and issuance of the Accusatory Instruments.  (Id. at 139.)

Six of the Accusatory Instruments charged the Plaintiff with violating the Uniform Code,

all of which, the Plaintiff contends, the Town lacked the authority to prosecute.

Furthermore, the Plaintiff alleges that Folber lied regarding the deadlines for compliance;

ignored the Plaintiff's attempts to demonstrate compliance; and instead demanded that

the Plaintiff submit to a warrantless inspection.  All the Accusatory Instruments stated

that the information contained therein was based on personal knowledge of Folber and

upon information and belief derived from a search of records contained in the Town's

Assessor's office.  However, the Plaintiff contends that the Town lacked probable cause

for the prosecutions because the Accusatory Instruments did not identify the factual

portions based on Folber's personal knowledge; no records or supporting depositions

were attached to the Accusatory Instruments; and the instruments were otherwise facially insufficient.  (Id. at ¶¶ 158–162.)

On January 11, 2012, the appearance date was adjourned to February 2, 2012. The Plaintiff did not receive direct notice of the adjournment, but rather learned of the adjournment because his attorney inquired about the matter.  On the following day, the Accusatory Instruments were filed with the State Court.

On February 2, 2012, prior to the start of the State Court proceedings, Van Cott delivered to the State Court a letter detailing the insufficiencies of the Accusatory Instruments and the ineffectiveness of any alleged service of the Appearance Tickets upon the Plaintiff.  A copy was also delivered to Jennifer Lutzer, who was an Assistant Town Attorney in the Law Department, prior to the start of the State Court proceedings. The Plaintiff was not present at the State Court proceedings.  Van Cott appeared instead, although he was not authorized to consent to any arraignment or adjournment.

When the State Court proceedings began, the judge, the Hon. James P. Flanagan ("Judge Flanagan"), acknowledged receipt of Van Cott's letter but refused to read it stating he could not grant a dismissal based on the letter "no matter how true the contents may be."  (Id. at ¶ 175.)  Moran silently acquiesced and allegedly did not inform Judge Flanagan that the State Court had an independent duty to review the Accusatory Instruments.  Judge Flanagan directed Moran to bring an arrest warrant for the next scheduled appearance and if the Plaintiff did not appear, Judge Flanagan would sign the arrest warrant for immediate execution.  Judge Flanagan further threatened that if the Town did not receive the opportunity to re-inspect the property, he would sign an order to show cause to "shut down the place."  (Id. at ¶ 178.)  Lastly, Judge Flanagan announced

10

"NAD", or "no appearance defendant", and ordered that the cases be placed on the February 9, 2012 calendar.

On February 9, 2012, Van Cott delivered to the State Court a second letter attached with the August 3, 2011 Inspection Certificate and an Inspection Certificate dated February 8, 2012.  Both certificates stated that the Norfleet Property was in compliance with the Residential Code and Building Code of New York.  The Plaintiff was not present but again Van Cott was present on the Plaintiff's behalf.  Judge Flanagan reiterated that he would not read Van Cott's letter and requested that Moran, who appeared on behalf of the People, provide the court with an arrest warrant.  Assistant Town Attorney Belano applied for two arrest warrants the same day and a hearing on the warrant applications was scheduled for February 16, 2012.

A week later, on the day of the hearing, Van Cott delivered to the State Court another letter concerning the Plaintiff and the Norfleet Property.   In the letter, Van Cott complained that the Accusatory Instruments were invalid and the Law Department did not have authority to prosecute the Accusatory Instruments.  A copy of the letter was faxed to the Law Department.  Although the Plaintiff did not appear at the hearing, the hearing was adjourned because the files were not in the courtroom.

On February 22, 2012, Quinlan telephoned John Shea ("Shea"), a partner at Twomey Latham, and requested that Twomey Latham withdraw as Plaintiff's defense counsel.  The next day, Quinlan met with Judge Flanagan about Van Cott's letters.  Shortly after the meeting, there was a hearing regarding the warrant applications.  Again, the Plaintiff did not appear at the hearing.  Judge Flanagan returned Van Cott's letters and attachments to Van Cott and restated he would not read them.  The Judge instructed Van

Cott not to send him any more letters.  On February 24, 2012, a court notice was mailed to the Plaintiff advising him to appear on March 8, 2012.  The Plaintiff alleges that the notice was "materially misleading."  (Id. at ¶ 199.)

On March 6, 2012, the Plaintiff's other counsel, Leeds Brown, sent a letter to a new judge complaining on behalf of the Plaintiff that the Accusatory Instruments were jurisdictionally defective.  A copy of the letter was sent to both Moran and to the County District Attorney.

On March 8, 2012, Lutzer made applications for two criminal summonses.  The Plaintiff alleges that within the applications, Lutzer falsely claimed that the Plaintiff was previously served with a summons on September 16, 2011 at his Syosset address.  (Id. at ¶ 202.)  Later that day, an arraignment was held on the Accusatory Instruments but the Plaintiff did not appear.  Moran appeared on behalf of the People and asked to amend the pending applications for arrest warrants to applications for criminal summonses.  Judge Flanagan stated that he mistakenly signed the arrest warrants but that the warrants were not approved.  Judge Flanagan returned the arrest warrant applications to Moran and ordered, *sua sponte*, that a notice be sent to the Plaintiff.

The proceedings were adjourned to March 22, 2012 and a letter was mailed to the Plaintiff advising him that his failure to appear on March 22, 2012 may result in the issuance of a criminal summons.  The Plaintiff alleges that this notice was neither authorized nor permitted.  (Id. at ¶ 209.)

On March 19, 2012, Leeds Brown sent letters to Moran and the District Attorney complaining that the Town lacked the authority to prosecute the Plaintiff and the Accusatory Instruments against the Plaintiff were jurisdictionally defective.  Within a few

days, the District Attorney directed Quinlan to dismiss the Accusatory Instruments that alleged violations of the Uniform Code.

On March 22, 2012, an arraignment was held.  Again, the Plaintiff did not appear and Moran appeared on behalf of the People.  The State Court Judge approved both criminal summons applications for all fourteen Accusatory Instruments.  Moran then moved to dismiss the six Uniform Code Accusatory Instruments on the basis that they were deemed insufficient.  The State Court granted Moran's motion on Criminal Procedure Law ("CPL") § 170.35 grounds "in spite of the fact that Plaintiff had never been arraigned on any of the six Uniform Code Accusatory Instruments."  (Id. at ¶ 215.) The Plaintiff alleges that a § 170.35 dismissal is permitted only after arraignment and only on motion of the defendant.  (Id.)  The State Court proceeded to set a service date for the criminal summonses for April 19, 2012.  This date was more than 90 days after the Accusatory Instruments were filed.  Although the two criminal summonses were to be served by "COMPLAINANT: INVESTIGATOR, BROOKHAVEN TOWN ATTORNEY OFFICE", a private investigation firm was hired to serve the two summonses.  The private investigator failed to successfully serve the summonses on the Plaintiff and instead served the summonses upon a person who was not the Plaintiff.  (Id. at ¶¶ 219–222.)

On April 17, 2012, Van Cott wrote to Moran advising him that the Town prosecutors failed to be ready for trial within 90 days of the issuance of the remaining Accusatory Instruments and were in violation of the Plaintiff's right to a speedy trial.

On April 19, 2012, Lutzer moved to dismiss the remaining eight Accusatory Instruments based on CPL "170.40 failure to serve a criminal summons," even though the

Plaintiff had never been arraigned.  The Plaintiff alleges that the State Court granted the motion to dismiss without providing the reasons for the dismissal on the record as required by § 170.40(2).  Furthermore, according to the Plaintiff, the failure to serve the remaining instruments would not alone be a "compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such accusatory instrument or count would constitute or result in injustice."  (Id. at ¶¶ 227–228.)

B. Procedural History

On April 11, 2012, the Plaintiff filed and served six separate notices of claims against the Town and against the County for claims arising out of the investigation and prosecution of the Uniform Code Accusatory Instruments.  On June 13, 2012, the Plaintiff filed and served fourteen notices of claims, six of which were clarifications of the Plaintiff's April 11, 2012 notices of claims, against the Town and against the County.

Thereafter, on June 20, 2013, the Plaintiff commenced this action against the named Defendants.  As stated above, the Plaintiff named as Defendants the Town, the county, and Quinlan, Moran, Lutzer, Belano, Folber, Powell, and Biscardi (the "Individual Defendants").

As previously stated, in the Second Amended Complaint, the Plaintiff asserts the following fourteen causes of action: (1) a First Amendment claim to intimate association claim under § 1983; (2) a retaliation claim for First Amendment speech/right to petition claim under § 1983; (3) a malicious prosecution claim under New York State Law; (4) a respondeat superior liability claim for malicious prosecution under New York State Law; (5) a substantive due process claim under § 1983; (6) an equal protection claim under §

1983; (7) a procedural due process claim under § 1983; (8) a Fourth Amendment claim under § 1983; (9) a Civil Rights claim under the New York Civil Rights Law § 8; (10) a claim under Monell against the Town for violating the Plaintiff's Fourth Amendment rights under § 1983; (11) a Monell claim against the Town for violating the Plaintiff's First Amendment rights, substantive due process, equal protection, and procedural due process; (12) a claim for declaratory judgment and injunctive relief against the Town; (13) a claim for declaratory judgment and injunctive relief against the County; and (14) a claim for attorney's fees under 42 U.S.C. § 1988.  The only claim against the County is the claim for declaratory relief.

On February 21, 2014, the Brookhaven Defendants moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted.  However, the Brookhaven Defendants make no argument against the Plaintiff's Section 1983 Fourth Amendment claim, and the motion to dismiss that claim is denied.  See Paulino v. Carrion, 07 CIV. 5773 (LAK)(GWG), 2008 WL 2627767, at *4 (S.D.N.Y. July 1, 2008)("The State defendant makes no argument that the federal claim under 42 U.S.C. § 1983 is frivolous . . . Accordingly, the arguments regarding the merits of this claim need not be considered.").

On March 24, 2014, the County also moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted.

In opposition to the motions to dismiss, the Plaintiff withdrew his claim under Substantive Due Process.

## II. DISCUSSION

A.  The Standard for a Rule 12(b)(6) Motion

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See e.g., Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in Ashcroft v. Iqbal, setting forth two principles for a district court to follow in deciding a motion to dismiss. 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  The Court instructed district courts first to "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id.  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

Finally, the Court notes that, in adjudicating a motion to dismiss under Rule 12(b)(6), it is entitled to consider the following: (1) facts alleged in the complaint and

16

documents attached to it or incorporated in it by reference; (2) documents integral to the

complaint and relied upon in it, even if not attached or incorporated by reference; (3)

documents or information contained in defendant's motion papers if plaintiff has

knowledge or possession of the material and relied on it in framing the complaint; (4)

public disclosure documents required by law to be, and that have been, filed with the

Securities and Exchange Commission; and (5) facts of which judicial notice may properly

be taken under Rule 201 of the Federal Rules of Evidence. See Jones v. Nickens, 961 F.

Supp. 2d 475, 483 (E.D.N.Y. 2013); David Lerner Assocs., Inc. v. Phila. Indem. Ins. Co.,

934 F. Supp. 2d 533, 539 (E.D.N.Y. 2013), aff'd, 542 F. App'x 89 (2d Cir. 2013); SC

Note Acquisitions, LLC v. Wells Fargo Bank, N.A., 934 F. Supp. 2d 516, 524 (E.D.N.Y.

2013), aff'd, 548 F. App'x 741 (2d Cir. 2014).

B.  Immunity to Suit

    As an initial matter, the Court notes that the Defendants have not sought qualified

immunity and therefore that defense is waived for purposes of this motion. Yeshiva

Chofetz Chaim Radin, Inc. v. Vill. of New Hempstead by its Bd. of Trs. of Vill. of New

Hempstead, 98 F. Supp. 2d 347, 357 (S.D.N.Y. 2000).

    With regard to absolute immunity, the Court notes that the Defendants draw no

distinction between federal and state-law claims, "nor do they recognize the distinction

between New York's common law immunity principles and the very different guidelines

that govern immunity under federal civil rights claims." Id. at 356; see Cornejo v. Bell,

592 F.3d 121, 130 (2d Cir. 2010) (noting that the "issue of immunity . . . differs as

between the state and federal law"); S. Carolina v. Baker, 485 U.S. 505, 518 n. 11, 108 S.

Ct. 1355, 99 L. Ed. 2d 592 (1988) (noting the "sources of the state and federal immunities

are, of course, different").  Thus, at this stage of the litigation, the Court declines to recognize absolute immunity against the Plaintiff's state law claims.

Turning to the Defendants' arguments in favor of immunity under federal law, "[i]t is by now well established that 'a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution' 'is immune from a civil suit for damages under § 1983.'"  Shmueli v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005) (quoting Imbler v. Pachtman, 424 U.S. 409, 410, 431, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)).  "[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.  This is because '[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.'"  Deronette v. City of New York, No. 05–CV–527 (SJ), 2007 WL 951925, at *4, 2007 U.S. Dist. LEXIS 21766, at *12 (E.D.N.Y. Mar. 27, 2007) (citing Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) and quoting Imbler, 424 U.S. at 419 n. 13, 96 S. Ct. 984 (additional citations omitted)).

"[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question", Burns v. Reed, 500 U.S. 478, 486, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991), and "[t]he ultimate question [ ] is whether the prosecutors have carried their burden of establishing that they were functioning as advocates when they engaged in the challenged conduct." Doe v. Phillips, 81 F.3d 1204, 1209 (2d Cir. 1996) (internal quotation marks omitted).

However, the Second Circuit has held that, in the context of a motion to dismiss under Rule 12(b)(6), "when it may not be gleaned from the complaint whether the

conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." Hill v. City of New York, 45 F.3d 653, 663 (2d Cir. 1995).

"In determining whether absolute immunity obtains, [the courts] apply a 'functional approach,' looking to the function being performed rather than to the office or identity of the defendant." Hill, 45 F.3d at 660 (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 269, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993)).  In applying this functional approach, the Second Circuit has held that prosecutors are entitled to absolute immunity for conduct "'intimately associated with the judicial phase of the criminal process.'" Fielding v. Tollaksen, 257 F. App'x. 400, 401 (2d Cir. 2007) (citation omitted); Hill, 45 F.3d at 661 (same).  In particular, "[s]uch Imbler immunity . . . extends to acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as advocate for the State." Smith v. Garretto, 147 F.3d 91, 94 (2d Cir. 1998)(citation and quotation marks omitted).

On the other hand, "[w]hen a district attorney functions outside his or her role as an advocate for the People, the shield of immunity is absent.  Immunity does not protect those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings." Hill, 45 F.3d at 661; see also Carbajal v. Cnty. of Nassau, 271 F. Supp. 2d 415, 421 (E.D.N.Y. 2003) ("[W]hen a prosecutor supervises, conducts, or assists in the investigation of a crime, or gives advice as to the existence of probable cause to make a warrantless arrest — that is, when he performs functions

normally associated with a police investigation — he loses his absolute protection from

liability.")(citation omitted).

The Second Circuit has noted that "[t]he line between a prosecutor's advocacy

and investigating roles might sometimes be difficult to draw." Zahrey v. Coffey, 221 F.3d

342, 347 (2d Cir. 2000).  However, the Court "may rely on certain established

distinctions between these roles." Conte v. Cnty. Of Nassau, 06-CV-4746 (JFB)(ETB),

2010 WL 3924677, at *23 (E.D.N.Y. Sept. 30, 2010).   For example, the Supreme Court

has explained that "[t]here is a difference between the advocate's role in evaluating

evidence and interviewing witnesses as he prepares for trial, on the one hand, and the

detective's role in searching for the clues and corroboration that might give him probable

cause to recommend that a suspect be arrested, on the other hand." Buckley, 509 U.S. at

273, 113 S. Ct. 2606.

In addition, the Second Circuit has identified the juncture in the criminal process

before which absolute immunity may not apply.  Specifically, "[t]he majority opinion in

[Buckley] suggests that a prosecutor's conduct prior to the establishment of probable

cause should be considered investigative:  'A prosecutor neither is, nor should consider

himself to be, an advocate before he has probable cause to have anyone arrested.'"

Zahrey, 221 F.3d at 347 n. 2 (quoting Buckley, 509 U.S. at 274, 113 S. Ct. 2606, 125 L.

Ed. 2d 209); see also Hill, 45 F.3d at 661 ("Before any formal legal proceeding has begun

and before there is probable cause to arrest, it follows that a prosecutor receives only

qualified immunity for his acts.").

Thus, in interpreting Buckley, the Second Circuit has distinguished between

"preparing for the presentation of an existing case," on the one hand, and attempting to

"furnish evidence on which a prosecution could be based," on the other hand — only the former entitles a prosecutor to absolute immunity.  Smith, 147 F.3d at 94.  Furthermore, "a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards.  Even after that determination . . . a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity." Id. at 274 n. 5, 113 S. Ct. 2606; see Zahrey, 221 F.3d at 347 n. 2 ("All members of the Court [in Buckley] recognized . . . that a prosecutor's conduct even after probable cause exists might be investigative.").

Applying the functional test to the allegations contained in the Second Amended Complaint, the Court considers federal absolute immunity with respect to each of the Individual Defendants.

As to Folber, the Brookhaven Defendants claim absolute immunity for his preparation of the accusatory instruments.  In opposition, the Plaintiff contends that Folber acted in the "clear absence of all jurisdiction" or "without any colorable claim of authority," Barr v. Abrams, 810 F.2d 358, 361 (2d Cir. 1987), and, therefore, he does not enjoy absolute immunity for this act.

However, the Court need not decide whether Folber acted in the "clear absence of all jurisdiction" because his swearing to facts in a criminal accusatory instrument is not a function for which absolute immunity is afforded.  Kalina v. Fletcher, 522 U.S. 118, 130–31, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997) (holding that the prosecutor was not entitled to absolute immunity for acting as a complaining witness).  Accordingly, Folber's actions taken as part of his preparation and execution of the accusatory instruments are not entitled to absolute immunity.

21

As to Moran and Lutzer, the Court recognizes, and the Plaintiff does not contest, their entitlement to absolute immunity for their appearances in State Court, requests to amend the applications for arrest warrants to criminal summonses, and motions to dismiss the accusatory instruments.  However, insofar as the remainder of the Plaintiff's allegations as to Moran and Lutzer concern investigatory work – including Moran's alleged encouraging of Folber to file a complaint against the Plaintiff – the Court finds that these acts do not receive absolute immunity.

As to Quinlan, the Second Amended Complaint asserts that he failed to take any corrective action in response to the Plaintiff's notices of claim or Van Cott's letter, and that Quinlan was involved in the investigation of the Plaintiff's property.  The Plaintiff maintains that because these acts occurred before probable cause existed and before any formal legal proceeding was commenced, absolute immunity cannot attach.

Relying on <u>Van de Kamp v. Goldstein</u>, 555 U.S. 335, 129 S. Ct. 855, 172 L. Ed. 2d 706 (2009), the Brookhaven Defendants argue that Quinlan is entitled to absolute immunity for this pre-prosecution conduct.  In <u>Van de Kamp</u>, the plaintiff claimed that the district attorney and his chief assistant failed to adequately train and supervise their deputies on the production of impeachment material to defendants, and failed to create an information system for their deputies handling such cases to access such information. The Supreme Court found that absolute immunity barred the claims, reasoning that the failure to supervise and train claims relied upon underlying misconduct by the deputy prosecutors at trial, who were themselves entitled to absolute immunity.

Here, by contrast, the Court finds that, aside from Quinlan's role in connection with the issuance of the Appearance Tickets, none of the pre-prosecution functions for

which Quinlan claims absolute immunity involved a supervisory role of a prosecutor's

conduct at trial.  Thus, Quinlan is not entitled to absolute immunity for these pre-

prosecution actions.

As to Quinlan's actions taken after the criminal prosecutions, the Plaintiff

contends that Quinlan is not entitled to absolute immunity for his *ex parte* conversations

with the State Court judge because it is against New York State Judicial ethical rules to

partake in *ex parte* communications concerning a pending proceeding outside the

presence of the opposing parties or their attorneys.  However, a prosecutor's wrongful act,

such as *ex parte* communications with a judge, "is certainly not something that is

properly within the role of a prosecutor," but that "is immaterial, because [the] immunity

attaches to his function, not to the manner in which he performed it." Dory v. Ryan, 25

F.3d 81, 83 (2d Cir. 1994) (internal quotation marks and citation omitted).  The absolute

character of absolute immunity is that it "protects a prosecutor from § 1983 liability for

virtually all acts, regardless of motivation, associated with his function as an advocate."

Id.

In Dory, a prosecutor who allegedly participated in a conspiracy to present false

evidence at trial was held to be absolutely immune, id., because the "professional

evaluation of the evidence . . . and appropriate preparation for its presentation at trial" are

prosecutorial acts. Buckley, 509 U.S. at 271, 113 S. Ct. 2606, 125 L. Ed. 2d 209 ; see also

Brodnicki v. City of Omaha, 75 F.3d 1261, 1267 (8th Cir. 1996) (the prosecutor who

allegedly violated the plaintiff's right to due process by examining evidence prior to trial

and discussing charges with the defense counsel was entitled to absolute immunity).

In <u>Pinaud v. County of Suffolk</u>, 52 F.3d 1139, 1148 (2d Cir. 1995), the Second Circuit granted absolute immunity to prosecutors who allegedly violated the plaintiff's rights under the Fourth, Fifth, Sixth and Eighth Amendments by: seeking improperly to increase the plaintiff's bail; making false representations to prompt a plea agreement, and then breaching that agreement; manufacturing a bail jumping charge; making misrepresentations to the Bureau of Prisons; and unnecessarily transferring the plaintiff from county to state jail. 52 F.3d at 1149.  These alleged acts, while "unethical, deviant, and violative of the plaintiffs' constitutional rights, were 'components of the initiation and presentation of a prosecution, and therefore . . . protected by absolute immunity.'" <u>Phillips</u>, 81 F.3d at 1213 (citing <u>Pinaud</u>).

"In short, absolute immunity insulates prosecutorial misconduct — however outrageous — so long as the misconduct is prosecutorial." <u>Phillips</u>, 81 F.3d at 1213.  Thus, Quinlan's *ex parte* conversation with the State Court judge is protected by absolute immunity.

Finally, as to Powell and Biscardi, the Second Amended Complaint alleges that Biscardi was a department head and chief policy-maker and that Powell acted in a supervisory capacity over Folber.

The Defendants maintain that <u>Van de Kamp</u> confers absolute immunity for Biscardi's and Powell's supervisory "approval and directions." (Defs. Mem. at 11).  However, <u>Van de Kamp</u> does not afford immunity for supervisory decisions unless they relate to conduct during the prosecution.  The record indicates that Biscardi and Powell supervised Folber during his investigations.  Such conduct is unlikely to lead to an error "in the midst of trial." <u>Van de Kamp</u>, 129 S. Ct. at 863.

Contrary to the Brookhaven Defendants' contention, Spear v. Town of West Hartford, 954 F.2d 63 (2d Cir. 1992), cert. denied, 506 U.S. 819, 113 S. Ct. 66, 121 L. Ed. 2d 33 (1992) is also distinguishable.  There, a municipal resolution authorized the Corporation Counsel to take legal action to prevent illegal protest activities in West Hartford. Id. at 65.  After an anti-abortion protest at a women's health care facility, the Corporation Counsel commenced an action, alleging Racketeer Influenced and Corruption Organizations Act, 18 U.S.C. §§ 1961 et seq. and nuisance claims to prevent future protest activities.  One defendant in the action, Spear, had written an editorial criticizing police efforts to disband the protest, giving rise to the Corporation Counsel's suit.

After the claims against Spear were dropped by the town, he commenced an action under § 1983 claiming that the lawsuit against him was based solely on his editorial in contravention of his First Amendment rights. Id.  Concluding that absolute immunity barred Spear's action, the court held that absolute immunity extends "to the initiation of civil lawsuits as well as to administrative proceedings. . . . Thus, when a high executive officer of a municipality authorizes a civil lawsuit in pursuit of that municipality's governmental interests, absolute immunity attaches." Id. at 66; see also Mendenhall v. Goldsmith, 59 F.3d 685, 691 (7th Cir. 1995) (holding that the prosecutor's conduct in filing for an injunction in civil forfeiture case was entitled to absolute immunity because the prosecutor "acted pursuant to the authority vested in him under [state] law, functioning purely in his capacity as an advocate for the state."), cert. denied, 516 U.S. 1011, 116 S. Ct. 568, 133 L. Ed. 2d 492 (1995); Schrob v. Catterson, 948 F.2d

1402, 1416 (3d Cir. 1991) (holding that the prosecutor seeking a seizure warrant in a civil

forfeiture action was entitled to absolute immunity).

      However, unlike in <u>Spear</u>, it is alleged that Biscardi and Powell lacked authority

to initiate criminal actions and that their causing the initiation of the criminal actions was

a complaining witness function. <u>Spears</u>, 954 F.2d 66 ("Were [defendant], who was not

only acting Town Manager but also Police Chief, involved in this matter as a

complaining witness rather than as an executive officer authorizing suit, he would not

receive absolute immunity.")  At this stage of the litigation, the Court declines to

recognize Biscardi and Powell's entitlement to absolute immunity.

C.  <u>The First Amendment Intimate Association Claim</u>

      The Plaintiff alleges that the Brookhaven Defendants interfered with his right to

intimate association.  In essence, the Plaintiff alleges that the Brookhaven Defendants'

retaliatory conduct in subjecting him to investigation and criminal actions as a result of

his brother Howard's litigation against Islip interfered with the Plaintiff's right to

associate with Howard.

      "The right to intimate association protects the close ties between individuals from

inappropriate interference by the power of the state." <u>Chi Iota Colony of Alpha Epsilon

Pi Fraternity v. C.U.N.Y.</u>, 502 F.3d 136, 143 (2d Cir. 2007).  To determine whether

certain familial relationships warrant protection, a court must "assess such factors as

cohabitation and the precise degree of kinship." <u>Patel v. Searles</u>, 305 F.3d 130, 136 (2d

Cir. 2002).  The sibling relationship is one recognized as warranting protection. <u>Id.</u> ("the

relationships at issue in this case — those between [plaintiff] and his father, siblings,

wife, and children — receive the greatest degree of protection because they are among

the most intimate of relationships"); <u>Berrios v. State Univ. of New York at Stony Brook</u>, 518 F. Supp. 2d 409, 418 (E.D.N.Y. 2007) ("the right of intimate association encompasses the husband/wife relationship . . . as well as the familial relationships between parents, siblings and children").

Here, the Brookhaven Defendants argue that the intimate association claim should be dismissed because there is no nexus between Howard's protected activities and the alleged retaliatory conduct, and the sibling relationship between Howard and the Plaintiff was neither targeted nor impaired.  The Court disagrees.

As to the nexus, the Second Amended Complaint alleges that (1) Quinlan was the Islip Town Attorney immediately before becoming the Brookhaven Town Attorney and (2) Folber's mother was an Executive Director in Islip in the same department that Folber worked for in Brookhaven.  Further buttressing the allegations of a nexus between Howard's protected activities and the alleged retaliatory conduct is the temporal proximity of the underlying events — that is, less than two weeks between the dismissal of Howard's criminal actions and the beginning of the alleged retaliatory conduct.  The Court also notes that the Plaintiff alleges that there were no legitimate reasons why his property was selected for investigation, particularly given that FOIL requests revealed there were no complaints about the property.

As to the supposed lack of targeting or impairment of the relationship between the Plaintiff and Howard, the "[Second] Circuit has never held that a challenged action must be directed at a protected relationship for it to infringe on the right to intimate association." <u>Patel</u>, 305 F.3d at 137.  Further, the "Defendants cite no authority supporting their argument that where a defendant's conduct was allegedly undertaken for

27

**A47**

the very purpose of harming or impairing an intimate relationship, said defendant's efforts must be alleged to have been successful in order for a plaintiff to state a claim.  In fact, the cases reviewed by the Court seem to suggest the opposite." Agostino v. Simpson, 08-CV-5760 (CS), 2008 WL 4906140 (S.D.N.Y. Nov. 17, 2008); see e.g., Adler, 185 F.3d at 45 ("If simple vindictiveness against the plaintiff on account of his wife's lawsuit was the defendants' true motive, a First Amendment violation would be established."); Sutton v. Vill. of Valley Stream, N.Y., 96 F. Supp. 2d 189, 193 (E.D.N.Y. 2000)("If . . . it is proven that 'simple vindictiveness' was defendants' true motive, the First Amendment will have been violated.").

The Brookhaven Defendants' reliance on Garten v. Hochman, No. 08 Civ. 9425(PGG), 2010 WL 2465479, at *4 (S.D.N.Y. June 16, 2010) is misplaced.  In Garten, the plaintiff alleged that the forced transfer of his two children to a different school within the school district was intended to punish him and to interfere in his relationship with his children.  However, the court found that since the complaint acknowledged that the transfer stemmed a change in residence, the plaintiff did not allege an "arbitrary or an undue intrusion" of a protected relationship. Id. at *5.  Here, unlike in Garten, the Plaintiff asserts that there was no legitimate reason supporting the allegations with respect to the protected relationship.

Taking the Plaintiff's allegation as true, as the Court must on a motion to dismiss, the Plaintiff's intimate association claim survives.  Stated otherwise, the Plaintiff has adequately pled an intimate association claim, and the Brookhaven Defendants' motion to dismiss that claim is denied.

D.  <u>The First Amendment Retaliation Claims: Speech and Petition</u>

A First Amendment retaliation claim requires that the plaintiff show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." <u>Dawes v. Walker</u>, 239 F.3d 489, 492 (2d Cir. 2001), <u>overruled on other grounds by</u> <u>Swierkiewicz v. Sorema N .A.</u>, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

The Defendants argue that since the Plaintiff was not denied access to engage in a protected activity, no First Amendment violation occurred.  However, "[t]he right of access to the courts and to petition the government includes the right to be free from retaliation for the exercise of such right." <u>Gusler v. City of Long Beach</u>, 823 F. Supp. 2d 98, 133 (E.D.N.Y. 2011), citing <u>Berrios v. State Univ. of N.Y. at Stony Brook</u>, 518 F. Supp. 2d 409, 417 (E.D.N.Y. 2007).

Here, the Court finds that the Plaintiff has plead protected speech and complaints against the Town on his part.  Further, the Brookhaven Defendants do not dispute that they took adverse actions against the Plaintiff.

As to whether there was a causal connection between the alleged protected speech and the adverse actions, the Court finds that the Plaintiff has satisfied this element for pleading purposes.  "To establish a causal connection sufficient to survive a motion to dismiss, the 'allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action.'" <u>Kempkes v. Downey</u>, No. 07-CV-1298 (KMK)(GAY), 2008 WL 852765, at *3 (S.D.N.Y. Mar. 31, 2008) (quoting <u>Davis v. Goord</u>, 320 F.3d 346, 354 (2d Cir. 2003)).  A causal connection is often shown circumstantially, through allegations that the retaliation occurred in "close temporal

proximity" to the protected activity. See id.; Morey v. Somers Cent. Sch. Dist., No. 06-CV-1877 (WCC), 2007 WL 867203, at *11 (S .D.N.Y. Mar. 21, 2007) (collecting cases).

The Plaintiff appears to assert this claim based upon the fact that the Brookhaven Defendants continued the prosecution against the Plaintiff notwithstanding his protestations. However, "although plaintiff's burden in establishing a *prima facie* case of retaliation is 'a light one'[,] it still requires that 'the protected activity precede[ ] the adverse action in order to satisfy the causation requirement." Raniola v. Bratton, 243 F.3d 610, 624 (2d Cir. 2001)(citation omitted). In this case, the Second Amended Complaint makes clear that the Brookhaven Defendants began prosecuting the Plaintiff's alleged Town Code violations prior to his alleged protected activities.

Undeterred, the Plaintiff appears to assert this claim based upon the fact that Brookhaven Defendants continued on their course notwithstanding the Plaintiff's protestations. Even if such a claim could support a First Amendment Retaliation claim, the Plaintiff has not alleged that he desired to exercise his First Amendment rights, but was chilled by the Brookhaven Defendants. "The allegation of a chill is indispensable for private plaintiffs." Ford v. Reynolds, 167 F. App'x 248, 250 (2d Cir. 2006), citing Morrison v. Johnson, 429 F.3d 48, 51 (2d Cir. 2005).

The Second Amended Complaint states that the Defendants "desired their conduct to have a chilling effect upon the Plaintiff's exercise of his First Amendment rights." (Second Am. Compl., at ¶ 260). Simply put, the Court finds that the Plaintiff has failed to plausibly set forth facts that would support the claim that the Brookhaven Defendants' actions chilled his First Amendment rights. See also Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010) (finding that the plaintiff's First Amendment retaliation claim was properly

30

dismissed when "nothing in the complaint suggests that [plaintiff's] speech was 'actually chilled' as a result of" the defendants' alleged conduct); Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) ("Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."); Ford v. Reynolds, 326 F. Supp. 2d 392, 403 (E.D.N.Y. 2004) ("Because Plaintiffs have failed to allege any actual chill or deterrence, this Court must conclude that [plaintiffs] did not suffer the harm necessary to support their retaliation claim."), aff'd,167 F. App'x. 248 (2d Cir. 2006); Rosendale v. Brusie, No. 07-CV-8149 (CS), 2009 WL 778418, at *11 (S.D.N.Y. Mar. 25, 2009) ("Because the Complaint shows that Plaintiff continued to exercise his First Amendment rights despite Defendants' alleged retaliatory conduct, Plaintiff fails to allege actual chilling of his speech."); Balaber–Strauss v. Town/Vill. of Harrison, 405 F. Supp. 2d 427, 433–34 (S.D.N.Y. 2005) (dismissing a First Amendment retaliation claim when the complaint failed to allege that the plaintiff refrained from speaking at the public Town meeting after the defendants engaged in a "smear campaign").

Indeed, the Court notes that, during and after the alleged protected activity, the Plaintiff continued to write letters to various departments within the Town and to the Criminal Court, both the trial judge and administrative judge.

For the foregoing reasons, the Plaintiff's First Amendment retaliation claim is dismissed.  Although the Plaintiff may be able to plead a "chilling effect," given that the complaint has been amended twice already, the Court declines to afford the Plaintiff an additional opportunity to re-plead this claim.

E.   The New York State Law Malicious Prosecution Claims

To prevail in an action for malicious prosecution under New York law, the Plaintiff must show: "1) the initiation of an action by the defendant against [her], 2) begun with malice, 3) without probable cause to believe it can succeed, 4) that ends in failure or, in other words, terminates in favor of the plaintiff." Engel v. CBS, Inc., 145 F.3d 499, 502 (2d Cir. 1998) (quoting O'Brien v. Alexander, 101 F.3d 1479, 1484 (2d Cir. 1996), certified question accepted, 92 N.Y.2d 867, 700 N.E.2d 310 (1998) and certified question answered, 93 N.Y.2d 195, 711 N.E.2d 626 (1999).

Here, the Brookhaven Defendants argue that the Plaintiff cannot meet the fourth element – favorable termination.  In particular, the Brookhaven Defendants contend there has not been a favorable termination because a dismissal under CPL § 170.35 does not reach the merits of the charges and thus the "question of plaintiff's guilt or innocence remains unanswered." (Brookhaven Defs. Mem. at 17).

However, "New York law does not require a malicious prosecution plaintiff to prove his innocence, or even that the termination of the criminal proceeding was indicative of innocence." Anilao v. Spota, 774 F. Supp. 2d 457, 507 (E.D.N.Y. 2011). Instead, the plaintiff's burden is to demonstrate a final termination that is not inconsistent with innocence. See e.g., Cantalino v. Danner, 96 N.Y.2d 391, 729 N.Y.S.2d 405, 754 N.E.2d 164 (2001) ("[T]he question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused.").

That said, in MacFawn v. Kresler, 88 N.Y.2d 859, 644 N.Y.S.2d 486, 666 N.E.2d 1359 (1996), the Court of Appeals of New York held that dismissal without prejudice of an information for insufficiency under CPL 170.35(1)(a) could not serve as the basis for a malicious prosecution claim.  "The principal rationale is that dismissals of these types

32

may not end the state's pursuit of the accused on the same charges, for a renewed

prosecution may be commenced in a proper court on a facially sufficient pleading . . . ."

Colon v. City of New York, 09 CV 0008 (JBW), 2012 WL 691544, at *7 (E.D.N.Y. Feb.

9, 2012), report and recommendation adopted, 09-CV-8, 2012 WL 686878 (E.D.N.Y.

Mar. 2, 2012).

   The Plaintiff acknowledges that six of the accusatory instruments were dismissed

pursuant to CPL §170.35 as they were deemed to be insufficient.  Therefore, based on

controlling precedent, this Court finds that this dismissal cannot serve as the basis for a

malicious prosecution claim under New York law.

   Similarly, "[a] dismissal in the interest of justice under CPL 170.40 is not a

'judicial determination of the accused's innocence on the merits.'" DiCecilia v. Early,

234 A.D.2d 335, 336, 651 N.Y.S.2d 94 (2d Dep't 1996); Lynch v. Suffolk Cnty. Police

Dep't, Inc., 348 F. App'x 672, 674 (2d Cir. 2009)(a "plaintiff cannot state a § 1983 claim

for malicious prosecution in connection with the misdemeanor charges because the

charges were dismissed 'in the interest of justice' under New York Criminal Procedure

Law § 170.40").   Thus, the eight accusatory instruments that were dismissed pursuant to

CPL 170.40 also cannot serve as the basis for a malicious prosecution claim under New

York law.

   In sum, as the underlying criminal charges upon which the Plaintiff bases his

malicious prosecution claims were dismissed pursuant to statutes that did not reach the

merits, the Court dismisses these claims.

   Unlike claims brought pursuant to Section 1983, under New York State law,

municipalities may be held vicariously liable for false arrest and malicious prosecution

under a theory of *respondeat superior*. Williams v. City of White Plains, 718 F. Supp. 2d
374, 381 (S.D.N.Y. 2010).  However, having determined that the Plaintiffs fail to state a
New York State malicious prosecution claim against the Individual Defendants, the Court
finds that such a claim against the Town based on *respondeat superior* necessarily fails as
a matter of law. See Shapiro v. Kronfeld, No. 00 CIV. 6286 (RWS), 2004 WL 2698889,
at *24 (S.D.N.Y. Nov. 24, 2004) (where state law claims were dismissed against
individual defendants, claims against municipal defendants based on *respondeat superior*
were dismissed "as there can be no imposition of vicarious liability in the absence of
underlying liability")(citing Wende C. v. United Methodist Church, 6 A.D.3d 1047, 1052,
776 N.Y.S.2d 390 (4th Dep't 2004) (collecting cases)).

F.   The Procedural Due Process Claims

   The Brookhaven Defendants move to dismiss the Plaintiff's Procedural Due
Process claim, arguing that he was afforded sufficient notices and access to a tribunal.

   The Due Process Clause protects against deprivations of "constitutionally
protected interests in life, liberty, or property . . . without due process of law." Rivera–
Powell v. New York City Bd. of Elections, 470 F.3d 458, 464–65 (2d Cir. 2006).
"Review of a procedural due process question involves two steps: the first asks whether
there exists a liberty or property interest which has been interfered with by the State; the
second examines whether the procedures attendant upon that deprivation were
constitutionally sufficient." Martine's Serv. Ctr., Inc. v. Town of Wallkill, 554 F. App'x.
32, 34 (2d Cir. 2014) (internal quotations and references omitted).

   Here, as to the liberty or property interest affected, the Plaintiff identifies an
interest under CPL § 100.15 in not being accused of an alleged crime or offense until a

facially sufficient accusatory instrument exists.  The New York Court of Appeals has explained that this additional showing is required because of the "unique function that an information serves" for prosecuting a misdemeanor or petty offense because there is no preliminary hearing and no grand jury. People v. Alejandro, 70 N.Y.2d 133, 138, 511 N.E.2d 71 (1987).

"Generally, due process requires that a state afford persons some kind of hearing prior to depriving them of a liberty or property interest." DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003) (internal citations and quotation marks omitted).  However, "[w]here a deprivation at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding." Id. (citation omitted).  Still, "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, *ipso facto*, satisfy due process." HANAC v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996) (citing Hudson v. Palmer, 468 U.S. 517, 532, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)).

For example, in Kraebel v. New York City Dep't of Housing Preservation and Dev., 959 F.2d 395, 404 (2d Cir. 1992), the Second Circuit held that since the plaintiff attacked "established state procedures that cause[d] the delays and burdens which deprive[d] her of her property . . . the mere availability of redress in state court [did not satisfy plaintiff's] right to due process."

Here, as to the procedures attendant upon that deprivation, the Plaintiff alleges that the letter orders and appearance tickets were inadequate because the content of the

notices contained vague and general descriptions of the alleged crimes and offenses

which were insufficient to reasonably apprise property owners what specifically needed

to be fixed.  In this regard, the letter orders allegedly gave imprecise information as to

when a compliance inspection would be conducted and did not inform the Plaintiff of his

appellate rights, including the right to appeal to the Board of Appeals of the Town of

Brookhaven. Brookhaven Code § 85-28, 86A-15; N.Y. Town Law § 267-a.  Moreover,

the Plaintiff points to the fact that sections of the eleven of the Appearance Tickets were

left blank and that none of the Tickets provided him with sufficient notice of the actual

charges against him.  Ultimately, the Plaintiff alleges, the Town and the State Court

failed to review the accusatory instruments for facial sufficiency.

Drawing all reasonable inferences in the Plaintiff's favor, as must be done for

purposes of this motion, and reviewing the applicable case law, the Court concludes that

the Plaintiff has plead facts that a Procedural Due Process violation resulted from

"established state procedures," rather than random authorized acts.  For this reason, the

availability of post-arraignment motion practice and appeals does not necessarily cure the

alleged deprivations of liberty interests.

Based on the foregoing, the motion by the Brookhaven Defendants to dismiss is

denied with respect to the Plaintiff's Procedural Due Process claims.

G.  The Equal Protection Claims

The Fourteenth Amendment states in pertinent part: "No State shall . . . deny to

any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend.

XIV § 1.  According to the Second Circuit, "there are several ways for a plaintiff to plead

intentional discrimination that violates the Equal Protection Clause." Pyke v. Cuomo, 258

F.3d 107, 109 (2d Cir. 2001) (quoting Brown v. City of Oneonta, 221 F.3d 329, 337 (2d

Cir. 1999)).

Here, the Plaintiff alleges selective prosecution or selective enforcement of the

law among other similarly situated properties for inspection of Town Code violations.  To

prevail on a claim of selective enforcement of the law in violation of the Equal Protection

Clause, a plaintiff must prove that (1) "compared to others similarly situated, [he or she]

was selectively treated," and (2) "such selective treatment was based on impermissible

considerations such as race, religion, intent to inhibit or punish the exercise of

constitutional rights, or malicious or bad faith intent to injure a person." Diesel v. Town

of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (quoting LeClair v. Saunders, 627 F.2d

606, 609–10 (2d Cir. 1980)); accord Zahra v. Town of Southold, 48 F.3d 674, 683 (2d

Cir. 1995).  "A plaintiff generally must satisfy both elements to establish a claim of

selective enforcement." LaTrieste Rest. v. Vill. of Port Chester, 188 F.3d 65, 70 (2d Cir.

1999).

District courts in this circuit have noted that "[s]imilarly situated does not mean

identical, but rather 'a reasonably close resemblance of the facts and circumstances of

plaintiff's and comparator's cases,' to the extent that an 'objectively identifiable basis for

comparability' exists." Walker v. City of New York, No. 05–CV–1283 (RER), 2010 WL

5186779, at *7 (E.D.N.Y. Dec. 15, 2010) (quoting Graham v. Long Island R.R., 230 F.3d

34, 39 (2d Cir. 2000).  In other words, a plaintiff "must identify comparators whom a

'prudent person would think . . . [were] roughly equivalent.'" Abel v. Morabito, No. 04

Civ. 07284 (PGG), 2009 WL 321007, at *5 (S.D.N.Y. Feb. 11, 2009) (quoting Estate of

Morris v. Dapolito, 297 F. Supp. 2d 680, 686 (S.D.N.Y. 2004)).

That said, the Second Amended Complaint is devoid of a single similarly situated property which purportedly received different treatment than the "Norfleet Property." Rather, the Second Amended Complaint merely states that "[u]pon information and belief, the Norfleet Property was selected for investigation among other similarly situated properties for inspection of latent Town Code violations." (Second Amend. Compl. at ¶ 290.).  Because this is a conclusory reference to unspecified similarly situated persons without accompanying examples, the Plaintiff has failed to satisfy the first element of a selective enforcement claim. Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) (the plaintiffs failed to state viable equal protection claim where they merely alleged less favorable treatment than "similarly situated" persons but did not plead specific examples); MacPherson v. Town of Southampton, 738 F. Supp. 2d 353, 371 (E.D.N.Y. 2010) (conclusory references to unspecified "similarly situated" persons without examples is insufficient to withstand a motion to dismiss for selective enforcement).

To the extent the Plaintiff attempts to compare himself to his two brothers – Howard and Richard, who were joint owners of the Norfleet Property but were not criminally prosecuted – to substantiate his selective enforcement claim, such a comparison fails to satisfy the first element of a selective enforcement claim.  As the Plaintiff concedes, he is the majority owner of record (50% interest) in the "Norfleet" property, whereas his brothers own only 25% interest each.

To be sure, whether people are similarly situated, "[a]s a general rule . . . is a factual issue that should be submitted to the jury." Harlen Assocs. V. Inc. Village of Mineola, 273 F.3d 494, 499 n. 2 (2d Cir. 2001).  However, where, as here, the Plaintiff

fails in his pleadings to point to any examples of similarly situated properties, the Court

declines to allow this claim to proceed.

H.  The Civil Rights Law Claims – Unlawful Search and Seizure

The Plaintiff also claims an unlawful search and seizure in violation of Section 8

of the New York Civil Rights Law.  That section provides:

> The right of the people to be secure in their persons, houses, papers and
> effects, against unreasonable searches and seizures, shall not be violated;
> and no warrants can issue but upon probable cause supported by oath or
> affirmation, and particularly describing the place to be searched, and the
> persons or things to be seized.

In opposition, the Defendants contend that this is, in fact, a claim under the New

York State Constitution and must be dismissed, and that courts in this circuit have held

that there is no private right of action under the New York State Constitution where

remedies are available under 42 U.S.C. §1983.  However, the Defendants cite no case law

for the proposition that claims under Section 8 of the New York Civil Rights Law are

duplicative of, or in essence, claims under the New York State Constitution.  Indeed, case

law regarding this statutory provision is sparse at best.  Under these circumstances, at this

stage of the litigation, the Court declines to dismiss the cause of action under Section 8 of

the New York Civil Rights Law.

I.  The Requests for Declaratory Relief

The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the
> United States, upon the filing of an appropriate pleading, may declare the
> rights and other legal relations of any interested party seeking such
> declaration, whether or not further relief is or could be sought.

39

28 U.S.C. § 2201(a).  "[T]he phrase 'case of actual controversy' in the [Declaratory

Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under

Article III." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127, 127 S. Ct. 764, 166

L. Ed. 2d 604 (2007) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.

Ct. 461, 81 L. Ed. 617 (1937)).  "It is a basic principle of Article III that a justiciable case

or controversy must remain 'extant at all stages of review, not merely at the time the

complaint is filed.'" United States v. Juvenile Male, ―――U.S. ―――, 131 S. Ct. 2860,

2864, 180 L. Ed. 2d 811 (2011) (quoting Arizonans for Official English v. Arizona, 520

U.S. 43, 67, 117 S. Ct. 1055, 137 L. Ed. 2d 170 (1997)); see also Alvarez v. Smith, 558

U.S. 87, 92, 130 S. Ct. 576, 175 L. Ed. 2d 447 (2009) ("The Constitution permits this

Court to decide legal questions only in the context of actual 'Cases' or 'Controversies.'

An 'actual controversy must be extant at all stages of review, not merely at the time the

complaint is filed.'")(quoting Preiser v. Newkirk, 422 U.S. 395, 401, 95 S. Ct. 2330, 45

L. Ed. 2d 272 (1975) (internal citation omitted)).  "[T]he question in each case is whether

the facts alleged, under all the circumstances, show that there is a substantial controversy,

between parties having adverse legal interests, of sufficient immediacy and reality to

warrant the issuance of a declaratory judgment." MedImmune, Inc., 549 U.S. at 127, 127

S. Ct. 764.

"Throughout the litigation, the party seeking relief must have suffered, or be

threatened with, an actual injury traceable to the defendant and likely to be redressed by a

favorable judicial decision." Juvenile Male, 131 S. Ct. at 2864.  "As with any federal

action, courts may not entertain actions for declaratory judgment 'when the parties are

asking for an advisory opinion, when the question sought to be adjudicated has been

mooted by subsequent developments, and when there is not standing to maintain the action.'" Velvet Underground v. Andy Warhol Found. For the Visual Arts, Inc., 890 F. Supp. 2d 398, 403 (S.D.N.Y. 2012) (quoting Flast v. Cohen, 392 U.S. 83, 95, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968)).

In this case, the Plaintiff seeks declaratory relief against the Town to, among other things, stop the Town's allegedly unlawful practices and declare the Rental Law as violative of New York Town Law § 262.  The Brookhaven Defendants argue that (1) there is no case or controversy against the Town; (2) an Article 78 proceeding is the more appropriate vehicle for the Plaintiff to seek declaratory relief; and (3) the Rental Law is presumed valid.  The Court addresses each argument in turn.

First, the Court finds that the Second Amended Complaint pleads an actual case or controversy to support a claim for declaratory relief against the Town.  For instance, the Plaintiff seeks to stop the Town's allegedly unlawful practices, including granting housing inspectors assigned to the DHHS the authority to issue and serve certain appearance tickets.

Relatedly, since the Plaintiff seeks declaratory relief after he has been criminally prosecuted as a result of the practices he challenges, his claim is ripe for adjudication. Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394, 406-07 (S.D.N.Y. 2002) (stating that "a touchstone to guide the probe for sufficient immediacy and reality is whether the declaratory relief sought relates to a dispute where the alleged liability *has already accrued*")(emphasis added), aff'd, 346 F.3d 357 (2d Cir. 2003)

Second, "a proceeding under article 78 is not the proper vehicle to test the constitutionality of legislative enactments." Matter of Kovarsky v. Hous. & Dev. Admin.

Of City of N.Y., 31 N.Y.2d 184, 191, 335 N.Y.S.2d 383, 286 N.E.2d 882 (1972).  Rather,

a declaratory judgment action, as here, is appropriate.  Bloom v. Mayor of City of New

York, 35 A.D.2d 92, 97 (2d Dep't 1970), aff'd, 28 N.Y.2d 952 (1971) (stating that "in a

declaratory judgment action the court may not only review the constitutionality of the

statute, but also determine whether a public official acted in regard to the statutory

standard, or in excess of the grant of authority, or in violation of due process").  In any

event, the Defendants concede that the existence of an alternative remedy for the

Plaintiff, such as a proceeding under Article 78, does not nullify his ability to request a

declaratory judgment.

   Third, even if the Rental Law is presumed valid, that does not immunize it from

challenge.  As stated above, the Plaintiff alleges that the Rental Law is invalid in that it

violates New York Town Law § 262's uniformity requirement.  Among other things,

Town Law § 262 requires that all land use regulations within a designated zoning district

"shall be uniform for each class or kind of buildings, [sic] throughout such district."  This

uniformity mandate "is intended to assure property holders that all owners in the same

district will be treated alike and that there will be no improper discrimination." Matter of

Augenblick v. Town of Cortlandt, 104 A.D.2d 806, 814 (2nd Dep't 1984) (Lazer, J.P.,

dissenting) revd 66 N.Y.2d 775, 777, 66 N.Y.2d 775488 N.E.2d 109 (1985) ("Order

reversed . . . and petition granted for the reasons stated in the dissenting memorandum by

Justice Leon D. Lazer at the Appellate Division").

   Here, the Plaintiff alleges discriminatory treatment against dwellings that are

rented in that they are subject to, among other things, on-site inspections, application for

and renewal of rental permits, and the signing of an affidavit attesting to certain

information.  These allegations are sufficient to state a claim for declaratory relief

challenging the Town Rental Law.

However, the Court reaches a different conclusion with respect to the desired

declaratory relief against the County.  In essence, the County argues that it cannot be

subjected to liability here because the District Attorney's actions were undertaken in a

prosecutorial capacity.  According to the County, when a district attorney acts in a

prosecutorial capacity, the district attorney acts as an officer of the state, and thus, the

County cannot be held liable for the district attorney's actions because the district

attorney is acting on behalf of the state, not the county.

"District attorneys are generally considered to be local officers of their respective

counties." Conte, 2010 WL 3924677, at *27.  Thus, "where a district attorney acts as the

manager of the district attorney's office, the district attorney acts as a county

policymaker." Pinaud, 52 F.3d at 1153–54 n. 14 (internal quotation marks and alterations

omitted).  However, a county cannot be liable for the acts of a district attorney related to

the decision to prosecute or not prosecute an individual. See id. at 1153–54 (finding no

municipal liability for actions of an Assistant District Attorney unless related to

management of office or history of negligence).  "When prosecuting a criminal matter, a

district attorney in New York State, acting in a quasi-judicial capacity, represents the

State, not the county." Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988).  Thus, "the

County cannot be said to be responsible for the conduct at issue." Id.

However, when "a plaintiff's claims center[ ] not on decisions whether or not, and

on what charges, to prosecute but rather on the administration of the district attorney's

office, there can be liability against a New York county for an alleged malicious

prosecution." <u>Pinaud</u>, 52 F.3d at 1153–54 n. 14 (internal quotation marks and citation omitted).  Thus, "an allegation of deficiencies in the 'management of the [district attorney's] office' would appear to be necessary . . . in order for any claim of malicious prosecution against the County . . . to stand." <u>Id.</u> at 1153 (citation omitted).

To the extent the Plaintiff argues that the alleged current practices of the District Attorney is administrative in nature and not related to his prosecutorial function, the Supreme Court has examined, in an immunity context, the issue of supervisory liability and failure to adequately train within the office of a prosecutor, and has held that matters of supervision and training with the prosecutor's basic trial advocacy duties will be considered prosecutorial in nature and not administrative. <u>Van de Kamp</u>, 555 U.S. 335, 129 S. Ct. 855, 172 L. Ed. 2d 706.

As noted above, in <u>Van de Kamp</u>, the plaintiff claimed that the district attorney and his chief assistant failed to adequately train and supervise their deputies on the production of impeachment material to defendants, and failed to create an information system for their deputies handling such cases to access such information.  The Supreme Court found that absolute immunity barred the claims.  While these claims addressed administrative functions, they focused on "a certain kind of administrative obligation — a kind that itself is directly connected with the conduct of a trial." <u>Id.</u> at 344.  These functions are distinct from "administrative duties concerning . . . workplace hiring, payroll administration, the maintenance of physical facilities, and the like." <u>Id.</u>  The Court reasoned that the failure to supervise and train claims relied upon underlying misconduct by the deputy prosecutors at trial, who were themselves entitled to absolute immunity. <u>Id.</u>

In support of its decision, the Court cited the need to limit the "ease with which a plaintiff could restyle a complaint charging a trial failure so that it becomes a complaint charging a failure of training or supervision would eviscerate <u>Imbler</u> [and its rule of prosecutorial immunity]." <u>Id.</u> at 347; <u>see also</u> <u>Gil v. Cty. of Suffolk</u>, No. 06–cv–1683(LDW)(ARL), 2007 WL 2027736, at *3 (E.D.N.Y. Jul. 9, 2007) (allegations of failure to train by the district attorney cannot "circumvent the bar of absolute immunity" applied to the actions of assistant district attorneys). In rejecting the information system claim, a "more purely administrative task" operable by less "technically qualified individuals other than prosecutors," the Court went further. <u>Van de Kamp</u>, 555 U.S. at 348. It found that absolute immunity applied there as well, because "determining the criteria for inclusion or exclusion [of data in an information system] requires knowledge of the law" and expressed its recalcitrance "to review the [District Attorney's] office's legal judgments." <u>Id.</u>

Here, although the County does not seek to avoid declaratory relief on the grounds of absolute prosecutorial immunity, the Court nonetheless finds that such relief is inappropriate under <u>Van de Kamp</u>. In the Court's view, the Plaintiff's allegation that the District Attorney delegates the prosecution of petty Town offenses to the Town Attorney, without sufficient oversight, is simply another way of claiming that the District Attorney has failed to adequately supervise or train those attorneys in their basic trial advocacy duties. As the practice the Plaintiff challenges is directly related to the District Attorney's discretion to prosecute, the County cannot be held to dictate such policies. Accordingly, the Plaintiff's request for declaratory relief against the County is denied and the Second Amended Complaint as against the County is dismissed in its entirety.

45

J.   The Monell Claims Against the Town

"A municipality cannot be held liable under § 1983 for the acts of its employees

solely on a theory of *respondeat superior*." Vessa v. City of White Plains, 12-CV-6989

(ER), 2014 WL 1271230, at *5 (S.D.N.Y. Mar. 27, 2014).  Rather, in order to sustain a

claim for relief pursuant to § 1983 against a municipal defendant, a plaintiff must show

the existence of an official policy or custom that caused injury and a direct causal

connection between that policy or custom and the deprivation of a constitutional right.

Monell, 436 U.S. at 694–95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 ("[A] local government

may not be sued under § 1983 for an injury inflicted solely by its employees or agents.

Instead, it is when execution of a government's policy or custom . . . inflicts the injury

that the government as an entity is responsible under § 1983."); see Torraco v. Port Auth.

Of N.Y. & N.J., 615 F.3d 129, 140 (2d Cir. 2010) ("[T]o hold a city liable under § 1983

for the unconstitutional actions of its employees, a plaintiff is required to plead and prove

three elements: (1) an official policy or custom that (2) causes the plaintiff to be

subjected to (3) a denial of a constitutional right."), quoting Wray v. City of New York,

490 F.3d 189, 195 (2d Cir. 2007).

Here, the Second Amended Complaint alleges that the acts by Quinlan, Moran

and Biscardi were acts of policymakers (Second Amend Compl., at ¶ 8-9,11.)  A policy

or custom may be established by any of the following: (1) a formal policy officially

endorsed by the municipality; (2) actions or decisions made by municipal officials with

decision-making authority; (3) a practice so persistent and widespread that it constitutes a

custom through which constructive notice is imposed upon policymakers; or (4) a failure

by policymakers to properly train or supervise their subordinates, such that the

policymakers exercised "deliberate indifference" to the rights of the plaintiff. See Parker

v. City of Long Beach, —— F. App'x ——, 2014 WL 1507707, at *2 (2d Cir. Apr.18,

2014), as amended, (Apr. 21, 2014) (failure to train); Hines v. Albany Police Dep't, 520

F. App'x 5, 7 (2d Cir. 2013) (actions of policymakers); Missel v. Cnty. Of Monroe, 351

F. App'x 543, 545 (2d Cir. 2009) (formal policy and act of a person with policymaking

authority for the municipality).  Therefore, the Court finds that the Plaintiff has set forth

sufficient allegations to support Monell liability against the Town.

The Brookhaven Defendants argue that, in the event this Court grants absolute

immunity to the Individual Defendants, the Monell claims must be dismissed.  However,

"'municipalities have no immunity from damages for liability flowing from their

constitutional violations.'" Askins v. Doe, 727 F.3d 248, 254 (2d Cir. 2013)(quoting Lore

v. City of Syracuse, 670 F.3d 127, 164 (2d Cir. 2012)).  Thus, the Brookhaven

Defendants' arguments, which "reflect[] a misunderstanding of the relationship between

the liability of individual actors and municipal liability for purposes of Monell," should

be rejected. Askins, 727 F.3d at 253; Norton v. Islip, No. 04–CV–3079 (NGG)(WDW),

2011 WL 3918220, at *5 (E.D.N.Y. Sept. 2, 2011) (similar argument rejected based on a

"disturbing lack of legal comprehension surrounding immunity and Monell liability").

### III. CONCLUSION

In sum, the Court grants in part and denies in part the motion to dismiss by the

Brookhaven Defendants' and grants the motion to dismiss by the County.  As to the

motion to dismiss by the Brookhaven Defendants, the Court denies the motion with

respect to the (1) the Section 1983 First Amendment Intimate Association, Fourth

Amendment, and Procedural Due Process claims; (2) the corresponding Monell claims

against the Town; (3) the claim under Section 8 of the New York Civil Rights Law; and

(4) the requests for declaratory relief as against the Town.  The Court otherwise grants

the motion to dismiss by the Brookhaven Defendants.  As there no claims remaining

against Lutzer, the Second Amended Complaint is dismissed in its entirety as to her.

**SO ORDERED.**
Dated: Central Islip, New York
July 30, 2014

*Arthur D. Spatt* _____
ARTHUR D. SPATT
United States District Judge

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


JEROME NORTON,                   . Civil No. 13-CV-03520-GRB
                                 .
            Vs.                  .
                                 . 100 Federal Plaza
                                 . Central Islip, NY 11722
TOWN OF BROOKHAVEN, ET ALS.,     .
                                 . October 16, 2017
. . . . . . . . . . . . . . . .
```

                      TRANSCRIPT OF HEARING
             BEFORE THE HONORABLE GARY R. BROWN
                UNITED STATES MAGISTRATE JUDGE

**FILED**
**CLERK**

11/20/2017

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

APPEARANCES:


For The Plaintiff:        LEEDS BROWN LAW, P.C.
                          BY: RICK OSTROVE, ESQ.
                               JOHN MESSINA, ESQ.
                          One Old County Road
                          Suite 347
                          Carle Place, NY  11514



For Defendants            DEVITT SPELLMAN BARRETT
Town of Brookhaven:       BY: ANNE C. LEAHEY, ESQ.
                          50 New York 111
                          Smith town, NY  11787



For Defendants            SUFFOLK COUNTY DEPARTMENT OF LAW
County of Suffolk         BY:  BRIAN C. MITCHELL, ESQ.
and Dennis M. Brown:      100 Veterans Memorial Highway
                          PO Box 6100
                          Hauppauge, NY  11788



Proceedings recorded by electronic sound recording, transcript
             produced by transcription service.

---

**TRACY GRIBBEN TRANSCRIPTION, LLC**
859 Nutswamp Road
Red Bank, New Jersey 07701
**(732) 263-0044    Fax No. 732-865-7179**
**800 603-6212**
www.tgribbentranscription.com

```
                          Leahey/Argument                    11
```

 1            MR. MITCHELL:  And so that would probably allow us to

 2    do that as well.

 3            THE COURT:  All right.  So I'll note that for today's

 4    purpose the amended complaint is filed on consent, and that's

 5    so-ordered.  The County, and I presume the Town, are you

 6    reserving your Rule 12 rights on the new complaint?

 7            MS. LEAHEY:  No, we're not, Your Honor, because we

 8    are agreeing to allow this to be filed as part of the

 9    settlement.

10            THE COURT:  Fair enough.  So, but the County will

11    have 45 days to move or otherwise respond to that amended

12    complaint, yes?

13            MR. MITCHELL:  Yes, thank you, Judge.

14            MS. LEAHEY:  Just to clarify, the amended complaint

15    raises one new issue which is whether the Town violated general

16    Municipal Law 239M, and that issue is one of the issues

17    reserved for litigation if Mr. Norton so chooses to do so.

18            THE COURT:  Okay.

19            MS. LEAHEY:  So we would be contesting that there was

20    a 239M violation, but we've agreed to do that in the confines

21    of the settlement.

22            THE COURT:  And I presume that's all under ancillary

23    jurisdiction, is that the notion?

24            MS. LEAHEY:  Yes, Your Honor.

25            THE COURT:  Okay.  Technically speaking that's

Ostrove/Argument                    12

1   probably a question for Judge Spatt.  But I'm going to say that

2   to the best of my knowledge of him, which is fairly extensive,

3   I can't imagine he's going to have a problem with that given

4   the amount.  How far down the road we've gone, right, on this

5   case.  I think we're okay with that, so I don't think there's

6   going to be a problem.

7              MS. LEAHEY:  Okay.

8              MR. MESSINA:  Your Honor, I just want to, I don't

9   know if this makes a difference or anything, but to the extent

10  in the agreement we opine unto the Court to, you know, to try

11  to keep jurisdiction if that's what your, you know, the intent

12  of it is to hope that the Court will --

13             THE COURT:  Got it.

14             MS. LEAHEY:  Right.

15             THE COURT:  Got it, got it, got it.  Yes,  okay,

16  that's fine.

17             MR. OSTROVE:   Your Honor, could I just have one more

18  comment about Mr. Mitchell's 12(b)(6)?  It's just so that the

19  record is clear.  You know, it will be our position that he

20  can't make a 12(b)(6) on things that he already made 12(b)(6)

21  motions on.  And since none of the new claims that are being

22  added are against the County, you know, we don't think he

23  should be making it.  If he does, we'll argue that in the

24  motion.

25             But I just wanted to make clear that that will be one

Leahey/Argument                                   24

 1              THE CLERK:  Thursday, January 11 at 2:00.

 2              THE COURT:  How about Thursday, January 11 at 2:00.

 3   I'm going to put down for a status conference on that date.  If

 4   you decide shortly there, before that date, that you don't need

 5   that date, one of you can write me a letter and say we've

 6   agreed to put that over for a month, or whatever you need.  I'm

 7   happy to do this whichever way you want.  I'm trying to, you

 8   know, keep costs to a minimum as possible.  Go ahead.

 9              MR. MESSINA:  Can I just clarify for the record?

10              THE COURT:  Sure.

11              MR. MESSINA:  The two laws that Ms. Leahey was

12   referring to was the Town's proposed replacements for Section

13   16-8 entitled Penalties for Offenses, and for Sections 30-16 of

14   the code, and those are the two sections.

15              MS. LEAHEY:  That is correct.

16              THE COURT:  Okay, good.  So we have a date which is

17   the 11th at 2:00.  Let me add one thing, which is this.  Mr.

18   Ostrove started by saying, you know, this is taking a lot of

19   time but it's been very complicated.  This is a case which

20   we're settling a case in part by amending the law.  You know, I

21   think all of you know I get involved in settlements pretty

22   deeply, I try to come up with every creative solution that I

23   can think of.

24              I've never done this before.  So this is, this is

25   cutting edge stuff.

Leahey/Argument                    25

1          MR. MESSINA:  It's a big accomplishment.  I'm very

2  proud.

3          THE COURT:  This is, it's big.  So I hope we keep

4  going along well and everything works out for everybody.  But

5  good work.

6          MS. LEAHEY:  Your Honor, thank you very much because

7  it truly would not have happened without all of the, without

8  your extraordinary effort.

9          THE COURT:  Well, but it's really interesting, right,

10  and I think counsel has done a great job.  And so kudos all

11  around, let's keep it up.  And if I don't see you sooner, I'll

12  see you in January.

13          MR. MESSINA:  Thank you, Your Honor.  Can I give this

14  to your clerk?  It's a copy of the agreement.

15          THE COURT:  Happily.  Can you hand that to Karen?

16          MR. MESSINA:  Thank you, very much.

17          THE COURT:  All right.

18                    *  *  *  *  *

19              **C E R T I F I C A T I O N**

20          I, **TRACY GRIBBEN**, court approved transcriber,

21  certify that the foregoing is a correct transcript from the

22  official electronic sound recording of the proceedings in the

23  above-entitled matter.

24  /S/ TRACY GRIBBEN

25  TRACY GRIBBEN TRANSCRIPTION, LLC    DATE: November 20, 2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
JEROME NORTON,

                             Plaintiff,

                - against -

TOWN OF BROOKHAVEN, COUNTY OF SUFFOLK, ROBERT
QUINLAN, DAVID J. MORAN, JENNIFER LUTZER, JUSTIN
FOLBER, WILLIAM POWELL, and VALERIE BISCARDI, all
individually and in their official capacity,

                          Defendants.
-------------------------------------------------------------------------------X

**THIRD
AMENDED
COMPLAINT**

Index No. 13-cv-3520

**Jury Trial Demanded**

       Plaintiff, JEROME NORTON, by his attorneys Leeds Brown Law, P.C., as and for his

Third Amended Complaint against defendants TOWN OF BROOKHAVEN, COUNTY OF

SUFFOLK, Town Attorney ROBERT QUINLAN, Deputy Town Attorney DAVID J. MORAN,

Assistant Town Attorney JENNIFER LUTZER, Department of Housing and Human Services

Housing Inspector JUSTIN FOLBER, Department of Housing and Human Services Senior

Housing Inspector WILLIAM POWELL and Department of Housing and Human Services

Commissioner VALERIE BISCARDI, all individually and in their official capacity alleges as

follows:

## NATURE OF ACTION

       1.      Jerome Norton ("Plaintiff") brings this action under 42 U.S.C. §§ 1983 and 28

U.S.C. § 2201, along with pendent state law claims, seeking compensatory and punitive damages

against the Town of Brookhaven ("Town") and certain of its officers, officials and employees

("Individual Defendants") and against the County of Suffolk ("County") for their deprivations of

his rights afforded by the United States Constitution, the New York State Constitution, New York

State law, and the common law.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over Plaintiff's §§ 1983 and 2201 claims pursuant to 28

U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over Plaintiff's state law claims

pursuant to 28 U.S.C. § 1367 as they form part of the same case and controversy as Plaintiff's

§ 1983 claims.

3.      Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391(b) as

substantially all of the events or omissions giving rise to the claims herein occurred in this District.

**PARTIES**

4.      At all times relevant herein, Plaintiff was a resident of Nassau or Suffolk Counties,

New York and a citizen of the United States and of the State of New York.

5.      At all times relevant herein, Defendant Town was and is a municipal corporation

and political subdivision of the State of New York duly organized and existing under the laws of

the State of New York.

6.      At all times relevant herein, the local laws, ordinances, adopted legislation and/or

regulations ("Local Laws", individually, "Local Law")) of the Town have been compiled into a

code ("Town Code").

7.      At all times relevant herein, Defendant County was and is a political subdivision of

the State of New York duly organized and existing under the laws of the State of New York.

8.      From on or about December 2005 to on or about January 2008 and again from on

or about January 2010 to on or about January 2013, Defendant Robert Quinlan ("Quinlan") was the

Town Attorney in which capacity he was the principal executive officer and administrative head of

the Town Department of Law ("Law Department").  He was the chief final policy maker of the Law

2

Department and purportedly he was empowered to prosecute alleged violations of Town Code. According to Town Code § 20-22, the Town Attorney purportedly had and has the power to "prosecute violations of Town local laws; provided, however, that the Town Attorney may negotiate dispositions in such matters."

9.      At all times relevant herein, Defendant David J. Moran ("Moran") was a Deputy Town Attorney for the Law Department, in which capacity he often acted for and here did act in place of the Town Attorney.

10.     At all times relevant herein, Moran also was the Director of the Town's Quality of Life Task Force, the advertised purpose of which was to aggressively enforce the Town Code and collect the maximum fines from alleged violators.

11.     At all times relevant herein, Moran was a final policy maker of the Law Department and/or the chief final policy maker of the Town's Quality of Life Task Force.

12.     At all times relevant herein, Defendant Jennifer Lutzer ("Lutzer") was an Assistant Town Attorney in the Law Department, in which capacity she purported to be empowered to act for and here did act on the Town Attorney's behalf in performing such duties as were and are vested in and imposed upon the Law Department. These duties purportedly included and include the prosecution of alleged violations of the Town Code and the preparation and filing of all litigation papers connected thereto.

13.     At all times relevant herein, Defendant Valerie Biscardi ("Biscardi") was the Commissioner of the Town Department of Housing and Human Services ("DHHS").

14.     As Commissioner, Biscardi was the principal executive officer and administrative head of the DHHS, making her the chief final policy maker of the DHHS.

15.     Unless the context indicates to the contrary, wherever the contraction DHHS is used

3

in this Third Amended Complaint, it shall be construed as though followed by the words "including any lawful successor thereof".

16.     At all times relevant herein, Defendant Justin Folber ("Folber") was a DHHS Housing Inspector. Folber is the son of Joanne Folber, who works directly under the Town of Islip Supervisor as the Director of the Youth Bureau of the Town of Islip.

17.     At all times relevant herein, Defendant William Powell ("Powell") was a Senior Housing Inspector for the DHHS and acted in a supervisory capacity over Folber.

18.     Unless stated otherwise, any and all acts or omissions by any officer, agent or employee ("Personnel") of the Town and/or County described below were made pursuant to the Town's and/or the County's policies, practices, customs and usages ("Practice(s)", individually, "Practice") or were performed by or at the direction and/or instruction of an officer with final policy-making authority.

19.     The Town, in its motion to dismiss dated February 21, 2014, averred that none of its Town Personnel at any time(s) relevant to this civil action violated any of Plaintiff's rights/immunities as alleged in Plaintiff's Second Amended Complaint filed in this action; thereby adopting, ratifying and/or condoning its Personnel's actions as Practice(s) of the Town. To the extent such claims by Plaintiff remain in this Third Amended Complaint, the Town continues to maintain that none of its Town Personnel at any time(s) relevant to this civil action violated any of Plaintiff's rights/immunities.

20.     Unless stated otherwise, all acts or omissions by any Personnel of Sixth District Court of the County of Suffolk ("State Court") described below were made pursuant to the State Court's policies, practices, customs and usages ("State Court Practice(s)") or by or at the direction and/or instruction of a State Court officer with final policy-making authority.

21.     The Suffolk County Job Title descriptions on the Suffolk County Civil Service web site provide that the full performance knowledges, skills, abilities and abilities and personal characteristics for a Town Attorney and a Deputy Town Attorney should include a "[t]horough knowledge of the constitutional and municipal laws …". See http://apps.suffolkcountyny.gov/ civilservice/specs/6192spe.html; http://apps. suffolkcountyny.gov /civilservice/specs/6191spe.html.

## BACKGROUND FACTS

### A.  The Norfleet Property

22.     From prior to 2011 through the present, Plaintiff has been a legal owner of record of a non-majority 50% interest in the improved residential real property at 66 Norfleet Lane, Coram, New York (the "Norfleet Property"). The Norfleet Property is located within the Town in the largely and historically minority community of Gordon Heights.

23.     Plaintiff's brothers, Howard Norton ("Howard") and Richard Norton ("Richard") own the remaining non-majority 50% interest in the Norfleet Property. Where appropriate, Plaintiff, Howard, and Richard will be collectively referred to as the "Owners."

24.     At all times relevant herein, the Norfleet Property deed, filed in the Office of the Suffolk County Clerk, listed Howard's only residence address as being in Lynbrook, New York, and Richard's only residence address as being in Topanga, California.

25.     On April 24, 1978, the Town Building Department issued a certificate of occupancy for a single-family dwelling containing three bedrooms and a cellar on the Norfleet Property.

26.     Town records show two overhangs/canopies as part of the Town's inventory of improvements for assessment and taxation purposes; *to wit*, the Town's June 2011 assessment records showed the overhangs/canopies formed part of the then assessable and taxable improvements on the Norfleet Property.

5

27.     At all times relevant herein, the Owners of the Norfleet Property possessed and possess the sole and exclusive right to permit, invite or allow, except in exigent circumstances, any Town Personnel onto any part(s) of the Norfleet Property, unless and until Town Personnel obtain a validly issued court warrant.

**B.  Affirmative Obligation to Prevent Discriminatory Practices**

28.     At all times relevant herein, the County and the Town have both determined to apply for and to receive certain housing and community development funds distributed by the U.S. Department of Housing and Urban Development ("HUD") either directly as an "entitlement jurisdiction" and/or as a sub-recipient of funds disbursed by New York and/or in the case of the Town, by the County.

29.     As a condition of obtaining the above referred to HUD funds, both the County and the Town through the Individual Defendants, and other personnel and/or final policy makers, were and are required to affirmatively scrutinize all housing related part(s) of the laws in effect in its jurisdiction to:

(i) determine whether any County laws or regulations and/or Town Local Laws:

(a) have the effect of creating housing barriers for protected groups and if so, to affirmatively identify and determine whether such housing related part(s) of the County laws or regulations and/or Town Local Laws were and are necessary to achieve an important objective, have a valid enforcement basis and/or objective and

(b) to further identify and to implement all available options to mitigate any and all identified negative impacts and

(ii) enforce such housing related part(s) of the County laws or regulations and/or Town Local Laws in effect in its jurisdiction so as to actively promote integration and the right to fair housing within the Town and within the County.

**C.  The DHHS and other Town Departments**

6

30.     From sometime prior to June 2011 to the present, Section 20-28 of the Town Code sets forth the powers and duties of the DHHS. The DHHS oversees federal and state housing programs and creates programs to alleviate blighted conditions. The DHHS also coordinates state, federal, local, and private agencies in the evaluation of problems and in the delivery and integration of specific services and advises on the coordination of all federal and state suburban grant programs. Within the DHHS are the Youth Bureau, Senior Citizen, and Women's Services Divisions. The Division of Water Resources programs and veteran services fall under the jurisdiction of the DHHS.

31.     From sometime prior to June 2011 until sometime after May 2012, the Town Department of Building and Fire Prevention was divided into the Division of Building and the Division of Fire Prevention.

32.     The Town Department of Planning, Environment and Land Management includes, *inter alia*, the Division of Building.

33.     The Town Department of Public Safety includes, *inter alia*, the Division of Code Enforcement and the Division of Fire Prevention.

34.     From sometime prior to June 2011 to the present, the Division of Building has possessed the power and duties "to administer, supervise, manage, coordinate and enforce the zoning law and applicable local laws, rules and regulations of the Town of Brookhaven and the applicable building codes, both local and state, and any other applicable laws of the State of New York, as legally required throughout the Town of Brookhaven, and to review, evaluate, judge and advise on applications related thereto." Town Code § 20-39.4(A)

35.     From sometime prior to June 2011 to the present, the Division of Fire Prevention "shall administer and enforce Group 4 of the local laws of the Town, known as the Fire Prevention Local Law of the Town of Brookhaven, [Ch. 30, Fire Prevention] and amendments thereto,

7

including the issuance of permits required by said local law and the collection of fees as set forth herein." Town Code § 20-39.4(B)

36.     From sometime prior to June 2011 to the present, the Division of Code Enforcement within the Department of Public Safety "shall be responsible for enforcement of provisions of the Code as follows: . . . shall enforce the Code as it regulates the use of parks and/or property of the Town or of the Trustees and Freeholders of the Commonalty of the Town of Brookhaven." Town Code § 20-53.

**D.   The DHHS's Law Enforcement Activity**

37.     From sometime prior to June 2011 to the present, neither New York State law nor the Town Code authorized or authorizes DHHS to act as Town Code or State Uniform Code law enforcement. Notwithstanding, the DHHS maintained and maintains a staff of inspectors that purport or purported to possess the power to enforce Town Code and the State Uniform Code.

38.      From sometime prior to June 2011 to the present, a "housing inspector", was and is "an employee [] involved in [certain special duties regarding the conduct of] field inspections to enforce compliance with applicable housing codes and ordinances". http://apps.suffolkcountyny.gov/civilservice/specs/5131spe.html.

39.     Other than as stated in paragraph 42 of this Third Amended Complaint, from sometime prior to June 2011 to the present, "housing inspectors" have only been and are only mentioned in a limited chapter of the Town Code Ch. 82, but such housing inspectors were and are required to work under the direction of the Town's Chief Building Inspector in order to enforce Town Code Ch. 82 laws.

40.     Town Code § 82-8 grants authority solely to the Town's Chief Building Inspector to "make or cause to be made inspections to determine the condition of dwellings and to safeguard the health, safety, morals and welfare of the public."

41.     During the period of time from sometime prior to June 2011 through June 30, 2012, none of the DHHS "Housing inspectors" performing as DHHS "Housing inspectors" under direction of the Commissioner of DHHS were authorized to enforce Ch.16 (Building Code), Ch. 30 (Fire Prevention), Ch. 45 (Sanitary Code), or Ch. 85 (Zoning).

42.     During the period of time from July 1, 2012 to the present, none of the DHHS "Housing inspectors" have performed as DHHS "Housing inspectors" under direction of the Commissioner of DHHS and were and are not authorized to enforce Ch.16 (Building Code), Ch. 30 (Fire Prevention), Ch. 45 (Sanitary Code), or Ch. 85 (Zoning).

43.     During a conversation in early 2013, the former deputy commissioner of the DHHS Roberta A. Owens ("Owens") informed Plaintiff that in 2011 and 2012 the DHHS deployed its housing inspectors to certain United States census tracts ("Census Tracts") of the Town to inspect and to investigate for alleged violations of New York State Uniform Code, the Town's Building Code (Ch. 16), zoning ordinances (Ch. 85), fire prevention regulations (Ch. 30), Sanitary Code (Ch. 45) and Housing Code (Ch. 82) but further said that the Census Tract which included the Norfleet Property was not among the Census Tracts to which the DHHS housing inspectors were then deployed.

44.     In 2011 and 2012, the Census Tract which included within it the Norfleet Property was not among the Census Tracts to which the DHHS housing inspectors were then deployed by the DHHS.

45.     Sometime prior to June 2011, the Town passed a local law to allow certain public servants, including "housing inspectors," to issue appearance tickets for violations of Local Laws of the Town which the public servants are "authorized or required to enforce." See former Town Code Ch. 5 and Town Code Ch. 5.

46.     On April 23, 2013, the Town set forth a resolution for a public hearing to amend § 5-3 of Town Code Ch. 5 to "authorize building inspectors assigned to the [DHHS] to issue and serve appearance tickets for violations of the Brookhaven Town Code.

47.     On May 21, 2013, Section § 5-3 of Town Code Ch. 5 was amended by L.L. No. 26-2013, effective on or about June 5, 2013 to purportedly permit "Housing inspectors and building inspectors assigned to the Housing and Human Services Department "to issue and serve an appearance ticket … with respect to the violation of any provision of legislation adopted by the Town Board".

48.     From sometime prior to June 2011 until at least the day in 2013 (when Biscardi's employment with the Town ended), the DHHS housing inspectors, including senior housing inspector(s), were supervised, directed and instructed by the Commissioner of DHHS.

49.     From sometime prior to June 2011 until at least the day in 2013 (when Biscardi's employment with the Town ended), Folber served as a DHHS housing inspector and as such could not enforce and issue appearance tickets for alleged Local Law violations under Town Code Ch. 82 since during said time he did not act at the direction of the Town's Chief Building Inspector pursuant Town Code § 82-8.

50.      From sometime prior to June 2011 until the day in 2013 (when Biscardi's employment with the Town ended), she did not, within the period of time required by the Uniform

Code regulations, take and complete the required basic code training program entitled Minimum Standards for Code Enforcement Personnel.

51.     At all relevant times during all of June 2011through and until the day in 2013 (when Biscardi's employment with the Town ended), she lacked the minimum qualifications required to supervise, direct, or instruct others on how and to what extent to enforce the State Uniform Code.

52.     Folber failed to complete the required basic training program entitled Minimum Standards for Code Enforcement Personnel within the time period provided by Uniform Code regulations.

53.     At all relevant times, during the time period between June 2011 and April 2012, Folber lacked the minimum qualifications to enforce the State Uniform Code.

54.     Upon information and belief, during all times relevant herein to Plaintiff's monetary damages claimed herein, the Town's Chief Building Inspector did not designate Folber, Biscardi or any DHHS inspectors as his designated and authorized subordinate officer(s) authorized to administer or enforce any or all of Town Code Chs. 16, 30, 45, 82 and or 85 or New York Executive Law Article 18 or the State Uniform Code. This was confirmed to Plaintiff by New York State Department of State ("DOS") Regional officer, Richard Smith ("Smith").

55.     During all times relevant to Plaintiff's monetary damages claimed herein, the Town's Chief Building Inspector did not designate Folber, Biscardi or any DHHS inspectors as his designated and authorized subordinate officer(s) authorized to administer or enforce any or all of Town Code Chs. 16, 30, 45, 82 and or 85 or New York Executive Law Article 18 or the State Uniform Code as regards Plaintiff.

56.     In response to a FOIL request, submitted by Plaintiff for all administrative staff manuals and instructions (including those from DHHS) that concern the administration of (i) New

York State's Uniform Fire Prevention and Building Code Act; (ii) the New York State Uniform Code; (iii) New York State's Criminal Procedure Laws, and/or (iv) the Town Code, the Town responded: "We do not have any Standard Operating Procedure Manuals that are used by our Town Investigators. They follow the New York State and Town Code". At all times relevant to this action, the Town did not have and presently does not have any Standard Operating Procedure Manuals that are used by its Town inspectors or investigators.

**E.  The State Uniform Fire Prevention and Building Code Act**

57.    The State Uniform Fire Prevention and Building Code Act (New York Executive Law Article 18) provides that every local government must administer and enforce the State Uniform Fire Prevention and Building Code ("State Uniform Code" or "Uniform Code") on or after January 1, 1984 unless that local government enacted a local law providing that it will not enforce the Uniform Code, then the county in which the local government is situated must administer and enforce the Uniform Code.

58.    From June 2011 through to the present, the Uniform Code required and requires that the local government clearly identify the "persons, offices, departments, agencies or combinations thereof authorized and responsible for administration and enforcement of the Uniform Code." 19 N.Y.C.R.R. 1203.2(f).

59.    During the time period from June 2011 through to the present, the Town did not clearly identify the DHHS as a department or office or agency or combination thereof, or Folber, Powell, Biscardi, Quinlan, Lutzer, Moran or Belano as entities or persons authorized and responsible for administration and enforcement of the Uniform Code.

60.    The Uniform Code prohibits a local government from making an agreement "by which building permits, certificates, orders or appearance tickets related to administration and

enforcement of the Uniform Code are issued by other than public officers." 19 N.Y.C.R.R. 1203.2(e)(2).

61.     Every local government charged with the administration and enforcement of the Uniform Code shall provide for such administration and enforcement by local law, ordinance or other appropriate regulation. 19 N.Y.C.R.R. 1203.2(a). Any such instrument or combination thereof shall include the features described in 19 N.Y.C.R.R. 1203.3(a).

62.     Every local government charged with the administration and enforcement of the Uniform Code shall annually submit to the Secretary of State, on a form prescribed by the Secretary, a report ("Enforcement Report") of its activities relative to administration and enforcement of the Uniform Code. 19 N.Y.C.R.R. 1203.3(4).

63.     While a local government is not prohibited from adopting or enacting any building regulations relating to any matter that the Uniform Code does not provide, "no municipality shall have the power to supersede, void, repeal or make more or less restrictive any provisions of [Article 18] or of rules or regulations made pursuant hereto." Executive Law § 379(3).

64.     Subject to exceptions not applicable here, Executive Law § 383 preempts general New York State laws and Local Laws by providing that the "provisions of this article and of the uniform fire prevention and building code shall supersede any other provision of a general, special or local law, ordinance, administrative code, rule or regulation inconsistent or in conflict therewith."

65.     Executive Law § 382 sets forth the Uniform Code violations and penalties along with delegating to local governments and its authorized agents the power to order in writing the remedying of any condition found to exist in, on or about any building in violation of the Uniform Code and to issue appearance tickets for violations of the Uniform Code.

66.     Neither New York Executive Law Article 18 nor the Uniform Code delegates any power to local governments or their personnel to prosecute criminal violations of the Uniform Code.

67.     From sometime prior to June 2011 through the present, there were and are only two ways to be criminally in violation of the Uniform Code:

 (a). First, if a defendant is (1) "served, either personally or by registered or certified mail, with an order to remedy any condition found to exist in, on, or about any building in violation of the uniform fire prevention and building code" and (2) "fail[s] to comply with such order within the time fixed by the regulations promulgated by the secretary pursuant to subdivision one of section three hundred eighty-one of this article, such time period to be stated in the order."

(b). Second, if a defendant (1) is an "owner, builder, architect, tenant, contractor, subcontractor, construction superintendent or their agents or any other person," (2) "tak[es] part or assist[s] in the construction of any building,"  and (3) "knowingly violate[s] any of the applicable provisions of the uniform code or any lawful order of a local government, a county or the secretary made thereunder regarding standards for construction, maintenance, or fire protection equipment and systems."

68.     Until on or about December 2014, no time was fixed by any regulation promulgated by the New York State Secretary of State pursuant to subdivision one of Executive Law § 381, upon which a person, by an authorized officer, could be served any Executive Law § 382 order to remedy.

69.     During all times relevant herein, Executive Law § 382(2) set forth the criminal punishments for violating the Uniform Code: *to wit,* a violation "shall be punishable by a fine of not more than one thousand dollars per day of violation, or imprisonment not exceeding one year, or both."

70.     DOS Uniform Code Practice(s) in part were and are detailed in: (a) a DOS

publication entitled "Administration and Enforcement of the Uniform Fire Prevention and

Building Code and the Energy Conservation Construction Code", Revision Date: January 2008;

available at:

http://www.dos.ny.gov/lg/publications/Administration_and_Enforcement_of_the_Uniform_Code.

pdf  and (b) a DOS Office of General Counsel Legal Memorandum entitled **"**The Uniform Code

and Local Authority" dated July 2007 and available at http://www.dos.ny.gov/cnsl/lg07.htm

**F.  Town Code Relating to New York Executive Law Article 18 and the Uniform Code**

71.     Brookhaven has not opted out of enforcement of the Uniform Code.

72.     From sometime prior to June 2011 through on or about January 2014 Town Code

§ 16-2(A) provided:

> The Division of Building shall be responsible for the administration
> and enforcement of the New York State Uniform Fire Prevention
> and Building Code and all other applicable laws, ordinances, rules
> and regulations relating to the use, occupancy and/or construction of
> real property or buildings or structures located thereon, and such
> other matters as may from time to time be referred to such Division.
> Such general powers and duties shall be administered under the
> general supervision of the Commissioner of Building and Fire
> Prevention.

73.     Town Code § 16-2(A) presently provides:

> The Division of Building shall be responsible for the administration
> and enforcement of the New York State Uniform Fire Prevention
> and Building Code and all other applicable laws, ordinances, rules
> and regulations relating to the use, occupancy and/or construction of
> real property or buildings or structures located thereon, and such
> other matters as may from time to time be referred to such Division.
> Such general powers and duties shall be administered under the
> general supervision of the Commissioner of Planning, Environment
> and Land Management.

74.     From sometime prior to June 2011 to on or about January 2014, Town Code § 16-2(B) provided:

> The Chief Building Inspector, any Building and Zoning Inspector or any Building Inspector as designated by the Commissioner of Building and Fire Prevention shall have the full power, authority and responsibility to undertake and perform all acts and duties performed by the Chief Building Inspector in accordance with the Town Code. The Chief Building Inspector and any Building and Zoning Inspector and any Building Inspector as designated by the Commissioner pursuant to this subsection shall be subject to the supervision and direction of the Commissioner of Building and Fire Prevention.

75.     Town Code § 16-2(B) presently provides:

> The Chief Building Inspector, any Building and Zoning Inspector or any Building Inspector as designated by the Commissioner of Building and Fire Prevention shall have the full power, authority and responsibility to undertake and perform all acts and duties performed by the Chief Building Inspector in accordance with the Town Code. The Chief Building Inspector and any Building and Zoning Inspector and any Building Inspector as designated by the Commissioner pursuant to this subsection shall be subject to the supervision and direction of the Commissioner of Planning, Environment and Land Management.

76.     From sometime prior to June 2011 to on or about January 2014, Town Code § 16-2(C) required a "Chief Building Inspector, any Building and Zoning Inspector and any Building Inspector as designated by the Commissioner of Building and Fire Prevention in § 16-2B [to] possess the minimum experience and qualifications as established by the Suffolk County Department of Civil Service for the position of "Chief Building Inspector."

77.     Town Code § 16-2(C) presently requires a "Chief Building Inspector, any Building and Zoning Inspector and any Building Inspector as designated by the Commissioner of Planning, Environment and Land Management in § 16-2B [to] possess the minimum experience and

16

qualifications as established by the Suffolk County Department of Civil Service for the position of "Chief Building Inspector."

78.     From sometime prior to June 2011 to the present, the minimum qualifications for the Suffolk County Department of Civil Service for the position of "Chief Building Inspector" are as follows:

> (a) Graduation from a New York State or Regionally accredited college or university with a Bachelor of Science Degree in Architecture, Civil Engineering, Construction Technology or a related field and four (4) years of experience in building construction or inspectional or investigative work enforcing codes and ordinances relating to the safety of building structures and occupancy, three (3) years of which must have been in a supervisory capacity; or,

> (b) Graduation from a standard senior high school, vocational school or possession of a high school equivalency diploma and eight (8) years of experience as described in (a) above, three (3) years of which must have been in a supervisory capacity.

79.     From sometime prior to June 2011 to the present, all employees hired or retained as a Chief Building Inspector (or other inspector) have been required to successfully complete the required basic training program entitled Minimum Standards for Code Enforcement Personnel established by the State of New York Fire Fighting and Code Enforcement Personnel Standards and Education Commission within the appropriate time period as specified in the regulations, and upon completion and have been and are required to attend New York State's required in-service training programs.

80.     Town Code § 16-8 sets forth "penalties for offenses":

> A.     Any violation of the New York State Uniform Fire Prevention and Building Code shall be considered a violation of this chapter.

> B.     Any person who shall violate any of the provisions of this chapter, including the failure, refusal or neglect to comply with an order issued by the Chief Building Inspector, shall be guilty of a

17

misdemeanor and upon conviction thereof shall be punishable for a first offense by a fine not less than $1,000 and not to exceed $3,000 or a term of imprisonment not to exceed six months, or both; for a second offense by a fine not less than $3,000 and not to exceed $5,000 or a term of imprisonment not to exceed six months, or both; and for a third or subsequent offense within a five-year period, by a fine of not less than $5,000 and not to exceed $10,000 or a term of imprisonment not to exceed six months, or both.

C.   Each week, or part thereof, such violation continues following notification by the Town shall constitute a separate offense punishable in like manner.

D.   The owner or owners of any building or premises or part thereof, or any person in possession thereof where any violation of this ordinance has been committed or shall exist, and any architect, builder, contractor, agent, person or corporation who knowingly commits, takes part or assists in any such violation, or who maintains any building, structure or premises in which any such violation exists, shall each be guilty of a misdemeanor and upon conviction thereof shall be punishable for a first offense by a fine not less than $1,000 and not to exceed $3,000 or a term of imprisonment not to exceed six months, or both; for a second offense by a fine not less than $3,000 and not to exceed $5,000 or a term of imprisonment not to exceed six months, or both; and for a third or subsequent offense within a five-year period, by a fine of not less than $5,000 and not to exceed $10,000 or a term of imprisonment not to exceed six months, or both.

E.   In addition to the above penalty, any appropriate action or proceeding may be instituted or taken to prevent any unlawful construction, erection, alteration, repair, maintenance or use or to restrain, correct or abate any violation or to prevent the occupancy of any such building, structure or premises or to prevent any illegal act, conduct, business or use in or about such building, structure or premises.

81.   At all times relevant herein, Town Code § 30-8(H) vested and vests in the Division of Fire Prevention of the Town of Brookhaven ("Division of Fire Prevention") the authority "to enforce the applicable provisions of the [Uniform Code] in addition to any other laws, rules, codes or regulations duly adopted by the Code of the Town of Brookhaven."

18

82.     At all times relevant herein, the State Fire Prevention and Building Code Council ("Code Council") was and is required to approve Local Laws with a "more restrictive local standard" (or "MRLS"). One of the conditions for approval of a MRLS is that the MRLS is "reasonably necessary because of special conditions prevailing within the municipality".

83.     The Town has never notified and petitioned the Code Council for its approval within 30 days of the Town's passage of any of Town Code Ch. 16 or Ch. 82 Local Laws, nor has the Town received approval from the Code Council of any Town Code Ch. 16 or Ch. 82 Local Laws.

84.     The Town has never notified and petitioned the Code Council for its approval within 30 days of the Town's passage of any of Town Code Ch. 30 Local Laws, nor has the Town received approval from the Code Council of any Town Code Ch. 30 Local Laws except as otherwise provided as per http://www.dos.ny.gov/DCEA/mrls.html.

85.     All Town Local Laws containing a MRLS not petitioned and notified to the Code Council within 30 days of the passage of the Local Law were and are pre-empted by the Uniform Code.

86.     All Local Laws that duplicate the Uniform Code and have not expressly been authorized by the Code Council were and are pre-empted by the Uniform Code.

87.     At all times relevant herein, Town Code § 16-8 was and is inconsistent with and/or in conflict with the Uniform Code and was and is legally void.

88.     At all times relevant herein, Town Code § 30-16 provides for similar penalties for offenses as § 16-8 and was and is inconsistent with and/or in conflict with the Uniform Code and was and is legally void.

89.      At all times relevant herein, Town Code § 82-14 provides for similar penalties

19

for offenses as §§ 16-8 and 30-16 and was and is also inconsistent with and/or in conflict with the Uniform Code and was and is legally void.

90.     In its 2011 annual 19 N.Y.C.R.R. 1203.3(4) Enforcement Report to the DOS ("Enforcement Report"), the Town did not report Folber, Powell, Biscardi, Guendel, Moran, Lutzer, Belano, or Quinlan as among its officers administering and enforcing the Uniform Code.

91.     In its 2011 annual Enforcement Report, the Town did not list any Law Department or DHHS Personnel as administering and enforcing the Uniform Code or report the activities of any Law Department or DHHS Personnel as Town actors administering and enforcing the Uniform Code. Rather, the Enforcement Report only listed the administration and enforcement authority and enforcement activities of the Town's Chief Building Inspector Arthur Gerhauser ("Gerhauser") and of his subordinate officers.

92.     In a November 6, 2013 response to a FOIL request to the DOS, the DOS reported that the Town had not filed with the DOS the Town's required under 19 N.Y.C.R.R. 1203.3(4) 2012 Enforcement Report or any part thereof.

93.     On information and belief, the Town has not filed with the DOS the Town's required under 19 N.Y.C.R.R. 1203.3(4) 2012 Enforcement Report or any part thereof.

## INVESTIGATIONS

### A.  Initiation of Investigation

94.     On June 9, 2011, the District Court of the County of Suffolk, Fifth District dismissed two separate criminal actions, commenced and continued by the Town of Islip against Howard, one of which was brought under the Town of Islip's rental permit law.

95.     From on or about January 2008 to on or about January 2010, defendant Quinlan

20

served as the Town Attorney for the Town of Islip

96.     Joanne Folber, mother of Defendant Folber, was and is the Town of Islip Youth Bureau Executive Director.

97.     At all times relevant herein, the Town of Brookhaven's Youth Bureau has been and is part of the Town of Brookhaven's DHHS.

98.     Within two weeks of the dismissal of the two above referenced criminal actions involving the Town of Islip, Folber visited the Norfleet Property.

99.     In response to a FOIL request from Plaintiff, the Town did not produce any records identifying any complaints against the Norfleet Property that could or would have resulted in any complaint driven Town inspection or investigation of the Norfleet Property by Folber or by any other Town Personnel.

100.    From some time prior to June 2011 to the present, the Uniform Code required and requires local governments to keep records of complaints and investigations.

101.    Upon information and belief, the investigation of the Norfleet Property was initiated or instigated by or on request of Town of Islip officer(s) and was approved and condoned by Town officer(s).

**B.  Letter Orders**

102.    By letter order dated June 22, 2011, Folber ordered Owners to correct the following three alleged violations: (1) renting without a valid rental permit; (2) overhang on right of dwelling needs a permit; and (3) certificate of occupancy required for side overhang.

103.    The June 22, 2011 letter order was on Town letterhead and at the bottom stated, "BY DIRECTION OF COMMISSIONER VALERIE BISCARDI."

104.    The June 22, 2011 letter order was

a.  addressed to "Howard, Richard, & Jerome Norton" and mailed to Plaintiff's address in Syosset, NY ("Syosset Address");

b.  claimed to be sent in accordance with the Town Code and Property Maintenance Code of New York State;

c.  stated that the violations "must be addressed no later than July 6, 2011";

d.  stated: "Following your compliance an inspection will be conducted after the time listed above [July 6, 2011]";

e.  stated that "if it is found that the violation(s) still exist, **OR** that an inspection has not been requested an **appearance ticket(s) will be issued.**" (emphasis in original); and

f.  provided the following notice:

> **YOU ARE GIVEN NOTICE THAT FAILURE TO COMPLY WITH THIS ORDER CONSTITUTES AN OFFENSE PURSUANT TO THE NEW YORK STATE UNIFORM FIRE PREVENTION AND BUILDING CODE OR THE CODE OF THE TOWN OF BROOKHAVEN AND SHALL BE PUNISHABLE BY A FINE OR IMPRISONMENT OR BOTH**

105.    The June 22, 2011 letter order used a form that was directed for use and approved for use by DHHS Personnel by Biscardi.

106.    On June 30, 2011, Howard sent a letter addressed to Folber responding to the June 22, 2011 letter order.  The response:

a.  advised in that letter that the June 22, 2011 letter order was improperly mailed to him at the Syosset Address;

b.  addressed the legality of the overhangs and advised in the letter and through attachments that notwithstanding the legality of the overhangs, the overhang on the left or east side of the dwelling had been removed;

c.  complained that the Town's rental permit law (Town Code § 82-10 (the "Town Rental Permit Law")) was illegal and unconstitutional and threatened suit against the Town and individuals involved in the enforcement of that law;

d.  directed that future correspondence regarding the letter order be sent to his attorney; and

e.  was copied and sent by certified mail to Biscardi and Owens.

107.    After Howard's June 2011 letter but prior to Folber's July 11, 2011 visit to the

Norfleet Property, a meeting between Folber, Moran, and/or Biscardi took place to discuss the investigation of the Norfleet Property.

108.    Upon information and belief, at the meeting described in Paragraph "107" above, Moran advised and encouraged Biscardi to instruct and/or direct Folber to expand the investigation, including instructing and/or directing Folber, as a DHHS employee, to physically intrude upon the Norfleet Property (including among other areas, the curtilage thereof), although Moran and Biscardi knew that no prior search request had been approved by any or all of the Owners of the Norfleet Property and without a search warrant duly issued by an appropriate court and in the absence of exigent circumstances to obtain information relevant for criminal action(s), including but not limited to alleged violation(s) of the Town Code Ch. 82.

109.    Upon information and belief, at the meeting described in Paragraph "107" above, Moran advised and encouraged Biscardi, and Biscardi instructed and/or directed Folber, as a subordinate DHHS employee, to expand the investigation and to physically intrude upon the Norfleet Property (including, among other areas, the curtilage thereof), although Moran and Biscardi knew no prior search request had been approved by any or all of the Owners of the Norfleet Property, that  a search warrant had not been duly issued by an appropriate court, and that  there was an absence of exigent circumstances to justify obtaining information relevant for criminal action(s), including but not limited to alleged violation(s) of the Town Code Ch. 82.

110.    On July 11, 2011, Folber physically intruded upon the Norfleet Property without receiving the prior consent of any of the Owners of the Norfleet Property, and in the absence of a warrant duly issued by an appropriate court, or exigent circumstances. The intrusion was intended to obtain information to be used in connection with criminal investigation(s) and/or criminal prosecution(s), in violation of, *inter alia*, then Town Code §§ 82-8(B)-(C) and 82-9.

23

111.   From the time period of June 2011 through April 2012, none of the inspections or physical intrusions by Folber upon the Norfleet Property, took place while Folber was acting as a subordinate officer of Gerhauser.

112.   From the time period of June 2011 through April 2012, none of the violation notices, appearance tickets or accusatory instruments issued by Folber, took place while Folber was acting as a subordinate officer of Gerhauser.

113.   On July 11, 2011, Rachel Sims and Marc Sims were occupants of the Norfleet Property.

114.   On information and belief, during the fourth quarter of 2010, Folber attended New York State's Department of State's Introduction to Code Enforcement Practices 1 and 2 training class, and he was thereby trained to create and maintain contemporaneous written records detailing:

 (a) how on July 11, 2011, Folber determined whether or not he became authorized by any person(s) with sufficient power, dominion and control over the Norfleet Property to lawfully authorize Folber to conduct the on-site physical inspections and seizures of the Norfleet Property; and

(b) whatever he communicated on July 11, 2011 to any person(s) who he thought might permit him to lawfully conduct any on-site interior and/or exterior inspection(s) of the Norfleet Property (in order to potentially become authorized to conduct on-site interior and/or exterior inspection(s) and/or seizure(s) of said Norfleet Property).

115.   Despite his training, Folber did not create and did not maintain any contemporaneous written record(s) detailing how he purportedly became authorized by any person(s) with sufficient power, dominion and control over the Norfleet Property to lawfully conduct the on-site physical inspections and seizures he conducted on July 11, 2011.

116.   Despite his training, Folber did not create and did not maintain any contemporaneous written record(s) of what he on July 11, 2011 may claim he communicated to Marc Sims ("Sims") to become legally able to conduct the on-site interior and exterior inspections of the Norfleet Property he actually conducted on July 11, 2011, wherein he did take, seize and retain the photographs he took of the Norfleet Property.

117.   Despite his training, Folber did not create and maintain any contemporaneous written record(s) detailing what (if anything) Folber may claim Sims (in response) communicated back to him on July 11, 2011, prior to conducting the on-site interior and exterior inspections of the Norfleet Property he actually conducted on July 11, 2011, wherein he did take, seize and retain the photographs he took of the Norfleet Property.

118.   To gain access to the dwelling and entire Norfleet Property, Folber falsely advised Sims on July 11, 2011 that he (Folber) was at the Norfleet Property to do an interior and exterior inspection at the request of "Mr. Norton".

119.   The Sims were not authorized to permit an inspection of the Norfleet Property. However, since Folber misrepresented to Sims that the inspection was authorized by "Mr. Norton," Sims acquiesced to Folber's request to inspect the Norfleet Property.

120.   On July 11, 2011, Folber searched the Norfleet Property, including the house, basement and curtilage, and unlawfully and unconstitutionally seized, took and retained photographs of the exterior and interior of the house, basement and the curtilage of the Norfleet Property.

121.   In the morning of July 12, 2011, Folber visited Moran to discuss "new info" regarding the Norfleet Property investigation and sought Moran's direction.

122.     As a result of this inspection and the direction and/or instruction of Moran and/or Biscardi, Folber sent a letter order dated July 12, 2011 re-ordering the correction of the original three June 22, 2011 alleged violations and ordered the correction of an additional sixteen alleged violations (for a total of nineteen).

123.     The July 12, 2011 letter order:

   a.   was on Town letterhead and at the bottom stated that "BY DIRECTION OF COMMISSIONER VALERIE BISCARDI.";

   b.   was addressed and sent via certified mail to "Howard, Richard, & Jerome Norton" at Plaintiff's Syosset Address;

   c.   stated it was sent in accordance with the Town Code and Property Maintenance Code of New York State;

   d.   stated that the violations "must be addressed immediately.";

   e.   stated that a compliance inspection would take place after July 26, 2011;

   f.   contained the additional notice that, "if it is found that the violation(s) still exist, **OR** that an inspection has not been requested an **appearance ticket(s) will be issued.**" (emphasis in original); and

   g.   provided the same notice as the prior letter order:

> **YOU ARE GIVEN NOTICE THAT FAILURE TO COMPLY WITH THIS ORDER CONSTITUTES AN OFFENSE PURSUANT TO THE NEW YORK STATE UNIFORM FIRE PREVENTION AND BUILDING CODE OR THE CODE OF THE TOWN OF BROOKHAVEN AND SHALL BE PUNISHABLE BY A FINE OR IMPRISONMENT OR BOTH**

124.     The July 12, 2011 letter order used a form that Biscardi directed to be used and approved for use by DHHS Personnel.

125.     On July 13, 2011, Folber informed Moran that the letter order was sent by certified mail and told Moran that he would keep him updated if he hears anything further from Howard or his attorney.

126.     In response to the July 12, 2011 letter order, on July 26, 2011, Plaintiff both mailed

to Folber and hand delivered to the Town Clerk's office (for further delivery to Folber), a letter and attachments, including a six (6) page affidavit concerning the Norfleet Property.

127.    Plaintiff in his affidavit (a) objected to Folber's authority to administer or enforce the Town Code Chs. 16, 30, 45, 82, 85 or the Uniform Code, especially under the Commissioner of DHHS; and (b) objected to the Town Rental Permit Law as invalid and unconstitutional.

128.    A copy of the letter and enclosures were sent to Biscardi, Owens and Town Clerk Patricia Eddington ("Eddington").

129.    On August 3, 2011, Plaintiff sent Folber a letter, enclosing a copy of an electrical inspection certificate dated August 3, 2011 which stated in relevant part "66 Norfleet Lane [w]as examined and found to be in compliance with the Residential Code and Building Code of New York".  A copy of the letter and enclosure were sent to Biscardi, Owens and Eddington.

130.    In a August 26, 2011 letter order, Folber reissued the contents of the July 12, 2011 letter but made these changes (a) added toward the top of the letter it was the "final notice before tickets"; (b) substituted violation number two of "[o]verhang on right of dwelling needs a permit" with "Engineers report needed for front porch/porch roof"; and (c) required the Owners to schedule a compliance inspection no later than September 6, 2011.

131.    The August 26, 2011 letter was sent via certified mail to "Howard, Richard, & Jerome Norton" at Plaintiff's Syosset Address.

132.     The August 26, 2011 letter order made use of a form that was then directed for use (by DHHS Personnel) and approved by Biscardi..

133.    On September 6, 2011, in an attempt to show the lack of any violations, Plaintiff sent Folber a letter and enclosure in which letter Plaintiff repeated the information he had earlier conveyed to Smith, that Plaintiff would permit a warrantless inspection of the Norfleet Property by

the Town Chief Building Inspector or an authorized subordinate officer selected by him, if the Town Chief Building Inspector found the inspection necessary.

134.    A copy of this letter and enclosure were sent to Biscardi, Owens and Eddington and a copy of the letter and enclosure was faxed to Folber on September 6, 2011.

135.    On September 7, 2011, Folber again met with Moran to discuss the Norfleet Property investigation. Upon information and belief, Folber discussed with Biscardi his meeting with Moran and requested and had a second meeting that same day among the three of them.

**g.   Appearance Tickets and Attempted Service**

136.    Despite Folber having knowledge that Plaintiff was one of three owners of the Norfleet Property (as demonstrated by his multiple letters and Howard's response to the initial letter), in September 2011, Folber issued fourteen purported appearance tickets ("Appearance Tickets") to only Plaintiff.

137.    Upon information and belief, Folber issued no purported appearance tickets under either Town Code § 85-17 or under Town Code § 85-20 in an attempt to avoid any appeal to the Town Zoning Board of Appeals by Plaintiff, which was done in response to e-mails Plaintiff sent to then Assistant Town Attorney in the Law Department Julie Yodice informing her of his ability to make such an appeal.

138.    The factual section of all but three Appearance Tickets was left blank. Two just had the letters "Bm" and the other had the word "porch."

139.    All the Appearance Tickets stated that each and every alleged violation occurred at 11:51 a.m. on July 11, 2011.

140.    All Appearance Tickets notified Plaintiff that he must appear at the District Court of the County of Suffolk, Sixth District, in Patchogue, New York ("State Court") on December 22,

2011. This date was over three months from the date the Appearance Tickets were issued and the last session of State Court Town Ordinance Court proceedings before Christmas and the New Year.

141.    All Appearance Tickets required Plaintiff to arrive at the State Court at 9:00 a.m. even though from sometime prior to December of 2011 through April 19, 2012, State Court Town Ordinance Court proceedings at least as a general rule and on all days when Plaintiff's State Court criminal proceedings occurred, did not begin until at the earliest 9:30 a.m. (because the State Court Judge did not appear until at the earliest 9:30 a.m.). The Law Department typically used this time to speak with defendants to convince them to resolve the case(s). These defendants were mostly unrepresented by counsel and were unlikely to know whether an information was jurisdictionally defective because it, *inter alia*, contained hearsay, did not cover all exceptions to the statute, or lacked particular element(s) of proof. Once the State Court Town Ordinance Court proceedings began, the Law Department continued to speak with and negotiate settlement pleas with unrepresented defendants both inside and outside the courtroom.

142.    Any alleged violations of Town Code §§ 82-3E, 82-3F and 82-10 were and are legally void because each such Town Code section was and is inconsistent with and/or in conflict with the Uniform Code and/or unlawful under New York Town Law § 262 and/or unlawful under New York General Municipal Law 239-m and/or the alleged conduct was not unlawful and/or any proscribed conduct was not clearly defined (constitutionally void for vagueness) and/or because any alleged violations of Town Code §§ 82-3E, 82-3F and 82-10 lacked reasonable or probable cause and were facially insufficient under CPL § 100.40, and/or because Folber was an unauthorized complainant and/or because any alleged violation of Town Code §§ 82-3E, 82-3F and 82-10 could not (and cannot be) lawfully criminally prosecuted under any power any defendant(s) may claim arose/arise from New York Executive Law Article 18 or from the Uniform Code.

29

143.     On September 9, 2011, Folber requested Moran meet with him and Biscardi and informed Moran that the appearance tickets for multiple violations were issued and would be served the following week.

144.     Despite issuing the Appearance Tickets, Folber did not serve them on Plaintiff.

145.     Instead, Folber (and/or another public officer or officer(s) at the Town) hired or delegated the service of the Appearance Tickets to a private investigation firm, Robert Guendel Private Investigations, Inc. ("RGPI"), owned by Robert Guendel ("Guendel").

146.     Guendel was not a Town public servant, nor was he authorized by state law or local law to issue and/or to serve appearance tickets.

147.     Guendel certified, in a claim voucher he sent on behalf of RGPI, that the Town authorized him to serve Plaintiff.

148.     On September 16, 2011, non-public servant Guendel was not given permission to pass through the gatehouse of Plaintiff's Syosset community to attempt service.

149.     Notwithstanding, Guendel swore in two affidavits of service he executed on September 19, 2011, he, on September 16, 2011 served the Appearance Tickets upon a Kevin O'Grady ("O'Grady"), a resident at Plaintiff's Syosset Address. Guendel swore in the two affidavits that he mailed a copy of the Appearance Tickets to Plaintiff's Syosset Address.

150.     On September 16, 201, Guendel lacked reasonable cause to believe that Plaintiff had committed the crimes alleged in the misdemeanor level Appearance Tickets he allegedly served upon O'Grady.

151.     On September 16, 201, Guendel lacked reasonable cause to believe that Plaintiff had committed in his presence, the petty offenses alleged in the violation level Appearance Tickets he allegedly served upon O'Grady.

152.     Upon information and belief, Grady was a gatehouse guard or attendant at the front entrance to Plaintiff's condominium community, but at no times was he a resident at the Syosset Address.

153.     RGPI was paid $565.00 from the Town for its purported services.

**h.  Continued Good Faith Efforts to Show Compliance**

154.     On September 19, 2011, Plaintiff met with Owens in her Town office regarding the Norfleet Property.

155.     During that meeting, Owens advised Plaintiff she had e-mailed and otherwise communicated with Biscardi earlier that month about Plaintiff's desire to resolve any concerns the Town might have regarding the Norfleet Property by means other than litigation.

156.     Plaintiff offered Owens, who Plaintiff knew to be a longtime Gordon Heights resident and a daughter of Elsie Owens (a longtime Gordon Heights and Suffolk County civil rights leader) an opportunity to inspect the Norfleet Property.

157.     In response to Plaintiff's offer, Owens advised Plaintiff that Biscardi had instructed her both by e-mail and orally to "stand down" from any further involvement regarding Plaintiff and the Norfleet Property.

158.     Owens advised Plaintiff that Biscardi intended to see Plaintiff criminally prosecuted and that if any future criminal charges were ever to be dropped, it would have to be the State Court that dismissed them.

159.     Owens mentioned to Plaintiff, that the Town's private property owners sometimes send photographs to Town personnel to show the conditions of a property.

160.     On September 20, 2011, Plaintiff mailed Folber a letter that contained a CD containing fifty-six photographs of the Norfleet Property taken on September 19 and 20, 2011.

These photographs concerned the alleged violations in Folber's letter orders. Also attached was a fire underwriter's certificate of compliance. On September 20, 2011, Plaintiff also faxed the letter to Folber.

161.    In the September 20, 2011 letter, Plaintiff repeated his earlier offers to permit a warrantless inspection of the Norfleet Property, limited to the Town Building Inspector or an authorized subordinate officer from his department, if the Town Building Inspector found the inspection necessary.

162.    Copies of the September 20, 2011 letter, with enclosures, including copies of the fifty-six photographs were also sent to Biscardi, Owens and Eddington.

163.    On September 20, 2011, Folber requested Moran to meet with him and Biscardi because Biscardi wanted to clarify something regarding the Norfleet Property investigation.

164.    On October 4, 2011, Folber requested to speak to Moran about a FOIL request concerning his files on the Norfleet Property. Folber's files regarding the Norfleet Property inspections and/or investigations were not disclosed in full in response to Plaintiff's FOIL request.

165.    On December 8, 2011, Plaintiff received a DHHS envelope containing an unsigned notice purportedly adjourning his State Court Town Ordinance Court appearance date.

166.    On December 12, 2011, Plaintiff sent by first class certified mail, nine separate notices of claims alleging wrongdoing by the Town and by Town officer(s) ("Notices") to both the Town Clerk and to Town Attorney Quinlan with regard to, among other, nine of the fourteen Appearance Tickets Folber issued to Plaintiff.

167.    On December 18, 2011, Bryan Van Cott a partner at the law firm of Twomey, Latham, Shea, Kelley, Dubin & Quartararo LLP ("Twomey Latham") wrote Quinlan a letter concerning Plaintiff, the Norfleet Property and the Appearance Tickets.

168.    The Town and the Town Attorney Quinlan failed to take any necessary corrective action(s) in response to Plaintiff's complaint Notices and/or to Plaintiff's attorneys December 18, 2011 letter. Instead, one Town issued, defective notice of examination was sent to Plaintiff.

169.    Plaintiff, prior to December 22, 2011, visited the State Court to determine whether accusatory instruments had been filed in time for the December 22, 2011 appearance date and was advised that they were not filed yet.

170.    On March 22, 2012, Moran advised Van Cott that Lutzer reviewed all of the Accusatory Instruments for jurisdictional sufficiency (to determine if each and every one of the Accusatory Instruments was jurisdictionally sufficient or not) prior to the time the Accusatory Instruments were presented for filing in the State Court.


171.    On January 11, 2012, Reza Ebrahimi ("Ebrahimi") an associate at the law firm of Twomey Latham called the Law Department to inquire about Plaintiff's appearance date. In response to Ebrahimi's call, a copy of another purported adjournment notice dated January 3, 2012 was faxed to Ebrahimi, this time purportedly adjourning the appearance date from January 12, 2012 to February 2, 2012. It does not appear that the Law Department or Town separately sent this notice directly to Plaintiff in connection with the criminal actions.

<u>CRIMINAL ACTIONS</u>

A.  <u>Accustory Instruments</u>

172.    Months after he issued the Appearance Tickets, Folber signed and swore under the penalty of perjury to fourteen separate accusatory instruments, dated January 3 or 4, 2012 (collectively "Accusatory Instruments").

173.    Upon information and belief, Powell was Folber's immediate supervisor and

supervised Folber in the drafting and issuance of the Accusatory Instruments. No investigation notes or any other such writings ("Investigative Notes") detailing the alleged violations found during Folber's visits to the Property were disclosed in response to a FOIL request made by Plaintiff. Thus, it can be inferred that either Folber under Powell's supervision drafted the detailed Accusatory Instruments based upon the Letter Orders, Appearance Tickets, some photographs and his memory but without the use of any Investigative Notes or that Folber and/or Powell wrongfully concealed or destroyed the Investigative Notes and any other documents used to draft the Accusatory Instruments.

174.    Folber (at the direction of Moran and Biscardi and with the assistance of Powell) acted in clear absence of jurisdiction with respect to the issuance of the Accusatory Instruments as he was not empowered under any local or state law to enforce violations of the Uniform Code or Town Code Chs. 16, 30, or 82.

175.    The Accusatory Instruments dated January 3, 2012 accused Plaintiff of the three violations first appearing in the initial June 22, 2011 letter order.

176.    The Accusatory Instruments dated January 4, 2012 accused Plaintiff of 11 additional violations.

177.    Despite Folber knowing Plaintiff was one of three owners of the Norfleet Property, Folber issued the Accusatory Instruments against only Plaintiff.

178.    Six of the Accusatory Instruments charged Plaintiff with violating the Uniform Code ("Uniform Code Accusatory Instruments"). At all times these Uniform Code Accusatory Instruments were facially insufficient because, among other things: a) they failed to allege that Plaintiff did not comply with the letter orders; or (b) that Plaintiff was "taking part or assisting in the construction of" the buildings when he "knowingly violated" a provision of the Uniform Code,

and (c) there was no time fixed by regulations promulgated by the New York State Secretary of State pursuant to subdivision one of § 381 of Article 18 of the Executive Law existed, upon which any person could, by an authorized officer, be served an order to remedy under Executive Law § 382. See also the New York State Technical Bulletin issued January 12, 2015 at www.dos.ny.gov/DCEA/pdf/TB_OrderRemedy_01122015.pdf .

179.    When the phrase "facially insufficient" or "facial insufficiency" appears in this Third Amended Complaint such shall mean and include the words "jurisdictionally defective" and vice versa.

180.    Folber falsely included within the Accusatory Instruments that the July 12, 2011 letter order required compliance by July 26, 2011 when the letter order required compliance "immediately" and stated that a compliance inspection would take place after July 26, 2011.

181.    Folber falsely included within the Accusatory Instruments that the August 26, 2011 letter order required compliance by September 6, 2011 when the letter order required compliance "immediately" and stated that the Owners were required to schedule a compliance inspection no later than September 6, 2011.

182.    Plaintiff's repeated good-faith efforts to show compliance negate any reasonable belief that Plaintiff was in violation of the Uniform Code both at the time compliance inspections were demanded of him and when the Accusatory Instruments were issued. Folber never attempted to seek a search warrant (and upon information and belief never conducted any re-inspection of the Norfleet Property) to determine whether the violations he alleged to have existed in the July 12, 2011 letter order or in the August 26, 2011 letter order still existed.

183.    That Folber thought it necessary to detail his efforts at ordering Plaintiff to correct or remedy the alleged violations and the alleged failure to correct or remedy because of a lack of

an inspection infers that Folber knew under then Town Practice(s) that he could not charge Plaintiff for any violation without providing Plaintiff a prior order to correct or remedy.

184.    Folber falsely asserted in the Accusatory Instruments that a compliance inspection could not be performed. Plaintiff specifically and timely advised that he would permit the Chief Building Inspector or an authorized representative of the Chief Building Inspector to perform such compliance inspection.

185.    No Town agent, officer or employee ever sought or applied for a search warrant to confirm whether the purported violations Folber alleged to have existed in his June 22, 2011 or July 12, 2011 or August 26, 2011 letter orders ever existed in the first place or were remedied.

186.    Neither Gerhauser nor any of his subordinate officers ever inspected or physically intruded upon the Norfleet Property during the period June 2011 through April 2012.

187.    Neither Gerhauser nor any of his subordinate officers ever issued Plaintiff any violation notice(s), appearance ticket(s) or accusatory instrument(s) regarding the Norfleet Property during the period June 2011 through April 2012.

188.    Neither Gerhauser nor any of his subordinate officers ever requested or demanded the Owners or any owner or owners of the Norfleet Property consent to any warrantless or warranted inspection of the Norfleet Property during the period June 2011 through April 2012.

189.    Folber, via letter orders dated June 22, 2011, July 12, 2011 and August 26, 2011 demanded Plaintiff submit to a warrantless inspection of his Norfleet Property. The submission to a required warrantless inspection upon the threat of criminal charges constitutes a circumvention of the Fourth Amendment.

190.    The accusatory instrument that charged Plaintiff with violation of Town Code § 30-9 stated no allegation(s) regarding the Division of Fire Prevention or orders by the Town Chief Fire

Marshal, despite § 30-9 explicitly requiring actions by the Division of Fire Prevention and orders by the Town Chief Fire Marshal.

191.    For the two accusatory instruments alleging a violation of Town Code § 16-3, Folber used a different and older version of Town Code § 16-3 no longer in effect during the period July 2011 through April 2012.

192.    All the Accusatory Instruments stated that the information contained therein was based on the personal knowledge of Folber and upon information and belief derived from a search of unknown Town of Brookhaven Building Department, Assessor's office and/or Department of Motor Vehicles records.

193.    All the Accusatory Instruments did not identify, let alone clearly identify the parts of the factual portion that were based on Folber's personal knowledge or upon information and belief.

194.    No records were attached to any of the Accusatory Instruments.

195.    No supporting depositions were attached to any of the Accusatory Instruments.

196.    All the Accusatory Instruments were facially insufficient.

197.    Based on the above and other defects described in Plaintiff's notices of claim (incorporated herein and which may not be exhaustive of the defects), there lacked reasonable or probable cause for the prosecutions upon the Accusatory Instruments.

198.    Folber caused the Accusatory Instruments to be submitted to the Law Department.

**B.  Commencement of Criminal Actions and a Knowledge of a Lack of Judicial Scrutiny**

199.    On January 12, 2012, the Accusatory Instruments and Guendel's two signed affidavits of service were filed with the State Court.

200.    Where an accusatory instrument is filed as a result of an appearance ticket issued

by a police officer or other public servant, CPL §§ 120.20, 130.30, and 150.50 require a court to dismiss a facially insufficient accusatory instrument that cannot be remedied based on available facts or evidence.

201.    The State Court, during all relevant times, systematically failed to review filed accusatory instruments for facial sufficiency and to determine whether dismissal under CPL §§ 120.20, 130.30, and 150.50 was appropriate.

202.    When the State Court issued summons(es) or arrest warrant(s) for a defendant's alleged failure to appear pursuant to CPL § 150.60, the State Court, during all relevant times, also systematically failed to review the accusatory instrument(s) for facial sufficiency as required by CPL § 120.20 and CPL § 130.30 and/or to determine whether the appearance ticket(s) was/were properly issued and/or served as required by CPL § 150.60.

203.    The State Court, during all relevant times, systematically failed to provide individuals accused of violations of New York State laws, Local Laws (carrying a term of imprisonment) legal representation as required by County Law Article 18-B and CPL § 170.10. County Law § 722 mandates: "The governing body of each county and the governing body of the city in which a county is wholly contained shall place in operation throughout the county a plan for providing counsel to persons charged with a crime . . ." For purposes of Article 18-B of the County Law, the term "crime" includes "the breach of any law of this state or of any law, local law or ordinance of a political subdivision of this state, other than one that defines a 'traffic infraction,' for which a sentence to a term of imprisonment is authorized upon conviction thereof." County Law § 722-a.

204.    Defendants submitted the facially insufficient accusatory instruments with the knowledge of the State Court's Practice(s).

38

205.    The Individual Defendants herein, Daniel Belano ("Belano"), an Assistant Town Attorney, and the Law Department knew that if Plaintiff did not settle with the Town, he would be forced to undergo time consuming and costly legal practice to have the Accusatory Instruments dismissed.

**C.  The Criminal Actions**

206.    On February 2, 2012, Plaintiff's attorney Van Cott hand delivered to the State Court a letter with attachments concerning Plaintiff and the Norfleet Property.  In that letter and attachments, Van Cott complained that the Accusatory Instruments filed in the State Court against Plaintiff lacked reasonable (probable) cause, were jurisdictionally insufficient, and also complained that any alleged service of the Appearance Tickets upon Plaintiff was ineffective as a matter of law. A copy of the letter with attachments was hand delivered to Lutzer on February 2, 2012 prior to the commencement of the State Court's Town Ordinance proceedings.

207.    On February 2, 2012, prior to the time Judge James P. Flanagan ("Judge Flanagan") appeared in the State Court to commence the State Court's Town Ordinance proceedings for that day, Van Cott, among other things, complained to Lutzer about the Accusatory Instruments. Lutzer rejected Van Cott's complaints.

208.    Later in the day on February 2, 2012, an arraignment before Judge Flanagan was held on the Accusatory Instruments (BRTO 0057A and 0057B). Moran purported to appear on behalf of the People. On this date and on the days the State Court held other arraignments regarding Plaintiff, the Court's docket sheet outside the courtroom listed Plaintiff's name and the criminal actions against him.

209.    Plaintiff did not appear on February 2, 2012.  Instead, Van Cott, with Ebrahimi, appeared before Judge Flanagan on Plaintiff's behalf to, among other, further challenge the

sufficiency of the charges and the Town's authority to bring them. Neither Van Cott nor Ebrahimi was authorized to consent to any arraignment or adjournment and neither consented to any arraignment or adjournment.

210.    Judge Flanagan, in line with the State Court's Practice of a lack of judicial scrutiny, acknowledged that he had received Van Cott's February 2, 2012 letter and attachments but said that he was not going to read same (although as a precondition to the exercise of any actual judicial power Judge Flanagan then possessed to arraign or to issue any criminal summons or arrest warrant against Plaintiff: a) the United States Constitution, the New York State Constitution and New York law all work together to protect an accused from being compelled to answer for any particular alleged offense(s) (in any criminal proceeding(s)) except upon reasonable or probable cause (based upon an oath or affirmation) from legally set up, unbiased complainant(s), that said accused has committed the particular alleged offense(s) and also that; b) the information used to accuse the person of any alleged offense(s) was and is required (under CPL § 100.40) to contain sworn first-party allegations on every element of the offense and of the accused's commission thereof).

211.    Instead, Judge Flanagan suggested that Plaintiff be arraigned and then make a motion. Despite provisions of the CPL to the contrary, Judge Flanagan stated on the record that he could not grant a dismissal based on the letter, "no matter how true the contents may be." Moran did not inform the judge that this was untrue and that the State Court had an independent duty to review each and every one of the filed Accusatory Instruments.

212.    Despite not reviewing the Accusatory Instruments for facial sufficiency, Judge Flanagan in an off-the-record discussion, and then on the record, told Moran to bring an arrest warrant with him at the next appearance and if Plaintiff is not there, he would sign the arrest warrant for immediate execution.

213.    Judge Flanagan announced in open court that he was accelerating State Court procedure in the cases because there were allegations against Mr. Norton that he was threatening life because of a lack of smoke detectors, carbon monoxide detectors, and locked doors. Had Folber included in or with his Accusatory Instruments Plaintiff's attempts to show his compliance and the evidence Folber had of Plaintiff's attempts to show his compliance, and/or had the Law Department provided Judge Flanagan with Plaintiff's attempts to show his compliance, then Judge Flanagan's defamatory statements would not have been made (and such charges would not have even been brought since Plaintiff was in compliance).

214.    Judge Flanagan also threatened that if the Town did not get the chance to re-inspect the Norfleet Property and dwelling, he would sign an order to show cause to "shut down the place."

215.    Judge Flanagan announced "NAD" (no appearance defendant) and ordered the cases be placed on the February 9, 2012 State Court Town Ordinance calendar. Judge Flanagan did not order any "notice" of the February 9, 2012 date be communicated to Plaintiff, nor did any Town prosecutor request the Court send any notice to Plaintiff of the February 9, 2012 date or send any notice to Plaintiff of the February 9, 2012 date.

216.    On February 8, 2012, Judge Flanagan ex-parte called Peter Mott ("Mott"), a partner at Twomey Latham to request Mott speak with Van Cott to get Plaintiff to appear in the State Court on February 9, 2012. Mott spoke with Van Cott on February 8, 2012 and conveyed to Van Cott the substance of Judge Flanagan's conversation with him concerning Plaintiff.

217.    On February 9, 2012, Van Cott hand delivered to the State Court a letter with enclosures concerning Plaintiff and the Norfleet Property. In his letter, Van Cott, among other things, complained that the Accusatory Instruments filed in the State Court were not facially sufficient and were not jurisdictionally valid. Van Cott also complained about the validity and lack

of due service of the Appearance Tickets. Van Cott also enclosed a copy of two electrical inspection certificates dated August 3, 2011 and February 8, 2012 both of which stated in relevant part "66 Norfleet Lane [w]as examined and found to be in compliance with the Residential Code and Building Code of New York". A copy of the letter with enclosures was hand delivered to Moran on February 9, 2012. The August 3, 2011 electrical inspection certificate was the same one sent to Folber prior to the issuance of the Accusatory Instruments and the February 8, 2012 electrical inspection certificate confirmed that Plaintiff remained in compliance since August 3, 2011.

218.　　On February 9, 2012, an arraignment was held. Moran purported to appear on behalf of the People. Plaintiff did not appear, but Van Cott was present to address any issues the Judge had with the letters he submitted on behalf of his client.

219.　　Judge Flanagan acknowledged he received the February 9, 2012 letter and handed it to the State Court clerk. Judge Flanagan remarked that the "Court will not read or entertain the letter."

220.　　Judge Flanagan requested Moran provide him with "the warrant" but Moran did not have it. Moran said he would have the arrest warrant by the close of the business day. Judge Flanagan told Moran to track him down in Riverhead and he will sign it.

221.　　On February 9, 2012, Belano applied for two arrest warrants on the Accusatory Instruments. The arrest warrants asserted that Plaintiff was personally served with a Field Appearance Ticket, that Plaintiff had failed to appear as directed "2/2/12 to 2/9/12 FOR WARRANT APPLICATION," was not likely to respond to a summons, and an arrest warrant was requested because Plaintiff had "a history of non-appearance as he failed to appear on February 9, 2012".

222.    On February 15, 2012, Van Cott wrote, and on February 16, 2012 hand delivered to the State Court a letter concerning Plaintiff and the Norfleet Property. In the letter, Van Cott, among other things, complained that the Accusatory Instruments filed in the State Court against Plaintiff were "clearly facially invalid and jurisdictionally defective for numerous reasons" and that Suffolk County District Attorney Thomas J. Spota ("District Attorney") had not delegated authority to the Law Department to prosecute the Accusatory Instruments.  A copy of the letter was faxed to the Law Department.

223.    On February 16, 2012, a warrant calendar proceeding was held on the Accusatory Instruments. Lutzer purported to appear on behalf of the People. Plaintiff did not appear.

224.    Judge Flanagan said that the files for the proposed warrant calendar proceedings were not in the courtroom. Judge Flanagan adjourned the proposed warrant calendar proceedings on the State Court's calendar for that day until "next week".

225.    On February 22, 2012, Van Cott sent an overnight letter and enclosure to Judge Flanagan questioning the authority of Moran and the Town Attorney's office to prosecute any criminal matters, including the then pending criminal actions against Plaintiff. Van Cott demanded that Quinlan and the other attorneys in the Law Department provide proof of their authority(ies) to prosecute the Accusatory Instruments and the violations charged therein.  The letter and enclosure was also sent to Moran.

226.    On February 22, 2012, Quinlan telephoned John Shea ("Shea"), a partner at Twomey Latham, and complained to him about Twomey Latham's defense of Plaintiff and requested Twomey Latham withdraw as Plaintiff's defense counsel.

227.    Within about 24 hours from the end of their above conversation, Shea again spoke

with Quinlan and either advised Quinlan in that conversation that his request that Twomey Latham withdraw was declined or Quinlan during their later conversation withdrew his request.

228.    On February 23, 2012, Quinlan met ex-parte with Judge Flanagan at the State Court about Van Cott's complaints and requests that Plaintiff be provided authority showing the Law Department's ability to prosecute the Accusatory Instruments.

229.    On February 23, 2012, warrant calendar proceedings were held on the Accusatory Instruments. Moran purported to appear on behalf of the People. Plaintiff did not appear.

230.    When Moran called the warrant calendar for Plaintiff, Judge Flanagan questioned whether there was a warrant calendar that day. In response, Moran said, "We do, your Honor. Since no one's stepping up, your Honor, no call, withdrawn." Judge Flanagan then told Moran, "Yeah, Mr. Moran, I have to do a notify on it." Moran responded "10-4".

231.    Judge Flanagan then stated that "we've reviewed the allegations and I'm going to do a notify for no appearance and we'll issue the arrest warrant."

232.    In Moran's presence, Judge Flanagan then told Van Cott to step up and returned Van Cott's letters (and attachments) he had sent to the State Court. Again, Judge Flanagan acknowledged his belief that that the Court could not recognize the contents of the letters and said that they were of no probative value. Judge Flanagan told Van Cott not to send him any more letters.

233.    On or about February 24, 2012, a written State Court notice ("Court Notice") to appear on March 8, 2012 for the Accusatory Instruments was mailed to Plaintiff at Plaintiff's Syosset Address from Judge Madeleine Fitzgibbon ("Judge Fitzgibbon").

234.    At all times relevant herein, Court Notice was sent pursuant to the State Court Practice(s) of sending a letter via first class mail containing the following warning:

>        You failed to appear on your scheduled court date. Your case has been
>        adjourned for you to appear on [Weekday, Month, Day, Year], at 9:30AM.

…

Failure to appear in court in response to an appearance ticket is itself a separate violation of the Penal Law 215.58 with which you may be charged.

Your failure to appear at the time and place indicated above, may result in a warrant being issued for your arrest without further notice. If you are arrested pursuant to such warrant, you will be held in custody without bail until such time that you can be produced before a judge of this court.

…

235.    The above Court Notice was materially misleading because it omitted that: (a) Penal Law's § 215.58 failure to appear in response to any appearance ticket(s) only applies to crimes, not violations, and only if the related appearance ticket was timely and properly personally served by a public servant authorized under law to serve; (b) no jurisdictionally sufficient accusatory instrument and no jurisdictionally sufficient appearance ticket for any alleged crime or violation had been filed against Plaintiff in the State Court; (c) no jurisdictionally sufficient accusatory instrument and no jurisdictionally sufficient appearance ticket for any alleged crime or violation had been properly issued and served upon Plaintiff or filed against Plaintiff in the State Court by the December 22, 2011 date listed on the Appearance Tickets;  and (d) a court may not issue an arrest warrant if a summons can be issued instead (CPL § 120.20).

236.    While CPL § 120.20(3) permitted and permits the State Court to authorize the district attorney to direct a defendant to appear for arraignment upon a jurisdictionally sufficient accusatory instrument instead of issuing a summons or arrest warrant itself, nowhere did or does it permit or authorize the State Court to provide Court Notice or any other type of court notice upon Plaintiff.

237.    On March 6, 2012, the law firm of Leeds Brown Law, P.C. (f/k/a Leeds Morelli & Brown, P.C.) sent a letter with enclosures to Judge Fitzgibbon complaining on behalf of Plaintiff that (among other things) the Accusatory Instruments were jurisdictionally defective. A copy of the

45

letter with the enclosures was sent to both Moran and to the County District Attorney.

238.    On March 8, 2012, Lutzer applied for two criminal summonses on the Accusatory

Instruments. Lutzer falsely included in the summons application that Plaintiff had been personally

served a summons as defined in CPL § 130 on September 16, 2011 at his Syosset Address. CPL §

130 defines a summons as "process issued by a local criminal court directing a defendant designated

in an information . . . to appear before it at a designated future time in connection with such

accusatory instrument." No accusatory instrument existed in September 2011 upon which any judge

could even direct Plaintiff to appear.

239.    On March 8, 2012, an arraignment was held on the Accusatory Instruments. Moran

purported to appear on behalf of the People.  Plaintiff did not appear.

240.    Moran asked to amend the applications for arrest warrants applications to

applications for criminal summonses. Judge Flanagan stated on the record he had mistakenly signed

Belano's two February 9, 2012 arrest warrant applications but that the warrants were not approved.

241.    The arrest warrant applications were returned to Moran. It appears that portion(s)

of the arrest warrant applications have been whited-out.

242.    Instead of entertaining the application for criminal summons, Judge Flanagan *sua
sponte,* ordered a notice to Plaintiff. Judge Flanagan noted on the record that apparently a line of

cases others had been following require it. Judge Flanagan ordered the Town to send a notice to

Plaintiff.

243.    Moran requested the proceedings be adjourned to March 22, 2012. The State Court

adjourned the proceedings to March 22, 2012.

244.    Lutzer issued and caused to be mailed to Plaintiff a letter dated March 8, 2012 that

said in part "your failure to appear on March 22, 2012 may result in the issuance of the

aforementioned criminal summons."

245.    The March 8, 2012 Town notice was not authorized under the CPL or otherwise permitted.


246.    Van Cott, by a letter dated March 19, 2012 addressed to Moran, among other things, complained to the Town that the Uniform Code Accusatory Instruments were jurisdictionally defective and that the Town lacked the power to prosecute alleged violations of New York State laws. Van Cott asked the Law Department to "withdraw or otherwise voluntarily dismiss all six (6) NYS Code Violation Accusatory Instruments."

247.    On March 19, 2012, Leeds Brown Law sent by overnight mail and by facsimile a letter and enclosure to the County District Attorney complaining that the Town lacked the power to prosecute Plaintiff, the Accusatory Instruments against Plaintiff were jurisdictionally defective and alleged NYS Uniform Code violations that the Town lacked the power to prosecute. A copy of the letter without the enclosures was sent to Moran.

248.    On or about March 22, 2012, in response to the complaints and after follow-up telephone calls were placed to the County District Attorney's office, the County District Attorney telephoned Quinlan and directed Quinlan to immediately move to dismiss the Uniform Code Accusatory Instruments.

249.    On March 22, 2012, an arraignment was held. Moran purported to appear on behalf of the People. Plaintiff did not appear.

250.    Moran began the appearance by noting that the State Court approved the criminal summonses but it may need some more time to prepare them. The State Court clerk confirmed during the March 22, 2012 appearance that the Judge signed the criminal summonses the day before.

Therefore, the State Court had approved the criminal summonses for each and all fourteen (14) alleged crimes and violations in the Accusatory Instruments.

251.    Meanwhile, Moran moved to dismiss the six Uniform Code Accusatory Instruments on the basis that after "a careful review of those accusatory instruments" they have been deemed insufficient. The State Court granted Moran's motion, which it stated, was on CPL § 170.35 grounds, despite the fact that Plaintiff had never been arraigned on any of the six Uniform Code Accusatory Instruments. A § 170.35 dismissal is permitted only after arraignment and only on motion of a defendant.

252.    The State Court set a date for the criminal summonses. Moran requested a service date of April 19, 2012; a date that was more than 90 days after the Accusatory Instruments were filed. The State Court clerk questioned Moran whether it needed to be on the following week and Moran said no.

253.    On March 22, 2012, Moran told Van Cott that the Uniform Code Accusatory Instruments were being dismissed because (1) Folber did not re-inspect the Norfleet Property and confirm noncompliance after his alleged mailing of the letter orders and (2) the accusatory instruments did not contain the legally required factual allegations of such re-inspection and of a finding of non-compliance.

254.    The two separate criminal summonses ("Summonses") were issued by the State Court under the name of Judge Fitzgibbon to be served by "COMPLAINANT: INVESTIGATOR, BROOKHAVEN TOWN ATTORNEY'S OFFICE".

255.    Notwithstanding the State Court criminal summons instructions limiting the person authorized to serve the Summonses, the Town through its Law Department contracted with RGPI to serve Plaintiff instead.

256.    On April 2, 2012, non-public servant Guendel was not given permission to pass through the gatehouse of Plaintiff's Syosset community in an attempt to serve the Summonses.

257.    Notwithstanding, on April 2, 2012, Guendel purported he served the Summonses upon a person who was not the Plaintiff.

258.    Guendel certified in a claim voucher he sent to the Town on behalf of RGPI that he was authorized to serve and did on April 2, 2012 serve Plaintiff.

259.    RGPI requested and received from the Town $90.00 for its alleged services.

260.    On April 4, 2012, Van Cott faxed and sent by first class mail a letter to Moran regarding the pending criminal actions against Plaintiff.  The letter informed Moran that two accusatory instruments of the then eight remaining were defective for the same reasons Moran on March 22, 2012 had given to Van Cott for the dismissal of the Uniform Code Accusatory Instruments.

261.     At no time relevant herein, did the County District Attorney's office and/or the Law Department announce to the State Court and/or mail to Plaintiff, within the time period mandated by CPL § 30.30 its readiness for trial on the Accusatory Instruments.

262.    On April 17, 2012, Van Cott wrote to Moran and in the letter, *inter alia*, advised Moran that the Town prosecutors had failed to be ready for trial within 90 days of the commencement of the remaining Accusatory Instruments and were in violation of Plaintiff's speedy trial rights as guaranteed by CPL §§ 30.20 and 30.30(1)(b).

263.    On April 19, 2012, Lutzer purported to appear on behalf of the People. Lutzer moved to dismiss the remaining eight Accusatory Instruments based on "170.40 failure to serve a criminal summons." Plaintiff was never arraigned on these eight remaining Accusatory Instruments. The State Court granted the application but did not, upon issuing the order, provide

the reasons on the record for such dismissal as required by CPL § 170.40(2).

264.    To dismiss an action under CPL § 170.40 requires a court in the order to state the "existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such accusatory instrument or count would constitute or result in injustice." The Town's failure to serve a criminal summons alone is not a compelling factor, consideration or circumstance.

## EFFECTS ON PLAINTIFF'S RIGHTS AND DAMAGES

265.    Plaintiff suffered damages as a result of opposing the retaliatory and selective investigation of the Norfleet Property and the denial of due process. These damages include the expenses incurred in responding to the Letter Orders.

266.    Plaintiff suffered damages as a result of defending criminal actions based on the Accusatory Instruments filed as a result of the retaliatory and selective investigation of the Norfleet Property and the denial of due process. These damages include the legal fees and consequential expenses incurred for appearances at the State Court, letters to the Town and State Court, and other actions to defend against the charges.

267.    Plaintiff suffered nominal damages as a result of the violation of his Fourth Amendment rights and also suffered nominal damages as a result of the violation of his New York Civil Rights Law § 8 rights.

268.    Plaintiff suffered emotional distress, humiliation, anxiety, mental anguish, and inconvenience as a result of the retaliatory and selective investigation and prosecution, denial of due process, unreasonable intrusions on his rights to privacy, security, and self-protection, unreasonable threats to his constitutional rights, threat of arrest not based on reasonable or probable cause, orders and notices to appear before the State Court, and violation of his right to be free from

arbitrary and outrageous governmental action.

269.    Where authorized by law, Plaintiff is entitled to awards of punitive damages against the Individual Defendants as a result of a (i) special animus toward Plaintiff, and/or (ii) wanton, reckless, callous, and willful disregard of and indifference to Plaintiff's legal and constitutional rights.

## NOTICES OF CLAIMS

270.    Plaintiff filed, on April 11, 2012, six separate notices of claims against the Town and against the County for claims arising out of the investigation and prosecution of the Uniform Code Accusatory Instruments.

271.    On April 11, 2012, Plaintiff caused six separate notices of claim in writing, sworn to by and on behalf of the Plaintiff to be duly served upon the defendant Town of Brookhaven and the defendant County of Suffolk by sending copies thereof to each of (i) the Town of Brookhaven, c/o Town Attorney, 1 Independence Hill, Farmingville, New York 11738, (ii) Mr. Thomas J. Spota, District Attorney, County of Suffolk, Riverhead Criminal Courts Complex, 200 Center Drive, Riverhead, New York 11901, (iii) the Town Clerk, Town of Brookhaven, 1 Independence Hill, Farmingville, New York 11738, and (iv) County Clerk, County of Suffolk, 310 Center Drive, Riverhead, New York 11901, by certified mail, all six of which notices of claim which set forth the name and post office address of the said claimant, i.e., Jerome Norton, the nature of the claims, the time when, the place where, and the manner in which all of the six said claims arose and the items of damages or injuries claimed to have been sustained so far as then practicable.

272.    On June 13, 2012, Plaintiff sent fourteen notices of claims (six of which were amplifications and clarifications of Plaintiff's April 11, 2012 notices of claim) against the Town and against the County for claims arising out of the investigation and prosecution of the Accusatory

Instruments.

273.     On the June 13, 2012, within ninety days after the claims herein sued upon arose, Plaintiff caused each of the fourteen June 13, 2012 notices of claim in writing, sworn to by and on behalf of the Plaintiff to be duly served upon the defendant Town of Brookhaven and the defendant County of Suffolk by sending copies thereof to each of (i) the Town of Brookhaven, c/o Town Attorney, 1 Independence Hill, Farmingville, New York 11738, (ii) Mr. Thomas J. Spota, District Attorney, County of Suffolk, Riverhead Criminal Courts Complex, 200 Center Drive, Riverhead, New York 11901, (iii) the Town Clerk, Town of Brookhaven, 1 Independence Hill, Farmingville, New York 11738, and (iv) County Clerk, County of Suffolk, 310 Center Drive, Riverhead, New York 11901, by certified mail, all fourteen of which notices of claim set forth the name and post office address of the said claimant, i.e., Jerome Norton, the nature of the claims, the time when, the place where, and the manner in which each of the fourteen said claims arose and the items of damages or injuries claimed to have been sustained so far as then practicable.

274.     At least thirty (30) days have elapsed since the service of each and all of the six separate April 11, 2012 and of the fourteen June 13, 2012 notices of claims, and payment or adjustment thereof with regard to each and every claim has been refused or neglected, and this action is commenced within one year and ninety days after the happening of the event upon which the claims are based.

### AS AND FOR A FIRST CAUSE OF ACTION
### (AGAINST QUINLAN, MORAN, BISCARDI, AND FOLBER)
(First Amendment Right to Intimate Association under 42 U.S.C. §§ 1983)

275.     As brothers, there exists an intimate association between the Owners of the Norfleet Property.

276.     The Norfleet Property investigation was initiated to retaliate against Howard for

achieving dismissal of certain criminal actions brought against him by the Town of Islip, as well as other litigations between Howard and the Town of Islip, including the successful prosecution of a Federal action to vindicate his constitutional rights under the Fourteenth Amendment. *Norton v. Town of Islip et. al*, 239 F. Supp. 2d 264 (E.D.N.Y. 2003).

277.    This decision to target only Plaintiff for appearance tickets and prosecution was made despite defendants knowing Howard was an owner of the property and receiving acknowledgment (having knowledge) of such ownership through Howard's June 22, 2011 letter order.

278.    The pursuit against only Plaintiff was motivated by a desire to interfere with Plaintiff's relationship with his brother Howard, or to punish him for such relationship.

279.    After Biscardi and Folber had received from Howard his June 30, 2011 letter and attachments, both conferred with Moran. Moran, Biscardi and Folber agreed at that meeting that Biscardi should and Biscardi did instruct and direct Folber (as a subordinate DHHS employee) to physically intrude upon the Norfleet Property (including, among other areas, the curtilage thereof) to obtain information without receiving the prior consent of the Owners of or of an owner of the Norfleet Property and a warrant duly issued by an appropriate court and in the absence of exigent circumstances. Upon information and belief, all this was done with the approval of Quinlan, who was Town Attorney for the Town of Islip during the time when one of Howard's litigations against, among others, the Town of Islip was pending in the Second Circuit and a second litigation was pending before the New York State Appellate Division Second Department.

280.    Defendants together either caused to be filed and/or continued the malicious prosecutions of Plaintiff as described above and below.

281.    The initial decision to investigate the Norfleet Property was not generated by any

legitimate reason or complaint and was designed to cause an undue intrusion on the relationship between Plaintiff and Howard.

282.   Defendants continued to interfere with Plaintiff's relationship with his brother by pursing the inspections and investigations of the Norfleet Property and by bringing and continuing criminal charges against Plaintiff despite Plaintiff demonstrating the lack of such violations that were alleged to have existed.

283.   Defendants sought to retaliate (and harass and annoy) Plaintiff by issuing Appearance Tickets with an appearance date right before Christmas, and then adjourning (without the authority to do so) the appearance date twice without lawful or adequate notice, and through other actions described above and below.

284.   The Town, all of the Individual Defendants and Belano worked to commence and/or continue fourteen (later eight) criminal actions against Plaintiff (as provided by Town Code § 20-22(C)(13)) "in the name of the Town [of Brookhaven]" until April 19, 2012.

285.   The Town's Department of the Town Attorney represented the Town in and with regard to the fourteen criminal actions commenced and continued against Plaintiff.

286.   But for the retaliatory and improper motives of the above Defendants, the inspections and investigations of the Norfleet Property would not have occurred and/or the criminal actions would not have been commenced and continued until April 19, 2012.

287.   The above defendants have deprived Plaintiff of and interfered with Plaintiff's First Amendment right to an intimate association and Plaintiff has suffered damages as described above.

### AS AND FOR A SECOND CAUSE OF ACTION
### (AGAINST QUINLAN, LUTZER, MORAN, BISCARDI, AND FOLBER)
(Retaliation for First Amendment Speech/Right to Petition under 42 U.S.C. §§ 1983)

288.   Plaintiff engaged in petition activity to redress Folber's and the DHHS's

unauthorized and unlawful attempts to enforce certain laws and to coerce Plaintiff to consent to a warrantless search of the Norfleet Property.

289.    Plaintiff petitioned the government regarding the Town's unlawful and unconstitutional rental permit law.

290.    Plaintiff protested Folber's demands for a compliance inspection without a warrant. Plaintiff also timely told Folber and Biscardi that he would permit inspection by authorized Town Personnel and at all times Folber and Biscardi had the ability to seek the issuance of a search warrant to cause an on-site inspection of the Norfleet Property, but they did not.

291.    Plaintiff engaged in other speech related to the inspections and investigations of the Norfleet Property such as sending emails, making FOIL requests, and speaking with Town officers.

292.    Owens, one such Town officer who Plaintiff spoke to and complained to about the investigation, and who Biscardi instructed to "stand down" from any further involvement in regard to Plaintiff and the Norfleet Property, was removed from her position within the DHHS on or about February 7, 2012 and her Town employment was later terminated.

293.    At a September 2011 meeting(s), Moran, Biscardi and Folber agreed to act with malicious intent to retaliate against Plaintiff for his speech and petition activity.

294.    As a result, the above defendants (Quinlan, Lutzer, Moran, Biscardi and Folber) together either caused to be filed and/or continued the malicious prosecutions of Plaintiff as described above and below.

295.    The above defendants retaliated against Plaintiff for his speech and petition activity by continuing to pursue the investigation of the Norfleet Property and bringing and continuing criminal charges against Plaintiff despite Plaintiff demonstrating the lack of such violations that were alleged to have existed.

296.     The above defendants sought to retaliate (and harass and annoy) Plaintiff by issuing Appearance Tickets with an appearance date right before Christmas, and then unlawfully adjourning the appearance twice without lawful or adequate notice, and through other actions described above and below.

297.     But for the retaliatory and improper motives of the above defendants, the actions would not have been commenced, or continued through April 19, 2012.

298.      The above defendants desired their conduct to have a chilling effect upon Plaintiff's exercise of his First Amendment constitutional rights.

299.     In a letter to the County District Attorney dated March 20, 2012, Quinlan commented that instead of appearing in State Court and making a motion to dismiss the Uniform Code Accusatory Instruments, Plaintiff has "start[ed] a writing campaign to you, me, and the Courts to make his arguments about lack of jurisdiction and insufficiency."

300.     Quinlan continued: "Perhaps I am getting old, but I wonder how some of the judges and justices we appeared before in the 1970s and 80s would have dealt with his 'writings.'"

301.     The above defendants are liable to Plaintiff for retaliating against him for his speech and petition activity through the commencement and continuation of retaliatory criminal actions that lacked probable cause.

<u>**AS AND FOR A THIRD CAUSE OF ACTION**</u>
**(AGAINST LUTZER, MORAN, QUINLAN, BISCARDI, POWELL, AND FOLBER)**
(Malicious Prosecution under New York State Law)

302.     Based on the advice and encouragement of Moran, Biscardi directed and/or instructed Folber to investigate and ultimately issue Accusatory Instruments that were in clear excess of his, Biscardi's and Moran's authority. These Accusatory Instruments formed the basis of the criminal actions of Plaintiff.

303.    In initiating and continuing the prosecutions of the Accusatory Instruments, the above defendants (Lutzer, Moran, Quinlan, Biscardi, Powell and Folber) knew or recklessly and/or in bad faith disregarded the fact that they were acting in clear absence of jurisdiction because none of them were authorized to administer or enforce alleged Uniform Code violations and the DHHS, its commissioner Biscardi, and its inspectors (and any independent contractor(s) hired by any of the above defendant(s)) were also not authorized to administer or to enforce alleged Town Code Chs. 16, 30, or 82 offenses.

304.    In initiating and continuing the criminal inspections and/or investigations preceding the filing in the State Court of the Accusatory Instruments, there was a lack of reasonable or probable cause to arrest or to prosecute Plaintiff.

305.    Plaintiff was charged with failing to comply with orders to correct in spite of the evidence Plaintiff provided to the contrary.

306.    The criminal actions were initiated and continued with a malicious intent to retaliate against Plaintiff for his intimate association with his brother Howard and/or for his letters and other communications concerning the Norfleet Property made to the State Court, the County District Attorney and the Town and its officers and employees.

307.    Folber through the Accusatory Instruments charged Plaintiff with six separate serious crimes that under New York State law he and the other Individual Defendants lacked authority to enforce and unlawfully and unconstitutionally enforced. Folber and the other Individual Defendants either expressly knew they did not have authority to administer or enforce these laws or recklessly disregarded the fact that no state or local law authorized the administration or the enforcement of these laws by Folber or by the DHHS.

308.    Quinlan knew of the Notices and Appearance Tickets by the latest December 19,

2011 but gave permission to and/or directed Moran, Lutzer and Belano to proceed to prosecute Plaintiff on the Accusatory Instruments. These Individual Defendants and Belano knew or recklessly disregarded that they were acting in clear absence of jurisdiction and without colorable authority in prosecuting the alleged violations of state law.

309.    Folber, Biscardi, Lutzer, Moran, and Quinlan knew or recklessly and/or in bad faith, disregarded that Plaintiff was not on July 11, 2011 at 11:51 a.m. in violation of any valid law upon which Folber charged Plaintiff.

310.    Powell, among other acts, reviewed and approved and/or helped with regard to the drafting of the Accusatory Instruments.

311.    Powell knew or recklessly and/or in bad faith disregarded that Plaintiff was not on July 11, 2011 at 11:51 a.m. in violation of any valid law upon which Plaintiff was charged by Folber.

312.    The DHHS, its commissioner Biscardi, and its inspectors at all relevant times lacked authority to:

> a.  administer or to enforce alleged criminal violation(s) of the Town Code or the State Uniform Code against Plaintiff;
>
> b.  issue and/or serve appearance ticket(s) against Plaintiff;
>
> c.  hire non-public servant independent contractor(s) to serve any appearance ticket(s);
>
> d.  make (on behalf of the Town) any law enforcement inspection(s) searching for any violation(s) of the State Uniform Code and/or of the Town Code;
>
> e.  violate Plaintiff's First, Fourth, Fifth and/or Fourteenth Amendment rights and/or Plaintiff's New York State constitutional, statutory and/or common law rights;
>
> f.  threaten criminal action if an individual did not consent to give up his Fourth Amendment constitutional right, New York State constitutional right and New York Civil Rights Law right to have the Town obtain a duly issued warrant from a court of competent jurisdiction before it searched and/or

seized his real property;

g.  punish or retaliate against Plaintiff for exercising his First Amendment rights to speech and to petition;

h.  selectively prosecute Plaintiff for the same acts for which his brothers were issued notices of violations;

i.  invade or to cause to be invaded Plaintiff's constitutionally protected zone of privacy;

j.  issue accusatory instruments for alleged violations of any provisions of the New York State Property Maintenance Code or Town Code;

k.  to make false and/or misleading statements in any accusatory instrument regarding an individual's attempts to dispute or to remedy an order to correct and the ability of a compliance inspection to be performed by the governmental entity charged with enforcing the laws;

l.  to harass and annoy Plaintiff;

m.  issue or send notices of adjournments for State Court appearances, whether those notices were made through mail or in person.

313.    Biscardi's instruction to Owens to "stand down", her insistence on not dropping any charges, and her failure to have any compliance inspection arranged through the Chief Building Inspector evidences the arbitrary and outrageous conduct she exhibited toward Plaintiff.

314.    The Law Department acted in clear absence of its jurisdiction and of its authority (including under the Town Code) in causing to be filed accusatory instruments alleging violations of State Law.

315.    It is sufficiently arbitrary and outrageous that the Law Department and the Law Department's final policy makers did nothing after the repeated protests by Plaintiff about the insufficiency of the six purported State Law violations Accusatory Instruments and the Law Department's lack of authority to enforce the six purported State Law violations. Only when the County District Attorney ordered their dismissal were they dismissed. Even then, Moran did not tell the State Court judge the true reason for their dismissal. The remaining eight Accusatory

Instruments were dismissed with an admission that further prosecution "would constitute or result in injustice."

316.    The Law Department at all times lacked the authority under CPL § 170.35 to move to dismiss already filed accusatory instruments for insufficiency following an alleged "careful review" conducted after the State Court filings occurred.

317.    A "careful review" of any accusatory instruments received by the Law Department prior to arraignment was required to be done before any accusatory instrument coming into the possession of the Law Department was caused to be filed by the Law Department in the State Court; once an accusatory instrument has been filed in the State Court it is the State Court's duty to independently review and dismiss accusatory instrument(s) for insufficiency and further to dismiss accusatory instrument(s) for insufficiency after arraignment if the defendant moves to dismiss on that basis.

318.    The Law Department arbitrarily moved to dismiss the non-State law accusatory instruments on the basis of a failure to serve a criminal summons. Since failing to serve a criminal summons alone is not a compelling factor, consideration, or circumstance to justify dismissal in the interests of justice, the reason provided either was a sham and/or an admission that continued prosecution upon the remaining eight accusatory instruments "would constitute or result in injustice."

319.    Quinlan, Moran and Lutzer breached New York State ethical rules by commencing and continuing unfounded charges and also by assisting judges in not following applicable rules, including the New York State Criminal Procedure Law ("CPL").

320.    No reason exists in the Town's records for Folber's June 2011 investigation of the Norfleet Property.

321.    The initial Letter Order dated June 22, 2011 concerns alleged violations that would not be readily apparent to a code enforcement officer and are of the type that would require research and/or knowledge of the Norfleet Property records.

322.    Malice on behalf of the Defendants may be inferred by the lack of reasonable or probable cause for the charges, selective enforcement, and the intent to retaliate against Plaintiff for exercising his constitutional rights.

323.    Each and every criminal action finally terminated in Plaintiff's favor and was sealed pursuant to CPL § 160.50 as a result of the criminal actions being terminated in favor of the accused. Each and every final termination was not inconsistent with Plaintiff's innocence and was not as a result of a settlement, mercy or any misconduct by Plaintiff.

324.    As a result of the infringement of Plaintiff's rights and need to defend against the charges, Plaintiff suffered the emotional and financial damages described above.

325.    Accordingly, the above individual defendants maliciously prosecuted Plaintiff in violation of the New York State Constitution and of New York law.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (AGAINST THE TOWN)
(*Respondeat Superior* Liability for New York State Law Malicious Prosecution)

326.    The Town, as employer, is liable for acts (including failure(s) to act) of the Individual Defendants described in this Third Amended Complaint, which were performed within the scope of employment or in the furtherance of the Town's interest.

## AS AND FOR A FIFTH  CAUSE OF ACTION
### (AGAINST FOLBER, BISCARDI, POWELL, MORAN, and QUINLAN)
(Procedural Due Process under 42 U.S.C. § 1983)

327.    Folber, upon the direction and/or assistance of the other above individual

defendants (Folber, Biscardi, Powell, Moran and Quinlan), issued Accusatory Instruments appearing to charge Plaintiff with failing to comply with orders to correct or remedy.

328.    Folber charged Plaintiff with failing to comply despite lacking knowledge of Plaintiff's failure to comply and despite being provided with evidence from Plaintiff of compliance.

329.    Individual defendants (Folber, Biscardi, Powell, Moran and Quinlan), with the knowledge that it was incumbent upon each and all of them to ensure compliance with  CPL § 100 before depriving a person of any liberty interests, knowingly and/or recklessly and/or in bad faith filed fourteen facially insufficient informations against Plaintiff, knowing that the State Court systematically shirked its responsibility to check for facial sufficiency of accusatory instruments.

330.    CPL §§ 100.15 and 100.40 provide substantive protections of surpassing importance, rising to and equivalent to the protections afforded under the Constitution of the United States of America: the proscription of any deprivation of liberty without due process of law.

331.    Plaintiff also timely told Folber and Biscardi that he would permit inspection by authorized Town Personnel and at all times Folber and Biscardi had the ability to seek the issuance of a search warrant to cause an on-site inspection of the Norfleet Property, but did not.

332.    Before Plaintiff could be charged with failing to comply with an order to correct, due process required the Town and Town officers to have knowledge of his failure to comply. The Town and Town officers cannot shift the burden onto Plaintiff to prove that he did comply even though he made attempts to demonstrate that he was in compliance.

333.    Moreover, for an accusatory instrument to be facially sufficient, an information, together with any supporting depositions, must meet three requirements: (1) allege facts of an evidentiary character supporting or tending to support the charges, pursuant to CPL § 100.15(3); (2) provide reasonable cause to believe that the defendant committed the offenses charged in the

information; and (3) include non-hearsay factual allegations, which, if true, establish every element of the offense charged. See CPL § 100.40(1)(a-c).

334.    The Accusatory Instruments lacked non-hearsay factual allegations that Plaintiff failed to comply with the order to correct because Folber did not attempt to conduct any inspection either through an authorized Town officer or by a duly issued search warrant.

335.    Before a search warrant could be issued, Folber, would be, among other, required to demonstrate reasonable cause to believe that a violation existed at the Norfleet Premises.

336.    The failure to conduct an inspection prior to charging Plaintiff, or to have attempted to seek a search warrant to conduct a compliance inspection which would review whether there was reasonable cause to believe a violation existed, deprived Plaintiff of due process of law and resulted in him being subjected to prosecution without reasonable or probable cause and the expense and humiliation of defending against the fourteen criminal actions.

337.    Folber, and the above individuals, knew an inspection was required before Plaintiff could be charged with failing to comply with an order to correct but proceeded to charge him in the face of evidence that he was in compliance.

338.    Folber knowingly put the violation date as July 11, 2011 instead of some date thereafter. Thus, it was impossible for Plaintiff to be in violation for failing to comply on July 11, 2011 with the July 12, 2011 Letter Order and/or with the August 26, 2011 Letter Order—both of which were issued and mailed after July 11, 2011.

339.    Folber, Biscardi, Powell, Moran and Quinlan proceeded to commence and continue prosecutions in direct violation of the CPL and Federal law, without reasonable cause and without satisfying basic legal sufficiency requirements, which impaired Plaintiff's liberty interests without any process or protections thereby violating Norton's due process rights.

340.   Also based on the foregoing, Plaintiff's right to due process was violated because he was deprived of procedural rights and safeguards before he was charged with a violation that required such process to occur. Plaintiff has been damaged, as detailed above, by the lack of process which would have thwarted the ability of the above individual defendants (Folber, Biscardi, Powell, Moran and Quinlan) to bring the criminal actions.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(AGAINST FOLBER, BISCARDI, AND MORAN)**
(Fourth Amendment under 42 U.S.C. § 1983)

341.   Property owners retain a reasonable expectation of privacy in the structure and fixed portion of their property even if that property is licensed, rented, leased, or is occupied by another.

342.   Further, when the government physically intrudes upon a person's property or constitutionally protected area in order to obtain information, that intrusion constitutes a violation of the Fourth Amendment (and in New York is a violation under New York State Constitution Article I, Section 12 and under New York Civil Rights Law § 8).

343.   A warrantless, non-exigent circumstances physical intrusion upon "houses" or "effects" for the purposes of obtaining information constitutes an unlawful search pursuant to the Fourth Amendment (and in New York is a violation under New York State Constitution Article I, Section 12 and under New York Civil Rights Law § 8).

344.   Property owners retain the right to be "secure" (free of fear) in their "houses" and "effects" against unreasonable search and seizure threats by Town agents, officers and employees.

345.   In pursuit of his retaliatory investigations, Folber, upon the advice and encouragement of Moran and/or at the direction and/or instruction of Biscardi, entered Plaintiff's Norfleet Property in order to obtain information of a criminal nature without Plaintiff's, Howard's

or Richard's consent or a warrant.

346.   Any consent was not voluntary as it was obtained through a misrepresentation Folber made about his true purpose for entering the Norfleet Property and/or made about his (as a DHHS employee) authority to enter, investigate, inspect, search and seize the Norfleet Property.

347.   Folber's purpose in entering Plaintiff's Norfleet Property was to obtain information in connection with the enforcement of criminal laws.

348.   Accordingly, the above individual defendants (Folber, Biscardi and Moran) deprived Plaintiff of his right to be free from unreasonable search and seizure.

## AS AND FOR AN SEVENTH CAUSE OF ACTION
### (AGAINST FOLBER, BISCARDI, AND MORAN)
(Civil Rights Law § 8)

349.   Based on the actions described in the sixth cause of action, the above individual defendants (Folber, Biscardi and Moran) violated Plaintiff's rights protected under New York Civil Rights Law § 8.

## AS AND FOR A EIGTH CAUSE OF ACTION
### (AGAINST THE TOWN)
(*Monell* liability for Fourth Amendment under 42 U.S.C. § 1983)

350.   Town Practice(s), including at the Law Department, the Town's Quality of Life Task Force and at the DHHS, were during all times relevant herein, to among other things, "aggressively enforce the Town Code" and to "eliminate blight in neighborhoods" and "shutdown suburban slumlords."

351.   To the extent the above defendants in the sixth cause of action contend that any of their acts with regard to Plaintiff (which acts constitute violations of Plaintiff's Fourth Amendment rights) were done pursuant to Town Practice(s), such were a result of a failure to train, or were

because of a directive, approval or deliberate indifference of a municipal final policymaker; thus the Town is also liable for the violation of Plaintiff's Fourth Amendment rights.

352.    Upon information and belief, the Town failed and fails to properly train its Personnel regarding property owner's Fourth Amendment rights and about the need to obtain a search warrant if proper consent to a search or seizure from the property owner is lacking. In addition, the Town failed and fails to properly train its Personnel who were  unlawfully instructed to  and/or directed to physically intrude upon privately owned residential property in the Town without being properly trained on the restrictions of searches without a warrant found in Town Code §§ 82-8(B)-(C), 82-9, and 82-14 even though no Town Personnel at any time relevant to this civil action had ever received any proper delegation of authority from New York State, of any non Uniform Code property maintenance law based administration and enforcement power(s).

**AS AND FOR A NINTH CAUSE OF ACTION**
**(AGAINST THE TOWN)**
(*Monell* liability for First Amendment Claims and Procedural Due Process)

353.    Municipal final policymakers participated in and/or the violations of Plaintiff's First and Fourteenth Amendment Due Process rights or the violations of Plaintiff's First and Fourteenth Amendment Due Process rights were the result of a directive, approval or deliberate indifference of a municipal final policymaker (as discussed in the facts and individual causes of action). Thus, the Town is liable for the violations of Plaintiff's rights.

**AS AND FOR AN TENTH CAUSE OF ACTION**
**(AGAINST THE TOWN)**
(Declaratory Judgment under 28 U.S.C. § 2201)

### A.  **Unlawful Practices**

66

354.    A justiciable controversy has arisen between Plaintiff and the Town in that Plaintiff maintains that by reason of the malicious prosecutions of him for wrongful purposes; the First Amendment retaliatory acts against him and interference with an intimate association,  the search and seizure of Plaintiff's property without consent or warrant, the unreasonable threats to search and seize made by the Town against him and his houses and effects, the failure to provide due process of law before having criminal actions commenced and continued, the Town has violated Plaintiff's rights under the United States Constitution, under the New York State Constitution and under New York law.

355.    The Town continues each and all of the above alleged Practice(s) and denies that such Practices are unlawful.

356.    Plaintiff, from prior to 2011 through the present has been a legal owner of record in the office of the Suffolk County Clerk of other real property in the Town.

357.    Under 28 U.S.C. § 2201, Plaintiff seeks declarations from this Court that the foregoing conduct continues to be the Practice(s) of the Town and such Practice(s) violated and violate the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, New York State Constitution Article I Section 12, Article IX, Section 2(c) and Article XVI, Section 1, New York State Civil Rights Law Article 2, Sections 2, 3 and 8 and New York State Town Law § 138.

B.  **Violation of State Law and Due Process for Filing Jurisdictionally Insufficient Accusatory Instruments**

358.    The types of accusatory instruments which may be filed in a New York State criminal action are limited to those provided by the legislature in the CPL. Under CPL § 100, New York State has provided all persons with rights not to have certain liberty interests interfered with, by any criminal action for any alleged misdemeanor or violation of any New York law, local law,

ordinance or regulation, until, as and if, a facially sufficient accusatory instrument exists.

359.     While under CPL § 100, New York law permits the issuance and filing in criminal court of misdemeanor complaints, New York law does not authorize the issuance and filing in criminal court, of violation complaints (except should an accused, after wrongfully being arraigned on a facially insufficient accusatory instrument, waive his/her/its right to move to dismiss the accusatory instrument).

360.     Folber's allegations, which complained that Plaintiff had violated Town Code §§ 82-3E, 82-3F and 82-10, each constituted allegations of below misdemeanor violations; each of the three violation accusatory instruments issued against Plaintiff were required to be based upon non-hearsay knowledge.

361.     Folber's allegations, which complained that Plaintiff had violated Town Code §§ 82-3E, 82-3F and 82-10, were conclusory and/or lacked certain required factual allegations and/or were based upon hearsay.

362.     Where state law creates a protected liberty interest by placing substantive limitations on the discretion of governmental officers that are explicitly mandatory, a § 1983 cause of action lies when a person is deprived of that protected liberty interest without due process.

363.     CPL § 100 et seq. provided and provides citizens with the right to be free from criminal action unless there exists a facially sufficient information, which is a jurisdictional or statutory prerequisite to a valid criminal action.

364.     In order to be facially sufficient, an information, together with any supporting depositions, must meet with three requirements: (1) allege facts of an evidentiary character supporting or tending to support the charges, pursuant to CPL § 100.15(3); (2) provide reasonable cause to believe that the defendant committed the offenses charged in the information; and (3)

68

include non-hearsay factual allegations, which, if true, establish every element of the offense charged. See CPL § 100.40(1)(a-c).

365.    The third requirement, non-hearsay factual allegations, is required for reasonable (probable) cause to exist and is necessary for an information because unlike a felony complaint (see CPL § 180.10), an information is not followed by a preliminary hearing and a Grand Jury proceeding. Thus, the People need not, at any time prior to trial, present actual evidence demonstrating reasonable (probable) cause, as with an indictment following a felony complaint.

366.    New York CPL § 70.10(2) defines "[r]easonable cause to believe that a person has committed an offense" to be "when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it. Except as otherwise provided in this [CPL] chapter, such apparently reliable evidence may include or consist of hearsay." (Bracketed material added).

367.    Since a facially sufficient information must under CPL §§ 100.40(1) (a)-(c) include non-hearsay factual allegations, which, if true, establish every element of the offense charged (and thus hearsay is excluded from consideration as per CPL § 70.10(2)), a government officer who relies upon hearsay evidence or information for an element of the offense charged lacks reasonable (probable) cause to believe that a person committed an offense and reasonable (probable) cause to believe that a criminal action against the accused person could succeed.

368.    As a matter of Town Practice(s), criminal actions against Town improved residential private property owners, including Plaintiff, were based upon facially insufficient accusatory instruments, including those that were missing required element(s) and/or relied on improper hearsay.

369.   As a matter of Town Practice(s), criminal actions against Town improved residential private property owners, including Plaintiff, were based upon information unlawfully and unconstitutionally collected while intruding upon a person's property or constitutionally protected area in order to obtain information.

370.   As a matter of Town Practice(s), criminal actions against Town improved residential private property owners were used to punish the exercise of the constitutional right to decline to permit warrantless searches and/or seizures of privately owned property in the Town.

371.   As a matter of Town Practice(s), the Law Department would prosecute facially insufficient accusatory instruments that were missing required element(s) and/or were based upon hearsay information and evidence uncovered during unlawful and unconstitutional searches.

372.   As a matter of Town Practice(s), the Law Department would prosecute facially insufficient accusatory instruments knowing that there was a lack of judicial review by the State Court.

373.   As a matter of Town Practice(s), during all times relevant herein, the Town intentionally brought and continued the criminal actions against Plaintiff based upon jurisdictionally insufficient and facially invalid accusatory instruments relying on the fact that most Town private property owners would be unwilling or unable to contest the facial insufficiency and facial invalidity of the filed accusatory instruments and subsequently would make a plea with the Town.

374.   The Town has brought other jurisdictionally insufficient accusatory instruments against Town private property owners that have been the subject of litigation in the Eastern District of New York Federal Court.

375.    The Town intentionally or at a minimum recklessly and/or in bad faith, brought and continued criminal actions with jurisdictionally insufficient and facially invalid accusatory instruments alleging violations of the Uniform Code and/or of the Town Code, relying on the fact that most Town private property owners and citizens were and are unaware that appeal was and is available to a Hauppauge based NY Board.

376.    The Town intentionally or at a minimum recklessly and/or in bad faith, brought and continued criminal actions with jurisdictionally insufficient and facially invalid accusatory instruments alleging violations of the Town Law Chapter 82, relying on the fact that most Town private property owners and citizens were and are unaware that appeal was and is available to the Town Zoning Board of Appeals.

377.    The Town intentionally or at a minimum recklessly and/or in bad faith, brought and continued criminal actions with jurisdictionally insufficient and facially invalid accusatory instruments relying on the fact that the State Court did not exercise certain judicial scrutiny over the accusatory instruments or provide individuals with legal representation.

378.    The Town intentionally or at a minimum recklessly and/or in bad faith, brought and continued criminal actions with jurisdictionally insufficient and facially invalid accusatory instruments relying on the fact that the County District Attorney abdicated (except as otherwise described in paragraph 248) responsibility for prosecution of alleged "serious" crimes and alleged violations of New York State law brought by accusatory instruments filed by Town Personnel in the State Court and abdicated all responsibility for any criminal actions concerning any provisions of the Town Code to the Town and its Law Department.

379.    These Town Practice(s) often resulted in defendants pleading guilty to the charges alleged because either the defendant did not know there existed impediments to the prosecution or

it would be too time consuming and costly to challenge the impediments (and it was less time consuming and less costly to pay the Town money to "settle" the matters).

380.    Through a failure to supervise and failure to train, the Town was deliberately indifferent to the rights of Plaintiff to be free from having his liberty interests impaired by any criminal action(s) unless the criminal action(s) was/were supported by jurisdictionally sufficient and facially valid accusatory instrument(s). The Town relies on the law enforcement officers to follow the Town Code and New York State laws but does not provide its law enforcement personnel any guidance material or manuals on these laws.

381.    The Town Practice(s), as a result of its failure to supervise and failure to train, caused Plaintiff and others to be prosecuted on the basis of jurisdictionally insufficient and facially invalid accusatory instruments. This occurred despite Plaintiff's repeated protests regarding defects and deficiencies in the criminal actions.

382.    The Town, through its Practice(s), failure to supervise and failure to train, was deliberately indifferent to the rights of Plaintiff to be free from having his liberty and/or property interests impaired by any criminal action(s) unsupported by jurisdictionally sufficient and facially valid accusatory instrument(s).

383.    Under New York law, an alleged accusatory instrument issued by a person not authorized under law to issue and/or to file or cause to be filed such an instrument was at all relevant times and is jurisdictionally defective and any proceedings commenced as a result of such alleged accusatory instrument or continued were at all relevant times and are conducted without jurisdiction and are legally void.

384.    Plaintiff requests that the Court declare the Town's Practice(s) of filing jurisdictionally insufficient and/or facially insufficient accusatory instruments unlawful and in

violation of due process and order the Town to, *inter alia*, provide proper training through in-class training and training manuals to help ensure any Town filed accusatory instruments issued meet the sufficiency requirements.

   **C.  Invalid and Unconstitutional Town Code Ch. 82**

   385.    Plaintiff remains subject to the arbitrary and capricious criminal enforcement of Town Code Ch. 82.

   386.    Plaintiff, during all relevant times, owned and continues to own improved single family residential real property in the Town that serves as rental property or as a rental dwelling in the Town and which is thus subject to invalid and unconstitutional laws provided for in Town Code Ch. 82.

   387.    Because at all relevant times herein, the Town's Ch. 82 zoning laws (the portions of Ch. 82 which contain zoning elements), were intended to apply to and do apply to real property within five hundred feet of *(inter alia)*: a) the boundary of a village or town; or b) the boundary of an existing or proposed county or state park or other recreation area; or c) the right-of-way of an existing or proposed county or state parkway, thruway, expressway, road or highway; or d) the existing or proposed boundary of county or state owned land on which a public building or institution is situated, the Town has been required at least from 1999 forward to, as a precondition to its becoming authorized to pass and to enforce any Town Code Ch. 82 zoning law(s), comply with the notice and referral requirements of New York General Municipal Law § 239-m, but has failed to do so, including, *inter-alia,* by failing to submit proper New York General Municipal Law § 239-m applications and failing to submit proper environmental impact statements (including before making changes, amendments and/or additions to Ch. 82 from 1999 to the present).

   388.    Good order and governance of the Town cannot be and is not enhanced by the

enactment of and/or the enforcement of any unlawful law, whether allegedly (see Town Code § 82-1) "remedial in nature and effect" or otherwise.

389.    At all times relevant herein, the Town's Chief Building Inspector or his designee were and are required under Town Code § 82-10 to review each and every Town Code Ch. 82 rental occupancy permit application for completeness and to reject any three (3) bedroom dwelling rental occupancy permit application lacking the Town Code § 82-5 $350.00 biennial (and purportedly as of on or about July 2013, $220.00 fifteen month) nonrefundable permit application fee unless and until the fee has been paid.

390.    At all times relevant herein, the $350.00 biennial (and purportedly as of on or about July 2013, $220.00 fifteen month) nonrefundable permit application fee required by the Town upon the filing of an application for a three (3) bedroom dwelling rental occupancy permit under Town Code § 82-5: (a) was and is invalid as an unauthorized tax, (b) violated and violates § 2(c) of article IX of the New York State Constitution as it was and is a revenue raising device, (c) violated and violates § 1 of article XVI of the New York State Constitution as the Town lacked and continues to lack New York State legislative approval, (d) violated and violates § 2 of Article 2 of the New York State Civil Rights Law as the Town lacked and continues to lack, on any pretence whatsoever, authority over citizens of New York State such as Plaintiff and those similarly situated, except as is or shall be derived from and granted by the people of the State of New York to charge the $350.00 biennial (and purportedly as of on or about July 2013, $220.00 fifteen month) nonrefundable permit application fee.

391.    Town Code Ch. 82 (including §§ 82-1, 82-3, 82-6, 82-7, 82-10 and 82-14) evidence that the Town Code Ch. 82 was enacted pursuant to what the Town purported were the Town's zoning powers.

392.    Town Code Ch. 82 violated and violates the uniformity requirement imposed by N.Y. Town Law § 262.

393.    N.Y. Town Law § 262's uniformity requirement is intended to assure property owners that all property owners in the same district will be treated alike and that there will be no improper discrimination.

394.    The Town Code Ch. 82 impermissibly discriminates between owner-occupied dwelling units and rental dwelling units by imposing additional regulations upon rental dwelling units.

395.    The Town cannot amend or supersede the application of N.Y. Town Law § 262 because, for among other reasons, the Town Code Ch. 82 does not relate to the property, affairs, or government of the Town; but a private citizen's property. Even if the Town could amend or supersede the application of N.Y. Town Law § 262, it failed to do so properly.

396.    Instead of just requiring compliance with Town, county and state laws like owner-occupied dwellings (see Town Code § 82-8(A)), the Town, among other, mandates on-site New York State law and Town Code property maintenance and Town zoning inspections of rental dwelling units (§ 82-10(C), requires application for and renewal of rental permits for rental dwelling units (§§ 82-5(A), 82-10(C),  82-10(D)) and 82-10(F), requires under 82-10(D)(5) "all applicants for a rental registration shall sign an affidavit stating that they have received a copy of and fully understand the Brookhaven Town Code concerning the restrictions on the number of unrelated persons occupying said residence, exempts under § 82-10(E) certain residential premises' from the Town Rental Permit Law and creates rebuttable presumptions that require property owners to present evidence to either a code enforcement officer or the court that the dwelling is not a rental dwelling (§§ 82-8(D)).

397.    The Town Code Ch. 82 treats dwellings within the same class differently based solely on the property status of the property owner. This difference in treatment violates the uniformity requirements of N.Y. Town Law § 262, which mandates that regulations issued under it be passed without reference to the particular owner.

398.    Town Code Ch. 82 (including §§ 82-1, 82-3, 82-6, 82-7 and 82-10) evidence that the Town Code Ch. 82 was enacted pursuant to what the Town purported were the Town's New York Executive Law Article 18 and/or Uniform Code powers.

399.    Town Code § 82-10(C) and (F) requires an on-site inspection, as contemplated by Executive Law Article 18 and the Uniform Code, ("Uniform Code Inspection") of the Town's one and two-family rental dwellings in order to obtain a rental permit and then regular, periodic inspections to renew that rental permit.

400.    Executive Law §381(1)(a) states that the Uniform Code sets the minimum standards for the "frequency of inspections" of buildings in New York.  Executive Law § 381 evidences an intent to prohibit such regular, periodic inspections of one and two-family dwellings.

401.    The regular, periodic Uniform Code Inspections required by Town Code § 82-10(C) and (F) are a MRLS, inconsistent with, or in conflict with the Uniform Code and is pre-empted since Executive Law § 381 evidences an intent to prohibit such regular, periodic inspections of one and two-family dwellings. Even if the Town could request and receive an MRLS, which the Town cannot, the Town never notified and petitioned the Code Council for permission to require Executive Law Article 18 and Uniform Code based regular, periodic inspections of one and two-family dwellings.

402.    Accordingly, Plaintiff seeks declarations from this Court that the Town Code Ch. 82 was and is invalid under New York Law and was and is legally void.

D.  **The DHHS's Lack of Authority to Enforce Town and Uniform Code**

403.     The Town of Brookhaven Town Board has adopted one or more of the following:

a building code, plumbing code, electrical code, housing code, or ordinances, rules and

regulations for fire prevention, or for the removal or repair of unsafe buildings or collapsed

structures ("Regulations").

404.     Where a town board has at least in part adopted one or more Regulations, N.Y.

Town Law § 138 charges that town's building inspector with the enforcement of that town's zoning,

building, plumbing, electrical and housing ordinances and Town rules and regulations for fire

prevention and for the removal of unsafe buildings and  collapsed structures.

405.      The Town has a building inspector (see Town Code §§ 16-2, 82-2, 82-14 and 85-

16) who is charged with enforcing the NYS Uniform Code (Town Code § 16-2), the Town's zoning

ordinances (Town Code § 85-16, 82-14), building laws (Town Code § 16-2) and housing laws

(Town Code § 82-14).

406.     In enacting Town Code § 20-28 (delineating the Town's delegation of powers and

duties to its DHHS), the Town provided no power to the DHHS to administer or enforce: a) the

Uniform Code or b) any Town building, sanitary, plumbing, electrical or housing laws, zoning

ordinances or Town rules and regulations for fire prevention or c) the removal of unsafe buildings

and collapsed structures as regards privately owned property in the Town.

407.     In enacting Town Code § 20-28, the Town did not amend or supersede N.Y. Town

Law § 138, as required or permitted by New York's Municipal Home Rule Law or any other law

(if the Town is even permitted under those laws to amend or supersede New York Town Law §

138), to in any way provide that the DHHS and certain of its officers any power(s) to administer

and/or enforce any Town building, sanitary, plumbing, electrical or housing laws, zoning

ordinances and Town rules and regulations for fire prevention or the removal of unsafe buildings and collapsed structures as regards privately owned property in the Town.

408.   Plaintiff seeks a declaration from this Court that the DHHS was and is without jurisdiction or authority to administer and/or enforce the Uniform Code (and/or Town Code Chs. 16, 30, 45, 82 and 85) as regards privately owned property in the Town.

409.   Plaintiff seeks a declaration from this Court that any prior or future administrative and/or law enforcement action initiated by the DHHS was and is null and legally void, until such time as the Town under a lawful delegation of power from the State of New York, properly delegates administration and law enforcement authority to the DHHS.

410.   Plaintiff also seeks a declaration from this Court that the application fees required under Town Code § 82-5 as regards three (3) bedroom single family dwellings in the Town: (a) were and are invalid as an unauthorized tax, (b) violated and violate § 2(c) of article IX of the New York State Constitution, (c) violated and violate § 1 of article XVI of the New York State Constitution, d) violated and violates § 2 of Article 2 of the New York State Civil Rights Law because the Town lacked and lacks, on any pretence whatsoever, any authority over citizens of New York State such as Plaintiff and those similarly situated, but such as is or shall be derived from and granted by the people of New York State and e) violated and violates § 3 of Article 2 of the New York State Civil Rights Law as an improper and unlawful revenue raising device.

411.   Plaintiff further seeks a declaration that no DHHS Personnel possessed at all times relevant herein or possess authority under § 5-3 of the Town Code to issue and/or to serve any appearance ticket(s) for alleged violation(s) of: a) Chapter 16 of the Town Code; b) the NYS Uniform Code; c) Chapter 30 of the Town Code; d) Chapter 45 of the Town Code; e) Chapter 82 of the Town Code or f) Chapter 85 of the Town Code until such time as the Town, under a lawful

delegation of power received from the State of New York, properly delegates administration and law enforcement authority to the DHHS.

412.    Plaintiff further seeks a declaration that the Town lacks the power to authorize any non-public servant to lawfully serve appearance ticket(s) for alleged violation(s) of: a) Chapter 16 of the Town Code; b) the NYS Uniform Code; c) Chapter 30 of the Town Code; d) Chapter 45 of the Town Code; e) Chapter 82 of the Town Code or f) Chapter 85 of the Town Code.

**E.   Town Code Inconsistent with and/or in Conflict with New York Law and/or with New York State Court Procedures and/or with the New York State Constitution**

413.    Plaintiff seeks a declaration that Town Code §§ 16-8, 30-16, 82-3, 82-6, 82-7, 82-10, and 82-14 were and are inconsistent with, in conflict with the New York State Executive Law Article 18 and/or the Uniform Code and therefore were and are legally void.

**AS AND FOR A ELEVENTH CAUSE OF ACTION**
**(AGAINST THE COUNTY)**
(Declaratory Judgment under 28 U.S.C. § 2201)

414.    The County District Attorney at all relevant times herein possessed and possesses plenary power (and the ultimate, non-delegable responsibility) for prosecuting all crimes and offenses occurring within, among other places, the Town and for conducting all phases of any criminal prosecutions.

415.    Only the County District Attorney was and is authorized to criminally prosecute a defendant charged with any alleged violation(s) of any New York State law(s).

416.    A district attorney may delegate fundamental responsibilities in the context of the prosecution of petty crimes or offenses but must be kept aware of the conduct of the prosecution and retain and take and carry responsibility for it.

417.    A district attorney may not delegate fundamental responsibilities in the context of

the prosecution of "serious" crimes, which includes alleged violations of the Uniform Code.

418.    Only the County District Attorney was and is authorized to prosecute a defendant charged with any "serious" crime(s) where the maximum authorized penalty for the offense exceeded or exceeds six months imprisonment.

419.    The Uniform Code Accusatory Instruments alleged "serious" crimes for violations of New York State law where the maximum authorized penalty for each alleged "serious" crime exceeded six (6) months imprisonment.

420.    CPL § 110.20 requires: "When a criminal action in which a crime is charged is commenced in a local criminal court, other than the criminal court of the city of New York, a copy of the accusatory instrument shall be promptly transmitted to the appropriate district attorney upon or prior to the arraignment of the defendant on the accusatory instrument."

421.    The County District Attorney's Office maintained and continues to maintain Practice(s) of delegating, either formally or informally, to the local governments in the County of Suffolk the prosecution of Local Law petty offenses, and in doing so, abdicated and continues to abdicate all responsibility for overseeing criminal actions concerning  Town Code provisions to the Town and to its Law Department.

422.    The County District Attorney's Office disregarded the fact that certain crimes alleged by Town Personnel were being prosecuted in the State Court and that no copy or copies of the accusatory instrument(s) under which the criminal actions were being prosecuted were being promptly transmitted to the County District Attorney upon or prior to the arraignment of the defendant on the accusatory instrument.

423.    The County District Attorney's Office maintained and continues to maintain Practice(s) of abdicating and continues to abdicate all responsibility for prosecution of both alleged

"serious" crimes and alleged violations of New York Executive Law Article 18 and/or the Uniform Code brought by accusatory instruments filed by Town Personnel in the State Court.

424.    The County District Attorney's Office, at all times prior to March 19, 2012 failed to prosecute and/or to supervise: (a) the Accusatory Instruments filed against Plaintiff herein or (b) any of the Law Department's criminal actions concerning Plaintiff herein, by failing to monitor and review the laws and records upon which the prosecutions were based.

425.    The County District Attorney's Office, as a matter of its general and typical Practice(s), failed and fails to supervise or control the DHHS and/or the Law Department in its initiations and continuations of State Court criminal actions by failing to maintain a system of supervision, control or oversight.

426.    While the County District Attorney's Office maintains a District Court Bureau, which is primarily responsible for prosecuting and disposing of both misdemeanor crimes and violations before the District Courts of Suffolk County, this District Court Bureau had during all relevant times no involvement with the Town's criminal actions of alleged misdemeanor crimes and violations filed by Town Personnel.

427.    There existed no County District Attorney's Office system to review or monitor the records upon which criminal actions filed by Town Personnel were based or for the County District Attorney's Office to review or respond to complaints about the enforcement of the laws, the records upon which defendants were being prosecuted, or the actions of the Law Department attorneys.

428.    The Town's Law Department, prior to the commencement of the prosecutions brought against Plaintiff, did not inform the County District Attorney about the Town's intentions re the fourteen criminal actions, made no effort(s) to and did not provide the County District Attorney with any records that in any way(s) showed that the Town possessed any valid accusatory

instruments, let alone that the Town possessed valid accusatory instruments for all fourteen criminal actions brought against Plaintiff, and never sought the County District Attorney's permission or consent to commence or to continue any of the fourteen criminal actions brought against Plaintiff.

429.     The County District Attorney was not informed, prior to the time that the Town commenced its fourteen criminal actions against Plaintiff, of the Town's intent to commence or to continue any of the fourteen criminal actions filed against Plaintiff.

430.     The County District Attorney as part of general and typical County Practice(s), did not consent, review and/or approve and/or permit the Town's commencement of or the Town's continuation of any of the fourteen criminal actions the Town brought against Plaintiff.

431.     On or about March 22, 2012, because of a direct letter and multiple follow up calls from Plaintiff's attorney to the County District Attorney, the County District Attorney intervened and directed Quinlan to move in State Court to dismiss the Uniform Code Accusatory Instruments. However, such type of intervention that occurred was and is not part of general and typical County Practice(s).

432.     The County District Attorney's and his County District Attorney's Office Practice(s) as described above were a direct and proximate cause of Plaintiff's injuries.

433.     A justiciable controversy has arisen between Plaintiff and the County in that Plaintiff maintains that by reason of the County District Attorney's and his County District Attorney's Office Practice(s) described above, the County has caused and is likely to cause further violation of Plaintiff's rights and the rights of others.

434.     The County continues each and all of the above alleged Practice(s) and continues to believe that such Practice(s) were not are not unlawful.

435.     As a result of the foregoing, and under 28 U.S.C. § 2201, Plaintiff seeks

declarations from this Court that the foregoing conduct was and continues to be the Practice(s) of

the County and such Practice(s) violated and continue to violate state law.

### AS AND FOR A TWELVTH CAUSE OF ACTION
**(AGAINST ALL DEFENDANTS)**
(Attorney's Fees under 42 U.S.C. § 1988)

436.    Plaintiff has been forced to expend, and will continue to be forced to expend,

substantial sums of money for attorney's fees, costs and expenses in prosecuting this action

against the all defendants herein based on the violation of 42 U.S.C. § 1983.


**WHEREFORE**, Plaintiff prays the Court render judgment:

(i)    As to each of Plaintiff's First, Second, Third, Fifth, Sixth and Seventh Causes of

Action: awarding Plaintiff compensatory and punitive damages in sums that are not yet known but

will be determined at trial.

(ii)    As to each of Plaintiff's Fourth, Eighth, and Ninth Causes of Action: awarding

Plaintiff compensatory damages in sums that are not yet known but will be determined at trial.

(iii)    As to Plaintiff's Tenth Cause of Action: issuing declaratory judgments as provided

above.

(iv)    As to Plaintiff's Eleventh Cause of Action: issuing a declaratory judgment as

provided above.

(v)    As to Plaintiff's Twelfth Cause of Action: awarding Plaintiff's attorneys' fees in an

amount to be determined.


**WHEREFORE**, in addition to the above, Plaintiff prays the Court render judgment:

(i)    Awarding him costs and disbursements

(ii)    Awarding him interest, from the earliest date ascertainable; and

(iii)    Awarding him such other and further relief as the Court deems just and proper.

## **<u>JURY DEMAND</u>**

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands

a trial by jury.


Dated:  Carle Place, New York
        October 17, 2017

                                  Respectfully submitted,

                                  LEEDS BROWN LAW, P.C.,

                                  By: _____/s/_____
                                       Rick Ostrove
                                       Jonathan Messina
                                       *Attorneys for Plaintiff*
                                       One Old Country Road, Suite 347
                                       Carle Place, New York 11514
                                       (516) 873-9550

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
JEROME NORTON,

                           Plaintiff,

              -against-

TOWN OF BROOKHAVEN, COUNTY OF SUFFOLK,
ROBERT QUINLAN, DAVID J. MORAN, JENNIFER
LUTZER, JUSTIN FOLBER, WILLIAM POWELL,
VALERIE BISCARDI, all individually and in their
official capacity,

                        Defendants.

---------------------------------------------------------------------X

**STIPULATION OF
PARTIAL SETTLEMENT**

13 CV 3520
(ADS)(GRB)

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  OCT 18 2017  ★

LONG ISLAND OFFICE

      **WHEREAS** Jerome Norton ("Plaintiff") has filed a Complaint, an Amended Complaint,

a Second Amended Complaint and attaches hereto, a proposed Third Amended Complaint

("Exhibit "A") in this matter, seeking damages and declaratory relief;

      **WHEREAS** the Town of Brookhaven ("Town") was and is a municipality duly

incorporated under the laws of the State of New York, and

      **WHEREAS** the Town's Housing and Human Services ("DHHS") currently has three

Housing Inspectors, two of whom report to the Town Law Department and one of whom reports

to DHHS. The Housing Inspector who reports to DHHS is 100 % federally funded with Section

8 money and he therefore performs only Section 8 work which does not include the issuance or

service of appearance ticket(s) and/or accusatory instrument(s); to receive the funding, he must

report his hours and only hours that involve Section 8 work will be federally funded; and

      **WHEREAS** the individual defendants, Robert Quinlan, David J. Moran, Jennifer Lutzer,

Justin Folber, William Powell, Valerie Biscardi (collectively "Individual Defendants") and the

Town (collectively "Town Defendants") filed an Answer to the Second Amended Complaint and moved to dismiss Plaintiff's instant action with prejudice, and

**WHEREAS** said motions were denied in part and granted in part by the decisions and orders of the United States District Court for the Eastern District of New York, which are reported at 33 F.Supp.3d 215 and at 47 F.Supp.3d 152 (Spatt, J.); and

**WHEREAS** Plaintiff and Town Defendants (collectively, "the Parties" or individually "Party") agree that the Town's real property owners, residents and visitors enjoy the protections of the United States Constitution, federal law, the New York State Constitution, state law and local law; and

**WHEREAS** the Parties have engaged in settlement discussions since on or about November 21, 2014; and

**WHEREAS** the Parties are desirous of resolving, to the extent provided for in this agreement, certain of their differences, thereby avoiding litigation on some matters; and;

**WHEREAS** the Parties have been and are represented by counsel, have had all the terms and conditions of this stipulation ("Stipulation") clearly explained, and now freely consent to enter this Stipulation, such consent not having been induced by fraud, duress, or any other undue influence; and

**WHEREAS**, in consideration of the covenants and undertakings set forth herein and, intending to be legally bound thereby, upon the approval of the Stipulation by the above-captioned Court and upon the Stipulation being so-ordered by a sitting Magistrate or Judge of said Court, Plaintiff and the Town Defendants, and each of them, agree to the terms of this Stipulation;

**NOW, THEREFORE, UPON** all papers and pleadings submitted in this action, it is hereby stipulated, agreed and ordered as follows:

## ARTICLE 1: DEFINITIONS

As used throughout this Stipulation, the following terms shall have the following meanings:

a. "Department of Housing and Human Services" ("DHHS") shall mean the department formed by and maintained by the Town, as presently set forth in Town Code §§ 20-25 to 20-31, including any Town successor agencies, departments, or divisions thereto.

b. "Housing Inspector" is a title established by the Suffolk County Department of Civil Service. A DHHS Housing Inspector ("DHHS Inspector") shall mean any full-time or part-time employee of the Town's DHHS acting within the scope of his employment, or stated otherwise, in furtherance of the interests of his employer, whose duties involve all or some of the following distinguishing features, as presently set forth in a duty statement for the Suffolk County Department of Civil Service, a copy of which may be found at https://apps2.suffolkcountyny.gov/civilservice/specs/5131spe.html:

> An employee in this class is involved in field inspections to enforce compliance with applicable housing codes and ordinances. The inspections include single and multiple residences and are conducted to assure that reasonable standards of living conditions are provided for tenants as required by law. Work assignments include inspections performed in answer to complaints and also inspections performed in accordance with a regular inspection schedule. The incumbent must deal with landlords, tenants and the general public in a tactful and firm manner. All work is performed under the supervision of a higher level housing inspector or other administrator. Performs related work as required.

c. "Town Investigator" is a title established by the Suffolk County Department of Civil Service. A Town Investigator shall mean any full-time or part-time employee of the Town acting

within the scope of his employment, or stated otherwise, in furtherance of the interests of his

employer, whose duties involve all or some of the following distinguishing features, as presently

set forth in a duty statement for the Suffolk County Department of Civil Service, a copy of which

may be found at https://apps2.suffolkcountyny.gov/civilservice/specs/5791spe.html:

> Under general supervision, an employee in this class conducts
> investigations of possible violations of town ordinances in
> response to complaints received from town departments and the
> general public, as directed by the Town Attorney's Office. The
> incumbent gathers information through interviews, surveillance
> and research of records. Does related work as required.

Notwithstanding anything herein elsewhere in this Agreement to the contrary, "Town

Investigator" as that term is defined in Article 1(c) above shall not mean "DHHS Inspector" as

that term is defined in Article 1(b) above.

    d. "Chief Town Investigator" is a title established by the Suffolk County Department of

Civil Service.   A Chief Town Investigator shall mean any full-time or part-time employee of the

Town acting within the scope of his employment, or stated otherwise, in furtherance of the

interests of his employer, whose duties involve all or some of the following distinguishing

features, as presently set forth in the duty statement for the Suffolk County Department of Civil

Service, a copy of which may be found at

https://apps2.suffolkcountyny.gov/civilservice/specs/5794spe.html:

> An employee in this class conducts investigations into particularly
> complex violations of town ordinances in response to complaints
> received from town departments and the general public, as directed
> by the Town Attorney's Office. The incumbent compiles data for
> specialized reports pursuant to investigative activities, assists the
> Town Attorney in report preparation and may function as principal
> liaison for the latter in settlement of cases. Supervision is exercised
> over subordinate technical personnel subject to direction and
> control by the Town Attorney. Work is reviewed by conferences

with attorneys in the Town Attorney's office. Does related work as required.

e. "Town" shall mean the Town of Brookhaven, any of its constituent agencies, departments, commissions, boards, except as otherwise provided by law.

f. "Town Board" shall mean the Town's "Supervisor and Councilmen", as constituted pursuant to New York Town Law § 60 and the Town Code.

g. "Town Code" shall mean the Code of the Town of Brookhaven and any unconsolidated laws and/or ordinances and/or regulations of the Town of Brookhaven.

h. "Court" shall mean the United States District Court for the Eastern District of New York, which shall have jurisdiction over this Stipulation, its Stipulation Order and over the Parties to this Stipulation and each of them.

i. "Date of the Stipulation" shall mean the day the Stipulation becomes effective upon the Court expressly retaining jurisdiction over the entire Stipulation, including incorporating the terms of the Stipulation itself into a final court-ordered Stipulation order ("Stipulation Order") pursuant to F.R.C.P. Rule 41(a)(2). It is an intent of this Stipulation:

i) to ensure that no Party or Parties hereto are precluded from pursuing appropriate Court remedies in the event of any breach; and

ii) that the Stipulation shall in no event become valid or come into effect, in whole or in any part(s) thereof until, as and if the Court issues its Stipulation Order.

j. "State Court" shall mean a New York State court of competent jurisdiction.

k. "Exigent Circumstances" shall mean circumstances of immediate danger to life, limb or property. Exigent Circumstances shall not include evidence of illegal use and/or occupancy without other circumstances that threaten immediate danger to life, limb or property.

5

l. Using the singular form of any word includes the plural and vice versa where the sense of the document requires same.

m. To the extent any statutes, laws, rules, regulations, ordinances, local laws and/or codes identified in this Stipulation are renumbered, reordered and/or codified/re-codified into one or more statutes, laws, rules, regulations, ordinances, local laws and/or code(s) section(s) and/or into a different chapter(s), and/or remain in violation of law, in whole or in part(s), they are deemed to be part of and included within this Stipulation while said Stipulation remains in effect, and all other provisions of this Stipulation shall apply to any such statutes, laws, rules, regulations, ordinances, local laws and/or codes.

## ARTICLE 2: STIPULATION

1. The Town agrees that from the Date of the Stipulation forward that that no DHHS Inspector may issue and/or serve any appearance ticket(s) and/or accusatory instrument(s) alleging any violation(s) of the New York State Uniform Fire Prevention and Building Code ("Uniform Code"). The Town also agrees that within sixty (60) days from the Date of the Stipulation that it shall amend its Town Code to clarify that no DHHS Inspector may issue and/or serve any appearance ticket(s) and/or accusatory instrument(s) alleging any violation(s) of the Uniform Code.

2. The Town agrees that from the Date of the Stipulation forward,  with respect to DHHS Inspectors, as defined in Article 1(b) , above, its DHHS Inspectors, who do not exclusively perform duties associated with Section 8 of the Housing Act of 1937, as amended, shall report directly to the Town Department of Law and that the Town and its DHHS Inspectors shall be bound by the following: a. Prior to any issuance(s) and/or service(s) of any appearance ticket(s),

6

any DHHS Inspector is first required to submit and shall submit the proposed appearance ticket(s) to the Town's Chief Town Investigator who shall review the same for (i) facial sufficiency and (ii) provide the DHHS Inspector with his/her written approval of the appearance ticket(s) for issuance and service, prior to the date and time of any service(s) of process of any such appearance ticket(s) by any DHHS Inspector upon any person or his/her/its agent. Any written approval(s) of the Town's Chief Town Investigator shall be retained by the Town in accordance with Records Retention and Disposition Schedule MU-1, set forth at 8 N.Y.C.R.R. § 185.11 or any successor regulation.

b. Prior to any filing(s) or any submission(s) for filing in the Suffolk County District Court of any accusatory instrument(s), any DHHS Inspector shall first, if the accusatory instrument(s) is/are to be issued by any DHHS Inspector, submit the proposed accusatory instrument(s) to an authorized Town Assistant Town Attorney then officially assigned by the Town and Suffolk County District Attorney to prosecute petty crimes and offenses before Suffolk County District Court. Prior to the date and time of any filing of any such DHHS Inspector-issued accusatory instrument(s) by the Town or its personnel with the Suffolk County District Court, such Assistant Town Attorney is required to, and shall on behalf of the Town, (i) review any accusatory instrument(s) for facial sufficiency and (ii) provide the DHHS Inspector with his/her written approval of the accusatory instrument(s) for issuance and service by initialing a marked copy of any accusatory instrument(s) and shall memorialize the approval of the accusatory instrument(s) and that each is/are facially sufficient, by placing the marked and initialed copy/ies of the accusatory instrument(s) in the case file. Any written approval(s) of the authorized Town Assistant

7

Town Attorney shall be retained by the Town in accordance with *Records Retention and Disposition Schedule MU-1*, set forth at 8 N.Y.C.R.R. § 185.11 or any successor regulation.

c. Prior to any issuance(s) and/or service(s) of any appearance ticket(s) and prior to any issuance(s) and filing(s) of any accusatory instrument(s) in the Suffolk County District Court, any DHHS Inspector is first required to complete successfully any then-required by the Town in-house training, as set forth in the Stipulation in paragraph 10 below.

d. Prior to any issuance(s)e and/or service(s) of any appearance ticket(s) and to any issuance(s) and filing(s) of any accusatory instrument(s) in the Suffolk County District Court, any DHHS Inspector is first required to and shall successfully complete any then-required New York State Department of State ("DOS") state-certification classes.

e. Prior to any issuance(s) and filing(s) of any accusatory instrument(s) in the Suffolk County District Court; any DHHS Inspector is first required to use standard form Town accusatory instruments prepared by the Town Attorney.

3. The Town agrees that its DHHS Inspectors shall be directly supervised by the Town's Chief Town Investigator.

4. With respect to the requirement that the Town file reports with the New York State Secretary of State in accordance with 19 N.Y.C.R.R. 1203.4(a) ("Part 1203 Reports"), the Town agrees that it shall:

a. complete and submit any required Part 1203 Reports to the DOS within three months of the date upon which the DOS first provides the Town with a copy of or posts its Part 1203 Reports form for a given year on DOS' website;

b. within one week of submitting the Part 1203 reports to the DOS, post the Town's completed and submitted Part 1203 Reports on line on the Town's website directly available to the general public via a link that shall be found on the front (main) web page of the Town Division of Building or its legal successor(s) under "useful links" (hereafter "the Building Division web page");

c. within a reasonable time from the Date of the Stipulation, post the Town's completed and submitted Part 1203 Reports made to the DOS for each of the calendar years 2013, 2014 and 2015 on-line on the Building Division web page and shall maintain said records there for a minimum of one (1) year; and

d. within a reasonable time from the Date of the Stipulation and in accordance with paragraph 4(a) of the Stipulation, post the Town's 2016 and all thereafter Part 1203 Reports on-line on the Building Division web page. Except as otherwise provided in paragraph 4(c) of the Stipulation, the Town agrees that for each new posting, it will also maintain the preceding Part 1203 Reports for the past two years on-line on the Building

Division web page, so that a minimum of three Part 2013 Reports shall be posted at all times on-line on the Building Division web page.

5. The Town agrees that from the Date of the Stipulation forward, it shall immediately cease any use of non-public servant, outside contractors to serve criminal process anywhere in Nassau County or Suffolk County.

6. The Parties agree that:

a. the Town shall:

i) from the Date of the Stipulation forward immediately cease any enforcement of Town Code §§ 16-8 and 30-16; and

ii) within a reasonable time from the Date of the Stipulation, repeal Town Code §§ 16-8 and 30-16;

b. the Town, within thirty (30) days from the Date of the Stipulation shall submit a fully authorized and properly executed Exhibit B (together with all exhibits and attachments) to the New York State Department of State, which petitions the Department of State for its determinations as to whether and to what extent, Chapter 82 of the Brookhaven Town Code is legally enforceable under New York State Executive Law Article 18 and/or the New York State Fire Prevention and Building Code ("DOS Uniform Code Interpretation"). The Town agrees to promptly provide Plaintiff (via first class mail), with a copy of the Town's entire submission.

c. if the New York State Department of State agrees to review all or any part(s) of the provisions identified in Paragraph 6(b) of the Stipulation and to the extent the New York State Department of State Secretary and/or her designee(s) ("Secretary") actually issues a DOS Uniform Code Interpretation, Plaintiff and the Town Defendants shall be bound by such DOS Uniform Code Interpretation, and the Parties agree not to reargue and/or to appeal any such DOS Uniform Code Interpretation. The Parties further agree that the State of New York Department of State shall become a third-party beneficiary of the Stipulation and of the Stipulation Order to the extent it actually issues a DOS Uniform Code Interpretation;

d. if the Secretary finds any part of Ch. 82, or part(s) thereof, submitted to the New York State Department of State pursuant to Paragraph 6(b) above, does not constitute a lawful exercise by the Town of the Town's powers under New York Executive Law Article 18 and is not consistent with the Uniform Code, the Town agrees it shall immediately cease any New York Executive Law Article 18 and/or Uniform-Code based law enforcement of said provision(s) or part(s) thereof found to be unlawful and agrees to repeal those unlawful provisions within a reasonable time;

e. to the extent that the Secretary does not issue any DOS Uniform Code Interpretation, as to any of the Town Code provisions submitted to the New York State Department of State pursuant to Paragraph 6(b) of the Stipulation, the Parties agree that:

11

i. Plaintiff shall be entitled to, but is not required to, submit to the Court a motion for a declaratory judgment seeking a determination of the issue of whether and/or to what extent Chapter 82 of the Brookhaven Town Code is legally enforceable under New York State Executive Law Article 18 and/or the New York State Fire Prevention and Building Code ("Judicial Uniform Code Determination").

ii. to the extent that the Court does not issue a Judicial Uniform Code Determination, Plaintiff shall be entitled to, but is not required to, submit to a State Court a motion for a declaratory judgment seeking a Judicial Uniform Code Determination.

iii. Plaintiff shall have the sole discretion and authority to request a Judicial Uniform Code Determination. The Town may not request a Judicial Uniform Code Determination Interpretation.

iv. As all of the herein individual defendants have been removed from this case by operation of the Stipulation and the Stipulation Order, only Plaintiff and the Town shall be permitted to litigate the Judicial Uniform Code Determination.

v. the Town agrees that, to the extent that the Court and/or the State Court finds any part(s) of any submitted provision(s) of Town Code Ch. 82 or part(s) thereof violate(s) New York Executive Law Article 18 and/or violate(s) the Uniform Code, that the Town shall immediately cease law enforcement of any such

unlawful provisions and agrees to repeal those provisions within a reasonable time, after all appeals have been exhausted.

7. The Parties and each of them also agree that:

a. Town Defendants consent to and shall not oppose, by motion or otherwise, Plaintiff's filing and service of the proposed Third Amended Complaint, which contains additions and/or corrections and the following claim: that the Town was required to, but has failed to, submit properly pursuant to New York General Municipal Law 239-m, its Town Code Ch. 82 to the Suffolk County Planning Commission, so that the Suffolk County Planning Commission could have had the opportunity to issue any recommendations, accompanied by a statement of the reasons for such recommendations, before the Town passed its many Town Code Ch. 82 local laws and/or ordinances. The parties agree that, upon the filing of the Third Amended Complaint, it shall be deemed that Defendants have simultaneously served and filed an answer to the proposed Third Amended Complaint, as follows: all allegations in the Third Amended Complaint that were not contained in the Second Amended Complaint shall be deemed denied upon knowledge and information sufficient to form a belief; with respect to allegations set forth in the Third Amended Complaint that were set forth in the Second Amended Complaint, the responses set forth in the Answer to the Second Amended Complaint shall be deemed repeated and reiterated as though fully set forth; all affirmative defenses set forth in the Answer to the Second Amended Complaint shall be deemed repeated and reiterated as though fully set forth, except to the extent that each of the Town Defendants, via their notice to admit responses (attached hereto and made a part hereof as Exhibit D), have admitted otherwise, in which

cases), each and all defendant's notice to admit response(s) shall control. The Town further agrees that to the extent the Court requires a formal Answer to the Third Amended Complaint, that the Town will fully cooperate, prepare, and file such an Answer.

b. Within sixty (60) days from the Date of the Stipulation, the Town agrees to certify that it has conducted and completed a diligent search for and has provided to Plaintiff a copy of any and all:

i) Town Code Ch. 82 based application submissions, made by the Town from January 1, 1999 through the present, to the Suffolk County Planning Commission, in whole or in any part(s), pursuant to the requirements of New York General Municipal Law §239-m;

ii) responses the Town received from the Suffolk County Planning Commission in response to the Town's aforementioned application submissions;

iii) Town Code Ch. 82 local laws and ordinances passed by the Town Board and all of those local laws actually filed by the Town with the Secretary of State of the State of New York, indicating the date the local law was actually filed;

c. Plaintiff shall be entitled to, but is not required to, submit to the Court a motion for a declaratory judgment seeking a determination of the issue of the extent to which Town

Code Ch. 82: constitutes a lawful exercise by the Town of the Town's powers pursuant to the requirements of New York General Municipal Law §239-m ("239-m Determination").

d. If the Court declines to, in whole or in part(s), issue its 239-m Determination on the merits, Plaintiff shall be entitled to, but is not required to submit to a State Court a motion for a declaratory judgment seeking a 239-m Determination.

e. As all of the herein individual defendants have been removed from the case by operation of this Stipulation, only the Plaintiff and the Town shall be permitted to litigate the 239-m Determination.

f. The Town agrees that, to the extent that the Court and/or the State Court finds all or any part(s) of Town Code Ch. 82 violate New York General Municipal Law §239-m, the Town shall immediately cease law enforcement of any such unlawful provisions and agrees to repeal those unlawful provisions within a reasonable time, after all appeals have been exhausted.

8. The Parties and each of them also agree that should this Court or a State Court issue a 239-m Determination finding that at least some zoning portion(s) of Town Code Ch. 82 constitutes a lawful exercise by the Town of the Town's lawmaking powers consistent with the requirements of New York General Municipal Law § 239-m:

15

a. Plaintiff shall be entitled to, but is not required to, submit to the Court a motion for a declaratory judgment seeking a determination of the issue of whether, and the extent to which, Town Code Ch. 82 constitutes a lawful exercise by the Town of the Town's powers consistent with the requirements of New York Town Law § 262 ("Rental Code Determination"). Such submissions shall only be filed for any court determination(s) after the Court or State Court first determines that at least some zoning portion(s) of Town Code Ch. 82 constitute a lawful exercise by the Town of the Town's lawmaking powers consistent with the requirements of New York General Municipal Law 239-m;

b. If the Court declines, in whole or in part(s), to issue a Rental Code Determination on the merits, Plaintiff shall be entitled to, but is not required to, submit to a State Court a motion for a declaratory judgment seeking a Rental Code Determination.

c. Plaintiff shall have the sole discretion and authority to seek a Rental Code Determination. The Town may not request a Rental Code Determination.

d. As all of the herein Individual Defendants have been removed from the case by operation of this Stipulation, only the Plaintiff and the Town shall be permitted to litigate the Rental Code Determination.

e. In any action(s) before the Court and/or State Court and/or before any appeals court(s) relating to any Rental Code Determination and/or to any Judicial Uniform Code Determination, but not relating to any 239-m Determination or to any DOS

Uniform Code Interpretation, the prevailing Party shall be entitled to recover from the non-prevailing Party his/its reasonable attorneys' fees, capped at a maximum of Seventy-Five Thousand ($75,000.00) Dollars ("Reasonable Attorney's Fees"). Once either the Town or Plaintiff has been issued a final judgment awarding him/it Reasonable Attorney's Fees and all timely appeals concerning said judgment have been exhausted, paragraph 8(a) shall no longer apply and there shall be no further instance requiring the non-prevailing Party to pay legal fees pursuant to this Stipulation, other than as is required by paragraph 16 of the Stipulation. Plaintiff shall be considered the prevailing Party if prior to a Rental Code Determination and/or any Judicial Uniform Code Determination, the Town moots the then pending action via repeal of and/or revision of the law(s) under consideration, but only if Plaintiff has prepared and served upon the Town any court brief on the merits of any Rental Code Determination and/or any Judicial Uniform Code Determination.

f.   The Town agrees that, to the extent that the Court and/or the State Court finds any zoning provision(s) part(s) of any submitted provision(s) of Town Code Ch. 82 violate New York Town Law § 262, that the Town shall immediately cease law enforcement of any such unlawful provisions and agrees to repeal those unlawful within a reasonable time, after all appeals have been exhausted.

9. The Town agrees that prior to serving any notice(s) to correct or appearance ticket(s) involving any alleged zoning law violation(s), the Town shall first require its DHHS Inspectors and its Town Investigators to serve a current copy of New York Town Law § 267-a (5) along

with any of its said notice(s) to correct and/or appearance ticket(s) involving any alleged zoning law violation(s).

10. The Town agrees it is required at a minimum to provide training to its DHHS Inspectors and Town Investigators in accordance with the following:

(a)  the course outline annexed hereto as Exhibit C;

(b) the training shall be conducted by a New York State licensed attorney employed by the Law Department;

(c) the training shall occur on an annual basis;

(d) the training shall be a minimum of 85% of three (3) hours long;

(e) the training shall be mandatory for all DHHS Inspectors and Town Investigators;

(f) class attendees shall sign in and sign out of the class on a Town-provided form which lists the time each attendee arrives and leaves;

(g) completed sign-in and sign-out forms for training classes shall be retained by the Town in accordance with *Records Retention and Disposition Schedule MU-1* as set forth at 8 NYCRR § 185.11 or in any successor regulation;

(h) no test is required to be given;

(i) the trainees shall be informally evaluated by the Town's attorney-instructor based on their participation in the training,

(j) Town employees or agents for whom the training is mandated but who fail successfully to complete the training shall not be permitted to issue and/or serve any notice(s) of violation, accusatory instrument(s), or appearance ticket(s) until after the Town employee or agent successfully completes the mandated training, and

(k) the first training session shall commence and be completed within three (3) months of the Date of the Stipulation.

(l) The Town shall maintain its records regarding its training courses in accordance with *Records Retention and Disposition Schedule MU-1* or any successor regulation.

11. The Town agrees that DHHS Inspectors and Town Investigators who do not comply with 19 N.Y.C.R.R. § 1208-2.1, entitled *Minimum training requirements for building safety inspectors and code enforcement officials,* or any successor regulation, shall not be permitted to issue any notice(s) of violation, accusatory instrument(s), or appearance ticket(s) until after the DHHS Inspector or Town Investigator comes into compliance with 19 N.Y.C.R.R. § 1208-2.1 or any successor regulation.

12. The Town agrees to post and to maintain a list of State-certified DHHS Inspectors and Town Investigators on the Town's website directly available to the general public via links that shall be found on the front (main) web page of its Department of Law or legal successor(s) under "useful links". Such posting shall occur once a year and the first postings shall be posted within three (3) months of the Date of the Stipulation. The lists identified in this paragraph shall identify:

a. the name of the DHHS Inspector or Town Investigator;

b. whether the DHHS Inspector or Town Investigator is certified under 19 N.Y.C.R.R. § 1208-2.1(b); and

c. the expiration date of the DHHS Inspector or Town Investigator's certification.

13. The Town agrees that, prior to making applications for the issuance of arrest warrants or criminal summonses in the Suffolk County District Court, the Town and its personnel are required to attach, and shall attach, to the aforesaid applications a true and complete copy of the Town's affidavit(s) of service.

14. Plaintiff and the Town agree: (a) Plaintiff shall appear if properly served with a criminal summons issued by the Suffolk County District Court; and (b) that Town personnel shall apply to the Suffolk County District Court for any arrest warrant regarding Plaintiff only in Exigent Circumstances.

15. The Plaintiff and the Town Defendant, and each of them to the Stipulation, agree that if at any time before the expiration of seven (7) years from the Date of the Stipulation, the Town violates any of the above and/or below terms and/or conditions,

    a. Plaintiff may send the Town a sixty (60) day notice to cure; and upon the Town's failure to cure within sixty (60) days of Plaintiff's mailing such a notice;

    b. Plaintiff may file with the Court and/or with a State Court any motion(s), action(s) and/or appeals seeking: contempt, other equitable relief, specific performance and/or other relief via federal action(s) and/or via State Court special proceedings and/or action(s), as regards the terms and conditions of the Stipulation and/or the Town's compliance therewith.

    c. The Plaintiff and the Town hereto agree that the Court expressly retains jurisdiction

over the Stipulation and further agree to comply with any Court and/or State Court Orders and Judgments issued in response to any action(s) provided for in this paragraph 15.

16. The Plaintiff and the Town agree that in any court action relating to the enforcement and interpretation of the Stipulation, the prevailing Party shall be entitled to recover from the other Party his/its reasonable attorneys' fees. Once any court motion and/or action under paragraph 15 of the Stipulation has been filed, either Party  may, but shall not be required to, send out any further notice to cure to commence any additional or further court motion and/or action and/or to amend any court motion and/or action.

17. When the Court issues its Stipulation Order, all claims alleged by Plaintiff regarding any herein Individual Defendants and/or the Town and all claims alleged by any herein Individual Defendants and/or the Town regarding Plaintiff, except as otherwise provided for herein shall be discontinued and dismissed with prejudice. Neither the County of Suffolk nor the State of New York are intended beneficiaries of the Stipulation, except to the extent otherwise expressly provided for in the Stipulation. See paragraph 6(c), above, making the New York State Department of State a beneficiary under the limited circumstance set forth therein.

18. The Plaintiff and the Town Defendants, and each of them to the Stipulation, covenant that except for the above-captioned matter and the matters alleged therein, he/she/it has no action, complaint, proceeding, charge, grievance or arbitration or any other proceeding, administrative or judicial, pending against any other aforenamed Party or Parties.

19. Plaintiff hereby covenants and agrees, that upon the Court's issuance of its Stipulation Order, that he shall not file any action, complaint, counterclaim, cross-claim, proceeding, charge, grievance or arbitration, nor commence any other proceeding, administrative or judicial ("Claim" or "Claim[s]"), against any of the herein individual defendants and/or the Town, in any court of law, admiralty or equity or before any administrative agency or arbitrator, seeking damages or other remedies regarding the matters alleged herein in the Complaint, Amended Complaint, Second Amended Complaint, Third Amended Complaint or in the Answer to the Second Amended Complaint or in the Answer to the Third Amended Complaint, and/or regarding any and all Claim(s) that were, or could have been, alleged or brought in the above-captioned matter; and Plaintiff releases and discharges Town Defendants from any and all claims, liability, demands, penalties, costs and causes of action of every nature which concern or are connected with the above-captioned matter, except to the extent any Claim(s) are otherwise provided for herein and/or concern allegation(s) that any herein Individual Defendant(s) have, and/or that the Town has, violated any obligations created by the Stipulation. Except as otherwise provided for herein, the Parties and each of them agree that nothing in the Stipulation impairs or is in any way intended to impair any rights Plaintiff may have to file any F.O.I.L. and/or Open Meetings Law requests and actions.

20. The Town Defendants, and each of them, hereby covenant and agree, that no Town Defendants shall file any Claim(s) against Plaintiff in any court of law, admiralty or equity or before any administrative agency or arbitrator seeking damages or other remedies on behalf of any of the Individual Defendants and/or the Town, with respect to matters alleged herein in the

Complaint, Amended Complaint, Second Amended Complaint, Third Amended Complaint or in

the Answer to the Second Amended Complaint or in the Answer to the Third Amended

Complaint, and/or with respect to any and all Claim(s) that were or could have been alleged or

brought in the above-captioned matter; and the Town Defendants release and discharge Plaintiff

from any and all claims, liability, demands, penalties, costs and causes of action of every nature,

which concern or are connected with the above-captioned matter, or otherwise arising on or prior

to the date the Third Amended Complaint in this action was filed, except if any Claim is

otherwise provided for herein and/or concerns an allegation that the Plaintiff has violated any

obligations created by the Stipulation.


21. The Individual Defendants, and each of them, and the Town do not admit, and specifically

deny, any liability, wrongdoing or violation of any law, statute, regulation, agreement or policy,

and are entering into the Stipulation solely for the purposes of (a) amicably resolving certain

matters in controversy, disputes, causes of action, claims, contentions and differences between

the Plaintiff and Individual Defendants, and each of them, and the Town, as articulated herein,

and (b) avoiding attorneys' fees and other expenses that would result from certain continued

litigation.


22. Plaintiff does not admit, and specifically denies, any liability, wrongdoing or violation of any

law, statute, regulation, agreement or policy, and is entering into the Stipulation for the purposes

of (a) amicably resolving certain matters in controversy, disputes, causes of action, claims,

contentions and differences between the Plaintiff and any Individual Defendants, and each of

them, and/or the Town; (b) avoiding attorneys' fees and other expenses that would result from

**A180**

certain continued litigation; and (c) causing the Town to enter into the Stipulation to cause the Town to revise certain Town laws, policies and practices.

23. The Plaintiff and the Town Defendants, and each of them to the Stipulation, represent and acknowledge that to the best of his/her/its knowledge, that he/she/it has not assigned or transferred any claim which he/she/it may now have against any other Party or Parties to the Stipulation, and/or against any current and past officers, employees, agents, and representatives, past and present, in their individual and/or official capacities, of any Party or Parties to the Stipulation.

24. The Plaintiff and the Town Defendants, and each of them to the Stipulation, represent and acknowledge that no representation, statement, promise, inducement, threat or suggestion has been made by any Party or Parties to the Stipulation to any other person and/or by the attorneys for any Party or Parties to the Stipulation to influence any other Party or Parties to sign the Stipulation, except such statements as are set forth herein.

25. The Plaintiff and the Town Defendants, and each of them acknowledge that the Stipulation represents the full, final, and complete resolution of certain matters to the extent provided for herein. The Stipulation supersedes all prior agreements, written or oral, if any, by and/or between the Parties and each of them to the Stipulation. The Stipulation may not be changed except by an instrument in writing signed by the Parties.

26. Plaintiff and the Town Defendants, and each of them, agree that if any provision of this Stipulation is determined to be contrary to law by a court of competent jurisdiction, it is understood and agreed that such provision shall be deemed deleted and that the balance of the Stipulation without such deleted provision, if otherwise lawful, shall remain in full force and effect.

27. The Stipulation shall be governed by and construed and interpreted in accordance with the laws of the State of New York.

28. Plaintiff and Town Defendants, and each of them, agree to cooperate fully and to execute the Stipulation and all supplementary documents and promptly to take any and all additional actions which may be necessary or appropriate to give full force and effect to the basic terms and intent of the Stipulation and Stipulation Order. Plaintiff and the Town Defendants, and each of them also agree that Plaintiff shall promptly file a motion with the Court concerning his Third-Amended Complaint, which motion the Town and all Individual Defendants agree will be unopposed by the Town and by all Individual Defendant. Further, Plaintiff and Town Defendants, and each of them, agree that, prior to the Court so-ordering this Stipulation, the Court must issue its order with regard to the Plaintiff's Third Amended Complaint, so as to give the Court jurisdiction over all matters in this Stipulation, when the Court issues its Stipulation Order.

29. Notwithstanding anything herein elsewhere in the Stipulation to the contrary, the Town expressly agrees that, for the remainder of the lives of Plaintiff, Howard Norton, and Richard

Norton, the Town shall comply with all laws, including all of the laws referred to herein and in Plaintiff's Complaint, First Amended Complaint, Second Amended Complaint, and Third Amended Complaint; all laws referred to in the Town Defendants' Answer to the Second Amended Complaint and in the Answer to the Third Amended Complaint; and all of the laws which, going forward, relate to any involvement(s) the Town has with Plaintiff and/or with either or both of his two brothers, Richard Norton and/or Howard Norton. The Town hereby covenants and agrees it shall not engage in any conduct with any or all of the aforementioned Norton brothers in violation of any law and that nothing in the Stipulation and/or in the Stipulation Order is intended to immunize or ratify, or may be interpreted as immunizing or ratifying, any wrongful and/or improper Town law, policy, practice or custom and/or as constituting any concession, waiver or forfeiture by Plaintiff of any right of Plaintiff and/or of Howard Norton and/or of Richard Norton to require the Town to comply with all laws. The Plaintiff and Town Defendants hereto expressly agree that Howard Norton and Richard Norton are intended beneficiaries of the Stipulation and of the Stipulation Order.

30. Notwithstanding anything in the Stipulation to the contrary, the Town agrees that it has waived and forfeited any right(s) it may have possibly had to claim that Plaintiff by the Stipulation has waived and/or forfeited any right whatsoever predicated on any Town act(s) or omission(s) whatsoever occurring in whole or in part(s) after the execution of the Stipulation to commence the following against the Town: any motion(s) and/or action(s) seeking injunctive relief and/or declaratory relief; any federal actions; special proceeding(s), motion(s) and/or action(s) such as Article 78's or any contempt of court action. Nothing herein is in any way intended to deprive Plaintiff, Howard Norton, and/or Richard Norton of any right(s) by which Plaintiff, Howard Norton, and/or Richard Norton can lawfully protect and defend themselves in

26

and against any future Town act(s) or omission(s) occurring in whole or in part(s) after the Date of the Stipulation, including but not limited to any act(s) and/or failure(s) to act by Plaintiff, Howard Norton, and/or Richard Norton, occurring prior to the execution of the Stipulation. The Town expressly agrees that Plaintiff and/or Howard Norton and/or Richard Norton, in any such action based on acts occurring after the execution of this Stipulation, have expressly reserved the right(s) to assert the invalidity/unlawfulness of any Town laws and/or ordinances which could have, or might have, been litigated in this civil action, but were not, and to claim affirmatively, in any subsequent motion and/or action and/or via any counterclaim or crossclaim, the invalidity/unlawfulness of such Town laws and/or ordinances as defense to any act(s) or omission(s) by the Town occurring before, during the term of or after any expiration or termination of the Stipulation in any new action or complaint brought by the Town against the three Norton brothers or any of them, after the Date of the Stipulation.

31. Not used.


32. The Town, consistent with what is set forth in *People v. Grimditch*, 35 Misc.3d 268, 274 (Essex County Court, 2012), agrees that, upon the issuance by the Court of its Stipulation Order, it shall promptly review, immediately cease enforcement of, and within a reasonable time repeal, any section(s) of the Town Code that provides:


 a. that criminal violation(s) of the Town Code are other than in keeping with the provisions of New York Executive Law Article 18 and/or the Uniform Code, such that no scheme of penalties, including increased penalties for repeat offenders, exceeds the $1000/day penalty authorized by Executive Law § 382 (2);

b. that "any" Uniform-Code-related violation of the Town Code by "any" person is a misdemeanor; and

c. that any criminal action can be commenced, and/or that any criminal liability and/or criminal or civil penalties can be found, in any instance which is inconsistent with, or in conflict with, the requirements of New York Executive Law Article 18 and/or the Uniform Code.

33. Each and every person signing the Stipulation represents and warrants that s/he has been duly authorized to enter into the Stipulation by the Party or Parties on whose behalf it is indicated that the person is signing. The person(s) signing the Stipulation on behalf of the Town further represents and warrants that the Town's Town Board has provided him/her/them with all necessary written approvals, empowering him/her/them with full authority to sign the Stipulation.

34. For the purposes of this matter and the Stipulation, and of any action to enforce this Stipulation, Plaintiff and Town Defendants consent to: a) the Court's exercise of subject matter jurisdiction over this matter and Stipulation and b) personal jurisdiction of the Court over Plaintiff and over the Town Defendants and each of them.

35. Except as otherwise provided in the Stipulation, the Stipulation may be modified only upon written consent of the Parties and the approval of the Court.

Case 2:13-cv-03520-ADS-GRB   Document 86-1   Filed 10/17/17   Page 29 of 159 PageID #: 1092

36. Plaintiff does not, by consent to the Stipulation, warrant or aver in any manner that compliance by any or all of the Town Defendants with the Stipulation shall constitute or result in compliance with federal or state law or regulation. Nothing in the Stipulation shall be construed to affect or limit in any way the obligations of the Town Defendants to comply with all federal, state, and local laws and regulations governing any activity required by the Stipulation or Plaintiff's rights to require Town Defendants to comply with all such laws and regulations.

37. Any Party or Parties to this Stipulation, that intends to initiate court proceedings to enforce the Stipulation, shall, prior to initiating court proceedings to enforce the Stipulation, provide the other Party or Parties with 72 hours written notice at the address shown below in paragraph 44 of the Stipulation.

38. Except as specifically noted herein, any disputes with respect to any of the provisions of the Stipulation must follow the following procedure. The Parties to this stipulation shall first meet and confer to attempt to resolve any dispute arising under the Stipulation. In the event that such disputes cannot be resolved through this meet-and-confer process, the Parties shall request a settlement meeting before Magistrate Judge Gary R. Brown, or, in the event that Judge Brown is no longer available, before Judge Spatt or another magistrate or judge selected by the Chief Judge of the Federal District Court for the Eastern District of New York. In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with Magistrate Judge Gary R. Brown or another federal judge, the parties shall submit the dispute via motion to Magistrate Judge Gary R. Brown.

39. The provisions contained herein shall not be construed in favor of or against any Party or Parties because that Party or Parties or its counsel drafted the Stipulation, but shall be construed as if all Parties prepared the Stipulation, and any rules of construction to the contrary are hereby specifically waived. The terms of the Stipulation were negotiated at arm's length by the Parties hereto. The language in all parts of the Stipulation shall be construed according to its plain and ordinary meaning, except as to those terms defined by law or specifically herein.

40. The Stipulation may be executed in two or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. The Parties authorize each other to detach and combine original signature pages and consolidate them into a single identical original. Any one of such completely executed counterparts shall be sufficient proof of the Stipulation. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of the Stipulation. Copies of the original Stipulation, whether transmitted by facsimile or other means, shall be effective.

41. The Stipulation shall be binding upon, and inure to the benefit of, the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns and is enforceable only to the extent provided for herein.

30

42. Whenever under the Stipulation a provision is made for notice of any kind, including providing copy(ies) of any document(s), such notice shall be in writing, and signed by or on behalf of the Party giving or making the notice, and shall be deemed delivered (i) three days after same shall be sent, by certified mail, postage prepaid, return receipt requested, or (ii) one day after same shall be deposited into the custody of a reputable carrier for overnight delivery; except that if the day of delivery is a Saturday, Sunday or a public holiday, the time for any required response shall be extended in accordance with New York General Construction Law § 25-a. Such notice shall be sent to the following addresses:

| | |
|---|---|
| To the Plaintiff | 220 Summit Way<br>Syosset, New York 11791 |
| To the Town Defendants | Town of Brookhaven<br>1 Independence Hill<br>Farmingville, New York 11738<br>Attn: Town Clerk |

The addresses for notice may be changed by either Party by giving notice in accordance with this paragraph to the last address specified herein, or in accordance herewith.

43. It is the intention of the Parties to this stipulation, and the plea of the aforesaid Parties to the Court, that the Court interpret as broadly as possible its authority to retain jurisdiction over all matters raised by the above-captioned matter that have not been resolved by this Stipulation.

44. Notwithstanding anything in this Stipulation to the contrary, in no event may the Stipulation be construed to compel or require Plaintiff to file and/or continue any civil action(s) against

31

Individual Defendants or any of them and/or the Town and/or to engage in any motion

practice against Individual Defendants, or any of them, and/or the Town.

AS AGREED:

Dated: September 6, 2017
      Smithtown, New York

               Anne C. Leahey, Esq.
               Devitt Spellman Barrett, LLP
               Attorneys for Town Defendants
               On Behalf of the Town of Brookhaven
               And each of the Individual Defendants
               50 Route 111
               Smithtown, NY 11787

Dated: September 12, 2017
      Carle Place, New York

               Jonathan C. Messina, Esq.
               Leeds Brown Law, PC
               Attorneys for Plaintiff
               1 Old Country Road# 347
               Carle Place, NY 11514

SO ORDERED

s/ Arthur D. Spatt

_____

Arthur D. Spatt, U.S.D.J.

10/18/17
_____
Date

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JEROME NORTON,

                        Plaintiff,                **ORDER**
          -against-                      CV 13-3520 (ADS) (GRB)

TOWN OF BROOKHAVEN, COUNTY OF
SUFFOLK, ROBERT QUINLIN, DAVID J.
MORAN, JENNIFER LUTZER, JUSTIN
FOLBER, WILLIAM POWELL, VALERIE
BISCARDI, all individually and in their official
capacity,

                      Defendants.
-------------------------------------------------------X
**GARY R. BROWN, United States Magistrate Judge:**

      **WHEREAS** the parties have submitted a letter petition to the Department of State,

appended hereto, which they have requested this Court to "So Order," and

      **WHEREAS** the Court recognizes that the Department of State is not a party to this

action, and not before the Court in this matter, and

      **WHEREAS** the Court recognizes that the determination requested by the parties in the

letter petition would facilitate the resolution of this case and by extension be of assistance to the

Court,

      **IT IS HEREBY ORDERED** that the Department of State is respectfully requested to

consider the petition and, if appropriate, provide the determination sought in the letter petition

consistent with the resources and requirements of the Department.

Dated: Central Islip, New York           **SO ORDERED:**
        October 18, 2017


                                /s/ Gary R. Brown_____
                                United States Magistrate Judge

Case 22-1015, Document 36, 09/16/2022, 3383928, Page193 of 286

**A190**

Case 2:13-cv-03520-JMA-AYS   Document 88   Filed 10/18/17   Page 2 of 4 PageID #: 1392
Case 2:13-cv-03520-ADS-GRB   Document 86-1   Filed 10/17/17   Page 119 of 159 PageID #: 1182

# DEVITT SPELLMAN BARRETT, LLP
## ATTORNEYS AND COUNSELLORS AT LAW
### 50 Route 111
### Smithtown, New York 11787
Phone: (631) 724-8833
Fax: (631) 724-8010
Email: info@devittspellmanlaw.com
(direct mail to Smithtown address)

WILLIAM J. BARRETT
KEVIN M. SPELLMAN
JOHN M. DENBY
DAVID S. PALLAI
DAVID H. ARNTSEN
KENNETH M. SEIDELL
NICHOLAS M. BRINO
STEPHAN D. TRACE
KELLY E. WRIGHT
JOHN M. SHIELDS

FRANCIS J. TIERNEY
ANNE C. LEAHEY
THEODORE D. SKLAR

Retired
JOSEPH P. DEVITT

CHARLES W. BORGHARDT
JOSHUA S. SHTEIERMAN
DANIEL L. ADAMS
JESSE D. RUTTER
JUSTIN M. ROWE
MAGGIE O'CONNOR
KEVIN J. STIMPFL
STEPHEN G. RICKERSHAUSER

Of Counsel
THOMAS J. SPELLMAN, JR.
JELTJE de JONG
STEFANIE AFFRONTI
DEBORAH C. ZACHARY
EILEEN M. O'NEILL
ROGER E. SIEGEL
EMMANUEL KOSSARIS
GEORGE FREITAG
JOHN T. TRACY

September ___, 2017

Honorable Ms. Rossana Rosado, Secretary of State
New York State Department of State
One Commerce Plaza, 99 Washington Ave
Albany, NY 12231-0001

Linda Baldwin, General Counsel
New York State Department of State
Counsel's Office
One Commerce Plaza, 99 Washington Avenue
Albany, NY 12231-0001

Raymond Andrews, R.A.,
Assistant Director for Code Development
NYS Department of State, Codes Division
99 Washington Ave., Suite 1160
Albany, New York 12231.

Re: Brookhaven Town Code Chapter 82

Dear Honorable Ms. Rosado, Ms. Baldwin and Mr. Andrews:

By this letter, the Town of Brookhaven ("Town"), by counsel, petitions the Department
of State for its determinations as to whether (and if yes), to what extent, Chapter 82 of the
Brookhaven Town Code is legally enforceable under New York State Executive Law Article 18
and/or the New York State Fire Prevention and Building Code ("Interpretation Determination").
This petition is so-ordered by Magistrate Judge Gary R. Brown of the United States District
Court for the Eastern District of New York and said petition is being made pursuant to a Court-

Re:   Norton v. Town of Brookhaven, et al.
       13 CV 3520 (ADS/GRB)

Ordered stipulation of settlement in <u>Norton v. Town of Brookhaven</u>, et al., 13-CV-3520 (ADS/GRB), a copy of which is attached hereto as Exhibit A (see, in particular, Paragraph 6 of same). Attached hereto as Exhibit B is:

> 1. a certified copy of each Town Code Chapter 82 local law or ordinance upon which we seek the New York State Department of State render its determination on the merits (Local Laws --- 12 of 1999, 22 of 2002, 18 of 2003, 7 of 2009, 41 of 2010, 2 of 2012, 20 of 2012, 19 of 2013, 33 of 2013, 37 of 2013, 14 of 2014, 19 of 2015 and 22 of 2015), together with any other Town Code Chapter 82 local laws or ordinances passed into law by the Town through the date when the Department of State renders its Interpretation Determination, indicating to you (a) the date of enactment of each of the local laws or ordinances, and (b) (when a local law) the date each local law was filed in the office of the New York State Secretary of State as per the requirements of Municipal Home Rule Law § 27;

> 2. a true, complete and unredacted copy of the Town's file on each of the local laws or ordinances and every amendment thereto, setting forth any special conditions prevailing within the Town which warranted the enactment, all Town documentation with respect to the local law or ordinance, all of the Town's analysis with respect to each of the local laws or ordinances; and

> 3. a true, complete and unredacted copy of the Town's meeting minutes and/or transcripts and/or audio recordings, to the extent such are available (from the meetings or hearings during which the local laws or ordinances were discussed and/or adopted).

The Town of Brookhaven certifies that it has provided the New York Secretary of State, Department of State a copy of its Town Code Chapter 82 as it exists and that is in effect on the date of this submission and further certifies that during the pendency of this application, the Town of Brookhaven will make all reasonable efforts to advise you and Plaintiff of any changes or planned changes to Town Code Chapter 82.

The parties to this litigation greatly appreciate your consideration of this matter and thank you in advance for same.

Should you have any questions and/or require any other or further documents and/or information with regard to this sending, please do not hesitate to contact me or the Town directly.

Very truly yours,

Case 2:13-cv-03520-ADS-GRB   Document 86-1   Filed 10/17/17   Page 121 of 159 PageID #: 1184

Re:    Norton v. Town of Brookhaven, et al.
       13 CV 3520 (ADS/GRB)


                                        Anne C. Leahey

cc: Messrs. Rick Ostrove and Jonathan Messina, Esq. Leeds Brown Law, Attorney's for Plaintiff

SO-ORDERED:

Dated:                         _____
Central Islip, NY              Gary R. Brown
                               United States Magistrate Judge

Town of Brookhaven, NY                                            https://ecode360.com/print/BR0912?guid=8596502&children=true

*Town of Brookhaven, NY*
*Tuesday, April 24, 2018*

# Chapter 82. Neighborhood Preservation

[HISTORY: Adopted by the Town Board of the Town of Brookhaven 12-7-1999 by L.L. No. 12-1999, effective 12-10-1999. Amendments noted where applicable.]

**GENERAL REFERENCES**
Building construction administration — See Ch. **16**.
Fire prevention — See Ch. **30**.
Property maintenance — See Ch. **49**.
Nuisance abatement — See Ch. **49B**.
Zoning — See Ch. **85**.

## § 82-1. Legislative intent.

A. The intent of this chapter is to preserve the aesthetic integrity of our residential neighborhoods, prevent neighborhood blight, protect residential property values, encourage residential property maintenance and enhance the quality of life in our residential neighborhoods.



B. This chapter is intended to apply to all dwelling units within the Town of Brookhaven. This chapter shall not apply to property located in the Great South Beach (Fire Island) which will be regulated by § 85-170.1 of the Code of the Town of Brookhaven. The Town Board of the Town of Brookhaven has determined that there exists in the Town of Brookhaven serious conditions arising from non-owner occupied rental of dwelling units in one, two and three family and multiple dwellings that are substandard or in violation of the New York State Uniform Fire Prevention and Building Code, Building Rehabilitation Code, Electrical Code, Fire Prevention Code, Plumbing Code, and other codes and ordinances of the Town. Many of these dwellings are inadequate in size, overcrowded and dangerous, and such dwelling units pose hazards to life, limb and property of residents of the Town and others, tend to promote and encourage deterioration of the housing stock of the Town, create blight and excessive vehicle traffic and parking problems and to overburden municipal services. The Board finds that current Code provisions are inadequate to halt the proliferation of such conditions and that the public health, safety, welfare and good order and governance of the Town will be enhanced by enactment of the regulations set forth in this chapter, which regulations are remedial in nature and effect. The Board also finds that owner occupied dwellings can also fall into disrepair and not be adequately maintained, which has a detrimental effect on neighborhoods.
[Amended 10-15-2002 by L.L. No. 22-2002, effective 10-21-2002]

## § 82-2. Definitions.

As used in this chapter, the following terms shall have the meanings indicated:

**CODE ENFORCEMENT OFFICER**
Chief Building Inspector, Principal Building Inspector, Senior Building Inspector, Building/Zoning Inspector, Building Inspector, Zoning Inspector, Recycling and Sustainable Materials Management Inspectors, Housing Inspectors, Building Permits Coordinator, Electrical or Plumbing Inspector, Chief Fire Marshal, Assistant Chief Fire Marshal, Senior Fire Marshal, Police Officer, Town Investigator or Ordinance Inspector of the Town of Brookhaven and other law enforcement officers.
[Amended 6-29-2017 by L.L. No. 16-2017, effective 7-13-2017]

**DWELLING UNIT**

A structure or building, one-, two-, or three-family dwelling, or multi-unit apartments, condominiums or cooperatives, occupied or to be occupied by one or more persons as a home or residence.

**IMMEDIATE FAMILY**

The immediate family of the owner of a housing unit consists of the owner's spouse, children, parents, grandparents or grandchildren, siblings, uncles, aunts, nieces, nephews, cousins and in-laws.

**OWNER**

Any person, partnership, corporation or other entity who, alone or jointly with others, shall have legal title to any premises, with or without accompanying actual possession thereof; or who shall have charge, care or control of any dwelling unit as a cooperative shareholder or as executor, administrator, trustee, receiver or guardian of the estate or as a mortgagee in possession, title or control; including but not limited to a bank or lending institution, regardless of how such possession, title or control was obtained. [Amended 11-23-2010 by L.L. No. 41-2010, effective 12-7-2010]

**RENT**

A return, in money, property or other valuable consideration (including payment in kind or for services or other thing of value), for use and occupancy or the right to use and occupancy of a dwelling unit, whether or not a legal relationship of landlord and tenant exists between the owner and the occupant or occupants thereof.

**RENTAL DWELLING**

A dwelling unit established, occupied, used or maintained for rental occupancy as a one, two, or three family dwelling or multiple apartment units or condominiums or cooperatives.

**RENTAL OCCUPANCY**

The occupancy or use of a dwelling unit by one or more persons as a home or residence under an arrangement whereby the occupant or occupants thereof pay rent for such occupancy and use.[1]

**RENTAL REGISTRATION**

A registration which is issued upon application to the Chief Building Inspector and shall be valid for 15 months from the date of issuance. [Amended 11-23-2010 by L.L. No. 41-2010, effective 12-7-2010; 7-2-2013 by L.L. No. 33-2013, effective 7-15-2013]

[1]     *Editor's Note: The definition of "rental occupancy permit," which immediately followed this definition, was repealed 11-23-2010 by L.L. No. 41-2010, effective 12-7-2010.*

# § 82-3. Neighborhood preservation requirements.

[Amended 11-23-2010 by L.L. No. 41-2010, effective 12-7-2010; 7-15-2014 by L.L. No. 14-2014, effective 7-27-2014]

A.    Surface and subsurface water shall be appropriately drained to protect buildings and structures and to prevent the accumulation of water. Gutters, culverts, catch basins, drain outlets, stormwater sewers, approved combined storm and sanitary sewers or other satisfactory drainage systems shall be utilized to prevent damage to any portion of the subject or adjacent properties or any improvements thereupon.

B.    Steps, walks, driveways, parking areas and other paved areas shall be maintained in good repair.

C.    Yards shall be kept clean and free of physical hazards and debris.

D.    All lawns, common areas and recreation areas shall be maintained in a clean and neat condition, and grass shall be cut periodically to restrict growth in excess of 12 inches in total height. No portion of a lawn shall be damaged or destroyed by overuse or by the parking or driving of motor vehicles on such established lawn area. Carpet, tarps, sand or materials that damage or destroy the lawn shall not be placed anywhere upon a front lawn at any time. No portion of any front lawn shall be used for the parking, placement or storage of motor vehicles, trailers, boats or campers.

Town of Brookhaven, NY  Case 2:13-cv-03520-JMA-AYS  Document 112-4  Filed 11/13/18  Page 3 of 8 PageID #: 2055  https://ecode360.com/print/BR0082?guid=8590302&children=true

E. Exterior surfaces of any and all dwellings, structures and accessory structures, including but not limited to fences that are not inherently resistant to deterioration, shall be periodically treated with a protective coating of paint or other suitable preservative. All surfaces shall be maintained free of deterioration, including but not limited to broken or missing glass, loose or missing shingles or siding, crumbling brick, stone and mortar and peeling, scaling or deteriorated paint.

F. Dwellings, structures and accessory structures shall be maintained so as to be free of conditions detrimental to safety or health.

G. Dwellings, structures, accessory structures and property shall be maintained free of vermin, rodent harborage and infestation. Methods used for exterminating vermin and rodents shall conform to Suffolk County Health Department standards.

H. Adequate sanitary facilities and methods shall be used for the collection, storage, handling and disposal of garbage and refuse and sewage pursuant to Suffolk County Health Department standards.

I. Floors, walls, ceilings and fixtures in residential dwellings shall be maintained in a clean and sanitary condition.

J. Dwellings, structures and accessory structures shall be free of partitions or locked internal doors barring access between segregated portions of the building or dwelling unit.

K. No bedroom or sleeping quarters shall have interior key locks or dead bolt locked doors servicing said bedroom or sleeping quarters.

L. No bedroom shall constitute the only means of access of other bedrooms or habitable spaces, and bedrooms shall not serve as the only means of egress from other habitable spaces.

M. Carbon monoxide alarms and detectors shall be installed on every habitable floor of any dwelling, structure or accessory structure with a carbon monoxide source, in accordance with the New York State Uniform Fire Prevention and Building Code and Town Code Chapters **16** and **30**.

## § 82-4. (Reserved)

[1] *Editor's Note: Former § 82-4, Rental occupancy registration required, as amended, was repealed 11-23-2010 by L.L. No. 41-2010, effective 12-7-2010.*

## § 82-5. Fees.

[Amended 7-22-2003 by L.L. No. 18-2003, effective 7-28-2003]

A. A nonrefundable permit application fee shall be paid, upon filing an application for a rental occupancy permit or for a renewal rental occupancy permit, in accordance with the following schedule of rental dwelling units per structure:
[Amended 7-2-2013 by L.L. No. 33-2013, effective 7-15-2013]

| Type of Dwelling | Fee |
| --- | --- |
| One bedroom | $95 |
| Two bedrooms | $160 |
| Three bedrooms | $220 |
| Four bedrooms | $285 |
| More than four bedrooms | $345, plus $100 for each bedroom in excess of four |

B. The fee required by this section shall be waived for any applicant which demonstrates that it is a not-for-profit housing development corporation organized under the laws of the State of New York, and that it is

providing housing for senior citizens or other designated special populations subject to income guidelines established by either federal or state regulation.

C.  Any owner who operates a multi-unit apartment complex shall pay a biennial fee based upon the number of rental units as follows:

| Number of Units | Fee |
|---|---|
| 4 to 50 | $1,000 |
| 51 to 100 | $1,500 |
| 101 to 200 | $2,500 |
| Over 200 | $5,000 |

## § 82-6. Smoke detectors.

[Amended 10-15-2002 by L.L. No. 22-2002, effective 10-21-2002]
Each rental dwelling shall be equipped with a functioning smoke detector device, in compliance with New York State Uniform Fire Prevention and Building Code.

## § 82-7. Required space for occupancy.

[Amended 11-23-2010 by L.L. No. 41-2010, effective 12-7-2010; 1-19-2012 by L.L. No. 2-2012, effective 1-31-2012]
No person shall occupy or let to another for occupancy any dwelling or dwelling unit for the purpose of living therein which does not comply with the following requirements:

A.  Every dwelling unit shall contain at least 150 square feet of floor area per occupant, the floor areas to be calculated on the basis of total usable floor area of habitable rooms.

B.  There shall be no more than four persons per bedroom.

C.  No unfinished basement or bathroom space shall be used to calculate the minimum total usable floor area.

D.  Each rental dwelling unit shall have a dining area and recreation area in the dwelling structure.

## § 82-8. Inspections.

[Amended 10-15-2002 by L.L. No. 22-2002, effective 10-21-2002; 7-15-2014 by L.L. No. 14-2014, effective 7-27-2014]

A.  No permit shall be issued under any application unless all the provisions of the Code of the Town of Brookhaven, the laws and sanitary and housing regulations of the County of Suffolk and the laws of the State of New York have been complied with.

B.  The Chief Building Inspector of the Town of Brookhaven is authorized to make or cause to be made inspections, to determine the condition of dwellings and to safeguard the health, safety, morals and welfare of the public. The Chief Building Inspector or his designated representative is authorized to enter, upon the consent of the owner, any dwelling, dwelling unit, rooming house, rooming unit or premises at any reasonable time during daylight hours or at such other time as may be necessary in an emergency, without consent of the owner, for the purpose of performing his duties under this chapter.

C.  Search without warrant restricted. Nothing in this chapter, except for provisions concerning emergency inspections, shall be deemed to authorize the Chief Building Inspector of the Town of Brookhaven or his authorized representative to conduct an inspection of any premises subject to this chapter without the consent of the owner of the premises or without a warrant duly issued by an appropriate court.

Town of Brookhaven, NY        Case 2:13-cv-03520-JMA-AYS   Document 112-4   Filed 11/13/18   Page 5 of 8 PageID #: 2057

D. Conflict with other chapters or law. Nothing in this chapter shall be construed to negate the authority for inspections pursuant to any other section of law or court-ordered inspection.

E. Presumption of rent. Any dwelling, dwelling unit, rooming house, rooming unit or any other premises subject to this chapter shall be presumed to be rented for a fee and a charge made if said premises are not occupied by the legal owner thereof. This presumption shall be rebuttable.

## § 82-9. Application for search warrant.

[Amended 10-15-2002 by L.L. No. 22-2002, effective 10-21-2002]

The Chief Building Inspector of the Town of Brookhaven or his designated representative is authorized to make application to the District Court or Supreme Court of Suffolk County, or any court of competent jurisdiction, for the issuance of a search warrant in order to conduct an inspection of any premises covered by this chapter where the owner refuses or fails to allow an inspection of its rental premises and where there is reasonable cause to believe that a violation of this chapter has occurred. The application for a search warrant shall in all respects comply with the applicable laws of the State of New York.

## § 82-10. Rental registration required.

[Amended 11-23-2010 by L.L. No. 41-2010, effective 12-7-2010; 8-28-2012 by L.L. No. 20-2012, effective 9-11-2012; 7-2-2013 by L.L. No. 33-2013, effective 7-15-2013; 10-1-2015 by L.L. No. 19-2015, effective 10-15-2015; 10-29-2015 by L.L. No. 22-2015, effective 11-16-2015]

A. It shall be unlawful for any rental occupancy to exist in any dwelling without the owner's first having obtained a rental registration from the Chief Building Inspector.

 (1) It shall be an affirmative defense to a violation of Subsection A of this section that the rental occupant or occupants is/are immediate family members of the owner of the subject premises, as defined in this chapter.



B. Entities including, but not limited to, limited-liability companies, corporations, small corporations, partnerships and professional corporations shall have a valid rental registration in effect at any time the dwelling is occupied.

C. Application review; inspection of premises.

 (1) The Chief Building Inspector or his designee shall review each application for completeness and reject incomplete applications. The Chief Building Inspector shall create and approve the application requirements in accordance with this chapter.

 (2) Upon properly filing a complete application with the Building Division, the Chief Building Inspector shall issue a temporary rental registration valid for 90 days.



 (3) Inspection report. Within 90 days of receiving a temporary rental registration, the owner of the rental dwelling unit shall (1) arrange for an inspection of the unit or units and the premises on which the same are located by the Chief Building Inspector or his designee employed by the Town of Brookhaven, or (2) provide to the Chief Building Inspector an inspection report, designed and approved by the Chief Building Inspector, signed by either a New York State licensed professional engineer, New York State licensed architect or home inspector who has a valid New York State Uniform Fire Prevention Building Code certification that the structure and the dwelling units contained therein meet all applicable housing, sanitary, building, electrical and fire codes, rules and regulations. Upon receipt of the approved inspection report, the Chief Building Inspector shall issue a rental registration valid for 15 months from the date of the issuance of the temporary rental registration.

 (4) No rental registrations may be issued after the expiration date of the temporary rental registration.

D.  Rental registration requirements.

   (1)  Rental registration applications shall be in writing on a form designed and approved by the Chief Building Inspector and shall include the owner's name, address and telephone number.

   (2)  Rental registrations shall also include the maximum number of persons that are allowed to occupy the premises pursuant to this chapter.

   (3)  Rental registrations shall contain a description of the unit, including the number of rooms in the rental dwelling unit, and the dimensions and use of each such room shall be included. The name, address and telephone number, if any, of the managing agent or operator of each such intended rental dwelling unit shall be included.

   (4)  All applicants must submit a sworn statement that there are no existing or outstanding violations of any federal, state or county laws or rules or regulations or of any Town of Brookhaven local laws or ordinances pertaining to the property.

   (5)  All applicants for a rental registration shall sign an affidavit stating that they have received a copy of and fully understand the Brookhaven Town Code concerning the restrictions on the number of unrelated persons occupying said residence.

   (6)  All applicants must submit the following documents:

      (a)  A property survey of the premises prepared by a licensed surveyor drawn to scale not greater than 40 feet to one inch, or, if not shown on the survey, a site plan prepared by a licensed surveyor or engineer, drawn to scale, showing all buildings, structures, walks, drives and other physical features of the premises and the number, location and access of existing and proposed on-site vehicle parking facilities; said survey to be dated not more than one year prior to the date of the application.

      (b)  A building permit application, properly prepared, for all proposed buildings, improvements and alterations to existing buildings on the premises, if any.

      (c)  Copies of all certificates of occupancy and/or certificates of existing use for all buildings and structures on the property.

      (d)  An affidavit setting forth the address to be used as the last known address of the owner for service pursuant to all applicable laws and rules. The owner shall notify the Building Division of any change of address submitted pursuant to this section within five business days of any change thereto.

   (7)  Each application shall be executed and sworn to by the owner of the premises.

   (8)  Any additional information required by the Chief Building Inspector.

   (9)  All rental properties containing eight or more rental units shall provide for a designated site manager, who shall be available to address and resolve any issues with the property 24 hours a day. The owner of the property must file the manager's address, telephone number and other contact information with the Building Division within five days of the designation of the manager or any changes thereto.

E.  Notwithstanding the above, no rental occupancy registration shall be required for a residential care facility licensed under federal, New York State or Suffolk County guidelines.

F.  Renewal of rental registrations.

   (1)  The Chief Building Inspector shall design and approve a renewal rental registration application form. A renewal rental registration application signed by the owner shall be completed and filed with the Building Department on or 90 days prior to the expiration date of any valid rental registration. A renewal rental registration application shall contain a copy of the prior rental registration.

(2) A renewal rental registration application shall contain a signed sworn statement setting forth the following:

    (a) That there are no existing or outstanding violations of any federal, state or county laws or rules or regulations or of any Town of Brookhaven local laws or ordinances pertaining to the property; and

    (b) That there are no changes to any information as provided on the prior valid rental registration and application.

(3) Prior to the issuance of a renewal rental registration, the owner shall cause an inspection of the unit or units and the premises on which the same are located to take place pursuant to Subsection C(3) above.

(4) The Town of Brookhaven shall not accept, review or approve any renewal rental applications for dwellings wherein the prior rental registration expiration date has passed. If the expiration date has passed, the owner must file a new application.

G. Registered motor vehicle restrictions.

(1) Each rental dwelling shall be entitled to have one registered motor vehicle for each legally designated bedroom, as determined by the Chief Building Inspector, as well as one additional registered motor vehicle located thereat.

(2) An owner seeking to have additional registered motor vehicles located at said rental property pursuant to this subsection may make an application to the Board of Zoning Appeals by written request for such relief.

## § 82-11. Revocation of permit.

A. The Chief Building Inspector shall revoke a rental occupancy permit where he or she finds that the permit holder has caused, permitted, suffered or allowed to exist and remain upon the premises for which such permit has been issued, for a period of 14 business days or more after written, return receipt requested notice and opportunity to be heard has been given to the permit holder, or the managing agent of such rental dwelling unit, a violation of the Multiple Residence Law and/or New York State Uniform Fire Prevention and Building Code or a violation of this chapter or other chapter of the Town Code. Revocation of a permit under this subsection can not be done by a devisee or assistant of the Chief Building Inspector.



B. An appeal from such revocation may be taken by the permit holder to the Board of Zoning Appeals, by written request, made within 30 days from the date of such revocation. The Zoning Board of Appeals shall hold a public hearing on such appeal after receipt of written request of such appeal, and after such hearing shall make written findings and conclusions and a decision either sustaining such permit revocation or reinstating such permit within 30 days after close of such public hearing. Unless the Town Board directs otherwise in circumstances constituting serious threats to health and safety, the filing of an appeal shall stay the effectiveness of a permit revocation until the Zoning Board of Appeals has considered and ruled upon the issue.

[1]     *Editor's Note: Original § 82-11, Confidentiality of rental registration, was repealed 9-12-2013 by L.L. No. 37-2013, effective 10-11-2013, which local law also renumbered former §§ 82-12 through 82-17 as §§ 82-11 through 82-16, respectively.*

## § 82-12. Broker's/Agent's responsibility.

[Amended 11-23-2010 by L.L. No. 41-2010, effective 12-7-2010]

A. Broker's/Agent's responsibility prior to listing. It shall be unlawful and a violation of this chapter and an

offense within the meaning of the Penal Law of the State of New York for any broker or agent to list, solicit, advertise, exhibit, show or otherwise offer for lease, rent or sale on behalf of the owner any dwelling unit for which a current rental permit has not been issued by the Chief Building Inspector. It shall be the broker's or agent's duty to verify the existence of a valid rental registration before acting on behalf of the owner.

B.   It shall be unlawful and a violation of this chapter to accept a deposit of rent or security, or a commission, in connection with the rental of a rental dwelling unit located within the Town of Brookhaven where no valid rental registration has been issued as required under this chapter.

C.   In the event that a person convicted of a violation of this section shall have been a real estate broker or salesperson licensed by the State of New York, at the time such violation was committed, the Town Clerk shall transmit a record of such conviction to the Division of Licensing Services of the Department of State and make complaint thereto against such licensee on behalf of the Town of Brookhaven, pursuant to the provisions of Article 12-A of the Real Property Law.

## § 82-13. Enforcement.

This chapter shall be enforced by the Code Enforcement Officer as defined by this chapter.

## § 82-14. Penalties for offenses.

[Amended 4-16-2009 by L.L. No. 7-2009, effective 4-27-2009; 4-23-2013 by L.L. No. 19-2013, effective 5-8-2013]

A.   Any person, association, firm or corporation which violates any provision of this chapter or assists in the violation of any provision of this chapter shall be guilty of a violation, punishable:

   (1)   By a fine not less than $500 and not exceeding $5,000 or by imprisonment for a period not to exceed 15 days, or both, for conviction of a first offense.

   (2)   By a fine not less than $1,000 nor more than $10,000 or by imprisonment for a period not to exceed 15 days, or both, for conviction of the second of the two offenses, both of which were committed within a period of five years.

B.   Each week's continued violation shall constitute a separate additional violation.

C.   This section is enacted pursuant to Municipal Home Rule Law § 10(1)(ii) a(9-a) and § 10(1)(ii)d(3) and pursuant to § 10(5) of the Statute of Local Governments, and is intended to supersede Town Law § 268 and any other statute or local law to the extent necessary to increase the minimum and maximum penalties contained therein.

## § 82-15. Implementation.

This chapter shall be effective immediately or upon filing with the Secretary of State, whichever is later. No violation of this chapter will be charged prior to April 1, 2000.

## § 82-16. Severability.

If any clause, sentence, paragraph, section or part of this chapter shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, section or part thereof directly involved in said judgment.

**A201**

# DEVITT SPELLMAN BARRETT, LLP
## ATTORNEYS AND COUNSELLORS AT LAW
50 Route 111
Smithtown, New York 11787

Phone: (631) 724-8833
Fax: (631) 724-8010
Email: info@devittspellmanlaw.com
(direct mail to Smithtown address)

KEVIN M. SPELLMAN
JOHN M. DENBY
NICHOLAS M. BRINO
DAVID S. PALLAI
DAVID H. ARNTSEN
KENNETH M. SEIDELL
KELLY E. WRIGHT
JOHN M. SHIELDS
JOSHUA S. SHTEIERMAN
ANNE C. LEAHEY

THEODORE D. SKLAR
JENNIFER T. CHAVEZ
STEPHAN D. TRACE
FELICIA GROSS

Retired
JOSEPH P. DEVITT (1923-2017)
WILLIAM J. BARRETT

JUSTIN M. ROWE
MAGGIE O'CONNOR
JOHN J. BURKE
ANTIGONE TZAKIS
JOHN G. SOMMERS
ASHLEY A. HUGHES
JACLYN L. DAR CONTE

Of Counsel
THOMAS J. SPELLMAN, JR.
JELTJE de JONG
STEFANIE AFFRONTI
DEBORAH C. ZACHARY
EILEEN M. O'NEILL
ROGER E. SIEGEL
EMMANUEL KOSSARIS
GEORGE FREITAG
JOHN T. TRACY

November 13, 2018

VIA ECF

Hon. Gary R. Brown, U.S.M.C.J.
United States District Court
Eastern District of New York
100 Federal Plaza
P.O. Box 9014
Central Islip, NY 11722-9014

> Re:   *Norton v. Town of Brookhaven, et al.*
> *13 CV 3520 (ADS/GRB)*

Dear Judge Brown:

By this letter, the Town responds to this Court's directive that the parties file a joint status report on November 13, 2018 regarding the implementation of the partial stipulation of settlement herein that was So Ordered by Judge Spatt on October 17, 2017 ("Stipulation"). Because, as shown below, Plaintiff is demanding compliance with terms that are not in the Stipulation and because the Town has substantially complied with all the terms in the Stipulation, the parties have reached an impasse.

Plaintiff, in a letter to the Court dated November 5, 2018, complained that the Town must change the following provisions in its Code to comply with the Stipulation:

- Chapter 5-3;
- Chapter 16-1;
- Chapter 16A-1, 16A-2;
- Chapter 30-138;

---

200 GARDEN CITY PLAZA, SUITE 225, GARDEN CITY, NEW YORK 11530
90 STATE STREET, SUITE 700, ALBANY, NEW YORK 12207
(866) 851-1123

Hon. Gary R. Brown, U.S.M.C.J.                    33                    November 13, 2018
United States District Court
Eastern District of New York

Re:   *Norton v. Town of Brookhaven, et al.*
*13 CV 3520 (ADS/GRB)*

The Stipulation resolved all terms in the complaint except the following three discrete, legal issues:

> A. The legality of its Rental Code, Chapter 82: The Stipulation provided in Stipulation ¶ 6(b) that the Town would send the State Department of State, Exhibit B attached to the Stipulation, which was a letter asking for a determination whether Town Code Chapter 82 is legally enforceable under the State Uniform Code. The parties agreed, in ¶ 6(e), that if DOS declined review, Plaintiff could seek a declaratory judgment regarding "the issue of whether and/or to what extent Chapter 82 of the Brookhaven Town Code is legally enforceable under New York State Executive Law Article 18 and/or the New York State Fire Prevention and Building Code.

> B. New York General Municipal Law 239-m: The Stipulation provided in Stipulation ¶ 7(c) that Plaintiff could, but was not required, to seek a declaratory judgment regarding whether "Town Code Ch. 82: constitutes a lawful exercise by the Town of the Town's powers pursuant to the requirements of New York General Municipal Law §239-m."

> C. New York Town Law § 262: The Stipulation provided in ¶ 8(a) that if a court should find that Chapter 82 was legal pursuant to New York General Municipal Law §239-m, then Plaintiff could, but was not required to, seek a declaratory judgment, as to "whether, and the extent to which, Town Code Ch. 82 constitutes a lawful exercise by the Town of the Town's powers consistent with the requirements of New York Town Law § 262."

All three of these issues involve questions of pure law for which discovery is not necessary. Plaintiff's insistence upon discovery with respect to these matters attempts to read terms into the Stipulation which are not there.

Based on the fact that that the Stipulation resolved al questions except for thee questions of law, the Town has repeatedly informed Plaintiff for months that it is not required to engage in discovery and will not do so.

In conclusion, based on the status of compliance set forth in this report, the Town has reached the point of exasperation. It will continue to abide by and implement the Stipulation but takes the position that it is fruitless to continue to cooperate with Plaintiff regarding terms that are not in the contract.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
JEROME NORTON,

                         Plaintiff,                **MEMORANDUM OF**
                                              **DECISION & ORDER**
               -against-                   2:13-cv-3520 (ADS) (GRB)

TOWN OF BROOKHAVEN, COUNTY OF
SUFFOLK, ROBERT QUINLAN, DAVID J.
MORAN, JENNIFER LUTZER, JUSTIN
FOLBER, WILLIAM POWELL, VALERIE
BISCARDI,

                          Defendants.
--------------------------------------------------------X

**<u>APPEARANCES:</u>**

**Leeds Brown Law, P.C.**
*Attorneys for the Plaintiff*
One Old Country Road
Carle Place, NY 11514
        By:    Bryan L. Arbeit, Esq.,
                Rick Ostrove, Esq.,
                Andrew G. Costello, Esq., Of Counsel.

**The Dresevic, Iwrey, Kalmowitz and Pendleton Law Group**
*Attorneys for the Plaintiff*
100 Quentin Roosevelt Blvd., Suite 102
Garden City, NY 11530
        By:    Jonathan Christopher Messina, Esq. Of Counsel.

**Devitt Spellman Barrett, LLP**
*Attorneys for Defendants Town of Brookhaven, Robert Quinlan, David J. Moran, Jennifer
Lutzer, Justin Folber, William Powell, and Valerie Biscardi*
50 New York Route 111
Smithtown, NY 11787
        By:    Anne C. Leahey, Esq.,
                Jeltje DeJong, Esq.,
                Kelly E. Wright, Esq.,
                Theodore D. Sklar, Esq., Of Counsel.

**Law Offices of Thomas M. Volz, PLLC**
*Attorneys for Defendants Town of Brookhaven, Robert Quinlan, David J. Moran, Jennifer Lutzer, Justin Folber, William Powell, and Valerie Biscardi*
280 Smithtown Blvd.
Nesconset, NY 11767
      By:    David H. Arnsten, Esq., Of Counsel.

**Suffolk County Department of Law**
*Corporation Counsel for Defendant Suffolk County*
H. Lee Dennison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY 11788
      By:    Brian C. Mitchell, Assistant County Attorney.


**SPATT, District Judge**:

## I.    BACKGROUND

### A.  Underlying Dispute and Procedural History

Plaintiff Jerome Norton (the "Plaintiff") brought this 42 U.S.C. § 1983, 28 U.S.C. § 2201, and state law action against Defendants Suffolk County (the "County"), the Town of Brookhaven (the "Town"), and several Town employees.  This opinion concerns a motion filed by the County seeking to dismiss the action as to the County.  Accordingly, this opinion primarily describes the present action as it relates to the County.

The action arises out of a dispute over a series of tickets for Town Code and New York State Uniform Fire Prevention and Building Code violations at a residential property the Plaintiff co-owned.  The Town, and not the County, charged the Plaintiff with those violations.  The Plaintiff prevailed in those proceedings, with the state court judge dismissing all of the accusatory instruments on procedural grounds.

The Plaintiff brought the present action in June 2013.  He amended his complaint two times.  In the second amended complaint, the Plaintiff asked for, *inter alia*, declaratory and

injunctive relief against the County, arguing that (1) only the County could charge individuals with violations of state law; (2) the County improperly delegated to the Town the responsibility for overseeing the prosecution of petty offenses; (3) the County disregarded the procedural violations occurring during the proceedings against the Plaintiff; and (4) the County failed to supervise the accusatory instruments that the Town brought against the Plaintiff.  ECF 16 at 68–71.

On July 30, 2014, the Court granted the County's motion to dismiss the action as to the County under Federal Rule of Civil Procedure ("FED. R. CIV. P.") 12(b)(6), ruling that the County could not be held to dictate the policies of the District Attorney's Office when the practices challenged by the Plaintiff directly bore upon the District Attorney's discretion to prosecute.  ECF 43 at 43–45.  The Court refers the parties to the July 30, 2014 opinion for a full recitation of the facts in this case.

The Plaintiff moved for reconsideration.  ECF 45.  In September 2014, the Court granted the Plaintiff's motion.  ECF 55.  As to the County, the Court granted the motion to reinstate the declaratory judgment claim.  *Id.* at 19.  The Court reasoned that the issue was not the district attorney's discretion to prosecute—over which the County could not be responsible, as the district attorney represents the state when prosecuting a criminal matter—it was "the administration of the district attorney's office," over which a county can be held liable.  *Id.* at 17.  The Court relied on an Eastern District Court decision by United States District Judge Nicholas G. Garaufis, in a case involving the Plaintiff's brother.  *Norton v. Town of Islip*, No. 04-CV-3079, 2009 WL 804702, at *10 (E.D.N.Y. Mar. 27, 2009) (internal quotation marks omitted), *rev'd in part on other grounds by* 378 F. App'x 85 (2d Cir. 2010) (Summary Order).  In that case, Judge Garaufis ruled as follows:

3

> The County overlook[ed] the accompanying rule that a DA acts as a County official in his administration and management of the district attorney's office. Decisions regarding supervision and training relate to the DA's role as the manager of the district attorney's office, and in that role, the district attorney acts as a county policymaker whose actions may give rise to municipal liability. Under this framework, the Second Circuit has limited the DA's role as a New York State official to specific decision[s] of the District Attorney to prosecute.

*Id.* (internal quotation marks and citation omitted).  Judge Garaufis further held in *Norton* that the Plaintiff's claims that a county maintained a policy or custom of delegating to town attorneys the prosecution of petty offenses and abdicating responsibility for supervision and oversight of Town zoning prosecutions did not concern the district attorney's discretion to prosecute.  *Id.* at *27.

### B.  The Third Amended Complaint and the Pending Rule 12 Motion

 In October 2017, in a hearing before then United States Magistrate Judge Gary R. Brown, the parties consented to the Plaintiff's filing of a third amended complaint.  ECF 10/16/17 entry.  The Plaintiff filed the third amended complaint the following day.  ECF 87.  In the third amended complaint, the Plaintiff alleged that the Town charged him with the above-noted violations in 2011, and that the court dismissed those charges in 2012.  *Id.* at 28, 49.  He does not allege that he is currently facing charges for Town Code violations, or that he expects additional charges in the future.

With regard to the County, the Plaintiff no longer asked for injunctive relief, but he reiterated his request for a declaratory judgment.  *Id.* at 79–83.  The Plaintiff again alleges that the County District Attorney's Office delegated to the Town attorney the prosecution of petty offenses; abdicated to the Town Law Department responsibility for criminal actions concerning the Town Code; and failed to supervise the Town "in its initiations and continuations of State

Court criminal actions by failing to maintain a system of supervision, control or oversight." *Id.* at 81.

In April 2018, the County answered the third amended complaint.  ECF 102.  Having filed their answer, the County now moves under FED. R. CIV. P. 12(c) for a judgment on the pleadings as to the claim against it.  ECF 121 (original motion), 123 (corrected motion).

## II.    DISCUSSION

### A. Legal Standard For a Judgment on the Pleadings

Courts apply the same procedure to evaluate motions for judgment on the pleadings under Rule 12(c) as for motions to dismiss under FED. R. CIV. P. 12(b)(6).  *Altman v. J.C. Christensen & Assoc's, Inc.*, 786 F.3d 191, 193 (2d Cir. 2015); *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009).  In so doing, courts "draw all reasonable inferences in [the non-movant's] favor, 'assume all well-pleaded factual allegations to be true, and determine whether they possibly give rise to an entitlement to relief.'"  *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009).  The non-movant is entitled to relief if she alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleadings of specifics, it does require enough facts to nudge [the non-movant's] claims across the line from conceivable to plausible." (internal quotation marks and citation omitted)).

On a Rule 12(c) motion, the court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case."  *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009).  "A complaint is [also] deemed to include any written instrument attached to it as an exhibit,

materials incorporated by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."   *Sira v. Morton*, 350 F.3d 57, 67 (2d Cir. 2004) (internal citations omitted) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

### B. Application to the Facts of This Case

In its Rule 12(c) motion, the County argues that the Court should rule on this motion, even though the Court has already ruled on a motion to dismiss in this action, because the arguments raised in the motion are similar to those made in the motion to dismiss the second amended complaint, and they relate to Second Circuit case law that has arisen since the Court granted reconsideration.  ECF 123 at 5–6.  The County also notes that the parties had previously attempted to settle the case, and, as part of those negotiations, the County consented to the Plaintiff's filing a third amended complaint, and it reserved its right to move to dismiss the complaint under Rule 12(b)(6).  *Id.* at 4–5.  The County further notes that after the filing of that complaint, the Plaintiff requested that the County interpose an answer so as to not delay proceedings against the Town.  *Id.*  The County agreed to answer, and the Plaintiff in turn agreed that the County did not waive its right to dismiss the complaint.  *Id.*

The County also argues that the Court should deny the Plaintiff's declaratory judgment claim as to it, because (1) the Plaintiff has not established that he faces a real and immediate injury, and thus, he lacks Article III standing to maintain a claim for declaratory relief; and (2) the underlying basis for the Plaintiff's request for declaratory relief lacks merit.  ECF 123 at 6–16.  As to standing, the County contends that in the third amended complaint, the Plaintiff alleged that the Town Code violations brought against him were dismissed, rendering moot any claim for declaratory relief.  *Id.* at 10.  The County also states that the Plaintiff fails to allege that he is currently being prosecuted or facing criminal charges, which makes his request speculative,

remote, and insufficient to merit declaratory relief. *Id.* In addition, the County asserts that the Court's granting of reconsideration on the motion to dismiss the second amended complaint does not create a controversy of sufficient ripeness for the Court to consider declaratory relief, because the legal consequences feared by the Plaintiff are speculative, and he has not pleaded a continuing or imminent concrete injury. *Id.* at 11–13.

As to the merits, the County asserts that the Second Circuit—in an appeal filed by the Plaintiff's brother in an action against the Town of Islip and the County—recently affirmed the Rule 12(c) dismissal of an action alleging that the County had a responsibility to supervise the actions of Assistant Town Attorneys. *Id.* at 14–16 (citing *Norton v. Town of Islip*, 678 F. App'x 17, 20 (2d Cir. 2017) (summary order)). Accordingly, they argue, the Court should not award the Plaintiff declaratory relief when there is no basis for the Plaintiff's underlying theory of liability. *Id.* at 16.

The Plaintiff opposes the Rule 12(c) motion. He first argues that in June 2014, when the Court first ruled on the County's motion to dismiss the second amended complaint, the Court ruled that an actual controversy existed in the action. ECF 125 at 17. The Plaintiff also notes that in granting reconsideration, the Court left that part of the June 2014 opinion undisturbed; thus, it remains the law of the case. *Id.* He argues that although the County relies on the *Norton v. Town of Islip* ruling, that case is not controlling, and he further notes that the County does not submit any new evidence or allege a need to correct a clear error or prevent manifest injustice. *Id.* In addition, the Plaintiff claims that the Defendant is effectively moving for reconsideration five years after the fact, which the Court should not permit, on both timeliness grounds and based on the law of the case doctrine. *Id.* at 18–19.

**A210**

In the alternative, the Plaintiff contends that the *Norton v. Town of Islip* holding is legally distinct from the issues in this case, namely in the sense that the Court here has not dismissed the Plaintiff's underlying substantive claims against the Town, and, that unlike in this action, the plaintiff in the *Norton v. Town of Islip* action brought a claim against the County under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). *Id.* at 19–22.

In addition, the Plaintiff submits an *amicus curiae* brief filed by the New York State Attorney General in an unrelated case before the New York Court of Appeals, which provided that a district attorney may allow others to prosecute cases, but there must be a system whereby the district attorney consents to others appearing on her behalf in those cases. *Id.* at 22–23.

He also argues that in April 2019, the President of the District Attorney's Association of the State of New York ("DAASNY President"), filed a complaint in Albany County Supreme Court in the case of *Soares, et al. v. New York, et al.*, where he argued that a district attorney has exclusive discretionary power to determine whom, whether, and how to prosecute a criminal matter, and that a district attorney may not transfer that responsibility to anyone else. *Id.* The Plaintiff also attaches the transcript of a January 2019 status conference before then Magistrate Judge Brown, where the parties discussed the briefing schedule for the pending Rule 12(c) motion. ECF 125-3.

In reply, the County asserts that its Rule 12(c) motion is timely and made pursuant to the above-noted agreement with the Plaintiff. ECF 126 at 2. It claims that its Rule 12(c) motion asks the Court to consider constitutional and substantive reasons as to why there should be a judgment on the pleadings; it does not seek reconsideration of the Court's earlier order. *Id.* at 5. It also challenges the Plaintiff's argument that this Court had already ruled that a controversy

existed as to the County, contending that the section of the opinion cited by the Plaintiff pertained only to the Plaintiff's action as to the Town.  *See id.* at 3–4.

After the County replied, the Plaintiff sent a letter to the Court updating it on new developments in the *Soares* case.  ECF 127.  The County argues that the Court should not consider this information because it is inadmissible hearsay with no relevance to the fully briefed motion to dismiss, and because it constitutes an attempt to file an impermissible sur-reply without the Court's permission.  The Court addresses each of these issues in turn.

**1.  Timeliness of the Motion**

The Court rules that the County timely filed the Rule 12(c) motion.  Rule 12(c) provides for the filing of such motions "[a]fter the pleadings are closed—but early enough not to delay trial."  FED. R. CIV. P. 12(c); *see Hoefer v. Bd. of Educ. of Enlarged City Sch. Dist. of Middletown*, No. 10-Civ-3244, 2014 WL 1357334, at *3 (S.D.N.Y. Apr. 7, 2014) (denying party permission to file Rule 12(c) motion six months after date court had set for trial).  When a Rule 12(c) motion "has no effect on the trial schedule, it need not be barred as untimely."  *See City of Almaty, Kaz. v. Ablyazov*, No. 15-CV-5345, 2019 WL 1430155, at *3 (S.D.N.Y. Mar. 29, 2019).

Here, the Plaintiff does not allege that the County's Rule 12(c) motion has delayed trial proceedings.  In fact, the January 2019 status conference transcript reveals that the County filed the Rule 12(c) motion according to a briefing schedule established by Judge Brown.  ECF 125-3 at 24–28.  Thus, the Court deems that the County timely filed the Rule 12(c) motion. *See City of Almaty*, 2019 WL 1430155, at *3.

**2.  The Law of the Case Doctrine**

The Court also rules that the pending Rule 12(c) motion is not precluded by the law of the case doctrine.  "The law of the case doctrine commands that when a court has ruled on an

issue, that decision should generally be adhered to by that court in subsequent stages of the same case unless cogent and compelling reasons militate otherwise." *Hernandez v. Sessions*, 731 F. App'x 51, 55 (2d Cir. 2018) (summary order) (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)).   Compelling reasons include "an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Johnson*, 564 F.3d at 99–100 (internal quotation marks omitted); *see Sheet Metal, Air, Rail and Transp. Workers Local Union No. 137 v. Frank Torrone & Sons, Inc.*, No. 15-CV-2224, 2018 WL 4771897, at *6 (E.D.N.Y. Oct. 3, 2018).   The law of the case doctrine is "discretionary and does not limit a court's power to reconsider its own decisions." *Virgin Atlantic Airways , ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

The doctrine does not apply to the pending motion to the extent that it raises challenges to the Court's subject matter jurisdiction.   *See Chen-Oster v. Goldman, Sachs & Co.*, No. 10-Civ-6950, 2015 WL 4619663, at *3 (S.D.N.Y. Aug. 3, 2015); *Allah v. Juchnewioz*, No. 93-Civ-8813, 2003 WL 1535623, at *3 (S.D.N.Y. Mar. 24, 2003) ("While the 'law of the case' doctrine might counsel against reversing that ruling now, it does not apply where subject matter jurisdiction is implicated.") (citing *Marcella v. Capital Dist. Physician's Health Plan, Inc.*, 293 F.3d 42, 47 (2d Cir. 2002)).   The parties disagree as to whether the Court ruled that a controversy, and thus, subject matter jurisdiction, existed as to the claim against the County.   The Court need not resolve that dispute in order to consider, anew or for the first time, whether it has subject matter jurisdiction over this portion of the action.   *See, e.g.*, *Allah*, 2003 WL 1535263, at *3; *see Walsh v. McGee*, 918 F. Supp. 107, 113 (S.D.N.Y. 1996) ("Thus, a federal court cannot assert jurisdiction over a claim that is outside the scope of the Court's jurisdiction merely by relying on the court's own prior decision that jurisdiction over such claim was proper").

10

Conversely, the law of the case doctrine does apply to the portion of the County's motion dealing with the merits of the Plaintiff's theory of liability.  In the section of its motion pertaining to the Plaintiff's liability theory, the County relies on a 2017 summary order from the Second Circuit.  Summary orders do not have precedential value.  *See, e.g.*, *Martinez v. Miller*, 330 F. App'x 296 (summary order); *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 292 (E.D.N.Y. 2011).  Although summary orders may serve as law of the case when they occur within a given action, the summary order in *Norton v. Town of Islip* is from a separate, unrelated action.  *See United States v. Uccio*, 940 F. 2d 753, 757 (2d Cir. 1991).  Accordingly, the Court will only consider the portion of the County's Rule 12(c) motion as it pertains to the Court's subject matter jurisdiction over the declaratory judgment claim.

### 3. The Materials Submitted After the Reply

Although the Plaintiff in its August 27 letter does not expressly seek the Court's leave to file a sur-reply, the Court construes that letter as such an application.  *Barbour v. Colvin*, 993 F. Supp. 2d 284, 287 (E.D.N.Y. 2014) (Spatt, *J.*).  "Motions for leave to file a sur-reply information [ ] are subject to the sound discretion of the court."  *Anghel v. New York State Dep't of Health*, 947 F. Supp. 2d 284, 293 (E.D.N.Y. 2013) (quotation marks and citation omitted), *reconsideration denied* (July 20, 2013); *Kapiti v. Kelly*, No. 07-CV-3782, 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008) (noting that "the decision to permit a litigant to submit a surreply is a matter left to the Court's discretion, since neither the Federal Rules of Civil Procedure nor the Local Civil Rules of this Court [and the Eastern District] authorize litigants to file surreplies.").

The Court, in its discretion, declines to consider the information offered by the Plaintiff in its proposed sur-reply.  *See, e.g.*, *Prentice v. Port Auth. of N.Y. & N.J.*, No. 15-CV-738, 2017

11

WL 2271364, at *1 (E.D.N.Y. May 23, 2017) (Spatt, *J.*).  The information offered does not bear

on the remaining issue before the Court, whether the Court has subject matter jurisdiction over

the Plaintiff's declaratory judgment claim against the County.

### 4.  Subject Matter Jurisdiction

Article III of the Constitution limits the jurisdiction of federal courts to the resolution of

"cases" and "controversies."  U.S. CONST. art. III, § 2.  In order to ensure that a plaintiff meets

this fundamental case-or-controversy requirement, courts require that plaintiffs establish their

"standing" as "the proper part[ies] to bring" suit.  *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct.

2312, 138 L. Ed. 2d 849 (1997); *see also W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche

LLP*, 549 F.3d 100, 106 (2d Cir. 2008).  To successfully allege standing to bring suit in federal

court, a party must allege in her complaint the following:

> *first*, that the plaintiff has suffered an "injury in fact," which the Supreme Court
> defines as "an invasion of a legally protected interest which is (a) concrete and
> particularized; and (b) actual or imminent, not [merely] conjectural or
> hypothetical," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130,
> 119 L. Ed. 2d 351 (1992) (internal citation and quotation marks omitted); *second*,
> that there is a "causal connection between the injury and the conduct complained
> of," which requires the injury to be "fairly traceable to the challenged action of
> the defendant, and not the result of the independent action of some third party not
> before the court," *id.* (internal quotation marks and alterations omitted); and *third*,
> that it is "likely, as opposed to merely speculative, that the injury will be
> redressed by a favorable decision." *Id.*

*Citizens for Responsibility and Ethics in Washington v. Trump*, 939 F.3d 131, 142 (2d Cir. 2019).

In addition, the Supreme Court has ruled that not only must a controversy be sufficiently

real and immediate, it must also be ripe for adjudication.  *Thomas v. City of New York*, 143 F.3d

31, 34 (2d Cir. 1998).  To be ripe, a claim must not be a "mere hypothetical question."  *Nat'l

Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013).  "A claim is not ripe if it

depends upon contingent future events that may or may not occur as anticipated, or indeed may

not occur at all." *Id.*; *see also Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506, 511 (2d Cir. 2014); *Conn. Fund for the Env't, Inc. v. Untied States Gen. Serv. Admin.*, 285 F. Supp. 3d 525, 534 (E.D.N.Y. 2018).

The Declaratory Judgment Act "provides a specific remedy for plaintiffs who are alleging a claim based on a substantive source of rights, but does not itself confer any substantive rights." *Khanom v. Kerry*, 37 F. Supp. 3d 567, 575 (E.D.N.Y. 2014) (citing *Springfield Hosp. v. Hofmann*, 488 F. App'x 534, 535 (2d Cir. 2012) (summary order) (holding that the plaintiff "cannot maintain an action for a declaratory judgment without an underlying federal cause of action"); *In re Joint E. & S. Dist. Asbsestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) (noting that the Declaratory Judgment Act does not "provide an independent cause of action," and that its "operation is procedural only—to provide a form of relief previously unavailable"); and *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 80 (S.D.N.Y. 2012) (noting that "the Declaratory Judgment Act is not a source of federal substantive rights")).

Thus, the Declaratory Judgment Act is merely a procedural vehicle, and cannot form an independent basis for subject matter jurisdiction. *See Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 48 F. Supp. 3d 675, 688–89 (S.D.N.Y. 2014) ("[F]or subject matter jurisdiction, there must be an independent basis for federal jurisdiction because it is well established that the DJA does not expand the jurisdiction of the federal courts, and a basis for subject matter jurisdiction other than the DJA must be found.") (citing *Albradco, Inc. v. Bevona*, 982 F.2d 82, 85 (2d Cir. 1992)); *see also Correspondent Servs. Corp. v. First Equities Corp.*, 442 F.3d 767, 769 (2d Cir. 2006) (commenting that "the Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts"), *cert. denied sub nom.*, *Waggoner v. Suisse Sec. Bank & Trust, Ltd.*, 549 U.S. 1209, 127 S. Ct. 1329, 167 L. Ed. 2d 81 (2007); *DME Constr. Assocs., Inc.*

*v. United States*, No. 15-CV-4322, 2016 WL 2992131, at *3 (E.D.N.Y. May 23, 2016) (Spatt, *J.*).

A plaintiff seeking injunctive or declaratory relief "cannot rely on past injury to satisfy the injury requirement," instead, he "must show a likelihood that that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998); *see McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 284 (2d Cir. 2004). A party's "[p]ast exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983); *Martins v. Cty. of Nassau*, No. 15-CV-5120, 2016 WL 8711208, at *3–4 (E.D.N.Y. Apr. 29, 2016) (Spatt, *J.*).

Here, the Plaintiff relies on a past injury, the 2011 charges for Town Code violations, as the basis for his claim. This past injury is insufficient to confer subject matter jurisdiction on the Court with regard to the claim against the County. *See Deshawn E. by Charlotte E.*, 156 F.3d at 344.

In the third amended complaint, there is nothing to suggest that any concern that the Plaintiff may have about future prosecution for Town Code violations is anything more than speculative; thus, this claim is also not ripe for adjudication. *See Conn. Fund for the Env't, Inc.*, 285 F. Supp. 3d at 534; *Dow Jones & Co, Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 407 (S.D.N.Y. 2002) ("Accordingly, a touchstone to guide the probe for sufficient immediacy and reality is whether the declaratory relief sought relates to a dispute where the alleged liability has already accrued or the threatened risk occurred, *or rather whether the feared legal consequence remains a mere possibility, or even probability of some contingency that may or may not come to*

14

*pass*.") (emphasis added).  Accordingly, the Court grants the Rule 12(c) motion and dismisses the complaint as to the County, for the Plaintiff cannot state a plausible claim against the County in the absence of subject matter jurisdiction.

**III.     CONCLUSION**

For the foregoing reasons, the Court grants the Rule 12(c) motion for judgment on the pleadings by the Defendant Suffolk County.  The Third Amended Complaint is dismissed as to the Defendant Suffolk County.


It is **SO ORDERED.**




      /s/ Artur D. Spatt                           January 21, 2020     

      Arthur D. Spatt, U.S.D.J.                              Date

FILED
CLERK

1:18 pm, Apr 15, 2020

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
JEROME NORTON,                    . Civil No. 13-CV-3520(AYS)
                                  .
           Vs.                    .
                                  . 100 Federal Plaza
                                  . Central Islip, NY 11722
TOWN OF BROOKHAVEN, ET ALS.,      .
                                  . March 16, 2020
. . . . . . . . . . . . . . . .
```

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE ANNE Y. SHIELDS
UNITED STATES MAGISTRATE JUDGE


APPEARANCES (Telephonic):

For The Plaintiff:        LEEDS BROWN LAW, P.C.
                          BY: ANDREW COSTELLO, ESQ.
                          One Old Country Road
                          Carle Place, NY 11514

For the Defendant:        DEVITT SPELLMAN & BARRETT, LLP
                          BY:  SCOTT J. KREPPEIN, ESQ.
                          50 Route 111, Suite 314
                          Smithtown, NY  11787




Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

---

**TRACY GRIBBEN TRANSCRIPTION, LLC**
859 Nutswamp Road
Red Bank, New Jersey 07701
**(732) 263-0044    Fax No. 732-865-7179**
**800 603-6212**
www.tgribbentranscription.com

Kreppein/Argument                     16

1  Court to paragraph 43 of the stip.  That talks about retaining

2  jurisdiction.

3          THE COURT:  It's the intention of the parties and the

4  plea of the parties that the Court interpret as broadly as

5  possible its authority to retain jurisdiction and retain the,

6  yes, it just says that you want him to.  It does say he so

7  ordered it, but there's no other language.

8          MR. COSTELLO:  But Your Honor, it seems that this is,

9  it was the intention of the parties and a request of the

10 parties.

11         THE COURT:  It's not enough.  Okay, I --

12         MR. COSTELLO:  But now, now, Your Honor, all of a

13 sudden, what the Town seems to be doing is going back on that,

14 and now saying oh well, you know, there's no jurisdiction.

15         THE COURT:  I'm not saying oh well.  Subject matter

16 jurisdiction is not an oh well, it's kind of a big issue.

17         MR. COSTELLO:  I understand that, Your Honor.

18         THE COURT:  And the first time, when I look at a case

19 the first thing I ask is what's the basis of Federal

20 jurisdiction.  Because I need to understand that so that I can

21 understand whether we need any discovery.  Is it the

22 defendant's position that you don't need to do anything because

23 you're waiting for the Department of State to do something?

24         MR. KREPPEIN:  Correct.  And if the, the plaintiff,

25 there's language in the stipulation that the plaintiff can

1  bring a motion, a dispositive motion on these issues that

2  limits the Town's ability to do so.  So if we wait for the

3  Secretary of State this case is, we would like to is ending to

4  this case or some path towards resolution.

5          THE COURT:  Wait I'm sorry, who's talking now?  I'm

6  sorry, you're on the phone.

7          MR. KREPPEIN:  This is Scott Kreppein for the

8  defendants.

9          THE COURT:  Okay.

10          MR. KREPPEIN:  The stipulation is very open-ended.

11  The Secretary of State could never do anything and it limits

12  the Town's ability to bring a dispositive motion, but allows

13  the plaintiff to do so.  So what we're looking for is some path

14  to bring this case to an end.  And it's just a question of law.

15          THE COURT:  But the plaintiff is saying he needs

16  discovery from you before he makes a declaratory judgment

17  motion.

18          MR. KREPPEIN:  From my understanding of what's been

19  produced as part of this packet, he's received every piece of

20  paper that was considered by the Town Board in connection with

21  an entire chapter of the town code, and every amendment

22  thereto, and I don't know the exact number but it's probably

23  over a dozen amendments, it's a large box of documents with

24  everything about this town code, and you're talking about

25  interpreting a statute.

STATE OF NEW YORK
**DEPARTMENT OF STATE**
ONE COMMERCE PLAZA
99 WASHINGTON AVENUE
ALBANY, NY 12231-0001
WWW.DOS.NY.GOV

ANDREW M. CUOMO
GOVERNOR

ROSSANA ROSADO
SECRETARY OF STATE

August 31, 2020

Anne C. Leahey, Esq.
Devitt Spellman Barrett, LLP
50 Route 111
Smithtown, New York 11787

Andrew Costello, Esq.
Leeds Brown Law, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514

Re: Brookhaven Town Code Chapter 82

Dear Ms. Leahey and Mr. Costello:

This is in response to Ms. Leahey's letter dated December 20, 2019 ("Ms. Leahey's letter") and the unsigned letter dated September 2017 attached thereto (the "September 2017 letter"), as well as Mr. Costello's letter dated May 26, 2020 ("Mr. Costello's letter").

Based on the information provided, it appears that Ms. Leahey's firm represents the Town of Brookhaven (the "Town") in connection with the matter of *Jerome Norton, Plaintiff, v. Town of Brookhaven, et al, Defendants*, in the United States District Court for the Eastern District of New York (the "*Norton v. Town* litigation"); that Mr. Costello's firm represent Mr. Norton (the "Plaintiff") in the *Norton v. Town* litigation; and that the *Norton v. Town* litigation involves certain local laws that have been adopted by the Town and codified by the Town as Chapter 82 of the Brookhaven Town Code ("Town Code Chapter 82") and the interplay between Town Code Chapter 82 and Article 18 (§§ 370 – 382) of the New York State Executive Law ("Article 18") and the New York State Uniform Fire Prevention and Building Code (the "Uniform Code").

<u>Request for "Interpretation Determination"</u>

The Town is requesting the Department of State (the "Department") to issue an "Interpretation Determination" regarding the extent to which Town Code Chapter 82 is "legally enforceable" under Article 18 and/or the Uniform Code. *See* Ms. Leahey's letter and the unsigned copy of the September 2017 Letter was attached to Ms. Leahey's letter.

Ms. Leahey submitted 18 CDs with her letter.

One of the CDs submitted by Ms. Leahey includes 18 pdf files described by Ms. Leahey as containing digitized copies of documents which constitute "the Town Clerk's file for Chapter 82" and which, in paper form, fill two bankers boxes. More specifically, it appears that this CD includes certified copies of at least 13 local laws that were adopted by the Town between 1999 and 2015 and



Anne C. Leahey, Esq.
Andrew Costello, Esq.
August 31, 2020
Page 2

copies of the Town's "file" for each of those local laws. Based on the titles of the pdf files (Bates 1, Bates 2 to 468, . . . Bates 3253 to 3309), it appears that this CD includes 3,309 pages of documents.

The remaining 17 CDs are described by Ms. Leahey as containing audio recordings of public hearings relating to the adoption of the Town's local laws.

Ms. Leahey also submitted a conformed copy of an Order signed by Hon. Gary R. Brown, United States Magistrate Judge, on October 18, 2017. The Order provides, in pertinent part, that ". . . the Department of State is respectfully requested to consider the petition [presumably, the September 2017 Letter] and, if appropriate, provide the determination sought in the letter petition consistent with the resources and requirements of the Department."

Ms. Leahey also submitted a copy of a "Stipulation of Partial Settlement" in the *Norton v. Town* litigation signed by counsel for the parties to that litigation in September 2017 and "so ordered" Hon. Arthur D. Spatt, United States District Judge, on October 18, 2017 (the "Partial Stipulation").

Mr. Costello's Letter refers to a provision in the Partial Stipulation in which the Town agreed to provide the Department with information in the Town's files that sets forth any "special conditions" prevailing within the Town which warranted the enactment of the local laws giving rise to Town Code Chapter 82. Mr. Costello's letter states that "(a)ll lawsuit parties obviously felt this information level was relevant and would provide [the Department] with easy access to an abundance of information, including certain Executive Law § 379 petition–type information." Mr. Costello argues that the material provided by Ms. Leahey is inadequate, and does not satisfy the Town's obligations under the Partial Stipulation. More specifically, Mr. Costello argues that, in addition to the material already submitted by the Town, the Town should submit (1) electronically stored information ("ESI"), including emails; (2) copies of at least three local laws adopted by the Town in 2018; (3) approximately 350 pages of documents provided by the Town to Plaintiff in 2019; (4) at least 40 additional documents claimed by the Town to be privileged; (5) any and all additional documents that may be found by the Town following a "valid search of all relevant Town departments" and/or a "[proper] search all relevant parts of its government for documents;" and (6) "true, complete and unredacted [copies] of Town meeting minutes/transcripts and/or audio recordings regarding Local Laws 2 of 2012, 37 of 2013, 14 of 2014, 22 of 2015 . . . or 17, 18 and 22 of 2018." Attached to Mr. Costello's Letter were (1) a list entitled "Town of Brookhaven Town Code Changes" that mentions 11 local laws purportedly adopted by the Town in 2017 and 2018; (2) a 35-page long transcript of a conference held before Judge Brown in the *Norton v. Town* litigation on June 19, 2019; and (3) a document described as showing "certain proposed changes to Town Code Chapter 82."

Please note that the Department is not a party to the *Norton v. Town* litigation, has not participated in any manner in that litigation, and is not bound by any stipulation or order in that litigation. In particular, the Department is not a party to the Partial Stipulation, and the Department is not bound by the Partial Stipulation. In addition, the Department has not reviewed the Partial Stipulation or the transcript attached to Mr. Leahey's Letter in detail, and the Department expresses no opinion regarding the appropriateness of any statement, agreement, or provision in those documents.

Anne C. Leahey, Esq.
Andrew Costello, Esq.
August 31, 2020
Page 3

<u>Background – Article 18 and the Uniform Code</u>

The Uniform Code is adopted by the State Fire Prevention and Building Code Council (the "Code Council") pursuant to Article 18. The Uniform Code is applicable in all parts of the State (except New York City, which has its own building code).

In general, each local government (defined in Article 18 as a village, town [outside the area of any incorporated village], or city) is responsible for administration and enforcement of the Uniform Code with respect to buildings and structures located within the local government. Therefore, the Town is responsible for administration and enforcement of the Uniform Code with respect to buildings and structures located in those parts of the Town that are not within a village.

Executive Law § 378(1) provides that the Uniform Code shall address "(s)tandards for the construction of all buildings or classes of buildings, or the installation of equipment therein, including standards for materials to be used in connection therewith, and standards for safety and sanitary conditions. . . ." Standards of the type referred to in Executive Law § 378(1) are hereinafter referred to as *standards for construction*.

Not all provisions in the Uniform Code are *standards for construction* of the type described in Executive Law § 378(1). *See* Executive Law § 378(2), which provides that the Uniform Code shall address "(s)tandards for the condition, occupancy, maintenance, conservation, rehabilitation and renewal of certain existing buildings, structures and premises and for the safeguarding of life and property therein and thereabout from the hazards of fire, explosion or release of toxic gases arising from the storage, handling or use of combustible or hazardous substances, materials or devices." Standards of the type referred to in Executive Law § 378(2) are hereinafter referred to as *property maintenance standards*.

Article 18 authorizes a local government to enact or adopt local laws or ordinances imposing *standards for construction* within the jurisdiction of such local government that are higher or more restrictive than are applicable generally to such local government in the Uniform Code. *See* the first sentence of Executive Law § 379(1). However, that authority is subject to these requirements and limitations:

- Within 30 days of the enactment or adoption of a local *standards for construction*, the local government must notify the Code Council and petition the Code Council for a determination of whether the local *standards for construction* are more stringent than the Uniform Code. *See* the second sentence of Executive Law § 379(1).

- The Code Council must find that the local *standards for construction* are, in fact, higher or more restrictive than the Uniform Code, are reasonably necessary because of special conditions prevailing within the local government, and conform with accepted engineering and fire prevention practices and the purposes of Article 18. If the Code Council makes those findings, the Code Council must "adopt" (or approve) such local *standards for construction*, in whole or in part. *See* Executive Law § 379(2).[1]

---

[1] Prior to October 23, 2017, Executive Law § 379(1) provided that a local law of ordinance that imposes a higher or more restrictive local *standard for construction* would remain in full force and effect during the period in which the Code Council was considering the local government's petition. Since October 23, 2017, Executive Law § 379(1) has provided that a local law of ordinance that imposes a higher or more restrictive local *standard for construction* "shall

Anne C. Leahey, Esq.
Andrew Costello, Esq.
August 31, 2020
Page 4

In addition to Executive Law §§ 379(1) and (2), which limit a local government's authority to adopt local *standards for construction*, two other provisions of Article 18 address a local government's authority to adopt local building regulations:

- Executive Law § 379(3) provides that nothing in Article 18 "shall be construed to prohibit any municipality from adopting or enacting any building regulations relating to any matter as to which the uniform fire prevention and building code does not provide, but no municipality shall have the power to supersede, void, repeal or make more or less restrictive any provisions of this article or of rules or regulations made pursuant hereto."

- Executive Law § 383(1) provides that, subject to certain exceptions, none of which appears to be applicable here, the provisions of Article 18 of the Executive Law and of the Uniform Code "shall supersede any other provision of a general, special or local law, ordinance, administrative code, rule or regulation inconsistent or in conflict therewith . . . ."

<u>Response to the Request for the Department to Issue an "Interpretation Determination"</u>

The Town requests an "Interpretation Determination" regarding the "enforceability" of Town Code Chapter 82 under Article 18 and/or the Uniform Code. The Town has submitted what purports to be the Town's "complete file" relating to the adoption of each of the local laws that initially enacted and/or subsequently amended Town Code Chapter 82. Mr. Costello argues that the Town's submission is insufficient, and that the Town should submit more information, including information regarding local laws that Mr. Costello states were not included with Ms. Leahey's letter, so that the Department would have an "abundance of information" relating to "special conditions" prevailing within the Town which warranted the enactment of the local laws giving rise to Town Code Chapter 82, as well as other "Executive Law § 379 petition–type information."

Unfortunately, the Department does not have the resources that would be required to review and analyze the thousands of pages of written materials and (presumably) hours of audio recordings submitted with Ms. Leahey's letter, or the hundreds (perhaps thousands) of additional pages of materials called for by Mr. Costello's Letter.[2]

Even if the Department did have the resources required to review and analyze the voluminous raw data provided by the parties, the Department has no authority to identify any "special conditions" prevailing within the Town (or any other "Executive Law § 379 petition–type information" that the Town would be required to include in any such petition), or to issue an "interpretation" or "determination" regarding the existence of such special conditions or the question of whether such special conditions make it "reasonably necessary" for the Town to adopt any particular *standards for construction*. Article 18 provides that:

---

take full force and effect upon an affirmative determination by the [Code Council] as provided herein."

[2] The Department's determination that it lacks the resources necessary to review the material submitted with Ms. Leahey's letter was made long before our receipt of Mr. Costello's letter. Our response to Ms. Leahey's letter was delayed by that very lack of resources, and exacerbated by the COVID-19 pandemic. I can only say that Mr. Costello's letter, which argues that the materials submitted with the Ms. Leahey's letter were insufficient, and that the Town should submit even more material to the Department, only reinforces the Department's determination.

Anne C. Leahey, Esq.
Andrew Costello, Esq.
August 31, 2020
Page 5

1. the Town, and not the Department, is required to notify the Code Council of the Town's adoption of any local *standards for construction* and to petition the Code Council for a determination of whether such local *standards for construction* are more stringent than the Uniform Code;

2. that once such a petition is submitted by the Town, the Code Council, and not the Department, is authorized to determine whether the local *standards for construction* described in the petition are more stringent than the Uniform Code;

3. the Code Council, and not the Department, is authorized to determine whether "special conditions" exist within the Town;

4. the Code Council, and not the Department, is authorized to determine whether such "special conditions" make it "reasonably necessary" for the Town to adopt the local *standards for construction*; and

5. the Code Council, and not the Department, is authorized to determine whether the local *standards for construction* conform with accepted engineering and fire prevention practices and the purposes of Article 18.

Therefore, the Department must respectfully decline any request to review and analyze the materials submitted with Ms. Leahey's Letter, or any additional material that might be submitted pursuant to Mr. Costello's Letter, and the Department must respectfully decline any request to issue any "interpretation" or "determination" regarding the enforceability of Town Code Chapter 82.[3]

Please note that in addition to Article 18, which applies to local laws that impose local standards for construction, all local laws, regardless of the topics covered, must be adopted in accordance with the Municipal Home Rule Law and other statutes (such as the Open Meetings Law and SEQR) relating to the adoption of local laws. In light of the fact that Ms. Leahey has submitted the Town's "complete file" for various local laws adopted by the Town, I add, for the avoidance of doubt, that the Department has not reviewed the materials submitted for information relating to compliance by the Town with the Municipal Home Rule Law and other statutes relating to the adoption of local laws, and the Department expresses no opinion with regard to such compliance.

<u>Review of online version of Town Code Chapter 82</u>

Ms. Leahey indicates that she has provided copies of approximately 13 local laws which, when read together, constitute Town Code Chapter 82. Mr. Costello indicates that the Town has adopted additional local laws, not provided by Mr. Leahey, that made further changes to Town Code Chapter 82. Yet providing the Department with all local laws related to Town Code Chapter 82 would not provide the Department with a usable copy of Town Code Chapter 82 – the Department would be required to review each local law and to go through the detailed process of analyzing all the additions and deletions made by each local law and piecing together the current version of Town Code Chapter 82. The Department does not have the resources required to do that, and the Department has not attempted to do that.

---

[3] Please note that Executive Law § 376(4) authorizes (but does not require) the Secretary of State to issue written interpretations of the Uniform Code. However, Executive Law § 376(4) does not authorize (and certainly does not require) the Secretary of State to issue interpretations of local laws, or to issue determinations regarding the enforceability of local laws.

Anne C. Leahey, Esq.
Andrew Costello, Esq.
August 31, 2020
Page 6

However, the Department located an online posting of a document that purports to be Town Code Chapter 82 (see https://ecode360.com/8596302), and the Department performed a brief review of this online version of Town Code Chapter 82. Subject to the caveats that (1) the Department does not vouch for the accuracy or completeness of the online version of Town Code Chapter 82; (2) the Department has not reviewed the materials provided with Ms. Leahey's letter and expresses no opinion regarding the proper adoption of the local laws giving rise to Town Code Chapter 82; (3) the Department has not reviewed any other parts of the Town Code; and (4) the following should not be construed as legal advice or as an interpretation or determination of any kind by the Department, we offer the following observations:

The online version of Town Code Chapter 82 includes several *standards for construction* that address matters that are also addressed in the Uniform Code. More specifically:

- Paragraph (M) of Section 82-3 addresses carbon monoxide alarms and Section 82-6 addresses smoke detectors. The Uniform Code has provisions relating to carbon monoxide alarms and smoke alarms.

- Paragraph (J) of Section 82-3 provides that "(d)wellings, structures and accessory structures shall be free of partitions or locked internal doors barring access between segregated portions of the building or dwelling unit." Chapter 10 of the 2020 Building Code of New York State (the "2020 BCNYS") and Chapter 10 of the 2020 Fire Code of New York State (the "2020 FCNYS") regulate locks in certain occupancies and in dwelling units. Partitions are addressed in chapters 4-7 of the 2020 BCNYS and renovations to buildings may require dwellings, structures and accessory structures to be segregated.[4]

Any provision in Town Code Chapter 82 that is a *standard for construction* and addresses a matter that is also addressed in the Uniform Code is subject to the provisions of Executive Law §§ 379(1) and (2). Please note that, except as noted below with respect to the Town's Local Law No. 5 of 2014 and Local Law No. 11 of 2016, the Department is unable to locate any record indicating that the Town of Brookhaven has ever submitted the notice and petition required by Executive Law § 379(1) for any provision in Town Code Chapter 82. If the Town believes that it may have submitted any such notice and petition, I ask that Ms. Leahey provide details at her earliest convenience.[5]

- Paragraph (M) of Section 82-3 of the Town Code provides that "Carbon monoxide alarms and detectors shall be installed on every habitable floor of any dwelling, structure or accessory structure with a carbon monoxide source, in accordance with the New York State Uniform Fire Prevention and Building Code *and Town Code Chapters 16 and 30*" (emphasis added). Please note that the Town previously submitted petitions pursuant to Executive Law § 379(1) with respect to the Town's Local Law No. 5 of 2014 and Local Law No. 11 of 2016; that those local laws added and/or amended provisions that appear to be in Chapter 30 of the Town Code; and the Town's petitions relating to those local laws were denied by the Code Council. To the extent that paragraph (M) of Section 82-3 of the Town Code purports to require installation of

---

[4] The 2020 BCNYS, 2020 FCNYS, and 2020 PMCNYS (discussed below) are incorporated by reference in 19 NYCRR Parts 1220 to 1227 and are parts of the version the Uniform Code which became effective on May 12, 2020.

[5] Please note that filing a local law with the Department's State Records Unit pursuant to the Municipal Home Rule Law does not constitute providing the notice or filing of the petition required by Executive Law § 379(1).

Anne C. Leahey, Esq.
Andrew Costello, Esq.
August 31, 2020
Page 7

carbon monoxide alarms and detectors pursuant to provisions that were the subject of the Town's previously denied Executive Law § 379(1) petitions, it would appear that the Code Council has already determined that such part of paragraph (M) of Section 82-3 cannot be enforced by the Town.

The online version of Town Code Chapter 82 includes several *property maintenance standards,* at least some of which address matters that are also addressed in the Uniform Code. More specifically, paragraphs (A) through (I) and paragraphs (K) and (L) of Section 82-3 address property maintenance issues, many of which are addressed in the 2020 Property Maintenance Code of New York State (the "2020 PMCNYS"). Any provision in Town Code Chapter 82 which is not a *standard for construction,* but which does address a matter addressed in the Uniform Code, is subject to the provisions of Executive Law § 383(1), and is superseded by the Uniform Code to the extent of such inconsistency or conflict.

The online version of Town Code Chapter 82 includes several provisions that address matters not addressed in the Uniform Code. More specifically, it appears that Sections 82-5 (Fees), 82-8 (Inspections), 82-9 (Application for search warrant), 82-10 (Rental registration required), 82-11 (Revocation of permit), 82-12 (Broker's/Agent's responsibility), 82-13 (Enforcement), 82-14 (Penalties for offenses), 82-15 (Implementation), and 82-16 (Severability) address matters not addressed in the Uniform Code. It does not appear that these provisions could be construed as superseding, voiding, repealing, or make more or less restrictive any provisions of Article 18 or the Uniform Code. Therefore, pursuant to Executive Law § 379(3), it appears that nothing in Article 18 prohibits the Town from adopting these provisions.

<u>Mr. Costello's letter</u>

<u>(A) Alleged non-compliance with the Partial Stipulation</u>

As discussed above, Mr. Costello argues that the Town's submission to the Department was insufficient, and does not include all of the information and documentation that the Town agreed to submit in the Partial Stipulation in the *Norton v. Town* litigation. The Department does not have the authority to resolve any dispute between the Plaintiff and the Town regarding the Town's compliance or non-compliance with the Partial Stipulation. The Department expresses no opinion regarding the merits of Mr. Costello's assertions.

As stated above, the Department does not have the resources required to review the material already provided by the Town. The Department does not have the resources required to review any additional material that may be submitted pursuant to Mr. Costello's letter. With the exception of any petition for review of more restrictive local standards for construction that the Town may wish to submit pursuant to Executive Law § 379, which may be submitted to the Department's Division of Building Standards and Codes as secretariat for the Code Council, or any "DOS-2134-f complaint" (more fully discussed below) that the Plaintiff may wish to submit, the Department respectfully requests that the parties refrain from making any further submissions to the Department.

Anne C. Leahey, Esq.
Andrew Costello, Esq.
August 31, 2020
Page 8

#### (B) Request that the Department "exercise its lawful state interest powers"

Mr. Costello states in his May 2020 Letter that:

"Plaintiff finds very concerning the extent to which Brookhaven in 2020 retains on its books/is enforcing local laws voided by the State's adoption of its 2003 and thereafter Property Maintenance Codes. Plaintiff is also concerned that the Town has, since 2002, passed many local laws which are inconsistent with, or in conflict with, the requirements of New York Executive Law Article 18 and/or the Uniform Code. The Town's authority to petition the Secretary of State is (as per the Partial Stipulation) pre-conditioned upon the Town's compliance with the terms and conditions of Partial Stipulation Exhibit B. The Town's December 20, 2019 petition is, under the terms and conditions of the Partial Stipulation, improper and insufficient. The Town's petition specifically says, however, "[s]hould you have any questions and/or require any other or further documents and/or information with regard to this sending, please do not hesitate to contact me or the Town directly". As the DOS has plenary powers regarding administration and enforcement of New York Executive Law Article 18 and/or the Uniform Code, Plaintiff requests that the DOS fully exercise its lawful state interest powers."

The Department does not fully understand the meaning, in the context of the above-quoted paragraph, of the request that the Department "fully exercise its lawful state interest powers." To the extent that Plaintiff is requesting the Department to direct the Town to stop enforcing "local laws voided by the State's adoption of its 2003 and thereafter Property Maintenance Codes," I note that (1) for the most part, provisions in the various editions of the *Property Maintenance Code of New York State* that have been part of the Uniform Code since 2003 are *property maintenance standards* and not *standards for construction*; (2) to the extent that any *property maintenance standard* in any local law adopted by the Town addresses a matter addressed by the Uniform Code, such local law is not "voided" – it is merely superseded to the extent, if any, that such local law is inconsistent with or in conflict with the Uniform Code; and (3) in any event, the Department does not have the authority to direct the Town to stop enforcing provisions of its local laws that may be inconsistent with or in conflict with the Uniform Code. To the extent that Plaintiff is requesting the Department to determine that the Town is not in compliance with the terms of the Partial Stipulation and/or to direct the Town to provide further documents or information, I note that the Department does not have the authority to make any determination regarding the Town's compliance with the Partial Stipulation or to compel the Town to provide additional documents or information to the Department.

#### (C) Submission of a DOS-2134-f complaint

Mr. Costello's letter closes with the following "If Plaintiff can assist the DOS in this process by making a DOS-2134-f complaint regarding Partial Stipulation matters (such form first placed on the DOS website on or about January 2019, after the Partial Stipulation was so ordered) or by other means, please let us know."

The "DOS-2134-f complaint" referred to in Mr. Costello's letter can be used to file a complaint alleging a failure by a local government to administer and enforce the Uniform Code in compliance with the applicable minimum standards (*see* Executive Law § 381[3]) and/or a complaint alleging that code enforcement personnel "have materially failed to uphold duties of a code enforcement officer,

Anne C. Leahey, Esq.
Andrew Costello, Esq.
August 31, 2020
Page 9

including but not limited to, making material errors or omissions on an inspection report" (*see* Executive Law § 376-a). Please note that for the purposes of Executive Law § 376-a, the term code enforcement personnel means "a code enforcement official certified pursuant to this section <u>charged with enforcement of the uniform fire prevention and building code</u> or the state energy conservation construction code" (see Executive Law § 376-a[1]).

If Plaintiff believes that the Town is failing to administer and enforce <u>the Uniform Code</u> in accordance with the applicable minimum standards, or that code enforcement personnel working for the Town have "materially failed to uphold duties of a code enforcement officer" (within the meaning of Executive Law § 376-a), Plaintiff should feel free to file a complaint. However, the Department has no authority to investigate any alleged failure by the Town to comply with the Partial Stipulation or to compel the Town to comply with the Partial Stipulation, and the "DOS-2134-f complaint" cannot be used to instigate any such investigation.

<u>Conclusion</u>

The foregoing is provided for information only, and should not be construed as legal advice, or as an interpretation or determination of any kind by the Department.

The Department regrets that it is unable to provide the extensive review and interpretation that appears to have been requested. We hope the information that we were able to provide is helpful.

Very truly yours,

Joseph Ball
Associate Attorney

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JEROME NORTON,

                            Plaintiff,

                                                                    Docket No.: 13-cv-3520

             - against -

TOWN OF BROOKHAVEN, COUNTY OF
SUFFOLK, ROBERT QUINLAN, DAVID J.
MORAN, JENNIFER LUTZER, JUSTIN FOLBER,
WILLIAM POWELL, and VALERIE BISCARDI,
all individually and in their official capacity,

                            Defendants.

------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' FRCP RULE 12(c) AND FRCP RULE 56 MOTION**


LEEDS BROWN LAW, P.C.
*Attorneys for Plaintiff*
One Old Country Road, Suite 347
Carle Place, New York 11514
516-873-9550

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .........................................................................................1

LEGAL STANDARD..................................................................................................7

ARGUMENT

    I.    The Town's Motion is Barred by the Terms of the Stipulation and the Doctrine of Judicial Estoppel ......................................................................................8

    II.    The Town's Motion is Duplicitous and in Violation of Multiple Court Orders..........10

    III.    The Town's Motion is Actually Seeking Reconsideration of Judge Spatt's Order ....................................................................................................12

    IV.    Remaining Claims Arise out of Same "Common Nucleus of Operative Fact" as 1983 Claims ....................................................................................13

    V.    Plaintiff's GML § 239 Claim is Timely...............................................................13

    VI.    The Court cannot Determine whether § 82 is a Zoning Law Based on the Pleadings ......................................................................................................14

    VII.    The SCPC's Letters do not Support the Town's Contentions ....................................15

    VIII.    Plaintiff has Standing.........................................................................................17

CONCLUSION.............................................................................................................18

## PRELIMINARY STATEMENT

Plaintiff Jerome Norton ("Plaintiff") submits this memorandum of law in opposition to the FRCP Rule 12(c) motion to dismiss and the FRCP Rule 56 motion for summary judgment of Defendants Town of Brookhaven ("Town"), Robert Quinlan ("Quinlan"), David J. Moran ("Moran"), Jennifer Lutzer ("Lutzer"), Justin Folber ("Folber"), William Powell ("Powell"), and Valerie Biscardi ("Biscardi").

## STATEMENT OF FACTS

As is explained below, the majority of Plaintiff's claims against the Town were resolved by the Stipulation of Partial Settlement ("Stipulation") that was so-ordered by Judge Arthur Spatt on October 18, 2017. Dkt. 89. A recitation of the facts relating to the resolved claims can be found in Judge Spatt's July 30, 2014 Memorandum of Decision and Order. Dkt. 43, p. 3-14. For the purpose of this motion, however, the relevant facts relate to the procedural history of the case, the negotiation of the Stipulation, and its contents.

### *Procedural History*

On June 20, 2013, Plaintiff commenced this action against the Town, the County of Suffolk ("County"), Quinlan, Moran, Lutzer, Folber, Powell, and Biscardi. Dkt. 1. On October 9, 2013, Plaintiff filed an Amended Complaint (Dkt. 4), and on January 14, 2014, he filed a Second Amended Complaint. Dkt. 16.

The Second Amended Complaint listed the following causes of action stemming from the wrongful issuance of fourteen criminal appearance tickets: (1) a First Amendment intimate association claim under § 1983; (2) a retaliation claim for a First Amendment speech/right to petition claim under § 1983; (3) a malicious prosecution claim under New York State Law; (4) a

1

*respondeat superior* liability claim for the malicious prosecution claim under New York State Law; (5) a substantive due process claim under § 1983; (6) an equal protection claim under § 1983; (7) a procedural due process claim under § 1983; (8) a Fourth Amendment claim under § 1983; (9) a Civil Rights claim under the New York Civil Rights Law § 8; (10) a <u>Monell</u> claim against the Town for violating the Plaintiff's Fourth Amendment rights under § 1983; (11) a <u>Monell</u> claim against the Town for violating the Plaintiff's First Amendment rights, and also based on substantive due process, equal protection, and procedural due process; (12) a claim for declaratory judgment and injunctive relief against the Town; (13) a claim for declaratory judgment and injunctive relief against the County; and (14) a claim for attorney's fees under 42 U.S.C. § 1988.

### *Stipulation of Partial Settlement*

Starting in November 2014, the Plaintiff and the Town Defendants engaged in extensive settlement discussions. Dkt. 89, p. 2. Magistrate Judge Gary Brown assisted the negotiations, holding six settlement conferences between December 2, 2015 and October 16, 2017. *See* Docket Report. On October 17, 2017, after nearly three years of negotiations, the parties reached agreement on the 32-page Stipulation. Dkt. 89.

Pursuant to the Stipulation, the Plaintiff relinquished numerous rights. Among other things, he agreed to conditionally resolve all of his claims against the individually named Defendants and the Town, except for certain claims against the Town in the Tenth Cause of Action of the Plaintiff's Third Amended Complaint, which was filed contemporaneously with the Stipulation. Dkts. 86 and 87. He also agreed that the Town would submit to the New York Department of State ("DOS") the question of whether, and to what extent, Town Code Ch. 82 is legally enforceable under New York State Executive Law Article 18 and/or the New York State Fire Prevention and Building Code ("Uniform Code"). Dkt. 89, ¶ 6, *see also* Dkt. 88. If the DOS made such a determination, the

2

Plaintiff agreed to be bound by it. Id. at 6(c). However, if the DOS chose not to make such a determination, then the Plaintiff would be entitled, but not required, to petition this Court for a declaratory ruling on the issue. Id. at 6(e).[1]

The Plaintiff did not receive any monetary payments under the Stipulation. Instead, the Stipulation required the Town to change its laws and practices.[2]

The Town also agreed that it would, "consent to and shall not oppose, by motion or otherwise, Plaintiffs filing and service of the proposed Third Amended Complaint, which related

---

[1] On August 31, 2020, the DOS responded to the Town's submission and chose not to make a determination, saying that their response was "provided for information only, and should not be construed as legal advice, or as an interpretation or determination of any kind by the Department." Ex. D to Town Motion, p. 9.

[2] Specifically, the Stipulation obligated the Town to: cease using its Department of Housing and Human Services ("DHHS") inspectors to issue tickets or criminal charges relating to violations of the Uniform Code (Stipulation, ¶ 1); amend Town Code to clarify that no DHHS inspectors may do so (Id.); submit all proposed appearance tickets issued by DHHS inspectors to pre-approval for facial sufficiency (Id. at ¶ 2); prepare a standard form for the issuance and filing of accusatory instruments by DHHS inspectors (Id. at ¶ 2(e)); place all DHHS inspectors under the supervision of the Chief Town Investigator (Id. at ¶ 3); post on its own website all reports required to be filed with the New York Department of State pursuant to 19 N.Y.C.R.R. 1203.4(a) (Id. at ¶ 4); retroactively post such reports for 2013-15 on its website (Id.); cease the use of outside contractors to serve criminal process anywhere in Nassau or Suffolk Counties (Id. at ¶ 5); cease any enforcement of Town Code §§ 16-18 and 30-16 and repeal the same (Id. at ¶ 6); serve a copy of New York Town Law  § 267-a(5) (which relates to Town Boards of Zoning Appeals) on any defendant charged with a zoning law violation (Id. at ¶ 9); provide a course of mandatory annual training to its DHHS inspectors and Town Investigators (Id. at ¶ 10); post and maintain a list of state-certified DHHS inspectors and Town Investigators on its website (Id. at ¶ 12); attach a copy of the Town's affidavit of service to any applications for arrest warrants or criminal summonses (Id. at ¶ 13); promptly review, immediately cease enforcement of, and repeal any Town Code provisions that provide: i) for criminal violation penalties that are not in keeping with provisions of the New York Executive Law Article 18 and/or the Uniform Code (Id. at ¶ 32(a)); or ii) for the commencement or continuation of any criminal or civil actions that are inconsistent with or in conflict with, the requirements of New York Executive Law Article 18 and/or the Uniform Code. (Id. at ¶ 32(c)).

to the Town's failure to properly pass its Town Code Ch. 82 under the mandates of New York

General Municipal Law 239-m. Dkt. 89, ¶ 7(a). Further, the Town agreed that, "Plaintiff shall be

entitled to, but is not required to, submit to the Court a motion for a declaratory judgment seeking

a determination of the issue of the extent to which Town Code Ch. 82: constitutes a lawful exercise

by the Town of the Town's powers pursuant to the requirements of New York General Municipal

Law §239-m ("239-m Determination")". Id. at 7(c).

> Further, Town Defendants stipulated that:
>
> "[f]or the purposes of this matter and the Stipulation, and of any action to enforce this Stipulation, Plaintiff and Town Defendants consent to: a) the Court's exercise of subject matter jurisdiction over this matter and Stipulation…" (Id. at ¶ 34) and that, "[i]t is the intention of the Parties to this stipulation, and the plea of the aforesaid Parties to the Court, that the Court interpret as broadly as possible its authority to retain jurisdiction over all matters raised by the above-captioned matter that have not been resolved by this Stipulation."

Id. at ¶ 43 (emphasis added).

### *Judge Brown Endorses Stipulation, including Retention of Jurisdiction*

At a hearing on October 16, 2017, the parties presented the final Stipulation to Judge

Brown. Dkt. 90. Judge Brown said, "[t]his is a case which we're settling a case in part by amending

the law. You know, I think all of you know I get involved in settlements pretty deeply, I try to

come up with every creative solution that I can think of. I've never done this before. So this is, this

is cutting edge stuff...This is, it's big." Id. at pp. 24-25. Counsel for Town Defendants thanked

Judge Brown for his assistance in facilitating the Stipulation, saying, "Your Honor, thank you very

much because it truly would not have happened without all of the, without your extraordinary

effort." Id. at 25.

At the October 16, 2017 hearing, the County, which was then a party, explained it was

contemplating filing a Rule 12 motion to dismiss the Third Amended Complaint insofar as it

applied to them.[3] The Court asked if the Town would be reserving its rights to file a motion to

dismiss as well. The Town said it was not, and went on to say that it consented to the Court's

jurisdiction over the newly plead matters:

> THE COURT: All right. So I'll note that for today's purpose the amended
> complaint is filed on consent, and that's so-ordered. The County, and I presume the
> Town, are you reserving your Rule 12 rights on the new complaint?
>
> MS. LEAHEY[4]: No, we're not, Your Honor, because we are agreeing to allow this
> to be filed as part of the settlement.
>
> THE COURT: Fair enough. So, but the County will have 45 days to move or
> otherwise respond to that amended complaint, yes?
>
> MR. MITCHELL: Yes, thank you, Judge.
>
> MS. LEAHEY: Just to clarify, the amended complaint raises one new issue which
> is whether the Town violated general Municipal Law 239M, and that issue is one
> of the issues reserved for litigation if Mr. Norton so chooses to do so.
>
> THE COURT: Okay.
>
> MS. LEAHEY: So we would be contesting that there was a 239M violation, but
> we've agreed to do that in the confines of the settlement.
>
> THE COURT: And I presume that's all under ancillary jurisdiction, is that the
> notion?
>
> MS. LEAHEY: Yes, Your Honor.
>
> THE COURT: Okay. Technically speaking that's probably a question for Judge
> Spatt. But I'm going to say that to the best of my knowledge of him, which is fairly
> extensive, I can't imagine he's going to have a problem with that given the amount.
> How far down the road we've gone, right, on this case. I think we're okay with that,
> so I don't think there's going to be a problem.

---

[3] On March 1, 2019, the County filed a FRCP Rule 12(c) motion to dismiss the Third Amended
Complaint. Dkt. 121. On January 21, 2020, the Court granted the County's motion. Dkt. 132.

[4] Anne Leahey was the Town Defendants' counsel at the time of the October 16, 2017 hearing
before Judge Brown. Although Ms. Leahey no longer represents any Town Defendants, her former
law firm, Devitt Spellman Barrett, LLP, continues to serve as Town Defendants' attorneys.

MS. LEAHEY: Okay.

MR. MESSINA: Your Honor, I just want to, I don't know if this makes a difference or anything, but to the extent in the agreement we opine unto the Court to, you know, to try to keep jurisdiction if that's what your, you know, the intent of it is to hope that the Court will –

THE COURT: Got it.

MS. LEAHEY: Right.

THE COURT: Got it, got it, got it. Yes, okay, that's fine.

Id. at 11-12.

Judge Brown issued an Order consistent with the Town's representations at the hearing, setting a motion schedule for the County, but not the Town, to move to dismiss. Minute Entry for October 16, 2017 Proceedings: "Amended complaint will be filed on consent of all parties. The County defendants will have 45 days from the date of filing to move to dismiss or otherwise respond to the amended complaint…" The Town was not given permission to so move.

### Judge Spatt So-Orders the Stipulation, Retaining Jurisdiction

On October 18, 2017, two days after the hearing with Judge Brown, Judge Arthur Spatt so-ordered the Stipulation, including the portion relating to the retention of jurisdiction.

### Town's Current Motion

Despite all the effort that Judge Brown and the parties put into negotiating the Stipulation, despite its prior representations to the Court, despite its promises to the contrary in the Stipulation itself, and despite the fact that the retention of jurisdiction was so-ordered by Judge Spatt, the Town now moves to dismiss Plaintiff's remaining claims for lack of jurisdiction under FRCP 12(c) and for summary judgment under FRCP 56.

6

**LEGAL STANDARD**

The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. Karedes v. Ackerley Group, Inc., 423 F.3d 107, 113 (2d Cir. 2005). In both cases, the court must "accept[] as true the complaint's factual allegations and draw[] all inferences in the plaintiff's favor." Id. A complaint will not be dismissed on the pleadings unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994) (citing Conley v. Gibson, 355 U.S. 41, 45-46, (1957)).

The judicial standard applied in granting a Rule 56 motion for summary judgment is narrow because the motion must be denied if any genuine issue of fact exists. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Granting of a motion for summary judgment is a drastic remedy which must be used sparingly. Gallo v. Prudential Residential Serv., 22 F. 3d 1219 (2d Cir. 1994); Egelston v. State Univ. College, 535 F. 2d 752 (2d Cir. 1976). It is drastic because it has *res judicata* effect and deprives the litigant of his day in court and his opportunity to cross-examine the movant and movant's witnesses. Eastway Contr. Corp. v. City of N.Y., 762 F.2d 243 (2d Cir. 1985), cert. denied, 484 U.S. 918 (1987); Egelston, 535 F.2d at 754. If there is any doubt as to the existence of a material issue of fact or if one is even arguable, summary judgment must be denied. Jaroslawicz v. Seedman, 528 F.2d 727, 731 (2d Cir. 1975). The district court is limited in granting summary judgment because the court must carefully scrutinize the proofs in the light which is most favorable to the non-movant and accord the non-movant the full benefits of all favorable inferences. Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92 (1994); Waters v. Churchill, 511 U.S. 611 (1994).

7

**ARGUMENT**

I.    **The Town's Motion is Barred by the Terms of the Stipulation and the Doctrine of Judicial Estoppel**

The doctrine of judicial estoppel (also known as the doctrine of preclusion of inconsistent positions) prevents litigants from playing "fast and loose" with the courts. In re Petition of Transrol Navegacao S.A., 782 F. Supp. 848, 852 (S.D.N.Y. 1991). The Supreme Court has identified three factors that are considered in a judicial estoppel inquiry: first, whether a party's current position is "clearly inconsistent with its earlier position"; second, whether a court "accept[ed] that party's earlier position"; and third, whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001) (internal quotation marks omitted). The doctrine is applicable when the inconsistent positions are taken in the same proceeding. Intellivision v. Microsoft Corp., 784 F. Supp. 2d 356, 364 (S.D.N.Y. 2011)

All three prongs of the judicial estoppel test are met in this case. First, the Town's position that the Court does not have jurisdiction is clearly inconsistent with its earlier position that the Court has jurisdiction. Second, the Court accepted the Town's earlier position when it so-ordered the Stipulation in which the Town stated that, "Town Defendants consent to: a) the Court's exercise of subject matter jurisdiction over this matter" and that "[i]t is the intention of the Parties to this stipulation, and the plea of the aforesaid Parties to the Court, that the Court interpret as broadly as possible its authority to retain jurisdiction over all matters raised by the above-captioned matter that have not been resolved by this Stipulation." Dkt. 89, ¶¶ 34, 43. Third, the Town's change in position would give it an unfair advantage and would impose an unfair detriment on the Plaintiff. The Plaintiff relinquished a number of claims and rights in exchange for the Town's acceptance

8

of the Stipulation, including its consent to the continued jurisdiction of this Court over the matters that "have not been resolved by this Stipulation." Id. at ¶ 43. If the Town prevails with its changed position now, the Plaintiff will be forced out of the federal forum he chose into state court, where he may face a judge who could be more politically inclined to be sympathetic to the Town than a lifetime-appointed federal judge. A change in forum at this point would also impose a significant cost to the Plaintiff in both time and money. Discovery has commenced in this matter and a discovery schedule is in place. Scheduling Order, 11/17/20. Not only would the case be re-started in state court at square one, but much of the money and time that the Plaintiff has expended up to this point in federal court would be wasted. Therefore, all three of the New Hampshire requirements are satisfied here.

These facts also meet the Second Circuit's requirement that allowing a change in position would risk inconsistent results and undermine judicial integrity. See DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010).

As the Supreme Court has held, the purpose of judicial estoppel is to protect the integrity of the judicial process by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire, 532 U.S. at 749-50 (internal quotation marks and citations omitted). Allowing the Town to adopt a stance now that is materially adverse to its prior stance would undermine the integrity of the judicial process and the ability of courts to accept and rely upon the unequivocal representations of parties. Therefore, it should not be allowed. Moreover, the Town agreed as a condition of settlement for jurisdiction to be retained. If that material term is breached, then the settlement may be entirely unwound.

9

**II.     The Town's Motion is Duplicitous and in Violation of Multiple Court Orders**

    **A.     The Town's Motion Violates Judge Brown's Order**

The Town's current motion violates Judge Brown's October 16, 2017 Order, which gave the County, but not the Town, permission to move for dismissal. Minute Entry for October 16, 2017 Proceedings.

    **B.     The Town's Motion is in Violation of Judge Spatt's So-Ordered Stipulation**

As is also set forth above, counsel for the Town executed the Stipulation consenting to the retention of jurisdiction and affirmed that the Town Board had authorized its signing. Dkt. 89, ¶ 33. In reliance on these representations, Judge Spatt so-ordered the Stipulation, retaining jurisdiction over the Plaintiff's remaining claims. Dkt. 89.

In other words, prior to moving for dismissal based on a lack of jurisdiction, the Town had contended the exact opposite – that this Court properly had jurisdiction over this matter, and that it should retain jurisdiction. The Town extracted concessions from the Plaintiff based on these representations and executed a Stipulation that was so-ordered by the Court. To now argue the opposite is in direct violation of the so-ordered Stipulation. The Court should not abet such a transgression. "[A]ll litigants…have an obligation to comply with court orders. When they flout that obligation they…must suffer the consequences of their actions." McDonald v. Head Criminal Court Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988).

Additionally, the Stipulation is a consent decree. "A consent decree is essentially a settlement agreement subject to continued judicial policing. Consent decrees typically have two key attributes that make them different from private settlements. First, when a court enters a consent decree, it retains jurisdiction to enforce the decree. In contrast, the parties to a private

10

settlement typically must bring another suit (for breach of contract) to enforce it. Second, a consent decree puts 'the power and prestige of the court behind the compromise struck by the parties.'" Pedreira v. Sunrise Children's Servs., 802 F.3d 865, 871 (6th Cir. 2015). Both of these attributes are present here: this Court expressly retained jurisdiction to enforce compliance with the Stipulation's terms (Dkt. 89, ¶15), and the Court gave its imprimatur to the Stipulation.

> Regarding the interpretation of consent decrees, the Supreme Court has held:

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill  to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation.

United States v. Armour & Co., 402 U.S. 673, 681-82 (1971) (internal citations omitted). *See also*, Perez v. Danbury Hosp., 347 F.3d 419, 424 (2d Cir. 2003) ("Consistent with this narrow construction, we have recognized that courts must abide by the express terms of a consent decree and may not impose supplementary obligations on the parties even to fulfill the purposes of the decree more effectively."); United States v. Int'l Bhd. of Teamsters, 998 F.2d 1101, 1107 (2d Cir. 1993) ("A court may not replace the terms of a consent decree with its own, no matter how much of an improvement it would make in effectuating the decree's goals."); EEOC v. N.Y. Times Co., 196 F.3d 72, 78 (2d Cir. 1999) ("Although courts have equitable powers to enforce consent

11

decrees, such power exists only to ensure compliance with the decrees' terms.")

"The proper procedure for seeking relief from a consent decree is a Rule 60(b) motion." Hook v. Ariz., Dep't of Corr., 1992 U.S. App. LEXIS 20465, at *13 (9th Cir. Sep. 1, 1992). The movant has not brought its motion under FRCP 60(b), and even if it did, no Rule 60(b) grounds exist to modify the Order.

### III.    The Town's Motion is Actually Seeking Reconsideration of Judge Spatt's Order

The Town's argument that this matter should be dismissed because the Court lacks subject matter jurisdiction over the state law claims comes four years too late. Judge Spatt exercised supplemental jurisdiction over the relevant state law claims by so-ordering the Stipulation and accepting the Third Amended Complaint on October 18, 2017. Dkt. 89. The Town's motion, then, is in reality a motion to reconsider Judge Spatt's 2017 Order. Under the Local Rules, a movant has 14 days to move for reconsideration. Local Civil Rule 6.3. It cannot wait nearly four years, until after the Judge who made the order has passed, to move.

Even if its motion was timely, however, there is no reason why the Court should depart from Judge Spatt's decision. The state of the case when the Stipulation accepting the Third Amended Complaint was so-ordered is essentially the same as it is now, apart from the fact that the Department of State's response has been received by the parties. The "remaining" claims now are the same as the "remaining" claims when the Stipulation was so-ordered. No federal claims have been resolved since, and the Town points to no new evidence, intervening change in controlling law, or clear error that would justify revisiting Judge Spatt's Order. Further, the Town's motion puts this Court in the "somewhat unusual position of being asked to reconsider the ruling of another judge." Goldfarb v. Channel One Russ., 2021 U.S. Dist. LEXIS 71324, at *17 (S.D.N.Y.

Apr. 13, 2021). "Courts in similar positions have emphasized that they are 'understandably reluctant to reopen a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge.'" Id., (*quoting* Murray v. Dutcavich, 2020 U.S. Dist. LEXIS 107040 (S.D.N.Y. June 18, 2020)).

**IV.    Remaining Claims Arise out of Same "Common Nucleus of Operative Fact" as 1983 Claims**

The Town's contention that "Plaintiff's remaining claims do not arise out of 'a common nucleus of operative fact' from the Section 1983 claim that originally provided the basis for jurisdiction in this action" is incorrect. The Plaintiff's 1983 claims arose from his prosecution by the Town for, *inter alia*, alleged criminal violations of Town Code § 82 Dkt. 1, ¶¶ 100, 106. § 82 is the very chapter he now seeks review of for compliance with GML § 239-m and Town Law § 262 requirements. Furthermore, by accepting supplemental jurisdiction over the state law claims, Judge Spatt in 2017 already determined that these claims arise from a common nucleus of operative facts. Otherwise, he would not have accepted them.

**V.    Plaintiff's GML § 239 Claim is Timely**

The Town also alleges that the Plaintiff's GML § 239 claim is untimely, as the time period to challenge compliance with the law is either four months under CPLR Article 78 or six years under CPLR § 213. The Town is mistaken. Plaintiff is challenging the very validity of the Town's votes to adopt certain § 82 local laws due to the jurisdictional defect of failing to follow the mandates of GML § 239. As such, the statute of limitations does not begin to run upon the Board's invalid vote. *See* S. Shore Audubon Soc'y, Inc. v. Bd. of Zoning Appeals, 185 A.D.2d 984, 985 (2d Dep't 1992) (where a jurisdictional defect is present, "[t]he Statute of Limitations does not preclude a challenge to the Board's jurisdiction to act."); Nager v. Saddle Rock, 140 Misc.2d 644,

13

646 (Sup. Ct. Nassau Co. 1988) (if plaintiffs show a jurisdictional defect they "avoid the bar of the

Statute of Limitations"); <u>Matter of Foy v. Schechter</u>, 1 N.Y.2d 604 (1956) (Statute of Limitations

is not applicable where a decision is attacked for lack of power); <u>Matter of Hampshire Mgt. Co.,</u>

<u>No. 20, LLC v. Feiner</u>, 52 A.D.3d 714, 715, (2d Dep't 2008); <u>Matter of Stankavich v. Duanesburg</u>

<u>Planning Bd.</u>, 246 A.D.2d 891 (3d Dep't 1998). Therefore, the GML § 239 claim is timely.

**VI.      The Court cannot Determine whether § 82 is a Zoning Law Based on the Pleadings**

        In addition to seeking the dismissal of this matter on grounds of jurisdiction and timeliness,

the Town also argues that GML § 239 is inapplicable because, "[c]ontrary to Plaintiff's arguments,

Chapter 82 of the Brookhaven Town Code is not a zoning law." However, at the November 17,

2020 conference before Magistrate Judge Anne Shields, the Court made it clear that it would only

accept motions to dismiss, not motions for summary judgment:

> MR. OSTROVE: Your Honor, the only thing I would say is -- in response to that
> is, you know, if they're talking about making a jurisdictional argument, that's one
> thing.
>
> THE COURT: Right.
>
> MR. OSTROVE: But if they're making a substantive argument, we -- you know,
> we would want to do discovery before that gets in.
>
> THE COURT: They are making a pure motion to dismiss, directed to the pleadings.
> Right, Mr. Kreppein?
>
> MR. KREPPEIN: That's correct.
>
> THE COURT: Okay, and if it requires more than the pleadings, then it will be
> denied. So it's as simple as that.

Dkt. 147, p. 28. A ruling that § 82 is not a zoning law cannot be made on record now before the

Court. This question requires discovery, which Judge Shields has authorized[5], and which is now

ongoing. Therefore, not only has the Court made clear that it would not accept a Rule 56 motion

at this time, even if such a motion was properly filed the Court cannot determine, at this point, the

full extent to which Chapter 82 is a zoning law, as discovery has not been conducted.

### VII.    The SCPC's Letters do not Support the Town's Contentions

The Town's suggestion that the Court can rely on the determinations of the Suffolk County

Planning Commission ("SCPC") is incorrect for a number of reasons. First, under GML § 239-m,

a county planning commission is referred amendments to local laws only if they are related to

zoning. GML § 239-m; <u>Smithtown v. Howell</u>, 31 N.Y.2d 369, 339 (1972) ("Section 239-m

provides for regional review of zoning changes…") The fact that the Town referred the matters to

the SCPC shows the Town considered them to be a zoning laws. If they weren't, then the Town

would have had no reason to make the referrals.

Second, the SCPC's letters do not prove that the three proposed laws are not zoning related.

The letters merely state, "the above referenced application is not within the jurisdiction of the

[SCPC]." Exhibit A to Town Motion. There is no explanation from the SCPC as to why it reached

that conclusion, which could have been for a number of reasons other than the fact that § 82 is not

a zoning law. Furthermore, the letters say that the SCPC reached its decision "[p]ursuant to A 14-

14 to 23 of the Suffolk County administrative Code" and make no reference at all to GML § 239-

---

[5] 11/17/20 Scheduling Order issued by Judge Shields: As stated on the record during the conference held today, Plaintiff shall review the documents previously provided by Defendants and determine whether the production is sufficient and, if not, why it is insufficient. Plaintiff shall serve any new document requests on Defendants by February 19, 2021. Defendants shall respond to those document requests by April 19, 2021. Counsel for the parties shall then confer and create a schedule for depositions.

m. It is unclear on the face of the letters whether the SCPC considered the referrals in light of GML § 239-m at all. Id.

Third, the laws referred to in the SCPC letters are not inclusive of the entirety of § 82 and its amendments. § 82 has been amended seventeen times between 2002 and 2018. Ex. 1. Only two of the seventeen amendments (presently the subject of discovery by Plaintiff) may relate to the SCPC letters. In addition, when the Town passed many of these amendments it specifically referred to NY Town zoning laws as providing it the authority for doing so. 56.1 Response, ¶ 3.

Fourth, the Town itself acknowledged, when it first adopted Ch. 82, that it involved "a planning or zoning decision." Ex. 2, p. 6..

Fifth, in Nasca v. Town of Brookhaven, 2008 U.S. Dist. LEXIS 73644 (E.D.N.Y, Sep. 25, 2008), Judge Bianco analyzed one aspect of § 82 by applying tests used in other cases dealing with zoning laws (i.e., Pompa Construction Corp. v. Saratoga Springs, 706 F.2d 418 (2d Cir. 1983), Cordi-Allen v. Conlon, 494 F.3d 245 (1st Cir. 2007), and Village of Willowbrook v. Olech, 528 U.S. 562 (2000)). This endorses the view that this portion of § 82 is also a zoning law.

Sixth, in People v Sieger Agency Inc., the Court found that "§85-12A[6] of the Brookhaven

---

[6] Although the Court's decision referenced §85-12A, that is a typo. The law at issue in this case was one that prohibited "placement of defendant's 'For Rent' broker's sign on property where a current rental permit was not issued by the Town". Sieger Agency Inc., 56 Misc 3d 1213(A) at *2. At the relevant time (July 2016), the Town law that prohibited such activity was actually §82-12, which stated: "It shall be unlawful and a violation of this chapter and an offense within the meaning of the Penal Law of the State of New York for any broker or agent to list, show or otherwise offer for lease, rent or sale on behalf of the owner any dwelling unit for which a current rental occupancy permit has not been issued by the Chief Building Inspector." Ex. 3. § 85-12A, on the other hand, related to the "Issuance of Building Permits and Universal Design Permit to Build; Restrictive Covenants" and did not touch on the behavior that the Defendant in Sieger Agency was accused of. Ex. 4. Also see the Town's Memorandum of Law, which admits that Town Code § 82 "prohibited real estate agents from listing rental units that do not have proper permits." Town's Memorandum of Law, p. 2.

16

Town Code is a regulatory statute enacted under the zoning authority of the Town. People v. Sieger Agency Inc., 65 N.Y.S.3d 493, *10 (Suffolk County Dist. Ct. 2017) This shows that, at least part of Chapter 82 has already been judicially determined to be related to zoning.

Seventh, there is no evidence before the Court that the referral to the SCPC was properly made and contained the required documents. GML § 239-m(1)(c) requires a municipality to submit to the local planning commission "the complete text of the proposed ordinance or local law as well as all existing provisions to be affected thereby". The failure to properly refer is a jurisdictional defect which renders any subsequent vote null and void. Matter of Calverton Manor, LLC v. Riverhead, 160 A.D.3d 842, 845 (2d Dep't 2018); Matter of Zelnick v. Small, 268 A.D.2d 527, 529 (2d Dep't 2000); Annabi v. City Council of Yonkers, 47 A.D.3d 856, 857 (2d Dep't 2008); Matter of Ernalex Const. Realty Corp. v. Glen Cove, 256 A.D.2d 336, 338 (2d Dep't 1998); Matter of Burchetta v. Town Bd. of Carmel, 167 A.D.2d 339, 341 (2d Dep't 1990). Therefore, the Court cannot rule, based on the items now before it, that the Town complied with the referral requirements of GML § 239-m based on the letters from the SCPC, as there is no evidence before the Court showing that the proper documents were sent to the SCPC, and that a GML § 239-m ruling was made by the SCPC. Discovery must be conducted on this point before the Court can draw any conclusions, which is why Judge Shields ordered discovery and did not give the Town permission to move for summary judgment.

## VIII.   **Plaintiff has Standing**

Finally, the Town also argues that the Plaintiff lacks standing to bring the state law claims in question "because he has not alleged an injury in fact that is 'actual or imminent' rather than 'conjectural or hypothetical.'" Town Motion, p. 12. This argument has already been raised by the Town and rejected by this Court. In its July 30, 2014 ruling, this Court held that, "since the Plaintiff

17

**A249**

seeks declaratory relief after he has been criminally prosecuted as a result of the practices he challenges, his claim is ripe for adjudication." Dkt. 43, p. 41. Therefore, the law of the case is that standing exists.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Defendants' motion should be denied.

Dated: May 19, 2021

Respectfully submitted,

LEEDS BROWN LAW, P.C.

s/
Andrew Costello
Rick Ostrove

18

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JEROME NORTON,

                              Plaintiff,

              -against-

TOWN OF BROOKHAVEN, COUNTY OF SUFFOLK,
ROBERT QUINLAN, DAVID J. MORAN, JENNIFER
LUTZER, JUSTIN FOLBER, WILLIAM POWELL,
and VALERIE BISCARDI, all individually and in their
official capacity,

                            Defendants.
----------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
CV 13-3520 (JMA)(AYS)

**ANNE Y. SHIELDS, United States Magistrate Judge:**

      Before the Court, on referral from the Honorable Joan M. Azrack, is Defendant Town of

Brookhaven's motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure

12(c), and for summary judgment, pursuant to Federal Rule of Civil Procedure 56. For the

reasons set forth below, this Court respectfully recommends that Defendant's motion be treated

as a motion for judgment on the pleadings – not as one for summary judgment – and that, as

such, the motion be denied with respect to the argument that the Court lacks subject matter

jurisdiction over the action, but granted overall as one of the remaining claims asserted is

deemed abandoned and the other is time-barred.

<u>BACKGROUND</u>

      Plaintiff, Jerome Norton ("Plaintiff" or "Norton"), commenced this action on June 20,

2013, against the Town of Brookhaven, various officers and employees of the Town

(collectively, the "Town"), and the County of Suffolk (the "County"), pursuant to 42 U.S.C. §

1983, 28 U.S.C. § 2201, and New York State law. (Compl., Docket Entry ("DE") [1].) The

Complaint originally filed contained thirteen causes of action. (DE [1].) On October 9, 2013,

1

Plaintiff filed an Amended Complaint, (Am. Compl., DE [4]), and on January 14, 2014, he filed a Second Amended Complaint, omitting one of the initial individual defendants and asserting fourteen causes of action. (2d Am. Compl., DE [16].)

By Order dated July 30, 2014, then-assigned District Judge Arthur D. Spatt issued a Memorandum of Decision and Order, determining motions to dismiss brought by the Town and the County, pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE [43].) In that decision, Judge Spatt granted the County's motion to dismiss in its entirety and granted in part and denied in part the Town's motion. (Id.)

After extensive settlement negotiations, Plaintiff and the Town entered into a Stipulation of Partial Settlement on October 18, 2017 (the "Stipulation"), by which Plaintiff dismissed all remaining claims against the Town with the exception of certain claims in the Tenth Cause of Action of his Third Amended Complaint, which was filed contemporaneously with the Stipulation. (DE [87], [89].) As part of the Stipulation, the parties agreed to submit to the New York Department of State ("DOS") the question of whether, and to what extent, Chapter 82 of the Town Code – the relevant portion of the Town Code underlying this action – is legally enforceable under New York State Executive Law Article 18 and/or the New York State Fire Prevention and Building Code (the "Uniform Code"). (DE [89] ¶ 6.) If the DOS made such a determination, Plaintiff agreed to be bound by it. (Id. ¶ 6(c).) If the DOS chose not to make such a determination, Plaintiff would be entitled, but not required, to petition the Court for a declaratory ruling on the issue. (Id. ¶ 6(e).)

Pursuant to the Stipulation, the Plaintiff did not receive any monetary payment; rather, the Stipulation required the Town to change its laws and practices. (Id. ¶ 1-6, 9-10, 12-13, 32.) The Town also agreed that it would "consent to and shall not oppose, by motion or otherwise,

Plaintiff's filing and service of the proposed Third Amended Complaint," which is the current operative complaint before the Court. (Id. ¶ 7(a).)

As set forth in the Third Amended Complaint, and the July 30, 2014 decision of Judge Spatt, Plaintiff is a 50% owner of residential real property located at 66 Norfleet Lane in Coram, New York (the "Norfleet Property"), located within the Town. Plaintiff's two brothers own the remaining 50% of the Norfleet Property. (3d Am. Compl. ¶¶ 22-23.) In September 2011, Plaintiff was issued fourteen appearance tickets (the "Appearance Tickets") for various violations of the Town Code with respect to the Norfleet Property. (Id. ¶ 136.) In 2012, state court criminal proceedings were commenced against Plaintiff with respect to the Appearance Tickets. (Id. ¶ 199.) After protracted proceedings in state court, on April 19, 2012, all charges against Plaintiff were dismissed in the furtherance of justice, pursuant to Section 170.40 of the New York Criminal Procedure Law. (Id. ¶¶ 206-63.)

As set forth above, Plaintiff then commenced the within action on June 20, 2013.  All claims alleged in the Second – and now, Third – Amended Complaint were settled by the Stipulation dated October 18, 2017, except for two aspects of the Tenth Cause of Action for a declaratory judgment against the Town: (1) that the fire and safety provisions in Chapter 82 of the Town Code are more restrictive than the State's Uniform Code and thus require further state approval prior to becoming effective (the "Uniform Code Claim"), (DE [89] ¶ 6; 3d Am. Compl. ¶ 413); and, (2) that Chapter 82 is a zoning ordinance that required referral to the Suffolk County Planning Commission ("SCPC") for review and recommendation under Section 239-m of the New York General Municipal Law prior to being enacted (the "Section 239 Claim"). (DE [89] ¶ 7; Third Am. Compl. ¶ 385-402.)

3

The Town now moves for judgment on the pleadings and for summary judgment dismissing Plaintiff's remaining declaratory judgment claims on the following grounds: (1) the Court lacks subject matter jurisdiction over the action; (2) the claims are untimely; (3) Plaintiff lacks standing to pursue this action; and, (4) Plaintiff's claims fail to state a plausible cause of action. (Def. Mem. of Law in Supp. 1.) Plaintiff opposes the Town's motion.

<u>DISCUSSION</u>

I.    <u>The Motion to be Considered</u>

In its motion papers, the Town states that the within motion is brought pursuant to Federal Rules of Civil Procedure 12(c) and 56 – accordingly, the Town seeks to make both a motion to dismiss and a motion for summary judgment in one. (DE [53].) Plaintiff opposes such a motion on the ground that this Court only granted the Town leave to move to dismiss, not to move for summary judgment. (Pl. Mem. of Law in Opp'n 14-15.) The Court agrees with Plaintiff.

As evidenced by the docket herein, this Court held a telephone status conference in this matter on November 17, 2020. During that conference, counsel for the Town advised the Court that the Town would be seeking to make a motion "to dismiss the case." (DE [147] at 22.)  In granting leave to make such a motion, the Court specifically inquired of the Town's counsel as follows: "They are making a pure motion to dismiss, directed to the pleadings. Right, Mr. Kreppein?" (<u>Id.</u> at 28.)  Counsel for the Town responded "[t]hat's correct." (<u>Id.</u>)  The Court then advised the Town's counsel that if the motion "requires more than the pleadings, then it will be denied. So it's as simple as that."[1] (<u>Id.</u>) As is clear from the foregoing, the Town was only

---

[1] The Court also notes that prior counsel of record for the Town represented to then-Magistrate Judge Brown during the settlement conference held on October 16, 2017, that the Town was not reserving its "Rule 12 rights" with respect to Plaintiff's Amended Complaint. (DE [90] at 11.)

afforded leave to make a motion directed to the pleadings; it was not granted leave to move for summary judgment. Accordingly, this Court respectfully recommends that the within motion be construed solely as a motion to dismiss, pursuant to Rule 12(c), and not as one for summary judgment.

II.      Legal Standard

"On a Rule 12(c) motion, 'the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side.'" Lively v. WAFRA Investment Advisory Group, Inc., 6 F.4th 293, 304 (2d Cir. 2021) (quoting Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020). As such, "[t]he standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemp. Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).

"To survive a motion to dismiss [pursuant to Rule 12(b)(6) or 12(c)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). As a general rule, the court is required to accept all of the factual allegations in the complaint as true and to

---

Rather, the Town's counsel at the time – which is the same firm that represents the Town herein, just a different attorney – stated that the Town "was agreeing to allow [the Amended Complaint] to be filed as part of the settlement." (Id.)

draw all reasonable inferences in the plaintiff's favor.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Town of Babylon v. Fed. Hous. Fin. Agency, 699 F.3d 221, 227 (2d Cir. 2012).

Consistent with this Court's recommendation that the within motion be construed solely as a motion for judgment on the pleadings, the Court has only considered the pleadings herein and not the exhibits offered as evidence by the parties in rendering the instant Report and Recommendation.

III.    Subject Matter Jurisdiction

The Town seeks to dismiss Plaintiff's Amended Complaint on the ground that the Court lack subject matter jurisdiction since there are no federal claims remaining in this action. (Def. Mem. of Law in Supp. 4-6.) In response, Plaintiff argues that the Stipulation entered into by the parties explicitly stated that the Court would retain jurisdiction over this action. (Pl. Mem. of Law in Opp'n 10-12.)

Paragraph 34 of the Stipulation endorsed by Judge Spatt on October 18, 2017 specifically states that the Plaintiff and the Town Defendants "consent to . . . the Court's exercise of subject matter jurisdiction over this matter and Stipulation . . . ." (DE [89] ¶ 34.) Moreover, Paragraph 43 of the Stipulation states that "[i]t is the intention of the Parties to this stipulation . . . that the Court interpret as broadly as possible its authority to retain jurisdiction over all matters raised by the above-captioned matter that have not been resolved by this Stipulation." (Id. ¶ 43.)  Clearly, the parties intended for this Court to retain jurisdiction over this action, notwithstanding the lack of any remaining federal claims.

However, as the Town correctly points out, "[s]ubject matter jurisdiction can never be waived or forfeited." Liu v. 88 Harborview Realty, LLC, 5 F. Supp. 3d 443, 446 (S.D.N.Y. 2014). Nor can parties' consent confer subject matter jurisdiction upon a court. See Woods v.

6

Roundout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 238 (2d Cir. 2006) ("The law is well established that a party's consent cannot by itself confer subject matter jurisdiction upon a court."); see also Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc., 943 F.3d 613, 617 (2d Cir. 2019) ("[B]ecause it involves a court's power to hear a case, subject matter jurisdiction cannot be forfeited, waived, or conferred by consent of the parties."). Accordingly, even if not raised by a party, the Court must satisfy itself that subject matter jurisdiction exists. See Wynn v. AC Rochester, 273 F.3d 157, 157 (2d Cir. 2001).

Here, this Court is satisfied that subject matter jurisdiction exists. While all federal claims were settled by the parties' Stipulation executed in 2017, Judge Spatt had the power to – and clearly intended to – retain supplemental jurisdiction over the remaining claims. This is evidenced by his endorsement of the Stipulation, as well as the parties' representation to then-Magistrate Judge Brown that they intended for Judge Spatt to retain "ancillary jurisdiction" over the Amended Complaint. (DE [90] at 11.) Even after Judge Spatt endorsed the parties' Stipulation, status reports were filed, conferences were held, and the Court continued to make rulings with respect to matters that arose. If Judge Spatt had not intended to retain supplemental jurisdiction over the remaining claims, he would have closed the case upon the endorsement of the Stipulation.

The Town also challenges Plaintiff's standing to assert the within claims for declaratory relief on the grounds that he has not alleged in injury in fact that is actual or imminent. (Def. Mem. of Law in Supp. 12.) However, as Plaintiff points out, Judge Spatt already considered and rejected this same argument in 2014, finding that "since Plaintiff seeks declaratory relief after he has been criminally prosecuted as a result of the practices he challenges, his claim is ripe for adjudication." (DE [43] at 41.) Accordingly, Plaintiff's standing has already been established.

Based on the foregoing, this Court finds that the Court has subject matter jurisdiction over the claims remaining in the Amended Complaint under the doctrine of supplemental jurisdiction and as such, respectfully recommends that the Town's motion to dismiss for lack of subject matter jurisdiction be denied.

IV.    <u>The Uniform Code Claim</u>

Plaintiff's Uniform Code Claim alleges that Chapter 82 of the Town Code is inconsistent with the State Uniform Code and should, therefore, be rendered void. (3d Am. Compl. ¶¶ 86-89, 413.) The Town moves to dismiss this claim, asserting that "New York State expressly allows local jurisdictions to enact more restrictive standards for construction, but provides that more restrictive local laws are superseded by the Uniform Code to the extent of any inconsistency unless – after enacting the law – the municipality seeks and obtains approval from the State Code Council." (Def. Mem of Law in Supp. 10 (citing N.Y. Exec. Law §§ 379, 389).) Plaintiff does not challenge this argument in his opposition; in fact, Plaintiff fails to address this claim entirely.

"It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed concession of the argument and abandonment of the claim[]." <u>Ross v. Port Chester Housing Auth.</u>, No. 17-CV-4770, 2019 WL 4738941, at *7 (S.D.N.Y. Sept. 27, 2019) (collecting cases); <u>see also</u> <u>Hanig v. Yorktwon Cent. Sch. Dist.</u>, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) ("[B]ecause Plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed."). Since Plaintiff failed to oppose the Town's arguments for dismissal of the Uniform Code Claim, the claim should be deemed abandoned.

Accordingly, this Court respectfully recommends that the Town's motion to dismiss be granted with respect to Plaintiff's Uniform Code Claim.

V.      Timeliness of the Section 239 Claim

The Town's next ground for dismissal is that Plaintiff's Section 239 Claim is untimely.

(Def. Mem. of Law in Supp. 6-7.) Plaintiff counters that because he is asserting a jurisdictional

defect in the implementation of Chapter 82 of the Town Code, in that the Town failed to follow

the mandates of General Municipal Law Section 239, a statute of limitations does not apply. (Pl.

Mem. of Law in Opp'n 13-14.) The Court agrees with the Town.

"In order to determine what limitations period governs a particular declaratory judgment

action, the court is required to look to 'the substance of [the] action to identify the relationship

out of which the claim arises and the relief sought.'" P & N Tiffany Props., Inc. v. Vill. of

Tuckahoe, 33 A.D.3d 61, 63 (2d Dep't 2006) (quoting Solnick v. Whalen, 49 N.Y.2d 224, 229

(1980)) (alteration in original). "If the dispute can be, or could have been, resolved through a

form of action or proceeding for which a specific statute of limitations is furnished by statute,

then that limitations period will govern the action, regardless of the form in which it is

presented." P & N Tiffany Props., 33 A.D.3d at 63 (citing Solnick, 49 N.Y.2d at 229-30). If not,

"the six-year 'catch-all' provision of CPLR 213(1) will apply." P & N Tiffany Props., 33 A.D.3d

at 63 (citing American Ind. Paper Mills Supply Co., Inc. v. County of Westchester, 16 A.D.3d

443 (2005)).

Typically, a CPLR article 78 proceeding, which is subject to a four-month statute of

limitations, is "not available to challenge a legislative act such as a zoning ordinance." P & N

Tiffany Props., 33 A.D.3d at 64 (citing Matter of Save the Pine Bush v. City of Albany, 70

N.Y.2d 193, 202 (1987)). However, "when the challenge is directed not at the substance of the

ordinance but at the procedures followed in its enactment, it is maintainable in an article 78

proceeding." Matter of Save the Pine Bush, 70 N.Y.2d at 202. Put another way, if an action is

9

addressed to the substance of a zoning law or its constitutionality, a declaratory judgment action

is the proper procedural vehicle; "issues that arise from the procedures by which the law was

enacted . . . may be raised in a CPLR article 78 proceeding." P & N Tiffany Props., 33 A.D.3d at

64 (citing Matter of Llana v. Town of Pittstown, 234 A.D.2d 881, 883-84 (1996)).

Notwithstanding the foregoing, Plaintiff argues that because he is alleging a jurisdictional

defect in the enactment of Chapter 82, in that the Town failed to comply with the mandates of

Section 239, there is no statute of limitations with respect to his claim. (Pl. Mem. of Law in

Opp'n 13-14.) Indeed, there are cases that appear to support Plaintiff's position. See, e.g., South

Shore Audubon Soc'y, Inc. v. Bd. of Zoning Appeals, 185 A.D.2d 984, 985 (2d Dep't 1992)

(finding that a failure to comply with Section 239 in enacting a zoning law constituted a

"jurisdictional defect" for which "[t]he Statute of Limitations does not preclude a challenge to

the Board's jurisdiction to act"); Home Depot USA, Inc. v. Baum, 226 A.D.2d 725, 726 (2d

Dep't 1996) (holding that an ordinance improperly enacted is "ultra vires and the Statute of

Limitations would not preclude a challenge to the Board's jurisdiction with respect to that act");

Nager v. Inc. Vill. of Saddle Rock, 140 Misc. 2d 644, 646 (Sup. Ct. 1988) (stating that "a

jurisdictional defect renders [Board] approval void and tolls the Statute of Limitations").

However, another line of cases supports the Town's position, holding that even where a

jurisdictional defect is alleged, as Plaintiff herein does, the claim is subject to a statute of

limitations, whether it be four months or six years. See, e.g., P & N Tiffany Props., 33 A.D.3d at

65-66 (holding that the challenge to a local law's enactment is subject to a four-month statute of

limitations); Smith v. Plattekill, 13 A.D.3d 695, 697 (3d Dep't 2004) (holding that a Town

Board's failure to comply with Section 239 is a jurisdictional defect and that "a challenge based

on that defect would be subject to the statute of limitations"); McCarthy v. Zoning Bd. of

**A260**

Appeals, 283 A.D.2d 857, 857-58 (3d Dep't 2001) (finding that petitioner's challenge "directed at the procedures followed in . . . enactment" of a local law was subject to the four-month statute of limitations for an article 78 proceeding); Stankavich v. Town of Duanesburg Planning Bd., 246 A.D.2d 891, 892 (3d Dep't 1998) (stating that "it does not necessarily follow . . . that the Statute of Limitations defense is negated in light of [an] apparent jurisdictional defect" and finding that a failure to comply with Section 239 claim is subject to a four-month statute of limitations); Janiak v. Town of Greenville, 203 A.D.2d 329, 331 (2d Dep't 1994) (holding that a challenge to the enactment of a local law is subject to the six-year statute of limitations).

The New York Court of Appeals has yet to speak to this apparent split within the departments of the Appellate Division. In this Court's view, however, the line of cases finding that claims such as Plaintiff's are subject to a statute of limitations is of more sound reasoning. The purpose of statutes of limitations is to "allow[] potential defendants predictability and ultimate repose." Veltri v. Building Servs. 32B-J Pension Fund, 393 F.3d 318, 326 (2d Cir. 2004). Exempting certain claims from such limitations would expose defendants, such as the Town herein, to endless litigation and expense.

Moreover, while Plaintiff cites to Nager v. Inc. Vill. of Saddle Rock, 140 Misc. 2d 644 (Sup. Ct. 1988), for the proposition that where plaintiffs "show a jurisdictional defect," they "avoid the bar of the Statute of Limitations," (Pl. Mem. of Law in Opp'n 13-14), Plaintiff appears to overlook more recent case law from the Appellate Division, Second Department, wherein the Court states that "it is a jurisdictional defect itself which renders agency action void and tolls the statute of limitations, not merely an allegation of such a defect." Hampshire Mgmt. Co. v. Feiner, 52 A.D.3d 714, 715 (2d Dep't 2008) (emphasis added).

In the within action, the Town enacted Chapter 82, entitled Neighborhood Preservation,

in 1999, with an effective date of December 10, 1999. See Brookhaven Town Code § 82. Plaintiff commenced this action on June 20, 2013, more than thirteen years after Chapter 82 was enacted. (DE [1].) Whether the four-month statute of limitations applicable to an article 78 proceeding is applied, or the six-year "catch-all" limitations period, under either statute, Plaintiff's action is untimely. Accordingly, this Court respectfully recommends that Defendant's motion to dismiss the remaining declaratory judgment claim contained in the Third Amended Complaint be granted on the grounds that this action is untimely.

VI.     Leave to Replead

While Plaintiff has not sought leave to replead his claims, the Court finds that, in any event, the right to replead should be denied.  Although "it is the usual practice upon granting a motion to dismiss to allow leave to replead," Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013), doing so here would be futile as Plaintiff's remaining declaratory judgment claim is time-barred.  No amount of repleading will alter that outcome.   Accordingly, this Court respectfully recommends that Plaintiff's Third Amended Complaint be dismissed without leave to replead.

RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendant's motion to dismiss be denied with respect to the argument that the Court lacks subject matter jurisdiction over the action, but granted overall as one of the remaining claims asserted is deemed abandoned and the other is time-barred. Accordingly, the only claims remaining in the Third Amended Complaint should be dismissed, without leave to replead.

OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court

12

within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a),

72(b).  Any requests for an extension of time for filing objections must be directed to the District

Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing

objections.  Failure to file objections within fourteen (14) days will preclude further review of

this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn,

474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive

right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to

object timely to a magistrate's report operates as a waiver of any further judicial review of the

magistrate's decision").

**SO ORDERED:**

Dated: Central Islip, New York
      January 27, 2022                       /s/       Anne. Y. Shields
                                          ANNE Y. SHIELDS
                                          United States Magistrate Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X    <u>For Online Publication Only</u>
JEROME NORTON,

                                    Plaintiff,

                     -against-                                **<u>MEMORANDUM AND ORDER</u>**
                                                              13-CV-3520 (JMA) (AYS)
TOWN OF BROOKHAVEN, COUNTY OF
SUFFOLK, ROBERT QUINLAN, DAVID J.
MORAN, JENNIFER LUTZER, JUSTIN
FOLBER, WILLIAM POWELL, and VALERIE
BISCARDI, *all individually and in their official
capacity*,

                                    Defendants.
---------------------------------------------------------X
**AZRACK, United States District Judge:**

       Plaintiff, Jerome Norton ("Plaintiff"), commenced this action on June 20, 2013, against the

Town of Brookhaven and various officers and employees of the Town (collectively, the "Town")

pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and New York State law.  (Compl., ECF No. 1.)

After extensive settlement negotiations, all claims alleged in the Third Amended Complaint were

settled by the stipulation dated October 18, 2017, except for two aspects of the Tenth Cause of

Action for a declaratory judgment against the Town: (1) that the fire and safety provisions in

Chapter 82 of the Town Code are more restrictive than the State's Uniform Code and thus require

further state approval prior to becoming effective (the "Uniform Code Claim"); and (2) that

Chapter 82 is a zoning ordinance that required referral to the Suffolk County Planning Commission

("SCPC") for review and recommendation under Section 239-m of the New York General

Municipal Law prior to being enacted (the "Section 239 Claim").

       On June 2, 2021, the Town moved for judgment on the pleadings and for summary

judgment to dismiss Plaintiff's remaining declaratory judgment claims.  (ECF No. 153.)  On

October 22, 2021, the Court referred the motion to Magistrate Judge Anne Y. Shields for a Report

and Recommendation ("R&R").  (Electronic Order, 10/22/2021.)  Judge Shields issued an R&R

dated January 27, 2022, which recommends that Town's motion be treated as a motion for

judgment on the pleadings – not as one for summary judgment – and that, as such, the motion be

denied with respect to the argument that the Court lacks subject matter jurisdiction over the action,

but granted overall because (1) the Uniform Code Claim is deemed abandoned; and (2) the Section

239-m claim is time-barred.  (ECF No. 156.)

　　　Plaintiff filed timely objections to the R&R, to which Defendant filed a response in

opposition.  (ECF Nos. 158, 159.)  After conducting a review of the full record (including the

motion papers, R&R, and objections,) and applicable law, the Court adopts Judge Shields's R&R

in its entirety as the opinion of the Court.

　　　In reviewing a magistrate judge's report and recommendation, a court must "make

a de novo determination of those portions of the report or . . . recommendations to which

objection[s] [are] made."  28 U.S.C. § 636(b)(1)(C); see also Brown v. Ebert, No. 5-CV-5579,

2006 WL 3851152, at *2 (S.D.N.Y. Dec. 29, 2006).  The Court "may accept, reject, or modify, in

whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. §

636(b)(1)(C). Those portions of a report and recommendation to which there is no specific

reasoned objection are reviewed for clear error.  See Pall Corp. v. Entegris, Inc., 249 F.R.D. 48,

51 (E.D.N.Y. 2008).

　　　The Court finds no clear error in the portions of Judge Shields's R&R to which there are

no specific objections.  In particular, Judge Shields recommended the Town's motion be treated

as a motion for judgment on the pleadings and that the motion be denied with respect to the

argument that the Court lacks subject matter jurisdiction over the action.  Applying clear error

review, the Court adopts Judge Shields's recommendations on these issues.

I next address the portions of the R&R to which the parties have objected.  For the objections, I have undertaken a <u>de novo</u> review of the record, the R&R, the objections, and the opposition.  For the reasons stated below, the Court denies those objections and adopts the R&R.

First, Plaintiff argues that his Section 239-m claim is not time-barred.  Judge Shields already addressed Plaintiff's arguments regarding the statute of limitations. The Court agrees with Judge Shields's well-reasoned analysis of this issue.  Plaintiff also argues that the Town is estopped from arguing that this claim is barred by the statute of limitations because the stipulation entered into by the parties states that:  "Plaintiff shall be entitled to, but is not required to, submit to the Court a motion for a declaratory judgment seeking a determination of the issue of the extent to which Town Code Ch. 82: constitutes a lawful exercise by the Town of the Town's powers pursuant to the requirements of New York General Municipal Law §239-m."  (Stipulation at ¶ 7(c), ECF No. 89.)  While the stipulation allows Plaintiff to bring a motion for a declaratory judgment regarding this claim, it does not limit, in any fashion, the defenses or arguments that the Town could make.  Accordingly, the Court finds that the Town was not estopped from raising its argument regarding the statute of limitations.  Finally, with respect to Plaintiff's argument that he should be allowed to challenge certain portions of Chapter 82 that were amended after its enactment in 1999 because they are not time-barred, the Court finds this argument is without merit. The portions of the code that Plaintiff challenged in his third amended complaint were enacted in 1999.  To the extent, Plaintiff attempts to add new allegations regarding other portions of the code, the Court declines to consider them.

Second, with respect to the Uniform Code claim, Plaintiff admits that he did not challenge the Town's argument as to this claim in his opposition.   (Pl. Obj. at 22.)  Accordingly, the Court

agrees that this claim is abandoned.  To the extent, Plaintiff alleges an estoppel argument regarding this claim, it also fails.

Based on the foregoing, the Court adopts Judge Shields's R&R in its entirety as the opinion of this Court.  Accordingly, the Court grants Defendant's motion for judgment on the pleadings.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: March 31, 2022
        Central Islip, New York

                                        _____/s/  (JMA)_____
                                        JOAN M. AZRACK
                                        UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

JEROME NORTON,

                       Plaintiff,

        *-against-*

TOWN OF BROOKHAVEN, COUNTY OF SUFFOLK,
ROBERT QUINLAN, DAVID J. MORAN, JENNIFER
LUTZER, JUSTIN FOLBER, WILLIAM POWELL,
VALERIE BASCARDI,

                    Defendants.

-------------------------------------------------------------------X

13-cv-3520

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' LOCAL RULE 56.1
STATEMENT**

       Plaintiff, JEROME NORTON, submits the following Counterstatement of Material Facts in response to the Rule 56.1 Statement of Defendant Town of Brookhaven ("Town"), Robert Quinlan, David J. Moran, Jennifer Lutzer, Justin Folber, William Powell, and Valerie Biscardi:

   1.  All claims against the individually-named Defendants have been and/or should be discontinued pursuant to the 2017 Stipulation of Settlement. (Exhibit "B," Docket Entry 89).

     **Plaintiff's Response:**  Disputed. The so-ordered Stipulation of Partial Settlement ("Stipulation") states that claims against the individually-named Defendants were discontinued, "except to the extent any Claim(s) are otherwise provided for herein and/or concern allegation(s) that any herein Individual Defendant(s) have, and/or that the Town has, violated any obligations created by the Stipulation." Dkt. 89, ¶ 19. Furthermore, the Town apparently believes the individually-named Defendants are still parties, as they are listed as submitting the Rule 56.1 Statement. Defendants' Rule 56.1 Statement, p. 1.

1

2.   The only remaining claim in this action is Plaintiff's 10th Cause of Action, for declaratory relief, as limited by the 2017 Stipulation of Settlement. Id.

**Plaintiff's Response:**   Undisputed to the extent that the only currently active cause of action is number ten. However, cause of action number ten encompasses multiple claims, including that Town Code § 82:

a) is invalid under NY Executive Law Article 18 and/or the NY State Fire Prevention and Building Code (*see, e.g.*, Dkt. 87 ¶¶ 85-86, 89, 398-402);

b) is legally void under Stipulation ¶ 32 (Dkt. 89);

c) is legally void under NY GML § 239-m because the Town did not comply with NY General Municipal Law § 239-m requirements relative to § 82 (*see, e.g.*, Dkt. 87 ¶¶ 142, 387 and 402);

d) is legally void under NY Town Law § 262 because it violates § 262's uniformity requirements by discriminating between owner-occupied dwelling units and rental dwelling units (*see, e.g.*, Dkt. 87 ¶¶ 142, 392-97, 402). Plaintiff's § 262 claim is not contested by the Town via this motion, and Judge Spatt in 2014 rejected Town Defendants' prior motion to dismiss this claim. Dkt. 43, p. 41-43.

Further, Plaintiff retains the right, under the Stipulation, to bring and/or revive certain causes of action. Under Stipulation ¶ 6, if the New York Department of State ("DOS") does not issue a Uniform Code Interpretation[1], then the Plaintiff is entitled, but not required, to submit a motion to this Court for a declaratory judgment on the issue of whether Town Code Ch. 82 is legally enforceable under New York Executive Law and /or the New York State Fire Prevention and Building Code.

---

[1] The letter from the DOS states that it is "provided for information only, and should not be construed as legal advice, or as an interpretation or determination of any kind by the Department. The Department regrets that it is unable to provide the extensive review and interpretation that appears to have been requested." Ex. D to Town Motion, p. 9 (emphasis added).

3.   By letter dated October 26, 1999, the County of Suffolk Department of Planning found that the Application of the Town Board to establish Chapter 82 of the Town Code, with a public hearing then-scheduled for November 16, 1999, was "not within the jurisdiction of the Suffolk County Planning Commission." (Exhibit "A," 10/26/1999 Letter from Suffolk County Department of Planning.)

**Plaintiff's Response:** Disputed in that, while the October 26, 1999 letter is accurately quoted, it does not follow that this letter establishes that the Town's Town Board made a proper GML § 239-m referral to the Suffolk County Planning Commission ("SCPC") on § 82, or that the Town adopted its 1999 § 82 in conformance with the requirements of GML § 239-m. The letter states that the Town referred the matter to the SCPC "[p]ursuant to Sections A14-14 to 23 of the Suffolk County Administrative Code". Exhibit A to Defendants' Motion. This does not establish that the local law draft was referred pursuant to GML § 239-m. (It is also of relevance that the Town has failed to provide the Court with Sections A14-14 to 23 of the Suffolk County Administrative Code as they existed at the time.) Further, the SCPC's statement that the referred law was "not within the [SCPC's] jurisdiction" does not prove that the SCPC believed that the law was unrelated to zoning. There are a myriad of reasons why the SCPC could have made this determination that have nothing to do with whether the law is zoning related or not. Furthermore, the letter only refers to a certain portion of § 82 that was adopted in 1999, and not any of its numerous subsequent amendments (i.e., local laws 22 of 2002, 18 of 2003, 27 of 2007, 7 of 2009, 41 of 2010, 2 of 2012, 20 of 2012, 19 of 2013, 33 of 2013, 37 of 2013, 14 of 2014, 19 of 2015, 22 of 2015, 16 of 2017, 17 of 2018, 18 of 2018, and 22 of 2018). Ex. 1.

There are also other reasons why § 82 should be considered a zoning law. For example:

a)   The Town itself acknowledged, when it first adopted Ch. 82, that it involved "a planning or zoning decision" Ex. 2, p. 16.

b)   In Nasca v. Town of Brookhaven, 2008 U.S. Dist. LEXIS 73644 (E.D.N.Y, Sep. 25, 2008), Judge Bianco analyzed one aspect of § 82 by applying tests used in other cases dealing with zoning laws

(i.e., <u>Pompa Construction Corp. v. Saratoga Spring</u>s, 706 F.2d 418 (2d Cir. 1983), <u>Cordi-Allen v. Conlon</u>, 494 F.3d 245 (1st Cir. 2007), and <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562 (2000)).

c)  A New York Court has already found one section of Chapter 82 is a zoning law. <u>People v. Sieger Agency Inc.</u>, 56 Misc. 3d 1213(A), 65 N.Y.S.3d 493 (Suffolk County Dist. Ct., 2017).

d)  When the Town passed the following amendments to Ch. 82, it specifically referred to the following laws, each of which is contained in Town Law Article 16, entitled "Zoning and Planning":

- Local law 7 of 2009 (Ex. 1, p. 16) expressly cites to NY Town Law § 268[2];

- Local law 2 of 2012 (<u>Id.</u> at 48) expressly cites to NY Town Law § 265;

- Local law 19 of 2013 (<u>Id.</u> at 54) expressly cites to NY Town Law § 268;

- Local law 14 of 2014 (<u>Id.</u> at 73) expressly cites to NY Town Law  § 265;

- Local law 22 of 2015 (<u>Id.</u> at 84) expressly cites to NY Town Law §§ 264 and 265;

- Local law 16 of 2017 (<u>Id.</u> at 90) expressly cites to NY Town Law §§ 264 and 265;

- Local law 22 of 2018 (<u>Id.</u> at 111) expressly cites to NY Town Law §265;

For a more detailed analysis of the above, see Plaintiff's Memorandum in Opposition, pp.15-17.

4.  Chapter 82 of the Brookhaven Town Code, entitled "Neighborhood Preservation," was enacted by the Town Board of the Town of Brookhaven on December 7, 1999, effective December 10, 1999, by the passage of Local Law 12-1999.

---

[2] The Town Memo. p. 9 claim that "[w]hen Chapter 82 and Chapter 85 (the Town's Zoning Law) were both amended in 2009, the [SCPC] received copies of [Introductory Local Law # 12 of 2009], but only exercised jurisdiction over the Chapter 85 amendment and issued a letter indicating that it was a matter of local determination" is puzzling not only because no copy of the "proposed local law" is before this court but because "Section 9. Authority [of the Town's 7 of 2009 law (the only Town Code § 82 amendment passed by the Town in 2009 (Ex. _)) expressly says t]he Town Board is vested with the authority to make these <u>amendments by local law pursuant to Town Law §</u>§ 64, 130 and <u>268</u> and Municipal Home Rule Law § 10 and in accordance with Municipal Home Rule Law § 20" (emphasis added).

    <u>**Plaintiff's Response:**</u> Disputed. While a version of the Brookhaven Town Code, entitled "Neighborhood Preservation," was first enacted on December 7, 1999 by the passage of Local Law 12-1999, this version has been extensively amended by the Town's passage of local law 22 of 2002, 18 of 2003, 27 of 2007, 7 of 2009, 41 of 2010, 2 of 2012, 20 of 2012, 19 of 2013, 33 of 2013, 37 of 2013, 14 of 2014, 19 of 2015, 22 of 2015, 16 of 2017, 17 of 2018, 18 of 2018, and 22 of 2018. Ex. 1.

    Dated: May 19, 2021

                                      Respectfully submitted,

                                        LEEDS BROWN LAW, P.C.

                                        s/
                                        Andrew Costello
                                        Rick Ostrove

UNITED STATES DISTRICT COURT       Docket No.: 13-cv-3520-JMA-AYS
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
JEROME NORTON,

                 Plaintiff,                      RULE 56.1 STATEMENT

      -against-

TOWN OF BROOKHAVEN, COUNTY OF
SUFFOLK, ROBERT QUINLAN, DAVID J.
MORAN, JENNIFER LUTZER, JUSTIN
FOLBER, WILLIAM POWELL, VALERIE
BISCARDI,

                Defendants.
----------------------------------------------------X

      Defendants TOWN OF BROOKHAVEN, ROBERT QUINLAN, DAVID J. MORAN,

JENNIFER LUTZER, JUSTIN FOLBER, WILLIAM POWELL, and VALERIE BISCARDI, by

their undersigned counsel, pursuant to Local Rule 56.1, as and for a statement of uncontested

material facts, state as follows:

      1.     All claims against the individually-named Defendants have been and/or should be

discontinued pursuant to the 2017 Stipulation of Settlement. (**Exhibit "B,"** Docket Entry 89).

      2.     The only remaining claim in this action is Plaintiff's 10th Cause of Action, for

declaratory relief, as limited by the 2017 Stipulation of Settlement. Id.

      3.     By letter dated October 26, 1999, the County of Suffolk Department of Planning

found that the Application of the Town Board to establish Chapter 82 of the Town Code, with a

public hearing then-scheduled for November 16, 1999, was "not within the jurisdiction of the

Suffolk County Planning Commission." (**Exhibit "A,"** 10/26/1999 Letter from Suffolk County

Department of Planning).

4.      Chapter 82 of the Brookhaven Town Code, entitled "Neighborhood Preservation," was enacted  by the Town Board of the Town of Brookhaven on December 7, 1999, effective December 10, 1999, by the passage of Local Law 12-1999.


Dated: February 19, 2021                    Respectfully submitted,

                                            DEVITT SPELLMAN BARRETT, LLP

                                            */s/ Scott Kreppein*

                                            _____
                                            By: Scott J. Kreppein

# COUNTY OF SUFFOLK



ROBERT J. GAFFNEY
SUFFOLK COUNTY EXECUTIVE

STEPHEN M. JONES, A.I.C.P.
DIRECTOR OF PLANNING

DEPARTMENT OF PLANNING

October 26, 1999

Town Clerk
Town of Brookhaven

Re:   Application of the Town Board to establish a new Chapter
82 to the Code of Ordinances of the Town of Brookhaven
(public hearing:  11/16/99).

Gentlemen:

Pursuant to Sections A 14-14 to 23 of the Suffolk County Administrative Code, the above referenced application is not within the jurisdiction of the Suffolk County Planning Commission.

Very truly yours,

Stephen M. Jones
Director of Planning

S/s Gerald G. Newman
Chief Planner

GGN:cc

G:\CCHORN\ZONING\ZONING\WORKING\NON-JUR\99N\JBR#21.JUL

LOCATION
H. LEE DENNISON BLDG. · 4TH FLOOR
100 VETERANS MEMORIAL HIGHWAY

MAILING ADDRESS
P. O. BOX 6100
HAUPPAUGE, NY 11788-0099

(516) 853-5190
TELECOPIER (516) 853-4044





# Town of Brookhaven

*November 4, 2002*

Office of the Town Clerk

**Stanley Allan - Town Clerk & Registrar**

Lauri Murray - Deputy Clerk and Registrar
Jayme Short - Secretary to Town Clerk

*General Code Publishing Corp.*
*72 Hinchey Road*
*Rochester, New York 14624*

Re:   **LOCAL LAW #22 OF THE YEAR 2002**
      **AMENDING CHAPTER 82 "NEIGHBORHOOD PRESERVATION"**

*Dear Sirs:*

      *Annexed hereto please find copy of the above-mentioned Local Law, which was adopted at the October 15, 2002 Brookhaven Town Board meeting. Having been filed with the Secretary of State, this Local Law became effective* <u>*October 21, 2002*</u>.

                                           *Sincerely,*

                                           *STANLEY ALLAN*
                                           *TOWN CLERK*

SA:js/enc.
cc:   *Supervisor John Jay LaValle*
      *Town Council*
      *Hon. Glenn Murphy, Deputy Supervisor*
      *George Hoffman, Chief of Staff*
      *Edward Morris, Deputy Chief of Staff*
      *Karen M. Wilutis, Town Attorney*
      *Harold Steuerwald, Chief Deputy Town Attorney*
      *J. Piscitello, Prin. Law Ass't, Dist. Court of SC*
      *Clerk of the Sixth District Court*
      *Joyce Fordham, Law Department*
      *Daniel Gulizio, Commissioner of P.E.D.*
      *Brenda Prusinowski, Chief Deputy Commissioner – PED*
      *Linda Petersen, Deputy Commissioner of P.E.D.*
      *Vincent Dragone, Chief Building Inspector*
      *Joseph Sanzano, Planning*
      *Planning Board/Environmental Protection/ZBA*
      *SC Planning Commission*

Town Hall   ●   Patchogue, Long Island, New York 11772   ●   (631) 654-7827
www.brookhaven.org

## COUNTY OF SUFFOLK



ROBERT J. GAFFNEY
SUFFOLK COUNTY EXECUTIVE

DEPARTMENT OF PLANNING

... ...'D

2003 ... 22  A  10: 52

THOMAS ISLES, AICP
DIRECTOR OF PLANNING

July 14, 2003

Town Clerk
Town of Brookhaven

Re:    Proposed amendments to Chapter 82 of the Code of
Ordinances of the Town of Brookhaven (public hearing:
7/22/03).

Gentlemen:

Pursuant to Sections A 14-14 to 23 of the Suffolk County Administrative Code, the above
referenced application is not within the jurisdiction of the Suffolk County Planning Commission.

Very truly yours,

Thomas Isles
Director of Planning

S/s Gerald G. Newman
Chief Planner

GGN:cc

G:\CCHORNY\ZONING\ZONING\WORKING\NON-JUR\2003\BR-72203.JUL

LOCATION
H. LEE DENNISON BLDG. - 4TH FLOOR
100 VETERANS MEMORIAL HIGHWAY

MAILING ADDRESS
P. O. BOX 6100
HAUPPAUGE, NY 11788-0099

(631) 853-5190
TELECOPIER 631) 853-4044



# Town of Brookhaven
# Long Island

**Pamela J. Betheil,** Town Clerk & Registrar

December 17, 2007

General Code Publishing Corp.
72 Hinchey Road
Rochester, New York 14624

Re:   **LOCAL LAW #27 OF THE YEAR 2007
AMENDING CHAPTER 82 "NEIGHBORHOOD PRESERVATION" §82-4 ENTITLED
"RENTAL OCCUPANCY REGISTRATION REQUIRED" OF THE TOWN CODE OF THE
TOWN OF BROOKHAVEN**

Dear Sirs:

Attached please find a copy of the above-mentioned Local Law, which was adopted at the December 4, 2007 Brookhaven Town Board meeting. Having been filed with the Secretary of State, this Local Law became effective December 10, 2007.

Sincerely,

*Pamela J. Betheil*

PAMELA J. BETHEIL
TOWN CLERK

PJB:kb:Enc.

cc:   Supervisor Brian X. Foley
      Members of the Town Board
      Robert F. Quinlan, Town Attorney
      James M. Burke, Deputy Town Attorney
      Eileen Munn, Executive Assistant, Law
      Kim G. Brandeau, Commissioner of Finance
      Beth Ann Reilly, Asst. Town Attorney
      Joseph Sauerwein, Commissioner Bldg. & Fire Prev.
      Kathleen Meade, Dep. Commissioner Bldg. & Fire Prev.

Arthur Gerhauser, Chief Building Inspector
John Weis, Zoning Inspector, - Bldg.
SC Planning Commission
Steven Miller, Prin. Law Asst., Dist. Court of SC
Clerk of the Sixth District

**Office of the Town Clerk**
One Independence Hill • Farmingville • NY 11738 • Phone (631) 451-9101 • Fax (631) 451-9264
www.brookhaven.org
Printed on recycled paper



Town of Brookhaven
Long Island

**Pamela J. Betheil,** Town Clerk & Registrar

March 26, 2009

Deputy Supervisor (Acting Supervisor)  Lori Bladassare
Councilman Steve Fiore-Rosenfeld
Councilwoman Jane Bonner
Councilwoman Kathleen A. Walsh
Councilwoman Constance M. Kepert
Councilman Timothy P. Mazzei
Councilman Keith Romaine

Re:   **INTRODUCTORY LOCAL LAW # 12 OF 2009**
**AMENDING THE "PENALTIES FOR OFFENSES" SECTIONS CONTAINED WITHIN EACH**
**OF THE FOLLOWING CHAPTERS; CHAPTER 45 ENTITLED "SANITATION", CHAPTER 48**
**ENTITLED "GRAFFITI AND DEFACEMENT OF PROPERTY", CHAPTER 49 ENTITLED**
**"PROPERY MAINTENANCE", CHAPTER 70 ENTITLED "TREE PRESERVATION",**
**CHAPTER 71 ENTITLED "TRESPASSING", CHAPTER 82 ENTITLED "NEIGHBORHOOD**
**PRESERVATION", AND CHAPTER 85 ENTITLED "ZONING"**

Dear Mr. Supervisor and Members of the Town Board:

Attached please find a copy of the above-mentioned Local Law, which will be the subject of a Public
Hearing on the **16th** day of **April, 2009,** by the Town Board of the Town of Brookhaven in the Town Board
Auditorium, One Independence Hill, 2nd Floor, Farmingville, New York 11738 at **6:30 P.M.**

Sincerely,

*Pamela J. Betheil*

PAMELA J. BETHEIL
TOWN CLERK

PJB:kb:Enc.
cc:   Karen M. Wilutis, Town Attorney                    Diane Mazarakis, Planning
      Barbara Wiplush, Sr. Assistant Town Attorney       John Weis, Zoning Inspector – Building
      Eileen Munn, Sr. Admin. Asst., Law                 Vincent Pascale, Planning Bd. Chairman
      Brenda Prusinowski, Deputy Comm. of PELM           Paul DeChance, ZBA Chairman
      Martin Haley, Commissioner Bldg. & Fire Prevention Ed Hubbard, Comm. Of Waste Mgmnt.
      John Turner, Director of Environmental Protection  Anthony Gallino, Comm. Of Public Safety
      Jeff Kassner, Asst. Director of Environmental Protection  SC Planning Commission
      Beth Reilly, Asst. Town Attorney

**Office of the Town Clerk**
One Independence Hill • Farmingville • NY 11738 • Phone (631) 451-9101 • Fax (631) 451-9264
www.brookhaven.org
General Information: (631) 451-TOWN
Printed on recycled paper

# COUNTY OF SUFFOLK



**STEVE LEVY**
SUFFOLK COUNTY EXECUTIVE

DEPARTMENT OF PLANNING

2009 ...

THOMAS A. ISLES, A.I.C.P
DIRECTOR OF PLANNING

April 9, 2009

Town of Brookhaven
1 Independence Hill
Farmingville, New York 11738
ATT: Pamela J. Betheil, Clerk

|  |  |
|---|---|
| Applicant: | Town of Brookhaven |
| Zoning Action: | Amendment; Section 85-432 |
|  | Chapter 85 (Zoning) |
|  | "Penalties for Offenses" |
| Public Hearing Date: | April 16, 2009 |
| Local Reso.: | IR #12 of 2009 |
| S.C.P.D. File No.: | BR-09-LD |

Dear Ms. Betheil:

Pursuant to the requirements of Sections A 14 14-23 of the Suffolk County Administrative Code, the above referenced application which has been submitted to the Suffolk County Planning Commission is considered to be a matter for local determination as there is no apparent significant county-wide or inter-community impact(s). A decision of local determination should not be construed as either an approval or disapproval.

Very truly yours,

Thomas A. Isles, AICP
Director of Planning

Andrew P. Freleng
Chief Planner

APF:ds

LOCATION
H. LEE DENNISON BLDG. - 4TH FLOOR
100 VETERANS MEMORIAL HIGHWAY

MAILING ADDRESS
P. O. BOX 6100
HAUPPAUGE, NY 11788-0099

(631) 853-5191
TELECOPIER (631) 853-4044



# Town of Brookhaven
## Long Island

**Patricia A. Eddington, LCSW**
Town Clerk and Registrar

December 20, 2010

General Code Publishing Corp.
72 Hinchey Road
Rochester, New York 14624

Re:   **LOCAL LAW #41 OF THE YEAR 2010**
   **AMENDING CHAPTER 82OF THE CODE OF THE TOWN ENTITLED "NEIGHBORHOOD**
   **PRESERVATION"**

Dear Sirs:

   Attached please find a copy of the above-mentioned Local Law, which was adopted at the November 23, 2010 Brookhaven Town Board meeting.  Having been filed with the Secretary of State, this Local Law became effective December 7, 2010.

Sincerely,

PATRICIA A. EDDINGTON
TOWN CLERK

PAE:kb:Enc.
cc:   Supervisor, Mark Lesko      Arthur Gerhauser, Chief Building Inspector
   Members of the Town Board      John Weis – Zoning Inspector - Building
   Robert F. Quinlan, Town Attorney      John Dembek, Chief Fire Marshal
   David Moran, Deputy Town Attorney
   Janet Ford, Senior Asst. Town Attorney
   Anthony Gallino, Commissioner of Public Safety
   Martin Haley, Commissioner of Bldg. & Fire Prevention
   Steven Miller, Prin. Law Asst., Dist. Court of SC
   Clerk of the Sixth District Court
   SC Planning Commission

**Office of the Town Clerk**
One Independence Hill • Farmingville • NY 11738 • Phone (631) 451-9101 • Fax (631) 451-9264
www.brookhaven.org
General Information: (631) 451-TOWN
Printed on recycled paper

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
JEROME NORTON,

                        Plaintiff,

              - against -

TOWN OF BROOKHAVEN, COUNTY OF
SUFFOLK, ROBERT QUINLAN, DAVID J.
MORAN, JENNIFER LUTZER, JUSTIN
FOLBER, WILLIAM POWELL, and
VALERIE BISCARDI, *all individually and in*
*their official capacity,*

                        Defendants
-------------------------------------------------------X

**JUDGMENT**
CV 13-3520 (JMA)(AYS)

      A Memorandum of Decision and Order of Honorable Arthur D. Spatt, United States

District Judge, having been filed on January 21, 2020, granting the Defendant County of

Suffolk's motion for judgment of the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure; and a Memorandum and Order of Honorable Joan M. Azrack, United States

District Judge, having been filed on March 31, 2022, adopting the January 27, 2022 Report and

Recommendation of United States Magistrate Judge Anne Y. Shields in its entirety as the

opinion of the Court; granting Defendants Town of Brookhaven, Robert Quinlan, David J.

Moran, Jennifer Lutzer, Justin Folber, William Powell, and Valerie Biscardi's motion for

judgment on the pleadings, and directing the Clerk of the Court to close this case, it is

      **ORDERED AND ADJUDGED** that Plaintiff Jerome Norton take nothing of Defendants

Town of Brookhaven, County of Suffolk, Robert Quinlan, David J. Moran, Jennifer Lutzer,

Justin Folber, William Powell, and Valerie Biscardi; that Defendants' motions for judgment on

the pleadings are granted; and that this case is closed.

Dated:  April 4, 2022
          Central Islip, New York

                                                 BRENNA B. MAHONEY
                                                 CLERK OF THE COURT

BY:   /S/ JAMES J. TORITTO
               DEPUTY CLERK

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
JEROME NORTON,

                     :    Docket No.: 13-CV-3520

              Plaintiff,

                     :

    -against-                  :    **NOTICE OF APPEAL**

                     :

TOWN OF BROOKHAVEN, COUNTY OF SUFFOLK,
ROBERT QUINLAN, DAVID J. MORAN, JENNIFER
LUTZER, JUSTIN FOLBER, WILLIAM POWELL and   :
VALERIE BASCARDI, *all individually and in their official*   :
*capacity,*

              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

      Notice is hereby given that Plaintiff, Jerome Norton, hereby appeals to the United States

Court of Appeals for the Second Circuit from all aspects of the Memorandum and Order dated

March 31, 2022 (Docket # 160, attached hereto as Attachment 1), issued by the Honorable Joan

M. Azrack, United States District Judge, for which judgment was entered in this action on April

4, 2022 (Docket # 161, attached hereto as Attachment 2).

Dated: May 4, 2022
       Carle Place, New York

                                 LEEDS BROWN LAW P.C.
                                 *Attorneys for Plaintiff*

                                 Rick Ostrove
                                 One Old Country Road, Suite 347
                                 Carle Place, New York 11514
                                 (516) 873-9550
                                 rostrove@leedsbrownlaw.com

To:     Scott J. Kreppein, Esq. (via ECF)